IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WYETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No.: 06-222 (JJF) |
| v. | ) | |
| | ) | |
| IMPAX LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF ROBERT A. POLLOCK, ESQ.

I, Robert A. Pollock, Esq., hereby declare under penalty of perjury as follows:

1.   I am an associate with the law firm of Finnegan, Henderson, Farabow, Garrett, & Dunner, L.L.P.  I am one of the attorneys that represented Wyeth in the *Wyeth v. Teva Pharms. USA, Inc. and Teva Pharm. Indus., Ltd.*, C. A. No. 03-CV-1293 (WJM) in the United States District Court for the District of New Jersey ("Teva litigation").  I also am one of the attorneys representing Wyeth in this litigation.

2.   The facts set forth herein are based on my personal knowledge or on knowledge that I acquired during the course of my representation of Wyeth in connection with the Teva litigation.

3.   Wyeth's primary document collection, review, and production efforts for the Teva litigation began in May 2003, and ended in September 2004 — a 16 month period of time.

4. After the receipt of Teva's February 6, 2003 letter notifying Wyeth of its ANDA filing containing a Paragraph IV certification, Wyeth began investigating the existence and location of relevant documents.

5. I was involved in the primary document collection process for the Teva litigation. This process began on May 6, 2003, when Finnegan personnel first visited a Wyeth facility for the purpose of reviewing and collecting documents.

6. The primary document collection process entailed the following:

   a. A team of attorneys (including myself) reviewed and collected laboratory notebooks that were located at several Wyeth U.S. facilities.

   b. In addition, a team of attorneys (including myself), supported by paralegals, contacted over 200 Wyeth employees located in eight different Wyeth U.S. facilities and two Wyeth foreign facilities in connection with its document collection process.

   c. As a result of those efforts, we collected hard paper copy documents and electronic documents as described in our letter of July 14, 2006. Matterer Decl., Ex. 11.

7. In addition, Wyeth conducted electronic searching of its internal databases as described in our letter of July 14, 2006. Matterer Decl., Ex. 11.

8. As part of the document collection process, two Wyeth employees, who were Wyeth's Director of European Clinical Research and Wyeth's Associate Director of Clinical Science in Europe at the time of Wyeth's European clinical study number 600B-367-EU, were contacted and documents were collected. Both of these employees had personal knowledge of Study 600B-367-EU. One of these employees was still located

2

in Paris, France at the time of the collection, and documents were collected from the Paris, France Wyeth facility. In addition, both of these employees are part of the "E-group" identified in our letter of July 14, 2006 [Matterer Decl., Ex. 11 at 3-4] and, therefore, electronic searching of their files also was conducted as described in that letter. Wyeth, therefore, collected and produced the relevant documents relating to Study 600B-367-EU in the Teva litigation.

9. Correspondence between Wyeth and the approximately 75 foreign patent offices in which counterpart patent applications were filed (to the extent those documents were located in Wyeth's U.S. patent department files during the collection for the Teva litigation) was produced in the Teva litigation. Wyeth was not required to, and did not, list privileged foreign patent prosecution documents on its withheld document log in the Teva litigation.

10. The document review process was extremely time-consuming because of the enormous volume of materials that were reviewed as well as other aspects of the document review such as redactions (*e.g*, patient identifying information as required by HIPAA and non-venlafaxine Wyeth product information which was not the subject of the litigation).

11. Wyeth began to produce documents to Teva on October 31, 2003 (approximately one and a half months after our responses to Teva's 97 document requests were due), and continued producing documents to Teva on a rolling basis.

12. Document production was substantially completed on September 17, 2004. By this time, Wyeth had produced well over 1 million pages of documents.

13. After this date, Wyeth produced a relatively small number of additional documents. The last production was completed on April 21, 2005, for a total of approximately 1.3 million pages of documents produced.

14. In sum, the bulk of Wyeth's document collection and production efforts in the Teva litigation consumed over 16 months.

15. At the time of Wyeth's document collection and production process, neither the Federal Rules nor the Court imposed any requirements regarding the format for production of electronic documents.

16. Virtually all documents that were eventually produced, including electronic documents, were printed out and reviewed, redacted where appropriate, and produced in hard paper copy. Teva was ordered to pay for Wyeth's cost of Teva's production copies.

17. Production documents were later scanned as TIFF images at .12 ¢ per page and coded at significant additional cost (over $ 400,000), at the request of Wyeth counsel, for purposes of the litigation. Wyeth provided neither TIFF images nor coding to Teva.

18. Because of the method used to collect, process, and produce electronic documents in the Teva litigation, obtaining native metadata now would require Wyeth, on a document by document basis of 1.3 million pages, (1) to determine whether each document was collected originally as a hard paper copy or electronic document, (2) to determine the electronic source of each electronic document so identified, (3) to locate any metadata associated with each such electronic document as it was maintained in the ordinary course of business, and (4) to review such metadata for relevance and

4

privilege. Given the size of Wyeth's document production, this process would be extremely time-consuming and burdensome.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on this ___ day of August 2006.

                                            */s/ Robert A. Pollock*

                                            _____
                                            Robert A. Pollock, Esq.

# FACSIMILE COPY OF DECLARATION OF ROBERT A. POLLOCK, ESQ.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WYETH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C. A. No.: 06-222 (JJF) |
| v. | ) |
| | ) |
| IMPAX LABORATORIES, INC., | ) |
| | ) |
| Defendant. | ) |

### DECLARATION OF ROBERT A. POLLOCK, ESQ.

I, Robert A. Pollock, Esq., hereby declare under penalty of perjury as follows:

1. I am an associate with the law firm of Finnegan, Henderson, Farabow, Garrett, & Dunner, L.L.P. I am one of the attorneys that represented Wyeth in the *Wyeth v. Teva Pharms. USA, Inc. and Teva Pharm. Indus., Ltd.*, C. A. No. 03-CV-1293 (WJM) in the United States District Court for the District of New Jersey ("Teva litigation"). I also am one of the attorneys representing Wyeth in this litigation.

2. The facts set forth herein are based on my personal knowledge or on knowledge that I acquired during the course of my representation of Wyeth in connection with the Teva litigation.

3. Wyeth's primary document collection, review, and production efforts for the Teva litigation began in May 2003, and ended in September 2004 — a 16 month period of time.

4. After the receipt of Teva's February 6, 2003 letter notifying Wyeth of its ANDA filing containing a Paragraph IV certification, Wyeth began investigating the existence and location of relevant documents.

5. I was involved in the primary document collection process for the Teva litigation. This process began on May 6, 2003, when Finnegan personnel first visited a Wyeth facility for the purpose of reviewing and collecting documents.

6. The primary document collection process entailed the following:

    a. A team of attorneys (including myself) reviewed and collected laboratory notebooks that were located at several Wyeth U.S. facilities.

    b. In addition, a team of attorneys (including myself), supported by paralegals, contacted over 200 Wyeth employees located in eight different Wyeth U.S. facilities and two Wyeth foreign facilities in connection with its document collection process.

    c. As a result of those efforts, we collected hard paper copy documents and electronic documents as described in our letter of July 14, 2006. Matterer Decl., Ex. 11.

7. In addition, Wyeth conducted electronic searching of its internal databases as described in our letter of July 14, 2006. Matterer Decl., Ex. 11.

8. As part of the document collection process, two Wyeth employees, who were Wyeth's Director of European Clinical Research and Wyeth's Associate Director of Clinical Science in Europe at the time of Wyeth's European clinical study number 600B-367-EU, were contacted and documents were collected. Both of these employees had personal knowledge of Study 600B-367-EU. One of these employees was still located

2

in Paris, France at the time of the collection, and documents were collected from the Paris, France Wyeth facility. In addition, both of these employees are part of the "E-group" identified in our letter of July 14, 2006 [Matterer Decl., Ex. 11 at 3-4] and, therefore, electronic searching of their files also was conducted as described in that letter. Wyeth, therefore, collected and produced the relevant documents relating to Study 600B-367-EU in the Teva litigation.

9. Correspondence between Wyeth and the approximately 75 foreign patent offices in which counterpart patent applications were filed (to the extent those documents were located in Wyeth's U.S. patent department files during the collection for the Teva litigation) was produced in the Teva litigation. Wyeth was not required to, and did not, list privileged foreign patent prosecution documents on its withheld document log in the Teva litigation.

10. The document review process was extremely time-consuming because of the enormous volume of materials that were reviewed as well as other aspects of the document review such as redactions (e.g, patient identifying information as required by HIPAA and non-venlafaxine Wyeth product information which was not the subject of the litigation).

11. Wyeth began to produce documents to Teva on October 31, 2003 (approximately one and a half months after our responses to Teva's 97 document requests were due), and continued producing documents to Teva on a rolling basis.

12. Document production was substantially completed on September 17, 2004. By this time, Wyeth had produced well over 1 million pages of documents.

3

13. After this date, Wyeth produced a relatively small number of additional documents. The last production was completed on April 21, 2005, for a total of approximately 1.3 million pages of documents produced.

14. In sum, the bulk of Wyeth's document collection and production efforts in the Teva litigation consumed over 16 months.

15. At the time of Wyeth's document collection and production process, neither the Federal Rules nor the Court imposed any requirements regarding the format for production of electronic documents.

16. Virtually all documents that were eventually produced, including electronic documents, were printed out and reviewed, redacted where appropriate, and produced in hard paper copy. Teva was ordered to pay for Wyeth's cost of Teva's production copies.

17. Production documents were later scanned as TIFF images at .12 ¢ per page and coded at significant additional cost (over $400,000), at the request of Wyeth counsel, for purposes of the litigation. Wyeth provided neither TIFF images nor coding to Teva.

18. Because of the method used to collect, process, and produce electronic documents in the Teva litigation, obtaining native metadata now would require Wyeth, on a document by document basis of 1.3 million pages, (1) to determine whether each document was collected originally as a hard paper copy or electronic document, (2) to determine the electronic source of each electronic document so identified, (3) to locate any metadata associated with each such electronic document as it was maintained in the ordinary course of business, and (4) to review such metadata for relevance and

4

privilege. Given the size of Wyeth's document production, this process would be extremely time-consuming and burdensome.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on this 16th day of August 2006.

_____
Robert A. Polleck, Esq.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 17, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Mary B. Matterer
> MORRIS, JAMES, HITCHENS & WILLIAMS, LLP

I also certify that copies were caused to be served on August 17, 2006 upon the following in the manner indicated:

### BY HAND

Mary B. Matterer
Morris, James, Hitchens & Williams
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899

### BY FEDERAL EXPRESS

M. Patricia Thayer
John M. Benassi
Jessica R. Wolf
Heller Ehrman LLP
4350 La Jolla Village Dr.
San Diego, CA  92102

/s/ Karen Jacobs Louden
Karen Jacobs Louden (#2881)
klouden@mnat.com