IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| WYETH, | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | C.A. No. 06-222 (JJF) |
|  | ) | |
| IMPAX LABORATORIES, INC., | ) | |
|  | ) | |
| Defendant. | ) | |

**WYETH'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR THE APPOINTMENT OF A SPECIAL MASTER TO
MANAGE DISCOVERY AND RESOLVE DISCOVERY DISPUTES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
Wilmington, DE 19899-1347
(302) 658-9200
Attorneys for Plaintiff Wyeth

OF COUNSEL:

Basil J. Lewris
Linda A. Wadler
Finnegan, Henderson, Farabow,
  Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

October 6, 2006

i.

# **TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ..........................................................................................1

STATEMENT OF FACTS ..................................................................................................2

ARGUMENT......................................................................................................................4

    A.    Impax Has Not Made Any Showing That The Court Cannot Effectively And Timely Address The Pending Discovery Matters .............4

    B.    Delegation Of Responsibilities Will Only Increase Expense And Delay In Discovery And Commit Duplicative Judicial Resources..............6

CONCLUSION...................................................................................................................9

ii.

# TABLE OF AUTHORITIES

**Cases**

*Aird v. Ford Motor Co.*,
    86 F.3d 216 (D.D.C. 1996) ................................................................................... 8

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*,
    657 F.2d 890 (7th Cir. 1981) ................................................................................ 8

*First Iowa Hydro Elec. Coop. v. Iowa-Illinois Gas & Elec. Co.*,
    245 F.2d 613 (8th Cir. 1957) ............................................................................ 7, 9

*Inventory Locator Serv., LLC v. Partsbase, Inc.*,
    No. 02-2695 Ma/V, 2006 WL 1646091 (W.D. Tenn. June 14, 2006) .................... 6

*Stauble v. Warrob, Inc.*,
    977 F.2d 690 (1st Cir. 1992) ................................................................................. 7

*Trans World Airlines, Inc. v. Hughes*,
    332 F.2d 602 (2nd Cir. 1964) ............................................................................... 8

**Statutes**

35 U.S.C. § 282 .............................................................................................................. 3

Fed. R. Civ. P. 26(a)(1) .............................................................................................. 1, 2

Fed. R. Civ. P. 53(a)(1)(C) ......................................................................................... 1, 4

Fed. R. Civ. P. 53(a)(3) .............................................................................................. 4, 6

Fed. R. Civ. P. 53(g)(3) .................................................................................................. 6

**Other Authorities**

9 Moore's Federal Practice § 53.03[1][a] ..................................................................... 6

9 Moore's Federal Practice § 53.10[3][b] ..................................................................... 4

1.

## NATURE AND STAGE OF PROCEEDINGS

Wyeth filed this patent infringement action against Impax Laboratories, Inc. ("Impax") on April 5, 2006 (D.I. 1). Wyeth and Impax exchanged their Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on June 23, 2006, (D.I. 22 and 23), and each has served multiple sets of written discovery. This Court issued a Rule 16 Scheduling Order on July 13, 2006, scheduling, *inter alia*, contention interrogatories, identification of fact witnesses and document production to be completed by October 10, 2006. (D.I. 27). Each party has filed a single four-page motion to compel directed to the other's document production. (D.I. 36 and 52). On September 22, 2006, Impax moved to appoint a special master to manage discovery and resolve discovery disputes. This is Wyeth's answering brief in opposition to Impax's motion.

## SUMMARY OF ARGUMENT

Impax argues that appointment of a special discovery master would allegedly "facilitate the speedy resolution of the parties' numerous discovery disputes and would avoid unduly burdening the Court." (D.I. 55 at 2). Impax, however, has not established the existence of "numerous discovery disputes" or that these matters cannot be addressed "effectively and timely by an available district judge or magistrate judge" so as to warrant appointment of a special master under Fed. R. Civ. P. 53(a)(1)(C). Indeed, Impax's hyperbole notwithstanding, each party has filed only a single four-page motion to compel on its discovery issues, pursuant to the Court's streamlined motion practice (D.I. 27 at ¶ 4), and there is no basis to appoint a master based on hypothetical disputes that may or may not arise in the future. Appointment of a special master is unnecessary at this stage and is only likely to multiply the parties' disputes and increase both the cost

2.

and delay of discovery. For at least these reasons, Impax's motion for the appointment of a special discovery master should be denied.

## STATEMENT OF FACTS

Wyeth filed this action against Impax to prevent Impax from infringing its patents by marketing generic copies of its widely accepted and enormously successful Effexor® XR products before the expiration of the patents-in-suit. Discovery commenced in June, 2006, when the parties exchanged their Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1), and served their written discovery requests.

Impax devotes much of its brief to rehashing its motion to compel against Wyeth. Athough Wyeth disagrees with Impax's characterization of the dispute, the parties' positions have been fully briefed. For its part, Wyeth has filed a motion to compel based on Impax's attempt to limit its production to documents solely related to the accused ANDA 78-057 products (excluding even discovery of alternatives that Impax considered in connection with its decision to pursue the accused infringing product), and to foreclose discovery on the patents-in-suit and Wyeth's commercial embodiments (evidence relevant to rebutting Impax's infringement and invalidity allegations). These issues, too, have been fully briefed. Impax next attempts to list what it characterizes as additional potential disputes. Although Wyeth again disagrees with Impax's characterizations, Impax should not be permitted to rely on "disputes" that have not been fully vetted or submitted to the Court.

Impax argues that a special discovery master is needed because "Wyeth is currently holding its documents hostage," implying that Wyeth has refused to produce them. (D.I. 55 at 3). This is incorrect. First, Wyeth produced to Impax thirty-four boxes of documents containing its NDA 20-699 and five boxes containing transcripts and

3.

exhibits from the deposition of the four inventors of the patents-in-suit and Wyeth's 30(b)(6) witnesses, Alaburda and Mangano, in the previous *Wyeth v. Teva* litigation. Wyeth produced these documents in reliance on Impax's agreement to pay the copying costs, and continued to produce them even after Impax reneged on its agreement. (Louden Decl. Ex. 1).

Wyeth also has made other documents responsive to Impax's requests available for inspection, or in the alternative, offered to produce and ship copies upon agreement from Impax that it will reimburse Wyeth for the copying costs. Wyeth has made these documents available on a rolling basis and has advised Impax of the production number ranges of the documents available and the costs of copying. (Louden Decl. Ex. 2). Impax has elected neither to inspect the documents nor to pay for copies. Thus, any urgency here is entirely of its own making.

Contrary to Impax's contention, Wyeth has produced selected categories of relevant documents created after February 10, 2003, including communications to and from foreign patent offices in counterpart foreign applications of the patents-in-suit as well as the production of documents from the Teva litigation, including Teva's 35 U.S.C. § 282 Notice; Markman briefing; portions of expert reports, expert depositions and contention interrogatory answers concerning validity; and Teva's proposed amended answer on enforceability now that Teva has redacted its confidential information or given Wyeth permission to produce those documents in unredacted form. (D.I. 41).

To date, Wyeth has produced in hard copy over 98,000 pages of documents and has made the remainder of its production to date (over 750,000 pages) available to Impax for inspection. Until this week, Impax for its part had produced only

4.

its ANDA (about 4500 pages) and less than one box (about 1200 pages) of publicly available corporate information in the three months since discovery has been pending. Wyeth only this week received an additional eight boxes of production documents (about 25,000 pages) from Impax.

Thus, Wyeth has either produced or made available for inspection close to a million pages of documents, as well as pleadings and discovery materials from the *Wyeth v. Teva* litigation. Without even having reviewed these materials, Impax simply wants Wyeth to disgorge countless other documents that have no relevance to the issues in this case. Impax's motion seeks to pave the way for an endless stream of discovery disputes, unrestricted by this Court's streamlined procedures minimizing discovery motion practice.

## ARGUMENT

**A.   Impax Has Not Made Any Showing That The Court Cannot Effectively And Timely Address The Pending Discovery Matters**

To be sure, the Court has the discretion to appoint a special discovery master where pretrial matters "cannot be addressed effectively and timely by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C); *see also* 9 Moore's Federal Practice § 53.10[3][b]. Impax has not established, however, that this is such a case. In appointing a special master, the Court must consider "the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay." Fed. R. Civ. P. 53(a)(3). The Advisory Committee Notes on the 2003 Amendments also instructs that "[a] pretrial master should be appointed *only when the need is clear*." (Emphasis added).

5.

Here, Impax has not established that the Court cannot address the two pending motions "effectively and timely." The Court has already timely decided two motions in the case (Wyeth's motion to strike or dismiss Impax's unclean hands defense and Impax's motion to modify the scheduling order). (D.I. 26 and 50). In addition, this Court has a streamlined discovery dispute procedure under which the parties must limit their motions and responses to four pages, without replies. (D.I. 27 at ¶ 4(a)). The parties have each filed a single motion to compel pursuant to this procedure. Although Impax asserts that "the parties currently have at least twenty discrete discovery disputes"[1] (D.I. 55 at 4), the totality of the currently pending discovery disputes have been presented in a total of 20 pages. Impax articulates no reason why an appointment of a special master would be more efficient or timely compared to the Court's streamlined procedure.

Impax also tries to raise the spectre of future discovery disputes to bolster its motion. Any consideration of "disputes" that have not been submitted to the Court, however, would be premature. As Impax acknowledges, the parties must meet and confer on any "disputes," and must exercise discretion in the matters they submit to the Court for decision. It is precisely this vetting and culling process that Impax seeks to avoid. Indeed, Impax's brief makes clear that the appointment of a special master will likely multiply, not reduce, the number of disputes between the parties. Furthermore, any outstanding discovery issues could further be resolved in a conference or two with the Court.

---

[1] Impax apparently counts each bullet point presented in briefing as filed and then adds on its view of issues that hypothetically may be raised in future motion practice.

6.

Impax's arguments are further deficient because they do not establish a "clear" need for a special master in this case. Even though the "exceptional circumstance" requirement was deleted from the 2003 Amendments of Rule 53, the "core of the original Rule 53 remains, including its prescription that appointment of a master must be the exception and not the rule." Advisory Committee Notes of 2003 Amendments; *Inventory Locator Serv., LLC v. Partsbase, Inc.*, No. 02-2695 Ma/V, 2006 WL 1646091, at *2 (W.D. Tenn. June 14, 2006) ("Under Rule 53(a) the appointment of a special master is the exception and not the rule;" such as in *Locator* where the Special Master's assignment was to determine the authenticity of allegedly fabricated evidence submitted to the Court rather than management of routine discovery disputes); 9 Moore's Federal Practice § 53.03[1][a] ("However, referring cases to special masters remains the exception rather than the rule.").

Similarly, although this Court's Standing Order of 2004 authorizes referrals of discovery disputes to special masters, that Standing Order recognizes that referrals will be made only "time-to-time." There is no need here.

**B.    Delegation Of Responsibilities Will Only Increase Expense And Delay In Discovery And Commit Duplicative Judicial Resources**

In deciding whether to appoint a special master, the Court must also take into account any "unreasonable expense or delay" that the appointment may cause. Fed. R. Civ. P. 53(a)(3). Appointment of a special master would only increase the cost of the case here, given that the parties will be less likely to work out their disputes on their own, and the Court would be in the position of reviewing "*de novo* all objections" to the Master's Report. Fed. R. Civ. P. 53(g)(3). Such duplicative efforts would increase expense and unduly extend the discovery period. Appointing a special master thus would

7.

cause delay, as well as the commitment of duplicative judicial resources, rather than "preserv[ing] precious judicial resources," as Impax alleges.

Thus, the appointment of a special master will not necessarily speed up the discovery process or lessen the need for the Court to become involved in discovery disputes. This Court is well familiar with the production issues here which are common to many patent cases. Moreover, because this will be a bench trial, the Court's involvement in resolving any discovery disputes will not be wasted, but will familiarize the Court with the issues in the case.

The courts have warned against reference of a case to a master because of possible increased costs and delay in moving the case forward. *Stauble v. Warrob, Inc.*, 977 F.2d 690, 697 n.10 (1st Cir. 1992) ("[t]he history of these lawsuits bears out the Court's warning that indiscriminate references of cases to masters may actually increase, rather than shorten, the amount of time necessary to bring litigation to fruition.").

Impax cites four cases to argue that the courts have had a longstanding practice to appoint special masters to handle pretrial discovery matters. Those cases confirm, however, that appointments are made as the exception rather than the rule. For example, in *First Iowa Hydro Elec. Coop. v. Iowa-Illinois Gas & Elec. Co.*, 245 F.2d 613, 626 (8th Cir. 1957) - a fifty year old case - the Court found the case before it to be one that seldom arises in litigation, requiring the continuous supervision of discovery proceedings by a discovery master to prevent oppression and hardship (emphasis added):

> we find no error in his [the judge's] conclusion that the issues involved in it were complicated and the case was exceptional in presenting occasion and necessity for the services of a Master preliminary to trial *such as seldom arises in litigation*. There was *obvious possibility of oppression and hardship* unless the discovery proceedings

8.

> *were continuously supervised* and kept in order through the services of a Master.

There is no need here for such "continuous supervision" in this case where each party has currently filed only a single motion to compel. Similarly, the appointment of a discovery master was deemed appropriate where on the spot supervision was needed to deter further abuse based upon the past behavior of counsel:

> the trial court may find it useful in this case in view of the exceptional circumstances created by the past performances of counsel to consider the appointment of a master pursuant to Rule 53, Federal Rules of Civil Procedure. We recommend this course, as an on the spot "referee" may be needed to expedite further discovery. The costs of using this procedure will fall upon the parties and possibly serve as a deterrent to further abuse.

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, *U.A.*, 657 F.2d 890, 904 (7th Cir. 1981) (footnote omitted). No such exceptional circumstances have arisen here.

Moreover, in the other cases Impax cites where a special master was appointed, an inordinate extension of the proceedings and costs resulted because of objections to, appeals of, or a party's failure to comply with, the special master's order or recommendation. One court even stated, "Loath as we are to revisit upon the district court a case that it once described as a 'trial court's nightmare of a litigation monster,' one piece of it remains to be addressed: Ford's request for discovery sanctions for plaintiffs' violation of the special master's December 11, 1986, discovery order." *Aird v. Ford Motor Co.*, 86 F.3d 216, 225 (D.D.C. 1996) (citation omitted); *see also Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 612 (2nd Cir. 1964) (showing the necessity for district's court's involvement in the affirmance, denial of review, and adoption of various orders of the Special Master); *First Iowa Hydro Elec. Coop. v. Iowa-Illinois Gas*

9.

*& Elec. Co.*, 245 F.2d 613, 618-619 (8th Cir. 1957) (after a master, appointed with the consent of all parties, ordered production of bank records from plaintiffs, plaintiffs attempted to disqualify him as master and obtained a delay of the deposition as a result of the charges).

## CONCLUSION

For the foregoing reasons, Impax's Motion For The Appointment Of A Special Master To Manage Discovery And Resolve Discovery Disputes should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

/s/ *Karen Jacobs Louden*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
Wilmington, DE  19899-1347
(302) 658-9200
Attorneys for Plaintiff Wyeth

OF COUNSEL:

Basil J. Lewris
Linda A. Wadler
Finnegan, Henderson, Farabow,
   Garrett & Dunner, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

October 6, 2006
540227

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on October 6, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Mary B. Matterer
> MORRIS, JAMES, HITCHENS & WILLIAMS, LLP

I also certify that copies were caused to be served on October 6, 2006 upon the following in the manner indicated:

**BY HAND**

Mary B. Matterer
Morris, James, Hitchens & Williams
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE  19899

**BY FEDERAL EXPRESS**

M. Patricia Thayer
John M. Benassi
Jessica R. Wolf
Heller Ehrman LLP
4350 La Jolla Village Drive
San Diego, CA  92102

*/s/ Karen Jacobs Louden*
klouden@mnat.com