IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WYETH,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>IMPAX LABORATORIES, INC.,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 06-222 (JJF)<br><br>**FILED UNDER SEAL**<br><br>**REDACTED** |

## WYETH'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION FOR PROTECTIVE ORDER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
Attorneys for Plaintiff Wyeth

OF COUNSEL:

Basil J. Lewris
Linda A. Wadler
Barbara R. Rudolph
Finnegan, Henderson, Farabow,
　Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

February 28, 2007

# TABLE OF CONTENTS

**PAGE**

SUMMARY OF ARGUMENT ..........................................................................................1

IMPAX'S "STATEMENT OF FACTS" IS ANYTHING BUT FACTUAL ...............................2

    A.    Wyeth Has Not Delayed In Meeting Its Discovery Obligations .........................2

    B.    Impax's Portrayal of Deposition Testimony from the *Teva*
            Litigation Is Incomplete And Misleading..........................................................4

ARGUMENT ...........................................................................................................7

    A.    Rule 26 Does Not Eviscerate The Unambiguous Requirement
            Of Rule 30(b)(6) That A Notice Must Define Its Subject Matter
            "With Reasonable Particularity" .......................................................................7

    B.    Impax Has Not Addressed, Much Less Justified, Why It Needs
            Additional Discovery Beyond What Wyeth Has Offered ...................................9

    C.    Impax Improperly Seeks Contention Discovery Through
            Its Rule 30(b)(6) Topics .................................................................................13

    D.    A Number Of Impax's Topics Seek Information Protected
            By The Attorney-Client Privilege And/Or Work Product Immunity ..................15

            1.    Wyeth's Assertion Of Privilege Is Appropriate Given
                      Impax's Overly Broad Topics That Impinge Upon
                      Attorney-Client Privilege And/Or Work Product...............................15

            2.    Impax Cannot Use Rule 30(b)(6) To Invade the
                      Attorney-Client Privilege and Work Product Immunity
                      To Get Testimony About The "Intended Meaning" of the Patents.....16

            3.    Wyeth's Assertion of Work Product is Entirely Appropriate ..............18

            4.    That Privileged and Non-Privileged Subject Matter
                      Is Intertwined Is Precisely Why Many Courts Have
                      Denied Rule 30(b)(6) Testimony ......................................................18

CONCLUSION .......................................................................................................19

## TABLE OF AUTHORITIES

### FEDERAL CASES

PAGES

*Alexander v. FBI*,
    186 F.R.D. 137 (D.D.C. 1998)........................................................................................8

*Cabot Corp. v. Yamulla Enters., Inc.*,
    194 F.R.D. 499 (M.D. Pa. 2000).....................................................................................8

*Environ Prods. v. Total Containment*,
    41 U.S.P.Q.2d 1302 (E.D. Pa. 1996) ............................................................................16

*In re Gabapentin Patent Litig.*
    214 F.R.D. 178 (D.N.J. 2003)........................................................................................18

*Hybritech Inc. v. Moncolonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986).....................................................................................13

*In re Linerboard Antitrust Litig.*,
    237 F.R.D. 373 (E.D. Pa. 2006)............................................................................. 16-18

*In re Mineba Co.*,
    143 F.R.D. 494 (S.D.N.Y. 2002) ..................................................................................18

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,
    134 F.R.D. 275 (N.D. Cal. 1991)..................................................................................19

*Medtronic Xomed, Inc. v. Gyrus ENT LLCI*,
    No. 304CV400J32. 2006 WL 786425 (M.D. Fla. March 27, 2006)..................................14

*Paparelli v. Prudential Ins. Co. of Am.*,
    108 F.R.D. 727 (D. Mass. 1985)......................................................................................7

*ResQNet.com v. Lansa, Inc.*,
    No. 01 Civ. 3578(RWS), 2004 WL 1627170 (S.D.N.Y. July 21, 2004) .............................16

*SmithKline Beecham Corp. v. Apotex Corp.*,
    No. 98 C 3952, 2000 WL 116082 (N.D. Ill. Jan. 24, 2000)..................................................7

*SmithKline Beecham Corp. v. Apotex Corp.*,
    No. 99-CV-4304, 2004 WL 739959 (E.D. Pa. Mar. 23, 2004)............................................14

*Swangain v. AON Corp.*,
    No. 3:05CV326BS, 2006 U.S. Dist. LEXIS 63964 (S.D. Miss. Sept. 6, 2006)....................8

*United States v. Taylor*,
    166 F.R.D. 356 (M.D.N.C. 1996) ................................................................................14

*United States v. District Council of New York City*,
    No. 90 CIV. 5722 (CSH), 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992)...............................9

# FEDERAL STATUTES

Fed. R. Civ. P. 26 ..................................................................................................................1, 7

Fed. R. Civ. P. 30(b)(6) ..........................................................................................................passim

## SUMMARY OF ARGUMENT

Wyeth outlined twenty-four topics in its opening brief for which it has offered to provide non-privileged Rule 30(b)(6) testimony and explained why the subject matter Impax seeks beyond those topics is not appropriate. In response, Impax has failed to even address the difference in the discovery it seeks as compared to what Wyeth has offered, much less justify why Wyeth's proffered testimony is inadequate. Impax's silence speaks volumes. Instead, Impax devotes an inordinate amount of its brief to rehashing past discovery disputes that are not even the subject of this motion, and seriously misrepresents the facts in the process.

Impax's mantra that it seeks "relevant evidence" simply ignores the unreasonable scope of its amended Rule 30(b)(6) topics and the issue of whether a Rule 30(b)(6) deposition is the appropriate vehicle for the discovery it seeks. And Impax's wish for a "refreshed recollection" as to every fact and issue in the case regarding countless events spanning over fifteen years does not transform its notice into a reasonable one. Quite simply, Fed. R. Civ. P. 26 does not eviscerate the unambiguous requirement of Rule 30(b)(6) that a notice must define the testimony sought "with reasonable particularity." That requirement exists because the potential for discovery abuse is particularly high in the Rule 30(b)(6) context where overbroad topics do not provide sufficient notice to the party preparing a designee to testify. In a complex case such as this one, it would be impossible to fully educate a witness (or even a slate of witnesses) to testify as to every aspect of the litigation in deposition format. In addition to this Herculean burden, moreover, because the designee testifies on behalf of the party, rather than in a personal capacity, improperly overbroad topics raise the specter of unfair preclusion of proofs if the designee is unable to respond adequately to unanticipated questions.

Rule 26 also alters neither the well-recognized fact that Rule 30(b)(6) depositions are an inappropriate discovery vehicle with which to ascertain a party's legal contentions, nor the protected status of privileged communications. Impax's hollow protest that it is "not seeking contentions, but . . . Wyeth's *affirmative factual assertions in response to Impax's defenses*" in Wyeth's Reply itself demonstrates that Impax seeks Wyeth's contentions. [Impax Opp., D.I. 90,

at 2]. And contrary to its assertions, Impax's topics are not narrowly directed to foundational information to determine whether a privilege exists, but rather to the protected communications themselves.

### IMPAX'S "STATEMENT OF FACTS" IS ANYTHING BUT FACTUAL

Instead of responding head-on to the substance of Wyeth's brief with a clear topic-by-topic explanation of any alleged insufficiency in the discovery to which Wyeth has agreed, Impax focuses on an incomplete, inaccurate, and misleading portrayal of historical discovery that is simply irrelevant to the subject of this motion. Although it has nothing to do with Impax's Rule 30(b)(6) notice, Wyeth feels compelled to respond in part given the sheer volume Impax devotes to criticizing Wyeth's conduct in discovery.

**A.    Wyeth Has Not Delayed In Meeting Its Discovery Obligations**

Impax's characterization of Wyeth's "pattern of practice" of delay is simply incorrect. [Impax Opp., D.I. 90, at 3]. Wyeth did not delay -- to the contrary it began its document production (which ultimately totaled over one million pages) only one week after it served its objections and responses to Impax's document requests.[1] Wyeth's production of thirty-four boxes (about 86,000 pages) containing Wyeth's New Drug Application ("NDA") and correspondence with the FDA regarding that NDA was completed the following week, prior to the deadline to amend the pleadings to which Impax points.[2] Thus, by August 8, 2006, Wyeth had produced its correspondence with the FDA regarding Effexor® XR from the initial filing of its NDA in 1996 through February 2003. Yet Impax now incorrectly asserts that Wyeth failed to

---

[1]    Although Impax proudly points to its production of the "entirety of its Abbreviated New Drug Application ("ANDA")" on that same day, that entire production was only about 4500 pages (two boxes).

[2]    Impax's focus on the deadline to amend pleadings, occurring only fifteen days after Wyeth's objections and responses to Impax's document requests were due, is misplaced. The relevant deadline (for the completion of document production) was not until October 2006– two months later.

produce the very documents that were contained in Wyeth's first wave of production. [*Id.* at 11 fn. 2].[3]

After that initial paper production, Wyeth continued making additional electronic documents available each week up until the October 10th deadline, producing in total over one million pages of documents. [Ex. 13].[4] Consequently, Impax's argument [Impax Opp., D.I. 90, at 3] that Wyeth was dilatory in producing documents is simply incorrect. In contrast, after the initial production of its ANDA on August 4th, Impax produced only about 1000 additional pages of documents during the next six weeks, followed by about 25,000 pages on September 29th, more than 184,000 pages on the October 10th deadline itself, and more than 195,000 pages after that deadline on October 20th.[5] [Ex. 14]. Impax is thus hardly in a position to complain that Wyeth's production was delayed.

Impax's criticism of Wyeth's discovery responses concerning conception and reduction to practice likewise is without merit. Although it is not the subject of any dispute before the Court, Impax now finds fault with Wyeth's response to Interrogatory No. 12 for "fail[ing] to provide any more information about what transpired during this four-year period," between the dates of conception and actual reduction to practice. [Impax Opp., D.I. 90, at 4]. That interrogatory, however, sought only those dates – "state the DATE of its first conception" and "state the DATE of its reduction to practice," not "information about what transpired during this

---

[3]    Rather than reviewing the documents produced and then taking Wyeth's suggestion to begin discovery with personal depositions of fact witnesses, Impax apparently has not reviewed Wyeth's documents nor served a single such notice of deposition. Instead, it has chosen not to proceed with discovery, criticizing Wyeth for refusing to accede to its unreasonable demands.

[4]    Wyeth's citation to exhibits in this Reply include citations to Wyeth's exhibits, which are designated by numbers 1-12 (attached to Wyeth's Opening Brief, D.I. 82), and numbers 13-16 (attached to the Louden declaration in support of this reply), as well as exhibits supporting Impax's Opposition, which are designated by the letters A-Y.

[5]    Wyeth supplemented its production on February 13th in part to produce some documents listed in its production letters dated prior to the October 10th deadline but inadvertently not included in its previous electronic production. [Ex. H]. Impax also supplemented its document production that same week with documents, providing them to Wyeth on the morning of the Shaw deposition. [Ex. 15]

four-year period" between conception and actual reduction to practice as Impax's brief implies. [Ex. K at 31]. Impax also ignores that Wyeth has produced documents relating to "what transpired during this four-year period," yet Impax has not noticed even one personal deposition of anyone identified in Wyeth's interrogatory answers.

Finally, although Impax asserts that it made "an effort to see a quick end" to the parties' dispute regarding its notice (and in the process mischaracterizes Wyeth's efforts to meet and confer as a "game") [Impax Opp., D.I. 90, at 6], in reality Impax waited *two months* before making any attempt to either reduce the number or narrow the scope of its originally noticed *sixty-nine* topics. And its assertion that Wyeth's motion for protective order somehow was prompted by Impax's "forewarn[ing]...that it would raise this issue with the Court" at the February 7th status conference is nothing more than revisionist history. [Impax Opp., D.I. 90, at 6]. Wyeth raised the possibility that it would move for a protective order in its first attempt to meet and confer on November 29, 2006. [Ex. 3 at 6]. Wyeth could not file that motion earlier, however, because negotiations between the parties were still underway—Impax rejected Wyeth's final attempt to reach a compromise in early February.

**B.**     **Impax's Portrayal of Deposition Testimony from the *Teva* Litigation Is Incomplete And Misleading**

Impax's assertion that it "reviewed transcripts from the *Teva* litigation and determined that many key witnesses did not provide meaningful testimony" because "(1) [t]he witnesses had major memory lapses, or (2) they were prevented from testifying by Wyeth's counsel" is simply wrong. [Impax Opp., D.I. 90, at 4].

First, Impax's contention that Wyeth's counsel "improperly prevented the witness from responding" to questions regarding non-privileged information, such as work on non-venlafaxine extended release formulations is incorrect. [Impax Opp., D.I. 90, at 5 and 14].

# REDACTED

4

**REDACTED**

Impax further argues that it is entitled to proceed with its overly broad Rule 30(b)(6) deposition notice because Wyeth "interjected...affirmative contentions" into the case and because Wyeth deposition witnesses in the *Teva* case had "faded memories that were not refreshed during preparation by Wyeth counsel." [Impax Opp., D.I. 90, at 1]. But Wyeth has provided extensive answers to contention interrogatories on virtually every issue in this case. There is no *per se* right to have the refreshed recollection of a witness on every such issue, particularly where some of the events occurred more than a decade ago. Moreover, Impax's blanket condemnation of the memory of Wyeth's deposition witnesses in the *Teva* case is not accurate.[7] And if Impax wants to refresh the recollection of a particular witness on a particular topic, it has over 1 million pages of Wyeth documents at its disposal with which to do so.

Next, Impax's allegations that Wyeth counsel used "improper interjections of privilege and instructions based on the same" and "instructed witnesses not to answer even foundational

---

[6]    Moreover, this issue is irrelevant to the present dispute because only one of its Amended Notice topics even includes any subject matter encompassing non-venlafaxine compounds and that is directed to comparisons of the chemical properties of venlafaxine with propranolol (a prior art compound). [Ex. 1, Topic 27].

**REDACTED**

questions to determine if a privilege existed" are simply wrong. [Impax Opp., D.I. 90, at 5].

**REDACTED**

Again, Impax does not even try to explain why its criticisms of deposition testimony in the *Teva* case can justify its overbroad notice here.

Finally, contrary to Impax's assertion, Wyeth has never taken the position that "prior deposition testimony [from another case] is sufficient for Impax's defense" [Impax Opp., D.I. 90, at 14], and has not attempted to prevent Impax from taking either personal depositions or appropriate Rule 30(b)(6) depositions in this case.[8] Astonishingly, however, Impax ignores Wyeth's offer to provide Rule 30(b)(6) testimony *in this litigation*, for example, on the

---

[8]     What Wyeth does contend at page 20 of its opening brief is that a comprehensive amount of non-privileged testimony, both Rule 30(b)(6) and personal, regarding invention records has been made available to Impax from the *Teva* litigation. If, as Impax claims, its "review of the same testimony enabled it to identify the specific areas for which corporate testimony is needed" [Impax Opp. at 14], it should identify those areas with "reasonable particularity," instead of its broad request for "[a]ll invention records CONCERNING the asserted claims of the PATENTS-IN-SUIT and claim 1 of U.S. Patent No. 6,274,171 B1." [Ex. 1, Topic 2].

formulations of extended release venlafaxine by Wyeth leading up to the patents-in-suit (including hydrogel and Gelucire formulations), the formulations of extended release venlafaxine by Wyeth using Alza's OROS® oral delivery technology, and any *in vitro* and *in vivo* release profiles of those formulations, as recited in Wyeth's opening brief. [See Wyeth Br., D.I. 82, at pp. 5-6, Topics 1-8].

## ARGUMENT

### A.    Rule 26 Does Not Eviscerate The Unambiguous Requirement Of Rule 30(b)(6) That A Notice Must Define Its Subject Matter "With Reasonable Particularity"

Impax's argument that "discovery should ordinarily be allowed under the concept of relevancy" [Impax Opp., D.I. 90, at 8] simply ignores the unreasonable scope of its amended Rule 30(b)(6) noticed topics. And Impax's wish for a "refreshed recollection" as to every fact and issue in the case regarding countless events spanning more than fifteen years does not make its notice reasonable.

Fed. R. Civ. P. 30(b)(6) unambiguously requires that a notice must define the requested subject matter "with reasonable particularity." And Fed. R. Civ. P. 26 does not, and cannot, eviscerate that requirement. *Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D. 727, 730 (D. Mass. 1985)("If a party were free to ask any questions, even if 'relevant' to the lawsuit, which were completely outside the scope of the 'matters on which examination is requested', the requirement that the matters be listed 'with reasonable particularity' would make no sense.").

Moreover, "the [Federal] Rules...preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden." *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *9 (N.D. Ill. Jan. 24, 2000). Specifically, an overly broad notice subjects a party to the impossible task of having to guess as to its scope in preparing a designee to testify. Thus, topics without reasonable particularity do not satisfy the required notice function. Particularly in a complex case such as this one, it is impossible to fully prepare a witness (or even a slate of witnesses) to testify as to all aspects of this litigation. Impax improperly seeks to use its

Amended Notice to force Wyeth to analyze a massive volume of documents, interview scores of employees, and then educate a witness or witnesses to answer any conceivable question Impax may have relating to the case.

The requirement for reasonable particularity also exists because the potential for discovery abuse is particularly high in the Rule 30(b)(6) context. In addition to imposing a Herculean burden, improperly overbroad topics raise the specter of unfair preclusion of evidence that a designee could not provide at deposition. Because the Rule 30(b)(6) designee testifies on behalf of the party, rather than in a personal capacity, if the designee is unable to adequately respond to unanticipated questions, the party may well be confronted with a challenge if it later attempts to present evidence regarding that same subject matter.

The cases upon which Impax relies do not support its attempt to erase the "reasonable particularity" requirement of Rule 30(b)(6) and replace it with the relevance requirements of Rule 26. [Impax Opp., D.I. 90, at 7-8]. For example, *Cabot Corp. v. Yamulla Enters., Inc.*, 194 F.R.D. 499 (M.D. Pa. 2000) did not concern the "reasonable particularity" requirement of Rule 30(b)(6), but rather the impropriety of instructing a designee not to answer questions beyond the scope of a Rule 30(b)(6) notice containing three narrow topics. Although a corporate designee may be questioned about matters outside a Rule 30(b)(6) notice, the deponent testifies as to such matters in his personal capacity and can respond with his personal knowledge, within the general limits of Rule 26. *Swangain v. AON Corp.*, 2006 U.S. Dist. LEXIS 63964 at *3 (S.D. Miss. Sept. 6, 2006)(citation to *Cabot* omitted). Thus, answers beyond the scope of the notice do not bind the designating party. Moreover, because the deponent is testifying as to his personal knowledge only, that testimony does not carry the same risk of preclusion.

*Alexander v. FBI*, which Impax also cites, likewise recognized the duty to satisfy the "reasonable particularity" requirement of Rule 30(b)(6) by providing sufficient notice of the subject matters as to which the designee is expected to testify. 186 F.R.D. 137, 140 (D.D.C. 1998). Moreover, contrary to Impax's assertion that the *Alexander* court "found the noticed topic 'the computer systems commonly known or referred to as 'Big Brother' and/or 'WHODB'' to be

8

sufficiently particular" [Impax Opp., D.I., 90, at 13], it in fact found that notice of the subject

matters was provided, in part, in a letter enumerating seven categories of pertinent testimony with

significantly greater specificity. *Id.* at 139-140. *Pacitti* and *In re Intel Corp. Microprocessor*

*Antitrust Litig.* which Impax also cites do not even mention Rule 30(b)(6). Finally, Impax's

assertion that *United States v. District Council of New York City* somehow "shows that Impax's

topic no. 33, which seeks the facts regarding Wyeth's Reply to Counterclaims, is particularly

appropriate" misconstrues that case. Instead, that case supports the proposition that documents

and depositions of fact witnesses, along with contention interrogatories, are the appropriate

discovery vehicle for such subject matter, not a Rule 30(b)(6) deposition:

> In contrast, in the instant action, defendants are seeking
> information from an attorney's agent/investigator which, in this
> context, has been determined not to be properly discoverable
> because it constitutes work product. While the District Council
> certainly has the right to discover relevant factual information, as
> set forth above, those facts have not been concealed by the
> Government. *They are available in the documents provided and
> through depositions of fact witnesses who were named as having
> relevant information.* Moreover, for Agent Worsham to provide
> the information defendants seek would in effect require the
> Government to marshal all its factual proof and then provide it to
> Agent Worsham so that she could respond to what are essentially
> a form of contention interrogatories. Aside from any issues of
> privilege, this would be highly inefficient and burdensome,
> rather than the most direct manner of securing relevant
> information, as advocated by the *Butcher* court.
>
> There may come a time in this litigation when legitimate
> justification for focused contention interrogatories can be
> demonstrated....In any event, the deposition of an attorney or
> attorney's investigator, which requires that person to inform
> herself of all relevant facts known by counsel or the
> Government, is not an appropriate alternative.

*United States v. District Council of New York City*, 1992 WL 208284, at *15-16 (S.D.N.Y. 1992)

(emphasis added).

**B.**     **Impax Has Not Addressed, Much Less Justified, Why It Needs Additional
         Discovery Beyond What Wyeth Has Offered**

Wyeth's opening brief outlined twenty-four topics on which it has offered to provide

non-privileged Rule 30(b)(6) testimony and explained why the subject matter Impax seeks

beyond those topics is not appropriate.  Yet, in response, Impax simply fails to address the substance of Wyeth's offer or why that proffer was not sufficient.

For example, Impax only curiously asserts that advertising budgets, sales projections and profit margins for Effexor® XR [Ex. 1, Topic 16], are somehow relevant to commercial success without further explanation as to why the actual annual gross and net sales and annual direct selling and marketing expenses for Effexor® XR would not suffice and, in fact, even be preferable to mere prediction.  [Impax Opp., D.I. 90, at 11.]

Impax next contends that Wyeth's "devised strategies to transition the market from Effexor XR to **REDACTED** . may establish whether Effexor XR's sales are due to marketing efforts or the patented inventions." *Id.*  Not only is this subject not identified with reasonable particularity in any of Impax's topics (even Impax does not link it to a topic), but again, Impax is silent as to how Wyeth's offer to provide actual data on annual sales for Effexor® XR and annual direct selling and marketing expenses for both Effexor® XR and its immediate release predecessor Effexor® is not enough.  [Wyeth Br., D.I. 82, at 7-8, Topics 17 and 19].  More particularly, given that Effexor® XR contains the same active ingredient as Effexor®,[9] and that over a decade of actual marketplace data is available with which to compare the two products, it is difficult to see how a comparison of Effexor® XR to

**REDACTED** somehow could detract

from the past, real-world success of Effexor® XR.

Impax fails to explain why Wyeth's proposal for a narrower topic than the "formulation of EFFEXOR XR and the development thereof" [Ex. 1, Topic 3] was not reasonable:

> Up to the March 25, 1996 effective filing date of the patents-in-suit, the formulation of EFFEXOR® XR as sold in the United States, including without limitation when those formulations were developed, who developed them, and what materials and methods were used to develop them.

---

[9]        The formulation difference between the products is that Effexor® XR is an extended release rather than an immediate release formulation.

[Wyeth Br. at 5, Topic 1]. Nor does Impax articulate or justify any need for all "development" of Effexor® XR to which Wyeth objected, such as stability; toxicology; scale-up to commercial production; quality control; animal testing; selection, purchasing, and qualification of raw materials; clinical batch manufacturing; commercial manufacturing; or packaging. Similarly, Impax does not explain why such subject matter is somehow "critical...to the disputes regarding the invalidity and enforceability of patents-at-issue." [Impax Opp., D.I. 90, at 10]. Nor does it suggest how Wyeth is to prepare a designee to testify regarding this topic from 1991 to the present, potentially encompassing the majority of Wyeth's million-page production, without further particularity from Impax.

Impax next characterizes the March 1996 effective filing date for the patents-in-suit as a "draconian date limitation" that "must be rejected" because of the filing of continuation-in-part ("CIP") applications which contain additional disclosures to the first-filed March 1996 application. [*Id.* at 10]. Impax chooses to ignore both Wyeth's offer to provide testimony regarding the additional disclosure [Wyeth Br. at 6, D.I. 82, Topic 9 (Examples 5-7)] and the fact that the independent asserted claims of the '171 patent, for example, are virtually identical to claims present in the patent application filed in March 1996.

Impax further argues that "between 1996 and 2003, Wyeth submitted new filings with the FDA regarding Effexor XR" and that "[t]estimony regarding any new information about Effexor XR that Wyeth disclosed to the FDA, but did not provide to the PTO during the patents' prosecution, is directly relevant, *inter alia*, to Impax's inequitable conduct defense." [Impax Opp., D.I. 90, at 10-11]. First, contrary to Impax's assertion, Wyeth did produce such correspondence with the FDA in August 2006 [*Id.* at fn. 2]. More importantly, however, Impax provides no guidance whatsoever as to what "new information" is relevant, how it is "directly relevant, *inter alia*, to Impax's inequitable conduct defense" (*e.g.*, material to patentability or the duty of disclosure), or how Wyeth is to prepare a designee to testify regarding about 86,000 pages of correspondence (thirty-four boxes) without further particularity from Impax as to the information it seeks.

Next, although Impax tries to suggest that topic 20 is directed to advertising of Effexor® XR [Impax Opp., D.I. 90, at 12], that topic is directed to immediate release Effexor®, not Effexor® XR, and Impax articulates no reason why the content of advertising for Effexor® is relevant. Impax also ignores Wyeth's offer of testimony regarding the content of advertising for Effexor® XR in the U.S. from 1997 to mid-2006, and direct selling and marketing expenses for U.S. sales of both Effexor® (from 1993 through the second quarter of 2006) and Effexor® XR (from 1997 to the second quarter of 2006). [Wyeth Br., D.I. 82, at 7-8, Topics 18-19].

With respect to Topics 29 and 31, Impax's own contention that "it is likely that a very limited set of persons and documents capture Wyeth's knowledge and awareness of the two articles" belies its silence as to why Wyeth's offer to provide significantly overlapping testimony as to persons at Wyeth involved with drafts of those articles would not provide it with the information it seeks. [Wyeth Br., D.I. 82, at 8-9, Topics 22-23].

Impax argues that Topic 18, seeking the results of market research regarding the treatment of the signs and symptoms of persons suffering from depression, somehow "tracks" the "asserted claims" and, therefore, is relevant to "determining whether Wyeth obtained new data during the prosecution. . .showing that the claimed therapeutic properties of its extended release formulation were not in fact achieved by patients, but then failed to apprise the PTO of the same." [Impax Opp., D.I. 90, at 12]. Market research, however, typically does not collect or analyze data showing therapeutic properties. And Wyeth has produced clinical trials on Effexor® XR performed during the prosecution of the patents-in-suit that do show therapeutic efficacy. Moreover, Impax itself relies upon Wyeth's clinical trials in its ANDA and claims its generic copy is bioequivalent to Effexor® XR. For Impax to now question whether Effexor® XR provides a therapeutic blood plasma level, therefore, is the epitome of irony. More importantly, Impax's strained efforts to find some relevancy in its overly broad 30(b)(6) topics highlights the impropriety of its entire notice.

Finally, Impax incorrectly argues that Topic 27, which seeks testimony on comparisons of the chemical properties of propranolol and venlafaxine, is appropriate because "patent claims

were amended to overcome a rejection of obviousness" over a prior art patent on an extended

release formulation of propranolol. [Impax Opp., D.I. 90, at 12]. In the cited prosecution history,

however, the asserted method claims [claims 21 and 22] were not rejected, but were allowed. As

the extended release propranolol patent obviously was before the PTO, Impax fails to explain

how each and every comparison between the chemical properties of propranolol and venlafaxine

could be relevant.

### C.     Impax Improperly Seeks Contention Discovery Through Its Rule 30(b)(6) Topics

Impax's Topics 1 and 33 respectively seek testimony on:

> 1.     The conception and reduction to practice of the alleged invention(s) claimed in each of the asserted claims of the PATENTS IN SUIT and claim 1 of U.S. Patent No. 6,274,171 B1.
>
> 33.    The facts and DOCUMENTS CONCERNING the denials and statements in WYETH'S REPLY.[10]

Impax argues that it seeks only facts related to these topics. Specifically, with respect to

Topic 1, Impax claims that "conception and reduction to practice are events that took place within

Wyeth, and thus Wyeth must have knowledge as to the facts pertaining to those events." [Impax

Opp., D.I. 90, at 17]. Regardless of how Impax characterizes the scope of Topic 1 for purposes of

this motion, however, on its face it calls for Wyeth's contentions regarding "conception" and

"reduction to practice" which are issues of law. *Hybritech Inc. v. Moncolonal Antibodies, Inc.*,

802 F.2d 1367, 1376 (Fed. Cir. 1986)("Reduction to practice, and conception as well, is a legal

determination..."). And, as Wyeth noted in its opening brief, despite a party's claims that it seeks

only "facts," when those facts are so inextricably intertwined with the legal contentions they

support, this Court and others have held that discovery of such issues should be conducted using

---

[10]     Wyeth's Reply to Counterclaims is twelve (12) pages long, contains fifty-seven (57) numbered paragraphs, and encompasses virtually every issue in the case. Consequently, it would be an excessive burden to require Wyeth to prepare one or more witnesses to address each and every contention in that Reply.

other methods, such as through contention interrogatories.[11] [See cases cited in Wyeth's Opening Br., D.I. 82, at pp. 16-18.]

Courts also have recognized that Rule 30(b)(6) is not a proper mechanism to discover a party's legal contentions in its pleadings, as Impax seeks to do in Topic No. 33, even if couched in terms of seeking "facts." [*Id.* at 17]. The cases that Impax cites actually support Wyeth's position by demonstrating the known difficulties courts have encountered in attempting to disentangle facts from legal contentions, resulting in those courts denying Rule 30(b)(6) testimony on such issues. For example, in *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2004 WL 739959 (E.D. Pa. Mar. 23, 2004), cited by Impax at D.I. 90, at 15-16, the district court denied defendant's motion to compel Rule 30(b)(6) testimony on "[t]he bases for [SmithKline's] allegations in its complaints" as "trying to discover SmithKline's legal contentions." *Id.* at *4. The court denied such testimony on topics touching upon legal contentions, recognizing that "several courts have stated that in certain circumstances, a party may properly resist a Rule 30(b)(6) deposition on the grounds that the information sought is more appropriately discoverable through contention interrogatories." *Id.* at *2 (citing *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996), also cited by Impax at D.I. 90, at 15)).[12]

---

[11]    Indeed, in this case, Wyeth has already responded to Impax's interrogatories on who contributed to, and the dates of, conception and reduction to practice. [*See* Wyeth's Response to Impax Interrogatory Nos. 2, Ex. J, and Wyeth's Supplemental Response to Impax's Interrogatory No. 12, Ex. K]. To the extent Impax now seeks additional non-privileged factual information regarding these issues, such as "what actually transpired, who was present, what was discussed" [Impax Opp. at 17], Impax can obtain that information either through personal depositions of the persons Wyeth identified in its responses to those interrogatories, through further interrogatories, or through Rule 30(b)(6) testimony on the narrowed topics for which Wyeth has already agreed to provide a designee and which overlap with the factual bases for Wyeth's conception and reduction to practice including, for example, Wyeth's proposed Topics 1-3, 9, 10, 11 and 12 in Wyeth's Opening Br., D.I. 82, at pp. 5-7.

[12]    Impax's citation of *Medtronic* is of no help to Impax because there the court ruled that the Rule 30(b)(6) testimony was to be limited to the purely "factual evidence" of the prior art of which the corporation was aware. *Medtronic*, 2006 WL 786425 at *1. Impax fails to note that the court in *Medtronic* actually denied the defendant's motion to compel further testimony on a specific document used by the deponent in preparing for the factual Rule 30(b)(6) deposition, because that document was prepared by an attorney and was thus protected by the "near absolute" work product immunity. *Id.* at *4.

14

**D.    A Number Of Impax's Topics Seek Information Protected By The Attorney-Client Privilege And/Or Work Product Immunity**

    **1.    Wyeth's Assertion Of Privilege Is Appropriate Given Impax's Overly Broad Topics That Impinge Upon Attorney-Client Privilege And/Or Work Product**

Impax's charge that Wyeth's assertions of privilege somehow constitute "improper conduct" [Impax Opp., D.I. 90, at 20] is unsupported by any facts and contrary to law. What is improper is the use of a Rule 30(b)(6) notice that is overbroad, that seeks testimony on issues implicating the attorney-client privilege and/or work product immunity, and that seeks contentions under the guise of seeking "only facts." The *Softview*, *AMI/Rec-Pro*, and *McCook Metals* cases that Impax cites all stand for the unremarkable proposition that attorney-client privilege and/or attorney work product immunity do not attach to all communications with attorneys or information known by attorneys.[13] In each of those cases, the court considered a motion to compel production of specific, identified documents and, as such, could readily apply the law of privilege and immunity to the specific facts surrounding those documents.[14] None of these cases involve Rule 30(b)(6) depositions, let alone the propriety of using a Rule 30(b)(6) deposition to elicit testimony on topics such as patent prosecution policies and practices, and the attendant problems of parsing such "factual information" from information protected by attorney-client privilege and/or work product immunity. And Impax certainly does not explain how the mere existence of such "factual information" automatically warrants a Rule 30(b)(6) deposition on such overly broad and ambiguous topics. Moreover, much of the factual information that Impax apparently seeks from these topics would be covered by the narrowed topics that Wyeth

---

    [13]    Impax's suggestion that the *McCook* case somehow alters the Federal Circuit's decision in *In re Spalding* is quite simply a mischaracterization. [D.I. 90, at 21]. *McCook* is entirely consistent with the holding in *Spalding* that technical information communicated to an attorney is privileged *if* submitted to obtain legal advice and/or services. *Compare Spalding* at 805-06 *with McCook* at 253.

    [14]    Impax points to the litany of document categories that the courts in those cited cases deemed non-privileged. [D.I. 90, at 20-22]. But Wyeth has already produced responsive, non-privileged documents, and Impax has not alleged that Wyeth's production was in any way deficient with respect to such categories of documents.

offered as well as the non-privileged documents Wyeth has produced. [Wyeth Br., D.I. 82, at 8, Topics 20-21].

> **2.     Impax Cannot Use Rule 30(b)(6) To Invade the Attorney-Client Privilege and Work Product Immunity To Get Testimony About The "Intended Meaning" of the Patents**

Impax argues that Wyeth has cited "inapposite law regarding claim construction" with respect to amended Topics 21-23 and 28 in which Impax seeks the "intended meaning" of statements in the patents-in-suit or in their prosecution. [Impax Opp., D.I. 90, at 19]. But that is precisely what Impax's topics seek on their face—the "intended meaning" of certain text in the patents which, as Wyeth noted in its Opening Brief, is determined based on their meaning to one of ordinary skill in the art as a matter of claim construction. [Wyeth Br., D.I. 82, at 22]. That Impax now argues that these topics are broad enough to cover Rule 30(b)(6) testimony on the subjective intent of the patent attorney that drafted the text and prosecuted the application, merely highlights the lack of reasonable particularity of Impax's topics. [Impax Opp., D.I. 90, at 19].

Moreover, the cases Impax cites at page 19 of its opposition note that, to the extent that an attorney's intent can be relevant, Impax still does not have an absolute right to information protected by the attorney-client privilege and/or work product doctrines—which is Wyeth's concern given the sheer breadth and ambiguity of Impax's topics. *See, e.g., ResQNet.com*, 2004 WL 1627170 at * 2 ("even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation."); *Environ Prods.*, 41 U.S.P.Q.2d at 1306 ("TCI may ask Mr. DelMaster for factual information relevant to this litigation which, unlike his *mental impressions*, are not protected by the work-product doctrine.")(emphasis added). Notably, neither case addresses Rule 30(b)(6) depositions, nor a situation where, as here, facts are hopelessly intertwined with information protected by attorney-client privilege and/or the work product doctrine.

A more analogous issue was considered in *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373 (E.D. Pa. 2006), where the court specifically considered the plaintiffs' motion to compel Rule 30(b)(6) testimony on the meaning of certain phrases in a White Paper submitted to a federal

agency.  The defendant resisted, arguing that the questioning implicated the attorney work product doctrine because plaintiffs were, in effect, requiring the corporation to testify as to what one of its in-house lawyers meant by the phrase at the time it was drafted.  *Id*. at 378.

In denying the motion to compel, the court noted the tension between discovering facts and the improper "use of a Rule 30(b)(6) witness to discover facts within an attorney's knowledge without asking counsel directly."  *Id*. at 380.  According to the court, "the process by which a corporation 'accumulates' its knowledge—namely, an internal investigation—affords certain protections that can preclude disclosure of confidential communications and documents created by and recollection of counsel as part of that investigation effort."  *Id*.  Thus, while the movant argued, as Impax does here, that "[a]ll we're doing here is asking for a witness to testify about the facts that support certain statements in a document...," the court held that a Rule 30(b)(6) deposition was not an appropriate vehicle for that discovery because of the work product issues.

Further, in *Linerboard*, the court was also persuaded that, as here, the movants had "extensive non-privileged sources of the same information" sought from the Rule 30(b)(6) deposition.  *Id*. at 383.  As the court noted, the defendant had "produced thousands of pages of documents" relating to the issue, and numerous employees of the defendant had already provided testimony.  *Id*. at 384.  The court rejected the same argument made by Impax here, that "because several witnesses no longer remember some facts" the Rule 30(b)(6) testimony was "required to fill in gaps in their testimony."  *Id*.

Wyeth has produced non-privileged prosecution documents and has identified the attorneys who prosecuted the patents-in-suit.  If Impax seeks to determine those attorneys' non-privileged and non-work product subjective understanding of discrete portions of the patents-in-suit, it should take their personal depositions.[15]

---

[15]     Impax's suggestion, in footnote 6 of its Opposition, that because Wyeth identified multiple attorneys that prosecuted the patents-in-suit, it is somehow entitled to a Rule 30(b)(6) deposition is absurd and, not surprisingly, unsupported.

17

3.     **Wyeth's Assertion of Work Product is Entirely Appropriate**

Wyeth noted in its Opening Brief that with respect to amended Topics 21-24 and 28 "[a]ll

of these topics seek information protected by the attorney-client privilege and/or work product

immunity." [Wyeth Br., D.I. 82, at 21]. In particular, Impax's amended Topic 24 seeks:

> WYETH's standard practices and polices from 1990 to present
> with respect to the prosecution of U.S. patent applications,
> including the preparation of invention disclosures, evaluation of
> inventions, performing prior art searches, preparing patent
> applications, informing inventors of their duty of candor to the
> Patent Office, gathering and submitting prior art during the
> course of patent prosecution, evaluation of U.S. Patent and
> Trademark Office Actions and examiner amendments, drafting
> and review of responses to Office actions, decisions to file
> provisional, continuation-in-part applications, and decisions to
> abandon applications.

As noted in *In re Mineba Co.* which Impax cites (D.I. 90 at 18), work product immunity

can protect work performed in prosecution of a patent application if it was performed in

anticipation of litigation. Whether and to what extent any of Wyeth's prosecution policies or

practices is the result of, or is influenced by, anticipated litigation is a complex issue. For

purposes of Hatch-Waxman litigations such as this, one court has found receipt of a Paragraph IV

notification to be sufficient to show anticipation of litigation. *See In re Gabapentin Patent Litig.*,

214 F.R.D. 178, 185-86 (D.N.J. 2003). Because Topic 24 on its face is broadly directed to

"standard practices and policies from 1990 through **the present**" with respect to various aspects

of Wyeth's protection of its intellectual property, Wyeth maintains that the topic encompasses

testimony regarding Wyeth's practices and policies implemented in anticipation of litigation --

whether in relation to the present litigation, the prior *Teva* litigation involving the same patents-

in-suit, or other litigation.

4.     **That Privileged and Non-Privileged Subject Matter Is Intertwined Is
       Precisely Why Many Courts Have Denied Rule 30(b)(6) Testimony**

Courts have recognized that when the discovery of factual information through a Rule

30(b)(6) deposition would create issues with respect to attorney-client privilege and/or work

product, it is entirely proper to deny such a deposition in favor of other means of discovery. *See,*

*e.g.*, *In re Linerboard*, 237 F.R.D. at 380-81 (motion to compel Rule 30(b)(6) deposition

18

testimony on attorney's intent with respect to statements in a government submission denied due to work product concerns); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 287 (N.D. Cal. 1991)(*rev'd. on other grounds*)(Rule 30(b)(6) deposition on factual basis for legal contentions denied due in part to privilege and work product concerns).

Moreover, in addition to the extensive non-privileged discovery Wyeth has already provided on the statements made in the patents-in-suit, including documents and deposition transcripts from the *Teva* litigation, Wyeth has also repeatedly offered to provide Rule 30(b)(6) testimony on narrowed topics related to specific passages from the patents that Impax seeks.

## CONCLUSION

For the foregoing reasons, Wyeth's motion for a Protective Order is entirely appropriate, is fully supported by the law, and should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden (#2881)*
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
klouden@mnat.com
1201 North Market Street
Wilmington, DE  19899-1347
(302) 658-9200
Attorneys for Plaintiff Wyeth

OF COUNSEL:
Basil J. Lewris
Linda A. Wadler
Barbara R. Rudolph
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4000

February 28, 2007

19

## CERTIFICATE OF SERVICE

I, Karen Jacobs Louden, hereby certify that on March 5, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>
> Mary B. Matterer
> MORRIS JAMES LLP

I also certify that copies were caused to be served on March 5, 2007 upon the following in the manner indicated:

### BY HAND

>
> Mary B. Matterer
> Morris James LLP
> 500 Delaware Avenue
> Suite 1500
> Wilmington, DE 19899

### BY FEDERAL EXPRESS

>
> M. Patricia Thayer
> John M. Benassi
> Jessica R. Wolf
> Heller Ehrman LLP
> 4350 La Jolla Village Drive
> San Diego, CA 92102

>
> */s/ Karen Jacobs Louden*
> Karen Jacobs Louden (#2881)
> klouden@mnat.com