IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WYETH,                                    )
                                          )
                Plaintiff,                )
                                          )
        v.                                )      C. A. No. 06-222 (JJF)
                                          )
IMPAX LABORATORIES, INC.,                 )
                                          )      **REDACTED**
                Defendant.                )

## DECLARATION OF KAREN JACOBS LOUDEN

I, Karen Jacobs Louden, hereby declare as follows:

1.      I am a partner with the law firm of Morris, Nichols, Arsht & Tunnell, L.L.P. I am one of the attorneys representing Wyeth in this action.

2.      Attached hereto as Exhibit 1 is a true and correct copy of Sinclair and Fendrich, *Discovering Corporate Knowledge and Contentions: Rethinking Rule 30(b)(6) and Alternative Mechanisms*, 50 Alabama Law Review 651 (Spring 1999).

3.      Attached hereto as Exhibit 2 is a true and correct copy of a March 9, 2007 letter from Daniel N. Kassabian to Basil J. Lewris et al.

4.      Attached hereto as Exhibit 3 is a true and correct copy of excerpts from the October 11, 2005 teleconference transcript in *Pharmacia & Upjohn Co. v. Sicor, Inc.,* C.A. 04-833 (D. Del.).

5.      Attached hereto as Exhibit 4 is a true and correct copy of excerpts from the August 2, 2005 hearing transcript in *McKesson Information Soluations LLC v. The Trizetto Group, Inc.,* C.A. 04-1258 (D. Del.).

6.     Attached hereto as Exhibit 5 is a true and correct copy of confidential excerpts from

7.     Attached hereto as Exhibit 6 is a true and correct copy of confidential excerpts from

8.     Attached hereto as Exhibit 7 is a true and correct copy of excerpts from the

9.     Attached hereto as Exhibit 8 is a true and correct copy of a March 13, 2007 letter from Barbara R. Rudolph to Daniel N. Kassabian.

10.    Attached hereto as Exhibit 9 is a true and correct copy of confidential excerpts from

11.    Attached hereto as Exhibit 10 is a true and correct copy of confidential excerpts from

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  <u>March 30, 2007</u>

_Karen Jacobs Louden_
Karen Jacobs Louden (#2881)

**REDACTED**

2

## CERTIFICATE OF SERVICE

I, Karen Jacobs Louden, hereby certify that on April 17, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Mary B. Matterer
> MORRIS JAMES LLP

I also certify that copies were caused to be served on April 17, 2007 upon the following in the manner indicated:

### BY HAND

> Mary B. Matterer
> Morris James LLP
> 500 Delaware Avenue
> Suite 1500
> Wilmington, DE  19899

### BY FEDERAL EXPRESS

> M. Patricia Thayer
> John M. Benassi
> Jessica R. Wolf
> Heller Ehrman LLP
> 4350 La Jolla Village Drive
> San Diego, CA  92102

> */s/ Karen Jacobs Louden*
> Karen Jacobs Louden (#2881)
> klouden@mnat.com

# EXHIBIT 1

# ALABAMA LAW REVIEW

| Volume 50 | Spring 1999 | Number 3 |
| --- | --- | --- |

## DISCOVERING CORPORATE KNOWLEDGE AND CONTENTIONS: RETHINKING RULE 30(B)(6) AND ALTERNATIVE MECHANISMS

*Kent Sinclair*[*]
*Roger P. Fendrich*[**]

### I. INTRODUCTION

In 1970 the Supreme Court promulgated a useful, simple tool to assist parties litigating against an entity to find knowledgeable witnesses and leads to specific personnel with detailed information about matters in litigation. Rule 30(b)(6) of the Federal Rules of Civil Procedure allows the discovering party to specify topics on which testimony is sought, whereupon the responding entity is required to designate one or more witnesses to provide testimony on those topics. The procedure simplifies the early stages of discovery in many cases.

This tool has been increasingly misused in recent years. Aggressive litigants and a few short-sighted courts have bent this device into a form of "contention discovery" in which an

---

[*] Professor of Law, University of Virginia. J.D. 1971, University of California at Berkeley. William J. Moran, University of Virginia School of Law class of 1999, provided valuable research assistance on this Article.

[**] Member, Arnold & Porter, Washington, D.C. Ph.D., University of Texas, 1971; J.D., Yale Law School, 1980. Scott Helsel provided valuable preliminary research on the topics addressed in this Article.

entity may be required to respond in impromptu oral examination to questions that require its designated witness to "state all support and theories" for myriad contentions in a complex case. The growing misuse of this basic deposition tool creates unfair, unworkable burdens on the responding parties and risks imposition of inappropriate sanctions, including preclusion of proof.

A recent article in the National Law Journal, co-authored by one of the deans of the American litigating bar, illustrates the dangers.[1] Observing that the Rule 30(b)(6) deposition rule "revolutionized the discovery of corporate entities," the authors urge every litigant to use this procedure for *all* depositions of corporations as a way to force corporations to prepare an omnibus witness with knowledge of all facts anyone associated with the corporation may know.[2] Furthermore, the authors recommend the Rule as a means to obtain "binding admissions" for use on summary judgment or at trial.[3] The Rule 30(b)(6) device is vaunted as a major "offensive weapon to bind entities."[4] These claims are demonstrably false and only serve to highlight the mischief that a misguided reading of Rule 30(b)(6) may engender.

Depositions of entities under this Rule were never intended to serve these purposes, and attempts to warp the rule into a device to achieve these ends creates significant unfairness and abuse.

This Article sketches the actual nature and purpose of the Rule 30(b)(6) device, describes the proper scope of the procedure—especially questions of proper preparation, which have begun to generate a significant body of case law, much of it misguided—and assesses the alternative means open to a discovering party to learn about the entity's factual and legal positions without the abuse inherent in the concept of a deposition of an "omnibus" witness, a super-human artifact whose role is not only impractical, but also unnecessary.

Fifteen years ago Rule 30(b)(6) was referred to as "The For-

---

1. Jerold Solovy & Robert Byman, *Discovery: Invoking Rule 30(b)(6)*, NAT'L L.J., Oct. 26, 1998, at B13.

2. *See id.*

3. *See id.* (asserting that if a litigator understands this powerful weapon, "[y]our notices will always" invoke the Rule 30(b)(6) mechanism).

4. *Id.*

gotten Rule,"[5] but more recently the tactical use of this device to force creation of a witness who will synthesize all facts and issues in the case has transformed the Rule into "a Trojan Horse."[6] As the tactical use of Rule 30(b)(6) against entities has become recognized as a tool of great power,[7] the number of published opinions citing the Rule has increased, presumably reflecting increased use of the device and an increase in motion practice over its proper boundaries. The cases discussing the Rule have increased four-fold since 1988 alone.[8]

*Epistemological Underpinnings.* The misuse of Rule 30(b)(6) which is explored in this Article may trace its roots to a peculiar conception of "corporate knowledge" which, we submit, takes a unique creation of the law--"constructive knowledge"--and distends it beyond reasonable bounds. The law sometimes indulges in the fiction that entities such as corporations and partnerships should be treated as if they "know" whatever their human constituents have learned.[9] The knowledge of the "parts" (at least those who stand in a close relationship to the entity, such as partners, directors, management personnel, and agents with sufficient authority) is "imputed" (attributed) to the entity itself.[10] For many legal purposes, the entity is deemed to know

---

5. *See* Mark A. Cymrot, *The Forgotten Rule,* 18 LITIGATION 3 (1992).

6. Bradley M. Elbein, *How Rule 30(b)(6) Became a Trojan Horse: A Proposal for Change,* 46 F.I.C.C. Q. 365 (1996).

7. *See infra* text accompanying notes 259-68.

8. The search "30(b)(6) w/22 deposition" was run on Lexis using the United States District Courts database separately for each year from 1971, the year after the rule went into effect, through 1996. The results of the searches were: 1971=1, 1972=2, 1973=3, 1974=0, 1975=3, 1976=2, 1977=3, 1978=3, 1979=4, 1980=1, 1981=5, 1982=7, 1983=8, 1984=3, 1985=18, 1986=22, 1987=15, 1988=14, 1989=21, 1990=30, 1991=45, 1992=54, 1993=45. 1994=51, 1995=67, 1996=67. Other search routines would no doubt yield different absolute numbers, but there seems little doubt that this device has increasingly made its way into court decisions.

9. The law has had occasion to focus on corporate knowledge for a variety of purposes, but most of the developed case law and model statutes bearing on this subject deal with imputing knowledge of an employee or agent to an entity for purposes of determining whether to hold the entity liable to a third party, typically a contract or tort plaintiff. Generally, of course, when a senior officer is aware of a fact, it is deemed corporate knowledge. Personal participation by an officer is sufficient to make corporate "knowledge" of an event "quite evident." Gordon v. S.S. Vedalin, 346 F. Supp. 1178, 1181 (D. Md. 1972).

10. Knowledge of an employee is imputed to a corporation when one employee acts within the scope of the agency or employment, Grand Union Co. v. United States, 696 F.2d 888, 891 (11th Cir. 1983), and at least in part for the benefit of

the composite of the knowledge of all of its agents and employees.[11]

The rules governing such constructive knowledge were developed to serve a variety of purposes. For example, they can be used to defeat a claim that the entity "acted in ignorance;"[12] they provide a chastening incentive for a company to expect and to demand that its agents share information freely within the fold; they promote the proposition that a collective entity must take the consequences for what is known by *any* of its central "players."[13] (Compare, in this regard, similar rules which gov-

---

the corporation, United States v. One Parcel of Land, 965 F.2d 311, 316 (7th Cir. 1992). Conversely, it is hornbook law that knowledge of a corporate officer or agent acquired outside the scope of his or her powers or duties or when not acting for or on behalf of the corporation is not imputed to the corporation. 3 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 819, at 116 (perm. ed. 1994).

For some purposes involving notice to a corporation, cases have stated that there must be information conveyed to a "supervisory employee" to permit imputation to the entity, though among several candidates the liability of an entity does not normally require notice to any one individual among the supervisory ranks. Central Soya De Puerto Rico, Inc. v. Secretary of Labor, 653 F.2d 38, 39-40 (1st Cir. 1981).

In *O'Melveny & Myers v. FDIC*, the Supreme Court held that state law provides the rule of decision regarding imputation in cases in which state law supplies the rule of decision and on some corporate issues arguably federal in nature, where statutory regimes are silent on the topic given the absence of a federal common law on the topic. 512 U.S. 79 (1994). The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 contained no controlling provisions, and hence California law governed the question of whether corporate officers' knowledge can be imputed to the FDIC suing as receiver. *O'Melveny*, 512 U.S. at 89.

11. "[C]orporate knowledge and intent is a mosaic made up of smaller bits and pieces of motivation held by various . . . officers and employees, from its Chief Operating Officer to its Divisional Officers, as well as its lawyers, in house and outside." Universal City Studios v. Nintendo Co., 615 F. Supp. 838, 842 (S.D.N.Y. 1985).

A jury instruction to the effect that corporate knowledge depends on the combined knowledge of the employees and agents of the company is normally upheld. *See, e.g.*, People v. American Med. Ctr. of Mich., 324 N.W.2d 782, 792-93 (Mich. Ct. App. 1982).

12. Under traditional case law, the so-called presumption that the principal knows what the agent knows is "irrebuttable": "it cannot be avoided by showing that the agent did not in fact communicate his knowledge." Bowen v. Mount Vernon Sav. Bank, 105 F.2d 796, 799 (D.C. Cir. 1939). The rule provides a mechanism for imputing liability to a principal for actions of an officer or agent in order to protect innocent third parties; it is intended to preclude proclamations of ignorance that would serve "as a shield for unfair dealing." 3 FLETCHER ET AL., *supra* note 10, § 804, at 55; *see also* Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 623 (1916).

13. Under standard principles of agency law, knowledge acquired by a

ern the attribution of certain *acts* of agents to their masters.[14] Where the master in question is a sizable organization, it may be held responsible for the activities of numerous individuals.[15])

Notice that the predicate for holding an organization such as a corporation or partnership responsible for what is known by its human participants is the patent truth that such entities have no eyes or ears (or minds) of their own:[16] whatever they may be said to know must be the result of whatever their human participants know.[17] But when an *individual* is deposed,

---

corporation's officers or agents is properly attributable to the corporation itself. BCCI Holdings (Lux.), S.A. v. Clifford, 964 F. Supp. 468, 478 (D.D.C. 1997). *See generally* 3 FLETCHER ET AL., *supra* note 10, § 790, at 15. Because a corporation can only operate through individuals, the "privity and knowledge of individuals at a certain level of responsibility must be deemed the privity and knowledge of the organization." FDIC v. Ernst & Young, 967 F.2d 166, 171 (5th Cir. 1992) (quoting Continental Oil Co. v. Bonanza Corp., 706 F.2d 1365, 1376 (5th Cir. 1983)). This is true whether or not the officer or agent has actually disclosed the information to the corporation. *Clifford*, 964 F. Supp. at 478. "The reason for the rule is simple: it is the duty of the officer or agent to communicate his or her knowledge to the corporation, and the law presumes that the officer or agent has carried out this duty." *Id.;* *see also* 3 FLETCHER ET AL., *supra* note 10, § 819, at 116.

It has sometimes been argued that a corporation should not be deemed aware of conditions when no single person has enough of the constituent facts to create a reasonable basis for becoming aware of the overall situation. Most courts hold, however, that the "imputed-collected-knowledge standard" applies where employees acting in the scope of their employment and authority learn or do something on behalf of the corporation, whether or not one employee puts the pieces together. Upjohn Co. v. New Hampshire Ins. Co., 476 N.W.2d 392, 401-02 (Mich. 1991). To allow a corporation to "plead innocence by asserting that the information obtained by several employees was not acquired by any one individual employee who then would have comprehended its full import[, is] something the cases . . . clearly reject as the antithesis of imputed collective corporate knowledge." *Upjohn*, 476 N.W.2d at 400, 401 n.14.

14.  *See* RESTATEMENT (SECOND) OF AGENCY § 317 (1958) (principal-agent); RESTATEMENT (SECOND) OF TORTS § 486 (1965) (master-servant).

15.  For example, it was held that while the status of the actor in the corporate hierarchy might well have decisive significance in determining questions concerning the intention to benefit the corporation, the corporation may be bound—even for criminal liability—"by the acts of subordinate, even menial, employees." Standard Oil Co. v. United States, 307 F.2d 120, 127 (5th Cir. 1962); *see* United States v. Steiner Plastics Mfg. Co., 231 F.2d 149, 153 (2d Cir. 1956); United States v. George F. Fish, Inc., 154 F.2d 798, 801 (2d Cir. 1946); United States v. E. Brooke Matlack, Inc., 149 F. Supp. 814, 819-20 (D. Md. 1957).

16.  *See* Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 636 (1819) ("A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law.").

17.  *See, e.g.,* Oxford Shipping Co. v. New Hampshire Trading Corp., 697 F.2d 1 (1st Cir. 1982).

he or she is permitted (when it is true) to answer questions with the breathtakingly simple words, "I don't know" (or their cousins, "I don't recall"). And an individual witness cannot be compelled, and is not obliged, to review everything that may be "reasonably available" to prepare for the deposition.

But just as collective entities do not have the sensory or mental abilities to learn things "on their own," neither do they possess the capability to collect, sift and synthesize information for themselves.[18] Rather, they utilize human beings to perform such tasks. In the case of litigation, the discovery and collation of what needs to be known is characteristically undertaken by lawyers. It is the lawyer who investigates the facts, reviews a mosaic of documents, weeds through recollections of participants in the central events, and then attempts to put together a coherent account of "what really happened."

Accordingly, when a rule commands a collective entity to testify to everything that is "known or reasonably available," it is, perforce, in all but the simplest of cases, demanding testimony that can only be the result of an arduous process that has already been conducted by the entity's lawyers. It is one thing, of course, to require the organization (or its lawyers) to proffer the identity of witnesses who were involved in matters at issue in a lawsuit. While such an obligation may require the organization to create and reveal something that did not exist prior to the lawyers' involvement (that is, a compilation identifying the relevant witnesses), such an intrusion into work product is relatively de minimis, may be deemed worth the "price" for what it buys in increased efficiency, and is merely a propaedeutic to further discovery. It is quite another thing to require the organization to prepare one or more witnesses to express its single, final, and definitive position on the ultimate issues on which a case presumably turns.

---

18. Some courts, however, have at least been sensitive to the fact that information acquired by individuals in an entity often is lost, not re-conveyed, or not put together with other facts. *See, e.g.,* First Nat'l Bank & Trust v. Cutright, 205 N.W.2d 542, 544 (Neb. 1973). Thus one court commented that it may well be that an entity's "corporate knowledge is less than the sum of the knowledge of all its officers, agents, and employees;" hence, imputation doctrine relies on a mere presumption, which is subject to the risks of "human error." *Cutright,* 205 N.W.2d at 544.

If it is a useful fiction to imagine that an organization's access to information is as rich as the collective input of its members, it is a pernicious fiction to assume that the entity possesses an inherent capacity to weed through those disparate sources to produce a single, unified account of the facts. Yet, as discussed in Part IV below, the most expansive interpretations of Rule 30(b)(6) presuppose that the quintessential lawyer's role is somehow part and parcel of an organization's inherent fact-collecting prowess.

## II. DEPOSITIONS OF CORPORATE PERSONNEL BEFORE AND AFTER RULE 30(B)(6)

### A. Goals in the Creation of Rule 30(b)(6)

The Federal Rules of Civil Procedure broadly authorize parties to obtain discovery by various means, of which perhaps the most prominent is depositions upon oral examination.[19] Depositions "rank high in the hierarchy of pre-trial, truth-finding mechanisms."[20] Rule 30(a), in unrestricted language, provides that any "[p]arty may take the testimony of any person, including a party, by deposition upon oral examination."[21]

Of course, "it is not literally possible to take the deposition of a corporation; instead, when a corporation is involved, the information sought must be obtained from natural persons who can speak for the corporation,"[22] and courts recognize that a corporation appears vicariously through individual representatives.[23] And while in one sense any employee might be viewed

---

19. FED. R. CIV. P. 30.

20. Founding Church of Scientology, Inc. v. Webster, 802 F.2d 1448, 1451 (D.C. Cir. 1986) ("Face-to-face confrontations prior to trial, with such indicia of formality as administration of the oath, the presence of counsel and stenographic recording of the proceedings, are a critical component of the tools of justice in civil litigation.").

21. FED. R. CIV. P. 30; cf. id. 26(b)(2). The triage provisions of Rule 26(b)(2) could theoretically require other, more efficient procedures in lieu of rote recourse to depositions in every instance. Searches of the reported opinions, however, uncover almost no cases in which this provision has been used to limit otherwise permissible discovery.

22. 8A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2103, at 30 (2d ed. 1994).

23. See, e.g., Resolution Trust Corp. v. Southern Union Co., 985 F.2d 196, 197

as embodying a portion of the corporation's composite "memory,"[24] the pre-1970 rules made an important distinction between deponents who were officers, directors or managing agents of the entity—whose testimony could for that reason be used against the corporation for any purpose[25]—and all other employees (whose testimony was not automatically admissible against the entity).[26]

The discovering party who wished to elicit testimony at deposition that would be broadly admissible against the corporation was safe in naming top personnel such as the president or chairman of the board, but ran the risk that other employees or agents, even those with impressive titles and broad responsibilities, could later be viewed as falling below the level of officers and managing agents, and hence that the transcript would not be admissible against the entity.[27]

A second problem arose with the individual designation system for selecting witnesses from within a corporation: particularly during the early phases of preparation in a case, the discovering party was required to *guess* which of the adverse executives would have the knowledge sought. This sometimes burdened corporations with a series of unfruitful depositions[28] and on occasion led the discovering party to experience the frustration of "bandying," in which various officers of a corporation

(5th Cir. 1993).

    24. United States v. Taylor, 166 F.R.D. 356, 361-62 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996).

    25. FED. R. CIV. P. Rule 32(a)(2) allows adverse parties to introduce into evidence for any purpose the deposition of "anyone who at the time of taking the deposition was an officer, director, or managing agent . . . of a public or private corporation, partnership or association."

    26. Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Auth., 93 F.R.D. 62, 65 (D.P.R. 1981); *see* Cleveland v. Palmby, 75 F.R.D. 654, 656 (W.D. Okla. 1977); Intercontinental Fibres, Inc. v. United States, 352 F. Supp. 952, 956 (Cust. Ct. 1972); Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 515 (1970). Note, however, that since the creation of the Federal Rules of Evidence, agent admissions on matters within the scope of the employment have been admissible against the employer under the definitions of non-hearsay in Rule 801.

    27. *See* Founding Church of Scientology, Inc. v. Webster, 802 F.2d 1448, 1451 (D.C. Cir. 1986); Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 278 (D. Neb. 1989).

    28. *Taylor*, 166 F.R.D. at 360; *see* Cates v. LTV Aerospace Corp., 480 F.2d 620, 623 (5th Cir. 1973); *Protective Nat'l Ins.*, 137 F.R.D. at 278.

were deposed and, in turn, each disclaimed knowledge of facts that were clearly known by *someone* in the organization.[29] Clearly, a mechanism was needed "to curb any temptation a [litigant] might have to shunt a discovering party from 'pillar to post . . . .'"[30]

Rule 30(b)(6) was created in 1970 to address both of these problem areas.[31] It provides that a party may, in a notice of deposition, simply name the corporation as deponent and identify the desired topics for testimony.[32] The corporation must thereupon designate one or more officers or directors or managing agents *or other persons* to testify on its behalf to "matters known or reasonably available to the organization."[33] In addition, an amendment to Rule 32 provides that the testimony of any witness designated under Rule 30(b)(6) (whether technically an officer or managing agent or not) may be used by the adverse parties for any purpose.[34]

---

29.  One poignant example of how this frustration may arise was recounted by a federal judge in describing the tribulations of the plaintiffs in the Dalkon Shield products liability cases:

> The project manager for Dalkon Shield explains that a particular question should have gone to the medical department. The medical department representative explains that the question was really the bailiwick of the quality control department. The quality control department representative explains that the project manager was the one with the authority to make a decision on that question.

Miles W. Lord, *The Dalkon Shield Litigation: Revised Annotated Reprimand by Chief Judge Miles W. Lord*, 9 HAMLINE L. REV. 7, 11 (1986).

30.  FDIC v. Butcher, 116 F.R.D. 196, 199 (E.D. Tenn. 1986).

31.  Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 515 (1970); *see Cates*, 480 F.2d at 623. *See generally Founding Church of Scientology*, 802 F.2d at 1448; Marlin M. Volz, *Depositions of Organizations: The Designation Procedure Under the Federal Rules*, 33 S.D. L. REV. 239 (1988). *See also* M. Minnette Massey, *Depositions of Corporations: Problems and Solutions—Fed. R. Civ. P. 30(b)(6)*, 1986 ARIZ. ST. L.J. 81.

32.  FED. R. CIV. P. 30(b)(6).

33.  *Id.; see Protective Nat'l Ins.*, 137 F.R.D. at 277-78 (quoting FED. R. CIV. P. 30(b)(6)) (emphasis omitted).

34.  FED. R. CIV. P. 32(a)(2). Although some commentators continue to voice concern regarding potentially lingering problems with the inclusion of the term "managing agent" in Rule 30(b)(6), *see, e.g.*, Massey, *supra* note 31, at 89-99, the list of persons who can be designated by a corporation is not limited to managing agents, or even officers, but rather includes a generic category of potential 30(b)(6) witnesses: "other persons who consent to testify on its behalf." FED. R. CIV. P. 30(b)(6). Thus, the managing agent issue is moot under Rule 30(b)(6) because the onus is on the corporation to designate some witness regardless of his position.

This procedure adds a convenient alternative means of locating an appropriate corporate witness, but "does not preclude taking a deposition by any other procedure authorized in these rules,"[35] and the more common procedure of specific notices naming an adverse corporate agent, "long known to the bar, thus remains available for litigants to employ if they see fit."[36]

The simple Rule 30(b)(6) procedure was thus conceived as an adjunct to the more common form of direct witness designation, an alternative especially helpful when the discovering party has no knowledge of the internal structure of an opposing entity.[37] In recent years, however, discovering parties have begun to warp this tool into a form of oral contention interrogatories and have read into the rule a requirement that a witness be prepared by the entity to provide a *binding synthesis* of every fact in the case. Ensuing sections of this Article sketch the basic operation of this deposition device and explore in greater depth the practical misuse to which some courts and litigants are putting the procedure.

## B. Basic Issues in the Operation of the Rule

*The Notice Must Invoke the Rule 30(b)(6) Mechanism.* A notice expressly invoking the concepts of Rule 30(b)(6) must be used if the discovering party wishes to be entitled to the efforts this rule requires in locating and producing knowledgeable witnesses from within an entity. In one case, a court denied sanctions in the face of a discovering party's claim that two witnesses produced lacked specific knowledge about the issues in question and were ill-prepared for their depositions[38] because the

---

35. FED. R. CIV. P. 30(b)(6).

36. *Founding Church of Scientology*, 802 F.2d at 1451 (citing Atlantic Cape Fisheries v. Hartford Fire Ins. Co., 509 F.2d 577, 578-79 (lst Cir. 1975); 8A WRIGHT ET AL., *supra* note 22, § 2103). The Advisory Committee Note to Rule 30(b)(6) expressly states that the procedure does not supplant but merely "supplements the existing practice whereby the examining party designates the corporate official to be deposed." Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 515 (1970).

37. Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 515 (1970).

38. Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd., 171 F.R.D. 135, 145 (S.D.N.Y. 1997).

court found that the discovering party's letter "requests" for "Deposition Witnesses" did not function as a notice pursuant to Rule 30(b)(6).[39]

In general, a deposition notice that states that the depositions are being taken pursuant to Rule 30(b)(6), but names specific individuals as deponents, is inconsistent with the procedure described in Rule 30(b)(6).[40] A simple notice under Rule 30(b)(1) will be sufficient to compel the production of a named officer of the entity, and no specification of subject matter is required for such notice.[41] A notice of deposition which simply indicates that the testimony "is being taken of the organization through the named official or representative" will ordinarily be interpreted as a standard Rule 30(b)(1) notice,[42] and while some courts have suggested that the person designated in the notice will then be expected to testify to matters known or reasonably available to the organization, as under Rule 30(b)(6),[43] no similar duty of preparation is imposed under Rule 30(b)(1).[44]

Hybrid deposition notices are not always treated as facially invalid. One such notice was issued in a Jeep-rollover death case, naming twenty-one specific deponents and also including ten "Rule 30(b)(6) categories."[45] In response, the car maker moved to quash the depositions and sought a protective order, and it offered to produce six individuals to provide the information sought by the plaintiffs.[46] The court ordered the company to produce those six individuals for deposition and, if necessary, any additional persons with knowledge of the ten Rule 30(b)(6) categories.[47]

Note that a narrow subject focus in a Rule 30(b)(6) notice

---

39. *Bank of N.Y.*, 171 F.R.D. at 145. The court concluded that the papers exchanged by counsel were "more aptly described as informal requests between counsel," in the form of letters. *Id.* at 146.

40. Operative Plasterers' & Cement Masons' Int'l Ass'n of the U.S. and Can. AFL-CIO v. Benjamin, 144 F.R.D. 87, 89-90 (N.D. Ind. 1992).

41. *Benjamin*, 144 F.R.D. at 89-90.

42. *Id.*

43. *Id.*

44. *Compare* FED. R. CIV. P. 30(b)(1) (placing no duty of preparation on deponent), *with id.* 30(b)(6) (requiring that the person designated testify regarding matters known or reasonably available to the organization).

45. Shelton v. American Motors Corp., 805 F.2d 1323, 1325 (8th Cir. 1986).

46. *Shelton*, 805 F.2d at 1324.

47. *Id.*

may have the effect of forcing designation of a specific individual as the witness. Thus, a notice calling for a witness who can testify as to "all communications" of a named person and four entities quite naturally was read as effectively calling for designation of the named individual, who presumably would have better knowledge of his own communications than any other person and might well be the only person on the planet who would have knowledge of them all.[48]

*Specificity Standards.* According to one court, "[f]or a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity . . . ."[49] Some Rule 30(b)(6) designations are quite specific as to date, time, place and subject matter.[50] Decisions construing the rule have recognized that the particularity of the specification by the discovering party is crucial,[51] and one court found that the requisite specificity was provided where the actual scope of the deposition topics set forth in the notice had been the subject of a pre-deposition motion to quash, a "clarification" motion, and oral argument which had been resolved in two written orders prior to the deposition ever taking place.[52]

Subject listings that are overly broad are improper Rule 30(b)(6) topic specifications.[53] Some Rule 30(b)(6) deposition topic specifications are few in number but very broad in cover-

---

48. Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., No. 90-7811-KC, 1993 U.S. Dist. LEXIS 1163, at *4–*7 (S.D.N.Y. Feb. 4, 1993).

49. United States v. Taylor, 166 F.R.D. 356, 360 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C 1996).

50. For example, in one Arizona litigation, the discovering party asked the adversary to produce the following:

[O]ne or more officers, directors, managing agents, or other persons who consent to testify [regarding] the events that occurred on June 15, 1990 at the [responding party's facility] located at Thirty-sixth Street and Indian School Road in Phoenix, Arizona between the hours of 10:00 p.m. and 12:00 a.m., June 16, 1990, involving Clayton Sanders and Richard Edmonds.

Sanders v. Circle K Corp., 137 F.R.D. 292, 293 (D. Ariz. 1991).

51. *E.g.*, Graco Childrens Prods., Inc. v. Century Prods. Co., No. 93-6710, 1996 WL 39476, at *33 (E.D. Pa. Feb. 1, 1996); Fleischer v. Resolution Trust Corp., Nos. 92-4018-DES, 92-4019-DES, 1994 WL 725342, at *1 (D. Kan. Dec. 29, 1994).

52. *Taylor*, 166 F.R.D. at 360.

53. Doe v. Yorkville Plaza Assoc., No. 92-8250 (JGK), 1996 U.S. Dist. LEXIS 8683, at *20 (S.D.N.Y. June 21, 1996) (determining, inter alia, that the listing "Fire Code requirements for residential buildings built in New York City from 1983 to date" was overly broad).

age, such as one in an insurance case which suggested that the witness would need to be fully familiar with her company's allegations of gross negligence against another insurance company in a complex reinsurance arrangement.[54] Using conclusory statements to serve as specifications is not sufficient to justify imposition of broad deposition testimony obligations.[55] Instead, information requests must be "structured" to reach relevant questions.[56] In the face of overbroad discovery demands, timely objection is useful, as is a constructive proffer of alternative means of setting forth information.[57] The Rule 30(b)(6) designation must also list topics that bear a reasonable relationship to the legal issues in the case.[58]

A specification in a blunderbuss format calling for all information supporting a claim or defense averment in a pleading does not, in the view of many courts, constitute a deposition demand providing reasonable particularity about the matters on which examination is requested; hence, it is not sufficient to impose an obligation on the entity to produce a witness who knows about each and every such averment.[59] As one court concluded in denying relief on this ground, "[p]laintiff should have specifically listed all subject matters for which a 30(b)(6) designation is sought."[60]

These decisions demonstrate that proper use of the Rule 30(b)(6) mechanism is a two-way street. The discovering party must take reasonable steps to spell out and confine the definition of topics to be covered so that the preparation burdens imposed on the responding entity remain reasonable.

---

54. *See* Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 278 (D. Neb. 1989).

55. *Doe*, 1996 U.S. Dist. LEXIS 8683, at *23.

56. *Id.*

57. *See id.*

58. *See id.* at *21 (stating that discovery must focus on legally operative subjects).

59. *See, e.g.*, Skladzien v. St. Francis Reg'l Med. Ctr., No. 95-1518-MLB, 1996 U.S. Dist. LEXIS 20621, at *1-*2 (D. Kan. Dec. 19, 1996).

60. *Skladzien*, 1996 U.S. Dist. LEXIS 20621, at *2.

## C. Designating the Witness

Once served with a Rule 30(b)(6) notice, the corporation is obligated to comply, and it may be ordered to designate witnesses if it fails to do so.[61]

The choice of whom to designate rests with the entity. On occasion, a would-be discovering party has sought to require the entity to designate a specific person as the Rule 30(b)(6) witness in a motion to compel.[62] Neither the Rule nor the Advisory Committee commentary suggests that the discovering party has this right. In one case in which the issue was litigated, the court declined to require the designation because the individual whose designation was sought had interests that were, in fact, adverse to the company on whose behalf the testimony was sought.[63]

In general, there is no need for the relief of compelling a corporation to designate a specific person to testify on its behalf. If the discovering party *knows* of a specific witness whose testimony may be beneficial to its case, the discoveror may issue a *regular* deposition notice and take the witness' testimony under Rule 30. If the employee is an officer, director or managing agent, the testimony will be admissible at trial.[64]

*Who May Be Designated.* Any employee of the entity, or any other persons, may be designated if capable of giving responsive testimony, as discussed in later sections of this Article.[65] When originally contacted, the witness need have no personal knowledge. Hence, a witness' assertion that he lacks "current" knowledge is insufficient to demonstrate a problem with the witness as a deponent.[66]

Some litigants have contended—unsuccessfully—that a person who was not personally involved in the underlying trans-

---

61. 8A WRIGHT ET AL., *supra* note 22, § 2103, at 33.

62. Sanders v. Circle K Corp., 137 F.R.D. 292, 293 (D. Ariz. 1991).

63. *Sanders*, 137 F.R.D. at 293.

64. *See* FED. R. CIV. P. 32(a)(2).

65. Some litigants have contended that a person who is not an officer, director or managing agent for the responding entity is, for that reason, not an appropriate corporate spokesperson within the meaning of FED. R. CIV. P. 30(b)(6). *Sanders*, 137 F.R.D. at 293. Nothing in the Rule, however, limits appropriate designees to these senior officials.

66. *See* Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., No. 90-7811-KC, 1993 U.S. Dist. LEXIS 1163, at *5-*6 (S.D.N.Y. Feb. 4, 1993).

HeinOnline -- 50 Ala. L. Rev. 664 1998-1999

actions is not a proper designee for Rule 30(b)(6) testimony.[67] Any witness who can gather responsive information may be designated by the company, and one common scenario finds that corporations have designated as Rule 30(b)(6) witnesses persons who, although lacking personal knowledge, have already performed some sort of internal investigation of the circumstances leading to the litigation.[68]

*Former Employees, Consultants and Third Parties as Rule 30(b)(6) Witnesses.* Outside of the Rule 30(b)(6) context, depositions of former employees are generally treated as depositions of non-parties, requiring service of a subpoena.[69] The former employee no longer has authority to testify on behalf of the entity, and the entity typically will not have control over the production of the witness.[70] As a result, the discovering party must proceed as in the case of any other individual non-party witness, which includes following the general rules applied to those witnesses residing beyond the court's subpoena power.[71]

It is generally held that a company cannot be "required to designate a retired employee to serve as a 30(b)(6) designee, because 'it cannot be supposed that . . . former employees would identify their interests with those of their former employers to such an extent that admissions by them should be held to bind the employer.'"[72] Thus the entity is under no *compulsion* to produce a non-party, such as a former employee, as a witness at a 30(b)(6) deposition.[73]

However, *at the option of the entity* a person who is not a director, officer or even an employee of the entity from whom evidence is sought may serve as a proper designee under Rule

---

67. *Sanders*, 137 F.R.D. at 293.

68. *Id.* (involving regional personnel officer who investigated the events for the company shortly after the incident).

69. Operative Plasterers' & Cement Masons' Int'l Ass'n of the U.S. and Can. AFL-CIO v. Benjamin, 144 F.R.D. 87, 90 (N.D. Ind. 1992).

70. *Benjamin*, 144 F.R.D. at 90.

71. *Id.* (citing Harris Corp. v. Amperex Elec. Corp., No. 86-C6338, 1987 U.S. Dist. LEXIS 14108, at *7 (N.D. Ill. May 8, 1987)); 7 MOORE'S FEDERAL PRACTICE § 30.21 (3d ed. 1997).

72. Ierardi v. Lorillard, Inc., No. 90-7049, 1991 U.S. Dist. LEXIS 11887, at *6 (E.D. Pa. Aug. 20, 1991) (quoting Proseus v. Anchor Line, Ltd., 26 F.R.D. 165, 167 (S.D.N.Y. 1960)).

73. Abramson v. Florida Gas Transmission Co., 908 F. Supp. 1376, 1382 (E.D. La. 1995).

30(b)(6). Many times a company responding to a Rule 30(b)(6) notice is hard-pressed to locate present employees who have any knowledge of bygone events. If the entity is willing to designate a former employee as its deponent (and if the witness accepts the role), the use of a former employee or any other person as a designee is fully permissible under the Rule.[74] In one litigation, a Swiss citizen was deposed on behalf of two entities which had been dormant for some years and had no current officer with knowledge of the transactions at issue in the lawsuit.[75] The designated witness was the sole person then directing and controlling the entities but had no personal knowledge of the issues.

In some cases, corporations served with a deposition request under the rule may then retain a former employee as a consultant to give testimony.[76] At least one observer has endorsed this process as indicating a flexible means by which a corporation may respond when the issues addressed in the deposition notice are within the knowledge of a particular former employee still favorably disposed toward the company.[77]

The entity designating a witness is ipso facto empowering that individual to give testimony admissible against the company.[78] Thus, it has been held that a company is free to designate third persons who have appropriate knowledge to give testimony on behalf of the entity under the Rule 30(b)(6) deposition procedure.[79]

Clearly, placing the fate of a corporate litigation party in the hands of former employees, consultants and non-parties is a dramatic step, one that is contemplated in practice only because the obligation to locate and prepare a witness in response to a Rule 30(b)(6) request sometimes cannot be satisfied by current personnel. Imposition of this burden—with its attendant risks—is

---

74. *Ierardi*, 1991 U.S. Dist. LEXIS 11887, at *6.

75. Sierra Rutile, Ltd. v. Katz, No. 90-4913 (JFK), 1995 U.S. Dist. LEXIS 118, at *2-*3, *6 (S.D.N.Y. Jan. 10, 1995).

76. Hilburn v. John Deere & Co., No. 88-3692, 1990 U.S. Dist. Lexis 10299, at *9-*10 (E.D. Pa. Aug. 7, 1990).

77. John J. Barnhardt, III & Jeffrey S. Whittle, *Use of Rule 30(b)(6) Depositions in Intellectual Property Litigation*, 74 J. PAT. OFF. SOC'Y 683, 697 (1992).

78. *See* FED. R. CIV. P. 32(a)(2) (referring to testimony of "a person designated under Rule 30(b)(6)").

79. United States v. Taylor, 166 F.R.D. 356, 364 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996).

appropriate only where the discoveror has used the Rule 30(b)(6) device for proper purposes, and where proceeding with such testimony is a sensible and efficient means of illuminating the issues on which discovery is sought.[80]

*Designating Multiple Witnesses.* A party responding to a Rule 30(b)(6) request may designate a single witness or a slate of deponents calculated to address the various topics the discovering party has set forth.[81] A party intending to produce multiple witnesses in response to a Rule 30(b)(6) notice probably should indicate by letter or another written response the identity of all persons who will be designated as deponents at the Rule 30(b)(6) deposition, their dates of availability for examination, and, for each such person, the areas of inquiry and/or sub-area of inquiry as well as the period of time as to which such persons will testify.[82] Evidently, to facilitate determination of whether the party has adequately addressed the identified topics, some courts have required that the witnesses be produced in the *order* of the topic listing.[83] Obviously, as complexity increases, there is greater need for cooperation and negotiation to resolve practical difficulties with schedules, overlapping topic coverage of multiple individuals, and the like.

*Adopting the Testimony of Others as a 30(b)(6) Response.* In one of the most prominent decisions construing the Rule 30(b)(6) device, the court appears to have contemplated that a corporation could "adopt" testimony in prior depositions as its position on various issues.[84] This option is attractive for corporations who are litigating over events that happened so far in the past that they have no current witnesses with knowledge, and who may benefit from selecting among the versions of events expressed by third-party witnesses.[85] While this option provides the discovering party with testimony it can use against the enti-

---

80. *See infra* discussion of alternative means for disclosure of facts text accompanying notes 165-66.

81. Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

82. *See Taylor,* 166 F.R.D. at 364, ¶ 3.

83. *See id.* (adopting this procedure where the government had identified seventy-six topics and subtopics on which it demanded deposition testimony under the rule).

84. *See id.* at 365, ¶ 11.

85. *See id.*

ty for all purposes, it also raises the possibility that the prior depositions would have been conducted differently if the discoveror had known that the testimony elicited represented a statement of the corporate position of the entity on the subjects addressed.

In passing, however, at least one court has stated that a prior deposition of the designee "as a fact witness" is not grounds for precluding further questioning under Rule 30(b)(6).[86] To the extent that this approach prevails, the ability to adopt other testimony may have limited utility.

### D. Scope of the Questioning at the Deposition

A Rule 30(b)(6) notice does not limit the scope of the deposition to the designated topics.[87] Counsel for the discovering party is permitted to ask a witness produced pursuant to this Rule *any question pertinent to discovery in the suit*, and the witness must answer on behalf of the corporation to the extent that the witness is able.[88]

---

86. Ierardi v. Lorillard, Inc., No. 90-7049, 1991 U.S. Dist. LEXIS 11887, at *6 (E.D. Pa. Aug. 20, 1991).

87. King v. Pratt & Whitney, 161 F.R.D. 475, 476 (S.D. Fla. 1995).

88. *See* Paparelli v. Prudential Ins. Co., 108 F.R.D. 727, 729 (D. Mass. 1985). Neither the text of the Rule 30(b)(6) nor the notes of the Advisory Committee indicates that the "matters on which examination is requested" which are listed in a 30(b)(6) deposition notice limit the scope of the examination. Thus, on the rare occasion where this issue has come up, courts have concluded that the sentence in Rule 30(b)(6) which states that the "persons so designated shall testify as to matters known or reasonably available to the organization" should be read to provide that the deposition is not strictly limited to the "matters" listed in the notice. *See Paparelli*, 108 F.R.D. at 729. Note that the purpose of Rule 30(b)(6) is to afford the party deposing the corporation the ability to obtain information on certain matters in the form of testimony on behalf of the corporation without having to name the individual in the corporation to be deposed. Therefore,

> it makes little sense for a party to state in a notice that it wishes to examine a representative of a corporation on certain matters, have the corporation designate the person most knowledgeable with respect to those matters, and then to ask the representative about matters [different from or unrelated to the] ones listed in the notice.

*Id.* at 729-30. The goal of having witnesses who actually have the knowledge needed by the discovering party is also thwarted if the notice is not a guide to the scope of the testimony. *Id.* at 730. Finally, the "reasonable particularity" requirement applicable to the notice

> also lends weight to the notion that a limitation on the scope of the deposi-

This breathtaking license for the discovering party allows it to capture admissions that may be used against the company on all manner of subjects. However, any more narrow reading of the scope of permissible examination would provide little comfort to the corporation (or witness) because the discovering party could expand the specified coverage by renewing the Rule 30(b)(6) deposition notice with a broader topic listing or simply by re-noticing the deponent under the regular notice provisions to ask him the same questions that were subject to objection in the 30(b)(6) deposition.[89] Prevailing judicial thinking, however, is that the discovering party "should not be forced to jump through that extra hoop absent some compelling reason."[90] Thus, while the discovering party has presumably listed the most important of the expected deposition topics in the Rule 30(b)(6) notice (so as to assure itself of a witness knowledgeable about the expected topics for examination), most courts have ruled that questioning on other topics is permissible.[91] Hence, if the witness happens to have knowledge on an appropriate topic not listed in the notice, answers will be required.[92]

It sometimes happens, of course, that at the deposition itself discovering counsel will think of topics that were not listed in the specification accompanying the Rule 30(b)(6) notice. In that situation, efforts to elicit testimony on the additional topics are obviously not barred, though gaps in the witness' responses are understandable given the lack of notice of the added topics.[93] One court observed that if the deponent does not know the answer to questions *outside* the scope of the matters described in the notice, then that is the examining party's problem.[94]

---

tion to the matters specified in the notice is implied in the rule. If a party were free to ask any questions, even if "relevant" to the lawsuit, which were completely outside the scope of the "matters on which examination is requested," the requirement that the matters be listed "with reasonable particularity" would make no sense.
*Id.*

89. *King,* 161 F.R.D. at 476.
90. *Id.*
91. *Id.*
92. *See id.*
93. Skladzien v. St. Francis Reg'l Med. Ctr., No. 95-1518-MLB, 1996 U.S. Dist. LEXIS 20621, at *2 (D. Kan. Dec. 18, 1996); *see also King,* 161 F.R.D. at 475.
94. *Skladzien,* 1996 U.S. Dist. LEXIS 20621, at *2.

The Rule's requirement that the notice "describe with rea-
sonable particularity" the subjects is thus a two-edged sword. It
imposes an obligation on a corporation to make reasonable ef-
forts to locate a designee who can indeed answer the particular
questions presaged by the notice, but Rule 30(b)(6) does not
limit what can be asked at deposition.[95] Because there is no
specific limitation in that rule on what can be asked at deposi-
tion, the general deposition standards govern.[96] The goals in
adopting Rule 30(b)(6) were not to provide greater notice or
protections to corporate deponents, but rather to have a knowl-
edgeable person present at deposition to give testimony on its
behalf.[97]

### III. MEASURING ADEQUACY OF THE 30(B)(6) DEPOSITION: GAPS, FALLBACKS AND NON-APPEARANCE

#### A. The Basic Obligation to Appear

Pursuant to Rule 37(d), the court can impose sanctions
when a party or person designated under Rule 30(b)(6) fails "to
appear before the officer who is to take the deposition, after
being served with a proper notice."[98] Although one can easily

---

95. *Id.*
96. FED. R. CIV. P. 30(b)(6) ("This subdivision (b)(6) does not preclude taking a
deposition by any other procedure authorized in these rules.").
97. *King*, 161 F.R.D. at 476. In *King*, the court stated:
> The Rule is not one of limitation but rather of specification within the broad
> parameters of the discovery rules. This is made clear by both the Advisory
> Committee's statement that 30(b)(6) "should be viewed as an added facility for
> discovery . . . " and the Rule's final sentence: "This subdivision (b)(6) does not
> preclude taking a deposition by any other procedure authorized in these rules."
> This Court sees no harm in allowing all relevant questions to be asked at a
> Rule 30(b)(6) deposition or any incentive for an examining party to somehow
> abuse this process.

*Id.* (citation omitted).
98. FED. R. CIV. P. 37(d); *see* Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd.,
171 F.R.D. 135, 151 (S.D.N.Y. 1997); *see also* FED. R. CIV. P. 37(b)(2) (permitting the
court to make such orders "as are just" and/or impose sanctions where the party or
person designated under Rule 30(b)(6) "fails to obey an order to provide or permit
discovery"); Republic of the Philippines v. Marcos, 888 F.2d 954 (2d Cir. 1989) (hold-
ing that sanction of dismissal for failure of corporate plaintiff to present two wit-
nesses for deposition was proper).

grasp what is meant by the concept of appearance for specifically designated witnesses under Rule 30(b)(1), determining whether a corporation has arranged for an effective appearance by its designated Rule 30(b)(6) witnesses can be more elusive. Recent misuse of the Rule 30(b)(6) device is often manifested in and centered around arguments that gaps in the knowledge of a company's designated witness are effectively a form of "non-appearance" subject to draconian Rule 37 sanctions. A review of the case law and reflection on the purposes of this rule, however, suggest that the approach to gaps in the testimony should be quite different. Especially when one considers that often Rule 30(b)(6) depositions are sought on topics as to which the responding party simply has no viable witness possessing the requisite knowledge, forcing the responding party to recruit, educate, and prepare a person to give testimony on subject matters in which he or she had no involvement at the relevant times, a knee-jerk application of sanctions seems highly inappropriate.

*True Non-Appearance.* One prominent decision construing sanctions under this discovery device imposed the ultimate sanction of disposing of a case entirely.[99] Although dismissal of an action or proceeding is the most severe of appropriate sanctions,[100] the "'element of willfulness or conscious disregard' for the discovery process . . . justifies the sanction of dismissal."[101] Thus, in a case in which there were clearly knowledgeable witnesses who blatantly refused to make themselves available for deposition pursuant to the notice after repeated court orders requiring appearance, the trial judge's decision to impose a dismissal sanction was upheld.[102] The testimony was so important to the action that failure to appear for deposition was found to have visited significant prejudice upon the other parties.[103] The

---

99. *Marcos,* 888 F.2d at 955.
100. *See* National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-43 (1976) (per curiam).
101. Founding Church of Scientology, Inc. v. Webster, 802 F.2d 1448, 1458 (D.C. Cir. 1986) (quoting Dellums v. Powell, 566 F.2d 231, 235 (D.C. Cir. 1977)).
102. *Marcos,* 888 F.2d at 955. The two witnesses who refused to appear were managing agents for the several corporations who were parties to the action, and one of the witnesses was the beneficial owner of much of the property involved. *See id.* at 955-57.
103. *See id.* at 956-57.

HeinOnline -- 50 Ala. L. Rev. 671 1998-1999

reviewing court was able to reach that conclusion because *other testimony* from witnesses documented the controlling role of the two witnesses who refused to appear.[104] Finally, there was a sense that the defaulting witnesses, owners of property who sought affirmative relief from the court, could not at the same time withhold information vital to the defense.[105] However, in keeping with the strong policy of deciding cases on the merits, the reviewing court noted that because the principal non-appearing financier had been extradited to the United States in another connection, the option existed to move the district court "to vacate its judgment upon tendering him for deposition."[106]

## B. Non-Responsiveness "Tantamount" to Non-Appearance

A party which does no more than produce a live body in the deposition room who disclaims any knowledge of the topics designated for testimony has, in the view of the cases, in effect not appeared at the deposition. Accordingly, designation of witnesses in response to a Rule 30(b)(6) deposition notice who claim to command no knowledge whatsoever about the topics listed by the discovering party has been deemed persuasive evidence of behavior by the party which is "tantamount to a complete failure of the corporation to appear."[107]

Many cases in recent years have spoken about this type of "non-appearance" and have created the specter that a broad range of weak deposition testimony may be deemed a failure to appear.[108] A close analysis of these cases indicates that the rhetoric of the decisions should not be read to erect burdens not contemplated in the rules and that most courts do not lunge toward the imposition of sanctions when problems arise in Rule 30(b)(6) depositions. A few courts, however, have taken the aspirational rhetoric as a literal synthesis of legal obligations, and sanction decisions are starting to emerge from this deposition procedure that are neither warranted under the Rule nor

---

104. *See id.*
105. *Marcos*, 888 F.2d at 957.
106. *Id.*
107. Resolution Trust Corp. v. Southern Union Co., 985 F.2d 196, 197 (5th Cir. 1993).
108. *See infra* note 114.

sustainable in logic and common sense.[109] Our goal in this discussion, therefore, is to separate the dicta from the holdings in these cases and to identify the proper office of the Rule 30(b)(6) deposition device.

The test of compliance with the rules is actual testimony: it is *not* acceptable for the producing party to designate persons who simply "might have pertinent knowledge."[110] In an earlier era similar abusive behavior was encountered in some instances in which document production was used in lieu of interrogatory responses,[111] and led to an express comment in the Advisory Committee commentary to the effect that the producing party must have reason to believe that the information is likely to be available in the location to which the discovering party is directed.[112] Applying these concerns to Rule 30(b)(6) depositions, it has been noted that a responding party cannot satisfy the rule if its response reflects no recognition of an "obligation to make any investigation, including the review of readily available records, to identify an appropriate witness for Rule 30(b)(6) purposes."[113]

In this context, a few courts have held that "[p]roducing an unprepared witness is tantamount to a failure to appear."[114]

---

109. *See infra* notes 114-17.

110. *Southern Union Co.*, 985 F.2d at 197.

111. FED. R. CIV. P. 33(d) provides that a responding party may escape responsibility for preparing a textual response to an interrogatory if

> the answer to [the] interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served . . . .

*Id.* In practice, a disclosing party is *not* free to send the discovering party on a goose chase in search of information that "might" be located in documents. The Advisory Committee has commented that the disclosing party must have reason to conclude that the information is actually available in the records to which it would remit the discoverer. *See* Amendments to the Federal Rules of Civil Procedure, 85 F.R.D. 521, 531 (1980).

112. *See* Amendments to the Federal Rules of Civil Procedure, 85 F.R.D. 521, 531 (1980).

113. *Southern Union Co.*, 985 F.2d at 197.

114. United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996) (citing *Southern Union Co.*, 985 F.2d at 197); *cf.* Grout v. Equity Am. Ins. Co., 884 P.2d 228, 232 (Ariz. Ct. App. 1994) ("Providing an uninformed warm body for a Rule 30 deposition approximates providing no one at all.").

Courts, almost by rote, conclude that a party which fails to provide a witness who is knowledgeable in the areas requested in a Rule 30(b)(6) notice is subject to sanctions.[115] Where the 30(b)(6) process results in testimony that is judged to be tantamount to a total failure to appear, the rules provide the court with the discretion to impose a selection of sanctions that range from the imposition of costs to the entry of a default judgment.[116] However, to warrant imposition of sanctions, "'the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas.'"[117]

One federal court found that where a witness was "wholly unable to render testimony regarding one of the three subject areas for which he was designated," the "performance amounts to non-appearance, which could warrant the imposition of sanctions."[118] While the partial inability to testify could thus be viewed as non-appearance on that topic, "because sanctions that prohibit a party from introducing evidence are typically reserved for only flagrant discovery abuses," preclusion orders should not flow from such incremental defects.[119]

*Hiding the Ball.* If the entity *has* a witness with pre-existing knowledge of specified topics at its disposal, designation of sham witnesses who lack knowledge of the subjects on which testimony is sought will subject the company to sanctions.[120] For example, in *Resolution Trust Corp. v. Southern Union Co.*,[121] a prominent case, the discovering party served a Rule 30(b)(6)

---

115. *See* Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 78 (S.D.N.Y. 1991); Thomas v. Hoffman-La Roche, Inc., 126 F.R.D. 522, 524-25 (N.D. Miss. 1989).

116. *See* FED. R. CIV. P. 37(b)(2); Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd., 171 F.R.D. 135, 151-52 (S.D.N.Y. 1997).

117. *Bank of N.Y.*, 171 F.R.D. at 151 (quoting Zappia Middle East Constr. Co. v. The Emirate of Abu Dhabi, No. 94-1942, 1995 WL 686715, at *8 (S.D.N.Y. Nov. 17, 1995)).

118. *Id.*

119. *Id.* at 151-52 (declining to impose even cost sanctions given the complexity of the issues and the disclosures that were in fact made). In *Turner v. Hudson Transit Lines, Inc.*, the designated witness lacked knowledge about two out of four designated areas and provided misleading testimony about a third. 142 F.R.D. at 79; *see also Thomas*, 126 F.R.D. at 524 (awarding sanctions where deponents, medical doctors, were unable to testify about marketing of a drug and dissemination of information about it as requested in the Rule 30(b)(6) deposition notice).

120. Resolution Trust Corp. v. Southern Union Co., 985 F.2d 196, 196 (5th Cir. 1993).

121. 985 F.2d 196 (5th Cir. 1993).

notice one and one-half pages in length, listing ten separate topics on which a knowledgeable witness was sought.[122] Counsel for the parties had several telephone calls about the arrangements.[123] Though the entity knew of at least one witness knowledgeable on the matters, it designated two individuals with no knowledge whatsoever.[124] Discovering counsel flew from Washington, D.C. to Texas for the depositions, and as he went down the roster of ten topics, to each subject the witnesses affirmed that they had no knowledge.[125]

*After* one discovering counsel's motion for sanctions, the corporation produced documents addressing some of the subjects, including some papers that identified another individual as having relevant knowledge.[126] This third individual was deposed and shown the relevant documents, and his recollection was refreshed.[127] The reviewing court concluded that the corporation "obviously made no effort to review documents which would have informed it of [the third witness'] relevant knowledge."[128] On this record sanctions were imposed and upheld by the Fifth Circuit.[129]

The Second Circuit has taken the position that a deponent's failure to answer questions at a deposition was not equivalent to a failure to appear.[130] Under this view, as long as the deponent physically appears, "'the proper procedure is first to obtain an order from the court, as authorized by Rule 37(a), directing him to be sworn and to testify.'"[131] Most other courts, however, have taken the view that proffering a completely unknowledgeable witness may be construed as a form of default.[132] The Fifth Circuit rejected a direct analogy between the

---

122. *Southern Union Co.*, 985 F.2d at 196.

123. *Id.*

124. *Id.* at 196-97.

125. *Id.*

126. *Id.* at 197.

127. *Southern Union Co.*, 985 F.2d at 197.

128. *Id.*

129. *Id.* The sanction selected was an award of costs and fees incurred in deposing the first two designated representatives and in identifying the third individual as a person with knowledge. *Id.*

130. Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986).

131. *Salahuddin*, 782 F.2d at 1131 (quoting SEC v. Research Automation Corp., 521 F.2d 585, 588-89 (2d Cir. 1975)).

132. Greenwood v. Dittmer, 776 F.2d 785, 790-91 (8th Cir. 1985) (interpreting

Alabama Law Review          [Vol. 50:3:651

deposition of a natural person under a normal notice and the deposition of a corporation under Rule 30(b)(6).[133] Because the purpose of the Rule 30(b)(6) device is to streamline the discovery process, this mechanism places the different form of burden on the corporation for identifying responsive witnesses. Under this procedure, when an entity designates a person to testify on its behalf, "the corporation appears vicariously through that agent."[134] Therefore, the Fifth Circuit held that if the designated agent is not knowledgeable about relevant facts, "the principal has failed to designate an available, knowledgeable, and readily identifiable witness, [and] the appearance is, for all practical purposes, no appearance at all."[135]

Thus, on one level, there is a distinction between a typical deposition in which *the discovering party selects the deponent* and a Rule 30(b)(6) deposition, where the responding entity is obliged to select a witness to address listed topics. The court acknowledged that there is, in some sense, a potential for abuse in the Rule 30(b)(6) context which is not present when the party

---

similar language in Rule 30(g)(2)). In *Greenwood*, the Eighth Circuit held that a court may "order a party to reimburse those attending a deposition if the witness does not appear because the party failed to serve a subpoena upon him" and stated that Rule 30(g)(2) also may be invoked if a physically present witness is unwilling to testify. *Greenwood*, 776 F.2d at 790-91.

In a multi-district, multi-party lawsuit where a defendant's attorneys from one of the districts had attended the deposition of a non-party witness and plaintiff's counsel had said that he would inquire into issues relevant to that defendant's case but only made inquiries into matters relevant to other cases, the Tenth Circuit held that the lower court should wait until the final disposition of the case before considering the propriety and amount of sanctions for attorney fees and expenses. *Cronin v. Midwestern Okla. Dev. Auth.*, 619 F.2d 856, 864 (10th Cir. 1980). Although the appellate court noted that "[a]ttendance without proceeding forward with a deposition is sufficient to invoke the provisions of Rule 30(g)," the court reasoned that it was too early to determine the propriety of deposition vis-a-vis this particular defendant, because all of the pending cases "involved interrelated nationwide fraudulent schemes." *Cronin*, 619 F.2d at 864. The appellate court also held that the lower court erred by restraining further depositions until plaintiff had deposited reimbursement monies for this deposition with the court. *Id.* Lower courts have also treated unknowledgeable witnesses as a form of default. *E.g.*, Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 79 (S.D.N.Y. 1991) (awarding costs and fees to examining party where the deposed party's 30(b)(6) designee failed to have knowledge regarding two of four topics requested in the 30(b)(6) notice and provided misleading testimony regarding a third topic).

133. *Southern Union Co.*, 985 F.2d at 197.

134. *Id.*

135. *Id.*

noticing the deposition specifies the deponent.[136] While nothing in Rule 30(b)(6) requires *personal knowledge* in the sense of knowledge gained during the underlying transactions, case law implementing the rule focuses on whether the witness proffered has information to convey on the topics designated.

It is significant that the Fifth Circuit holding in *Resolution Trust Corp. v. Southern Union Co.*, upholding sanctions, was conditioned upon the fact that there *was* a knowledgeable witness readily available.[137] In this case, the producing entity possessed documents that clearly identified a third individual as having personal knowledge of the subject of the deposition, and the entity did not produce those documents or designate the third witness until *after* it had designated two utterly unknowledgeable witnesses, had imposed upon counsel for the discovering party the expense of traveling across the country for two pointless deposition exercises, and then had been served with a motion for sanctions.[138] In this egregious situation, the Fifth Circuit found that the trial court's conclusion that the producing party did not make a "meaningful effort to acquit its duty to designate an appropriate witness" was manifestly correct and surely not an abuse of discretion.[139] Hence, it upheld the award of costs and fees under Rule 37(d).[140]

## C. Determining when Some Testimony Is Enough

By contrast, one court determined that when the deponents in a case rendered testimony concerning some of the subject areas of their designations, regardless of what other subject areas could have been covered by the deponents, their performance did *not* amount to non-appearance,[141] and hence sanc-

---

136. *Id.*

137. *Id.*

138. *Southern Union Co.*, 985 F.2d at 197.

139. *Id.* The court also rejected the notion that a mini-hearing into the circumstances of the witnesses' designation was obligatory. In the context, the trial court could determine the sanction application without holding an evidentiary proceeding. *Id.*

140. *Id.*

141. Zappia Middle East Constr. Co. v. The Emirate of Abu Dhabi, No. 94-1942, 1995 U.S. Dist. LEXIS 17187, at *26-*27 (S.D.N.Y. Nov. 17, 1995).

HeinOnline -- 50 Ala. L. Rev. 677 1998-1999

tions were not applicable.

While a largely unresponsive corporate designee may be considered tantamount to a "no show,"[142] where there are claimed gaps in the deponent's testimony, the fact that the designated Rule 30(b)(6) witnesses "did render testimony concerning the subject areas of their designations"[143] is often considered controlling. Thus, in one case, the court found that four transcripts containing 183 pages of responsive testimony was at least an appearance, not tantamount to presentation of "no witness" and hence not subject to sanctions.[144]

*Unanswered Questions Versus Unaddressed Topics.* For purposes of determining whether the entity is culpable for failing to produce a proper witness, the test is whether the proffered deponent was "an utterly inadequate 30(b)(6) witness."[145]

Some courts have taken the inflexible view that where the corporate party's designee gives answers to one or more questions which are to the effect that the witness lacks knowledge or has no opinion, then "[a]s to the subject matter of each such question, [the discovering party] is entitled to an additional 30(b)(6) designee who is able to give responsive answers that will bind Plaintiff at the trial of this action."[146] The better decisions, however, approach the evaluation of a deposition by focusing on the roster of legitimate topics properly set forth and the proportion of those topics on which the witness produced had some relevant information.

One court, quite evidently irritated at a variety of misconduct in conjunction with the deposition program, ruled that if a Rule 30(b)(6) designee gave "noncommittal answers to any substantive question" bearing on a list of allegations in the pleadings, "then on the next business day [the entity] shall produce for deposition one or more 30(b)(6) designees who can answer all yet-unanswered questions and all reasonable follow-up

---

142. Barron v. Caterpillar, Inc., 168 F.R.D. 175, 177 (E.D. Pa. 1996).
143. *Zappia Middle East Constr. Co.*, 1995 U.S. Dist. LEXIS 17187, at *27.
144. *Id.* at n.13 (tabulating transcript pages).
145. *Id.* at *14.
146. *See, e.g.*, Masco Corp. v. Price Pfister, Inc., No. 94-728-A, 1994 U.S. Dist. LEXIS 20597, at *7-*8 (E.D. Va. Nov. 30, 1994), *aff'd in part, rev'd in part*, 1994 U.S. Dist. LEXIS 20365 (E.D. Va. Oct. 28, 1994).

questions."[147]

### D. Fallback Witnesses

Where the witness has *some* knowledge and has not totally failed to address the topics specified, no relief may be necessary. One court expressly concluded that the entity had satisfied its duty under Rule 30(b)(6) by providing "the most qualified person available" as its deponent.[148] Such a witness, combined with other discovery made available under regular means such as interrogatory responses and document production, will in many cases provide the deposing party with all that it needs to be ready to present its case at trial and to challenge the entity's case.[149] Particularly when substantial time has passed between the events being litigated and the date of the deposition, limits on the knowledge of the witness are not surprising, and where both 30(b)(6) and regular depositions have taken place, re-deposition under Rule 30(b)(6) can be avoided.[150]

Nonetheless, where there are needs not otherwise dealt with in other discovery, the appropriate response to gaps in the testimony may be either for the witness to be re-prepared, if there are information sources reasonably available to the entity, or for *other witnesses* to be designated to provide supplemental testimony pursuant to the notice under the Rule. As one court commented, if the witness designated initially "cannot answer the questions, perhaps other corporate representatives can."[151] If, despite good faith efforts by the entity to prepare its designee, a witness is unable to respond to a specific area of inquiry, the entity has been given leave promptly to designate and prepare a substitute to testify to that area of inquiry.[152] Some courts

---

147. *Masco Corp.*, 1994 U.S. Dist. LEXIS 20597, at *8.
148. Barron v. Caterpillar, Inc., 168 F.R.D. 175, 177 (E.D. Pa. 1996).
149. *See generally Barron*, 168 F.R.D. at 177 (noting that other discovery had been made available to the deposing party).
150. *See, e.g.*, United States v. Massachusetts Indus. Fin. Agency, 162 F.R.D. 410, 412 (D. Mass. 1995) (stating that one Rule 30(b)(6) deposition and five Rule 30(b)(1) depositions of specified individuals sufficed to make further 30(b)(6) testimony unnecessary).
151. Audiotext Communications Network v. US Telecom, Inc., No. 94-2395-GTV, 1995 U.S. Dist. LEXIS 15416, at *38 (D. Kan. Oct. 5, 1995).
152. *Audiotext Communications Network*, 1995 U.S. Dist. LEXIS 15416, at *39,

have stated that the party must do so,[153] and a few courts say the follow-up must take place "immediately."[154]

A step-by-step approach is implicit even in the decisions of the most demanding courts. Thus, they hold that once a company becomes aware that the chosen representative lacks sufficient knowledge about certain matters, the company has the duty to substitute another person for deposition or adequately prepare the initial deponent for a further session of testimony in which he could fully answer the questions.[155]

Of course, if a party recognizes in advance that no one witness could bear the burden of testifying for the company as to all issues in the deposition notice or for other strategic reasons, it may designate a slate of deponents calculated to address the various topics the discovering party has set forth.[156]

### E. Relevance of Other Information Sources

In determining whether a Rule 30(b)(6) deposition with apparent gaps in the testimony represents a discovery shortfall, and hence demonstrates a need for remedial action, the question should not be whether the deposition transcript sets forth every fact in the case and takes a position on every issue, construes every document and describes every event. Rather, the question should be whether the deposition in conjunction with other information available to the discovering party is sufficient to permit fair preparation for the coming trial.

One measured response to uncontestable gaps in the testimony of a Rule 30(b)(6) designee is to rely on alternative discovery tools to complete the discovering party's necessary picture of the events. Thus, it has been recognized by some courts that the mere fact that there are topics in the notice which the witness cannot address does *not* make out a prima facie showing that

---

¶ 6.

153. *E.g.,* FDIC v. Butcher, 116 F.R.D. 196, 199 (E.D. Tenn. 1986), *aff'd* 116 F.R.D. 203 (E.D. Tenn. 1987).

154. *See, e.g.,* Sanstrom v. Rosa, No. 93-7146 (RLC), 1996 U.S. Dist. LEXIS 11923, at *17 (S.D.N.Y. Aug. 16, 1996) (quoting 8A WRIGHT ET AL., *supra* note 22, § 2103, at 31-32).

155. Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989).

156. *See supra* text accompanying notes 81-83.

there was conduct tantamount to a complete failure to appear.[157] Absent a showing of willfulness or bad faith, the better judicial response is to consider other means of shedding light on the facts.[158] One court declined the discovering party's motion for the appointment of an additional Rule 30(b)(6) designee after the one presented purportedly failed to provide complete responses to the government's requests.[159] In many cases "the most the Court will do . . . is to require [defendant] to produce more documents and clarify its position in response to a number of interrogatories."[160] The discovering party will need to specify in new requests the items of information needed and not previously addressed, and the entity will be permitted to "explain its position further through responses to those interrogatories and requests."[161]

As a result, some courts have taken the position that disclosing the identity of a knowledgeable employee, along with providing basic information to permit the discovering party to serve a notice upon the individual, is sufficient to render "moot any issue as to whether [the entity] should have produced him at a 30(b)(6) deposition."[162]

In a complex antitrust case involving telephone rates, production of three witnesses in response to a Rule 30(b)(6) deposition notice was held to be adequate, despite complaints from the discovering parties that there were gaps in the knowledge of the individuals and despite the fact that the producing entity failed to specify which of the twenty-six categories listed in the discovering party's motion about which the three witnesses could testify.[163] Because the discovering party was able to depose three witness who had some knowledge and had other discovery addressing the issues in the case, the trial judge's conclusion that

---

157. United States v. Massachusetts Indus. Fin. Agency, 162 F.R.D. 410, 412 (D. Mass. 1995).

158. *Massachusetts Indus. Fin. Agency*, 162 F.R.D. at 412.

159. *Id.*

160. *Id.*

161. Barron v. Caterpillar, Inc., 168 F.R.D. 175, 178 (E.D. Pa. 1996).

162. Abramson v. Florida Gas Transmission Co., 908 F. Supp. 1376, 1383 (E.D. La. 1995).

163. Directory Sales Management Corp. v. Ohio Bell Tel. Co., 833 F.2d 606, 609 (6th Cir. 1987).

further discovery was not required was upheld.[164]

*Rule 26 Triage Provisions.* There is little case law under Rule 26(b)(2), but arguments stressing the availability of simpler, cheaper means of learning facts may be pertinent in Rule 30(b)(6) contexts. In the reported decisions to date, an entity has occasionally attempted to use the availability of alternative avenues to obtain reversal through supervising courts of decisions by judges and magistrate judges who have already set a plan of discovery in motion. In that posture, where the abuse of discretion test applies, the fact that the judge managing discovery has not focused on the less burdensome alternative means has not generally proved persuasive.[165]

Rule 30(b)(6) was intended in part to promote the efficient discovery of facts.[166] For that reason, it seems eminently reasonable to use the balancing and triage provisions of Rule 26 when considering the appropriate scope of burdens to place on a party responding to a deposition notice under the Rule.

*Documents Previously Produced.* If the documents the deposition witness would be questioned about have already been made available to the discovering party, the discovering party does not have "a legitimate need" to inquire on deposition into the facts contained in the file.[167] As one experienced federal judge commented concerning the need for testimony which characterizes the supporting documents: "[The parties and] counsel can read them and determine which documents pertain to an allegation, and to what degree, directly or indirectly . . . . No Rosetta stone is necessary to unlock their mysteries."[168]

*Other Depositions Already Taken.* When there have already been witnesses deposed on behalf of an entity, most courts will view the Rule 30(b)(6) testimony as a "supplement" to the specif-

---

164. *Directory Sales Management Corp.*, 833 F.2d at 608.

165. *See, e.g.,* Resolution Trust Corp. v. Sands, 151 F.R.D. 616, 618-20 (N.D. Tex. 1993).

166. Mitsui & Co. v. Puerto Rico Water Resources Auth., 93 F.R.D. 62, 65 (D.P.R. 1981); *see* Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 515 (1970).

167. EEOC v. American Int'l Group, Inc., No. 93-6390 (DKL) (RLE), 1994 U.S. Dist. LEXIS 9815, at *8-*9 (S.D.N.Y. July 18, 1994).

168. United States v. District Council of Carpenters, No. 90-5722 (CSH), 1992 U.S. Dist. LEXIS 12307, at *43 (S.D.N.Y. Aug. 18, 1992) (opinion of Judge Charles S. Haight).

ic officers already deposed.[169] The scope of information needed is "narrowed" by the prior testimony, and a Rule 30(b)(6) designee's testimony may well be fully sufficient where it follows other officers who have been individually deposed, even when such testimony by the designee would be inadequate if it were the sole evidence disclosed by the entity on the listed subjects.[170] Where the entity designee—or the individual deponents from the corporate ranks—provides adequate coverage on the contested issues, "no relief is warranted."[171]

*Leads.* A straightforward reading of the legislative history of Rule 30(b)(6) makes it quite clear that the central function envisioned for this procedure by the Advisory Committee was to provide the discovering party with reliable leads to the identities of persons within the entity who have actual knowledge of the events in suit.[172] A corporation's willingness to disclose names of specific employees and former employees with knowledge is a factor demonstrating that the goals of full discovery are being advanced and that gaps in Rule 30(b)(6) testimony are insignificant.[173]

## IV. ADEQUACY OF PREPARATION EFFORT: BURDENS AND ALTERNATIVES

### A. *Reasonable Scope or Absolute Perfection*

Rule 30(b)(6) delineates what has been called an "affirmative duty" to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are known or reasonably available to the corporation.[174] Our assessment from study of the emerging case law is that unrealistic expectations, glib verbal formulas, and a failure to consider other mechanisms in the exchange of information

---

169. Zappia Middle East Constr. Co. v. The Emirate of Abu Dhabi, No. 94-1942, 1995 U.S. Dist. LEXIS 17187, at *21-*22 (S.D.N.Y. Nov. 17, 1995).

170. *Zappia Middle East Constr. Co.*, 1995 U.S. Dist. LEXIS 17187, at *21-*22.

171. *Id.*

172. *See* Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 515 (1970).

173. Lapenna v. Upjohn Co., 110 F.R.D. 15, 24 (E.D. Pa. 1996).

174. King v. Pratt & Whitney, 161 F.R.D. 475, 476 (S.D. Fla. 1995).

684          Alabama Law Review          [Vol. 50:3:651

during pretrial phases of litigation have led to confusion in the courts. In one sense, the mistake being made in a number of the decisions is the assumption that this one device, Rule 30(b)(6) depositions, must perform all preparation functions and must provide an evidentiary event that, in and of itself, culminates all preparations and distills all knowledge on a topic. Nothing in the Advisory Committee's conception of this deposition device suggests that it was intended to perform such extensive and Herculean roles.

While the initial purpose of the deposition procedure under the Rule centered upon the start-up phase of the proceedings and the issue of how a party litigating against an entity can avoid a series of missteps in locating personnel with knowledge,[175] one widely cited district court decision rejected as a "restrictive characterization" of the scope of Rule 30(b)(6) the view that this mechanism was "designed to save one step in the deposition process by eliminating a deposition designed to ascertain the name of witnesses to be deposed subsequently."[176] That purpose, which is clearly *one* of the goals of the representative deposition procedure, is not a complete description as the doctrine is applied today.

In addition, however, it is taken to be one of the "self-evident propositions" on the operation of 30(b)(6) derived from the plain language of the Rule that the "persons so designated shall testify as to matters known or *reasonably available* to the organization."[177] Thus, courts interpreting the rule generally hold that if the rule is to be implemented in a fashion calculated to promote effective discovery regarding the knowledge of a corporation, "the spokesperson must be informed."[178]

The issue, of course, is how much preparation is enough. The test of reasonableness in the Rule, which is compatible with the approach of the discovery rules in other contexts,[179] would

---

175. *See infra* text accompanying notes 349-50.

176. Mitsui & Co. v. Puerto Rico Water Resources Auth., 93 F.R.D. 62, 64 (D.P.R. 1981).

177. Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 278 (D. Neb. 1989) (citing FED. R. CIV. P. 30(b)(6)).

178. *See Protective Nat'l Ins.*, 137 F.R.D. at 278.

179. *See, e.g.,* FED. R. CIV. P. 34(b) ("The request shall set forth . . . the items to be inspected [and] describe[d] with reasonable particularity.").

recognize limits and alternatives. Unfortunately, in one widely quoted distillation of the scope of the preparation duty, a trial court lost sight of those natural considerations and created a stringent, absolutist test for adequacy of the Rule 30(b)(6) witness.[150] The court stated that the goal of a meaningful deposition is that: "[The corporation] must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters."[181] None of the concepts in this test has a basis in either the text of the rule, the Advisory Committee Note, or the goals of the device. But the clarion call of this summary has led several other courts to treat it as the applicable standard nonetheless.[182]

The most demanding readings of the testimonial obligations inherent in the Rule proceed from a basic sense that such an interpretation of the scope of the obligations is necessary "in order to make the deposition a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial [which] would totally defeat the purpose of the discovery process."[183] As we will note below, however, the panoply of discovery and other procedural devices in federal litigation provide a number of protections against late revelation of information, such that it is not necessary that this discovery mechanism carry the full weight of the policy favoring active contest of proof on the merits.

---

180. *Mitsui*, 93 F.R.D. at 66-67.

181. *Id.* at 67 (requiring a corporation to designate a 30(b)(6) spokesperson and imposing fees and sanctions for the failure to do so). *Mitsui* appears to be the origin of this test, which is cited with approval in several more recent decisions. *See, e.g.*, Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995); *In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (N.D. Ga. 1987). *Mitsui* cited no authority for the language setting forth these requirements. *See* 93 F.R.D. at 66-67.

182. Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd., 171 F.R.D. 135, 150 (S.D.N.Y. 1997); SEC v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y. 1992); *see also Protective Nat'l Ins.*, 137 F.R.D. at 278; FDIC v. Butcher, 116 F.R.D. 196, 199 (E.D. Tenn. 1986), *aff'd*, 116 F.R.D. 203 (E.D. Tenn. 1987).

183. United States v. Taylor, 166 F.R.D. 356, 362 (M.D.N.C. 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C. 1996).

A standard requiring only *reasonable efforts* should be applied here, as it does under each of the other discovery devices in the federal rules. For example, recall that under Rule 33, interrogatory answers for a corporate party must reflect corporate knowledge and not simply the knowledge of the individual making the answer.[184] In responding to interrogatories, a corporate party has the duty to undertake reasonable investigation.[185] The duty is interpreted to require reasonable efforts by the entity to locate information within its grasp.[186] These efforts include, for example, interviewing lower level employees[187] and in appropriate cases contacting affiliate entities or subsidiaries, domestic and foreign.[188] A similar reasonableness test is applied in assessing the duty of factual exploration under Rule 36 admissions practice.[189]

*A Reasonably Knowledgeable Witness*. Applying similar notions of reasonable preparation makes for a Rule that is both workable and successful at attaining its basic purposes and avoids the opportunities for misuse which arise when it is assumed that the Rule requires perfection.

The preparation of a Rule 30(b)(6) witness is often measured in the case law by considering the categories specified in the notice, rather than any abstract perspective on the subject matter of the suit or the education and practical background of the witness. Thus, in a case in which a Rule 30(b)(6) notice of deposition requested testimony as to corporate practices of a large financial institution, production of a witness who was only knowledgeable about one "team" of professionals and who could not confirm that other teams within the corporation followed the same practices was inadequate.[190] Similarly, a witness knowledgeable about corporate activity in one calendar year would not

---

184. Segarra v. Waterman S.S. Corp., 41 F.R.D. 245, 247 (D.P.R. 1966); Holler v. General Motors Corp., 3 F.R.D. 296, 297 (E.D. Mo. 1944).

185. *See* 8A WRIGHT ET AL., *supra* note 22, § 2261, at 560.

186. Weddington v. Consolidated Rail Corp., 101 F.R.D. 71, 75 (N.D. Ind. 1984).

187. *Weddington*, 101 F.R.D. at 75.

188. *E.g.*, Transcontinental Fertilizer Co. v. Samsung Co., 108 F.R.D. 650, 652-53 (E.D. Pa. 1985).

189. United States v. Taylor, 166 F.R.D. 356, 362 (M.D.N.C. 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C. 1996).

190. Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995).

be deemed sufficiently knowledgeable because part of the notice sought information as to a later year.[191]

It is generally recognized that the "duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved."[192] An entity does not discharge its duty under the Rule simply by canvassing its personnel to determine whether it has any witness knowledgeable about the specified subjects, or to determine the most appropriate existing witness.[193] Using the discovering party's roster of desired information as a guide, the entity is expected to *create* a witness with responsive knowledge.[194] While, as noted above, the Rule should require reasonable efforts to prepare a witness to be responsive, the more absolutist courts embrace a stronger sense of the efforts required.

Imposition of considerable burdens in preparing a Rule 30(b)(6) deponent have been rationalized as "merely . . . the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business."[195] No explanation is offered, however, as to why the opportunity to use the corporate form of organization requires more than disclosure of what persons under the control of the entity know. Of course, Rule 30(b)(6) is not limited to depositions of corporations, but can be used for partnerships, unincorporated associations or other entities.[196]

*Events Long Past.* One situation in which corporate knowledge is often sparse arises when the time period in which the events took place is quite remote, illustrated in *Barron v. Caterpillar, Inc.*, a products liability case litigated in the 1990s concerning machinery designed in the mid-1960s by then employees of the corporate entity.[197] Most courts, but not all,[198] have

---

191. *Buycks-Roberson*, 162 F.R.D. at 343.

192. *Taylor*, 166 F.R.D. at 361 (citing *Buycks-Roberson*, 162 F.R.D. at 343; SEC v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y. 1992)).

193. *Id.*

194. *See id.*

195. *Id.* at 362.

196. *See* Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 514-15 (1970).

197. 168 F.R.D. 175, 177 (E.D. Pa. 1996).

198. *See infra* discussion of *Taylor*, text accompanying notes 224-40.

recognized that where there is a delay, such as a twenty-five-year hiatus, "*both parties should anticipate* the unavailability of certain information."[199]

In such circumstances, if the entity produces a senior person who had relevant responsibilities, such as a manager involved with the product, the company will have provided for the discovering party the "best chance of obtaining any information" concerning the relevant facts.[200] Where "the inescapable and unstoppable forces of time have erased items from [the initial designee's] memory which neither party can retrieve," but that person was the most knowledgeable individual still associated with the entity, requiring the company to appoint an additional corporate designee "presents an *inappropriate* remedy to cure the discovery problems presented . . . ."[201]

*Older Practices and Policies.* Perhaps even more troublesome than "facts" from years past is a discovery request that specifies an entity's general policies or practices from an earlier era. Such matters are not closed to discovery as a matter of law. One court has rejected a corporation's argument that "it is difficult and time-consuming to investigate unwritten practices that were in effect three years ago,"[202] finding that such arguments "fail to confront the fact that [the entity] had a duty to provide a witness or witnesses with the requisite knowledge and to prepare these witnesses, despite the difficulty of investigating the subject matter requested by the deposing party."[203] Obviously, however, if no personnel or documents reasonably accessible to the company illuminate the general practices specified, knowledge will understandably be very difficult to locate.

*Expertise?* In *Resolution Trust Corp. v. Sands,*[204] one governmental entity subjected to a deposition request under the Rule argued that the notice required it, in effect, to produce an expert witness in circumstances where the then-applicable requirements of Rule 26(b)(4) had not been met, indeed prior to

---

199. *Barron*, 168 F.R.D. at 177 (emphasis added).
200. *Id.*
201. *Id.* (emphasis added).
202. Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995).
203. *Buycks-Roberson*, 162 F.R.D. at 343.
204. 151 F.R.D. 616, 619-20 (N.D. Tex. 1993).

the time set for identification of experts.[205] The topic specification in the notice required the entity to tender a witness to testify about the party's "claims that the officers and directors were negligent, grossly negligent or breached their fiduciary duties."[206] The court, however, observed that while the discovering party might better have framed the request in terms of "the factual basis" for these claims, there was no implicit thrust in such a question calculated to discover anything other than the factual predicates for the causes of action.[207] Both substantive and damage-support questions were viewed as not inherently calling for expertise.[208]

### B. Where There Is No Knowledgeable Witness Within the Entity

One recent decision has suggested that the circumstance in which a corporate designee lacks sufficient knowledge of the relevant facts to provide adequate responses to the discovering party's requests is a frequent occurrence.[209] The normal solution for this common situation is for the entity to shoulder the burden of presenting additional designees capable of providing sufficient answers to the unaddressed requests.[210]

A few courts have taken the position that "[n]othing in Rule 30(b)(6) requires a party to 'create' a witness in response to a 30(b)(6) notice."[211] But the view that the duty to educate a person with no prior knowledge is "prejudicial" to a corporation[212] has not prevailed, and it appears now to be recognized that the Rule 30(b)(6) deponent must be woodshedded with information

---

205. *See Sands*, 151 F.R.D. at 619-20.

206. *Id.* at 620.

207. *Id.*

208. *Id.*

209. Barron v. Caterpillar, Inc., 168 F.R.D. 175, 177 (E.D. Pa. 1996).

210. *Barron*, 168 F.R.D. at 177 (quoting 8A WRIGHT ET AL., *supra* note 22, § 2103 ("If in the course of taking the deposition it becomes apparent that the . . . [sic] persons designated are not able to provide testimony on the matters specified in the notice, it is the duty of the corporation immediately to make a new designation substituting someone who can give the needed testimony.")).

211. Resolution Trust Co. v. Kazimour, No. C92-0188, (N.D. Iowa Nov. 16, 1993) (unpublished opinion cited in Elbein, *supra* note 6, at 369).

212. *See* unreported cases, most of which relate to the Resolution Trust Co. as a litigant, collected in Elbein, *supra* note 6, at 369 n.8.

that was never known to the witness prior to deposition preparation. In that sense, a deposition under the Rule "represents the knowledge of the corporation, not of the individual deponents."[213] Several courts have held, accordingly, that the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.[214]

*When No Information Is Available.* Under Rule 30(b)(6), even the courts which impose the most stringent preparation burdens on an entity responding to a deposition notice commonly recite that it is possible for the corporation to plead lack of knowledge, sometimes analogized to an individual deponent's lack of memory.[215] Given the language of the Rule itself, it should be recognized that if the entity "does not possess such knowledge as to so prepare [the initial deponent] or another designate, then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to 'matters known or reasonably available to the organization.'"[216]

*When Information Can Be Collected.* When the corporation has available to it the sources of information needed to prepare a witness to give testimony on the corporation's behalf, several courts have subscribed to the general statement that "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation."[217] For example, a governmental regulatory body created in 1990 was required to produce a fact witness about events that had happened years earlier.[218] In general, governmental claims

213. United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996).

214. *See, e.g.,* Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995); SEC v. Morelli, 143 F.R.D. 42, 45-46 (S.D.N.Y. 1992).

215. *Taylor,* 166 F.R.D. at 361.

216. Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 76 (D. Neb. 1995) (citing FED. R. CIV. P. 30(b)(6)). In rejecting case-dispositive consequences in such circumstances, one court reported that it could locate "no cases . . . in which a court has held that a party's *inability* to designate a corporate representative warrants Rule 11 sanctions." Federal Sav. and Loan Ins. Corp. v. Village Creek Joint Venture, 130 F.R.D. 357, 359 (N.D. Tex. 1989) (emphasis added).

217. *Taylor,* 166 F.R.D. at 361 (citing *Dravo Corp.,* 164 F.R.D. at 75).

218. *See, e.g.,* Resolution Trust Corp. v. Sands, 151 F.R.D. 616, 618-19 (N.D. Tex.

of lack of personal knowledge pertaining to the relevant time period have met a similar fate in disputes under Rule 30(b)(6).[219] However, it should be noted that on occasion a court has held that the existence of other forms of discovery information available to the adversary may excuse the obligation to create a deposition witness out of whole cloth.[220]

As a consequence of Rule 30(b)(6)'s requirement that the witness testify as to matters known or reasonably available, information held within the organization and documents reasonably available should be reviewed by the designee. Simply producing a participant in the underlying transactions, despite lack of current recall, has been held an inadequate Rule 30(b)(6) response.[221] When others within the entity have knowledge,

---

1993).

219. *Morelli*, 143 F.R.D. at 45 (rejecting the contention "that Rule 30(b)(6) is only intended to apply 'to actions in which a governmental agency or someone in its employ has participated in the transactions or events in controversy or has actual knowledge of facts or information relevant to the action.'"); FDIC v. Butcher, 116 F.R.D. 196, 199 (E.D. Tenn. 1986), *aff'd*, 116 F.R.D. 203 (E.D. Tenn. 1987) ("One of the purposes of Rule 30(b)(6) is to curb any temptation a corporation might have to shunt a discovering party from 'pillar to post' by presenting deponents who each disclaim knowledge of facts clearly known to someone in the organization.").

220. In one case, the F.S.L.I.C. sued with respect to transactions involving a failed Savings & Loan. *Village Creek Joint Venture*, 130 F.R.D. at 358. In the course of discovery, the defendants demanded that the F.S.L.I.C. designate a Rule 30(b)(6) corporate representative or other person to testify on its behalf. *Id.* Because the transactions and conduct upon which the complaint was predicated had occurred during the life and operation of the defunct savings bank, neither the F.S.L.I.C., nor its appointed manager, the FDIC, had any involvement with the bank's operations. Accordingly, plaintiff's counsel advised counsel for the discovering defendants, in response to a supplemental deposition notice, that plaintiff had no representative who could appear as a Rule 30(b)(6) representative and that persons with knowledge were either participants in the transaction in question (and were therefore aligned with defendants) or were former employees of the failed S & L. *Id.* at 358. The defendants followed with a motion to dismiss, predicated upon the legal premise that a party's inability to designate a Rule 30(b)(6) representative is legally equivalent to a party's concession that no factual basis existed for the filing of the alleged offending pleading, in this case plaintiff F.S.L.I.C.'s complaint. *Id.* However, the court expressly found this context "distinguishable from those circumstances in which a party has timely failed to designate a Rule 30(b)(6) representative, which ordinarily if established warrants the imposition of sanctions under Rule 37." *Id.* Other discovery, including interrogatory responses filed by the plaintiff, was sufficient to negate the thesis of the motion claiming effective failure to make a Rule 30(b)(6) designation. *Village Creek Joint Venture*, 130 F.R.D. at 358-59.

221. Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

conferences by the designee with other current employees may be appropriate.[222] Indeed, two decisions have imposed an obligation for an entity's designee to confer with past employees, or "other sources."[223]

*Over-reading the Requirement.* Perhaps the high-water mark in federal decisions requiring a party to prepare a witness to give 30(b)(6) testimony even when there are *no* current employees with personal knowledge of the events in litigation is a magistrate's decision in *United States v. Taylor,*[224] upheld by the supervising district judge.[225] The decision, however, illustrates both the breadth and the limits of current case law concerning preparation duties because it reflects a broad conception of the duties borne by the parties under the Rule, but implements these obligations in a step-wise fashion, without sanctions, to facilitate gradual piecing together of the requisite information.

*Taylor* concerned a CERCLA action[226] in which the United States as plaintiff served a Rule 30(b)(6) notice of deposition on defendant Union Carbide Corporation.[227] A dispute arose concerning the scope of a party's necessary efforts to prepare a Rule 30(b)(6) deponent.[228] The case had been pending for seven

---

222. *Bank of N.Y.,* 171 F.R.D. at 151. In instances where the knowledge required by the Rule 30(b)(6) deposition is extensive, or where it sounds in several domains, the organization has the option of designating one or more such persons or providing a single witness with his account of the events as a means of preparing him for the deposition. *Id.*

223. United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996), *aff'd,* 166 F.R.D. 367 (M.D.N.C. 1996) (citing Ierardi v. Lorillard, Inc., No. 90-7049, 1991 WL 158911, at *3 (E.D. Pa. Aug. 13, 1991)).

224. 166 F.R.D. 356 (M.D.N.C. 1996), *aff'd,* 166 F.R.D. 367 (M.D.N.C. 1996).

225. United States v. Taylor, 166 F.R.D. 367 (M.D.N.C. 1996).

226. Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 (1994). CERCLA is a complex environmental remediation statute whose primary purpose is prompt cleanup of hazardous waste sites. *Id.*

227. In *Taylor,* the United States sought to recover costs of cleaning up a Superfund site known as the "Aberdeen Pesticide Site." *Taylor,* 166 F.R.D. at 358. In addition, the government asserted that Union Carbide was liable as an owner or operator by virtue of its control of an entity known as Grower Service, which Union Carbide sold prior to the commencement of the litigation. *Id.*

228. *Id.* at 359-60. It may be relevant that during the same period in which the Rule 30(b)(6) dispute arose the government also served extensive Rule 36 Requests for Admissions on Union Carbide, which raised issues concerning the obligation of a party to authenticate documents. *Id.* at 365-66.

years when the dispute arose,[229] a consideration in a determination of the fair scope of duties imposed on a disclosing party.[230] While that timing might ordinarily favor forcing a party to make definitive statements, it was counterbalanced by a litigation history in which key claims against Union Carbide were not advanced until late in 1995, six years into the litigation and one month before the scheduled discovery cut-off on liability issues.[231]

The Rule 30(b)(6) deposition sought by the United States identified topics bearing on Union Carbide's alleged liability as an owner/operator of the Grower Systems facility. The time periods covered in the notice ran from 1959 through 1981.[232] At the time of the deposition dispute, Union Carbide's sale of the Grower Systems division had occurred fifteen years earlier.[233] As a result, the court observed, most of the individuals with knowledge of the Union Carbide/Grower Systems relationship and activities no longer were employed by Union Carbide and some of them had possibly died.[234]

Union Carbide moved for a protective order that would have quashed the Rule 30(b)(6) notice, and in late 1995 the court addressed that motion at a status hearing, entering a written order granting the motion only in part and denying other relief from the deposition.[235] The court adopted as its standard another decision from the same district which, several years before, had taken one of the most demanding views ever recorded of the duty to educate a Rule 30(b)(6) witness.[236] After Union Carbide sought clarification of the court's instructions, an initial session

---

229. *Id.* at 358.
230. We note elsewhere that the timing of contention interrogatories is a matter of some significance in managing that discovery tool; to the extent that a discovering party is permitted to use the Rule 30(b)(6) device to explore similar sorts of subjects, the timing of the deposition request bears on whether the case has reached such a stage that it is reasonable to require a party to take a firm position on its legal theories and the factual support for such theories. *See infra* text accompanying note 328.
231. *Taylor,* 166 F.R.D. at 358.
232. *Id.*
233. *Id.*
234. *Id.*
235. *Id.*
236. *See* Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126-27 (M.D.N.C. 1989).

of the deposition went forward in December 1995.[237]

The government was dissatisfied with that initial session and argued to the court in a telephonic motion that Union Carbide had failed adequately to prepare the witnesses.[238] Carbide took the position that its duty of reasonable effort meant that it must locate any knowledgeable current employees and use any documents then available to the company in the preparation, but that where there were no current employees with knowledge and no documents, it could respond by identifying retired employees who would be in a position to speak on the topics.[239]

The court clarified its prior instructions by advising Carbide that:

> [i]f it did not have any employees who had any knowledge about a topic, it was not required to provide an answer and thereby take a stance or assert a position, but *as a consequence, it also could not offer any evidence, direct or rebuttal, or argument at trial as to that topic.*[240]

*Requiring Preparation Using Other Discovery Fruits.* Any implementation of the preparation required under Rule 30(b)(6) to require review of "prior fact witness deposition testimony as well as documents and deposition exhibits"[241] is extremely dangerous. The asserted justification for this obligation—which obviously requires the witness to be fully prepared on the entire litigation—is that this level of preparation will allow the witness for the entity to state the "corporate position" at the Rule 30(b)(6) deposition "with regard to the prior deposition testimony."[242]

However, there is no basis for imposing a requirement that the corporation take a "position" on all deposition testimony in a

---

237. *Taylor*, 166 F.R.D. at 358.
238. *Id.* at 358-59.
239. *Id.*
240. *Id.* at 359 (emphasis added). Because of the paucity of case law elucidating the duties of entities which lack employees with knowledge about a specified Rule 30(b)(6) deposition topic, the court imposed no sanctions despite expressing the conclusion that the deposition was "unacceptable." *See id.* After the parties could not agree on draft orders embodying the court's telephonic rulings and almost a year of submissions, the court entered the published opinion resolving Carbide's obligations. *Taylor*, 166 F.R.D. at 362.
241. *Id.*
242. *Id.*

case. In part, this nonsensical implementation of Rule 30(b)(6) obligations flows from the rote application of the thought that all items "reasonably available" to the entity must be consulted.[243] This observation gets to one aspect of the problem: the proper mission of a deposition under the rule should be to provide the discovering party with advance warning about what persons within the entity know. It is not a device intended to provide *reactions to or assessments of* the myriad assertions in all depositions given by other witnesses, including non-parties or the adversary's own personnel.[244]

  *Preparation Involving Third Parties or the Adversary.* In the most demanding of rulings, the federal magistrate judge in *Taylor* required a party to have its Rule 30(b)(6) designee review not only documents recognized by the entity to be relevant for preparation, but also deposition transcripts of *other parties' witnesses selected by the examining adverse party.*[245] Collecting information from such sources is particularly troubling. Can it reasonably be argued that the corporation's witness must "learn" facts asserted by the adversary's witnesses in order to report the entity's "position" on contested facts? There are obviously many cases in which there are competing and inconsistent pieces of evidence. The notion that when the corporation has no knowledge through employees and documents in its possession, custody, or control, the company must select from, say, three non-party witnesses' versions of the events the one that it adopts as its knowledge or position is glib at best. To require the deposition designee to consider adversary witness testimony as part of the corporation's knowledge base is even less defensible.[246]

---

243. *Id.* at 361-62.

244. Using the deposition mechanism to obtain "admissions" about various facts buried in other deposition testimony which took place "prior to" the 30(b)(6) deposition itself has several problems. For one, the oral testimony mechanism is inherently less precise than a written distillation of desired "admissions," and in fact a tool exists for precisely this purpose: Rule 36 Requests for Admissions. *See infra* text accompanying notes 315-18.

245. *Taylor,* 166 F.R.D. at 365, ¶8; *see also* Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126-27 (D.N.C. 1989) (describing the extensive duties of entity proffering Rule 30(b)(6) witness in preparing its designated deponents for testimony about the areas of inquiry set forth in a notice).

246. *Cf.* T. Rowe Price Small-Cap-Fund, Inc. v. Oppenheimer & Co., 174 F.R.D. 38 (S.D.N.Y. 1997). At issue in the case was whether Oppenheimer had interviewed certain employees of its client, a bank, when conducting due diligence. *Oppenheimer,*

The placement of the burden of proof has a distinct bearing on the coherence of this position. If the corporation is the *defendant*, for example, it need not proffer any of the competing versions of the events, because the burden of producing evidence and the risk of non-persuasion on the factual propositions will lie with the opposition throughout the trial. The company can attack and oppose any or all of the "facts" asserted by the various witnesses purporting to have knowledge. Imposing an obligation on the entity to adopt one of the competing versions of events in such situations is senseless, unfair, and inconsistent with the standard (and accepted) burden.

In broad perspective, the enforcement of an obligation to review all disclosure material and to synthesize opposing as well as client-based factual materials is part and parcel of a view of the deposition process that seeks to make it the equivalent of a contention interrogatory device, which as we demonstrate below, is safer, less burdensome, and less subject to abuse than the oral deposition mechanism for these purposes.[247]

### C. *Proving or Disproving Adequate Preparation*

Where an entity's designee has no ability to recall "most of the events" on a topic designated for Rule 30(b)(6) testimony, the deposition testimony may be rendered meaningless.[248] And, predictably, where the topics on which the testimony is sought are matters over which the witness had personal responsibility, a fruitless deposition is sometimes taken as strong evidence of

---

174 F.R.D. at 45. Plaintiffs, contending that bank employees had given uncontradicted deposition testimony that they had *not* been interviewed, demanded that Oppenheimer must admit or deny that the interviews had taken place. *Id.* Oppenheimer responded that it was unable to admit or deny the request because its own personnel, when asked, could not remember whether they, or others who had done due diligence (some of whom were no longer available), had conducted such interviews. *Id.* The court held that "[u]nder these circumstances, Oppenheimer is not required to concede that [the third-party bank employees'] version of the facts is true." *Id.* In effect, the court recommended a solution which seems perfectly suitable for parallel situations that arise in the context of Rule 30(b)(6) controversies: Let the evidence be presented, and let the finder of fact evaluate its credibility and weight. *Id.; see also infra* text accompanying notes 360-70.

247. *See infra* text accompanying notes 284-355.

248. Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

HeinOnline -- 50 Ala. L. Rev. 696 1998-1999

poor preparation.[249]

Even with respect to topics about which the designated witness did not have "first-hand knowledge and involvement in the underlying transaction, the focus remains on the preparedness of the witness."[250] Because the topics selected by the discovering party may be broad, covering many subjects and long periods of time, a better approach to these issues is to focus on the available sources of information and the extent to which the witness was exposed to those matters before giving testimony.

Once an initial session of the deposition is held and disputes arise about the completeness of the witness's preparation, courts regularly consider several factors. The factors considered in measuring adequacy of preparation include: conferences by the witness with predecessors or co-workers, checking with outside offices such as governments or regulatory officials, contacting appropriate branches of the enterprise, and contacting senior executives.[251]

Sometimes affidavits submitted for another purpose will demonstrate that others possess knowledge that the designated witness lacks, and hence that the witness is either inadequately prepared or an insufficient designee.[252] Even if the designee "may have been the individual best situated to testify" as to some subjects, the witness may be inadequate as to others.[253]

Perhaps the most common issues in assessing proper preparation of a deposition witness under the rule center around whether review of documents or familiarity with pertinent documentary sources of information can be demonstrated in support of finding that the witness was properly prepared.[254] Whether

---

249. *Bank of N.Y.*, 171 F.R.D. at 151.

250. *Id.* (citing SEC v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y. 1992)).

251. Zappia Middle East Constr. Co. v. The Emirate of Abu Dhabi, No. 94-1942, 1995 U.S. Dist. LEXIS 17187, at *16 (S.D.N.Y. Nov. 17, 1995).

252. *Bank of N.Y.*, 171 F.R.D. at 151.

253. *Id.*

254. Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267 (D. Neb. 1989). In this case, the following colloquy concerning preparedness evolved:

> Mr. Facter: Well, hold on a second. The trouble is when you use lawyer's words the witness may not understand what you're talking about. I'll represent that Ms. Murphy took a look at the counterclaim that we had filed, and I assume that's embraced in what you mean by pleading. And she also took a

the witness has reviewed the pleadings is a common issue.[255]

Theoretically, preparation of a witness should not be limited to those documents the discovering party has thought to seek in Rule 34 production as of the date of the deposition. Rather, documents reasonably pertinent to the subject matters of the requested deposition testimony should be reviewed, whether or not the documents themselves have been requested or produced for inspection.[256]

In some litigations it has been suggested that by limiting the documents reviewed by the designated Rule 30(b)(6) witness,

---

look at some interrogatory responses.

I don't know whether that's embraced or not in what you mean by pleadings. And I also assume she's excluding from her answer things that she's seen over the past couple years before you served Exhibit 1 on Commonwealth's attorneys, which obviously are part of her background in being a designee of Commonwealth. So let me object to the ambiguity of the question.

Mr. Fitzgerald: Q. Well, let me just—I'll just clarify that.

You looked at Commonwealth's answer and counterclaim and you looked at Commonwealth's answers to interrogatories and you looked at the notice.

Did you look at anything else to get ready for this deposition:

A. I looked at the notice today.

Q. Okay. Did you do anything else to get ready for the deposition?

Mr. Facter: Same objection. It's the "get ready" part that we're having trouble with. She's obviously reviewed many documents related to this matter over the course of time. All of that is part of her readiness. If you're asking whether in the last few hours she's studied things, that's a different question.

Mr. Fitzgerald: Q. Have you looked at some of the documents that either Protective National or Global or Intere have provided as part of this lawsuit?

A. When?

Q. At any time before this deposition.

A. I guess I don't understand. Do you mean in the last couple of years?

Q. Yes.

A. Yes, in the last couple of years I've looked at some.

Q. You didn't look at any of that stuff specifically to get ready for this deposition within the last, I don't know, week or whatever. Is that a fair statement?

A. Yes.

Mr. Facter: There hasn't been much time to do anything but travel in the last week for either of us.

Mr. Fitzgerald: Okay.    (Pause.)

Q. Is there anybody at Commonwealth who is better qualified or more suitable to testify regarding the subjects that we have listed on page 2 of the notice to take deposition?    (Pause.)

A. At this time, no.

*Protective Nat'l Ins.*, 137 F.R.D. at 271.

255. *Id.*

256. *Zappia Middle East Constr. Co.*, 1995 U.S. Dist. LEXIS 17187, at *22-*24.

the disclosing party can undermine the efficacy of the deposition. However, it has been held that a record indicating merely that a party has previously produced all of the documents the witness reviewed in preparation for testimony is not, ipso facto, a sign of inadequate preparation.[257] Conversely, the fact that an entity's document production in an action has arguably been inadequate and erratic may well demonstrate that the witness it produces under Rule 30(b)(6) was not properly prepared.[258]

### V. MISUSE OF RULE 30(B)(6) DEPOSITIONS TO DISCOVER CONTENTIONS OR "ALL SUPPORTING PROOF"

Rule 30(b)(6) was never intended to be a culminating stage at which a party's entire proof would be synthesized for the benefit of the other side, organized, then restated orally by one omniscient witness's integration.[259] Nor does it perform this

---

257. *Id.* at *23. The following record was deemed barren of any suggestion that documents were selected for deposition preparation based on what has or has not been produced:

Q: . . . In preparation for this deposition, did you review a box file of documents provided to you by your attorneys?

A: Yes.

Q: In preparation for the deposition, did you review any other documents?

A: No.

Mr. Weinstein: Have you provided us all the documents that were in the box file, Mr. Liebman?

Mr. Liebman: Yes.

*Id.* at *24.

258. *Id.* at *23.

259. To appreciate the potential misuse of Rule 30(b)(6) and the mischief to which misapplication of its concepts may lead, assume that an entity has been noticed for a deposition under the Rule. The events giving rise to the claims, let us assume, are complex and involve the actions of any number of participants over a course of time. Assume further that the events which are central to the lawsuit occurred long ago, so that some number of the people who were agents of the entity are no longer under its control. Other participants in the events may be dead or missing. Still others are third parties who are not, and perhaps were never, under the control of the organization. Documents that bear upon the events are extremely voluminous, scattered, and often ambiguous—especially when their authors or recipients do not remember them, not to speak of when they are no longer available to interpret them. Counsel for the entity is now faced with the task of helping the client select and prepare one or more designees to testify on its behalf on what is "known or reasonably available" about the subjects which have been identified in a Rule 30(b)(6) notice.

In order to get a feel for some of the problems which may be engendered by

function fairly if pressed into the service of that goal. Nonetheless, a very common misuse of this procedure is reflected in topic specifications calling for just such a complete summary, listing all proof in support of each paragraph of a claim or defense. A similar form of inquiry calls for testimony about any averment in the discovering party's pleading as to which the adversary entered a *denial*.[260] The effect is equally broad.

While most requests for depositions under the rule arise in litigation among private parties, the reporters also contain numerous cases in which parties litigating against a governmental agency attempt to use the device to compel the governmental body—which typically did not focus on the events in question until long after the actors actually completed them—to tender a witness to synthesize what its investigation has disclosed. Depositions have been sought regularly from the Resolution Trust Corporation,[261] the Equal Employment Opportunity Commis-

---

an expansive and (we believe) misguided reading of the obligations imposed by Rule 30(b)(6) (as well as parallel provisions frequently found in state rules of procedure), imagine that the defendant in this case is the United States, and that the designated subject of the deposition is: What were the events leading up to and surrounding the assassination of President Kennedy? Or, to choose another example: How did the United States get involved in the Vietnam conflict; what happened during the course of that involvement; and what were the results?

While it may be difficult to envision the cases out of which these hypothetical 30(b)(6) deposition notices could issue, the point of the examples is to imagine what the far-reaches of the Rule might be thought to demand and, thus, get a better idea of what is fundamentally wrong with that position. After all, because the Government was at the center of critical events in both scenarios, because documents and witnesses are theoretically available, and because there are virtually unlimited resources of legal assistance and fact-gathering mechanisms available to the party targeted for the deposition, why shouldn't that entity be held responsible for formulating definitive responses to the questions posed and thereafter bound to adhere to these positions at a trial? One's immediate impulse is to respond as follows: The folly of the hypothetical examples is demonstrated by the fact that today, more than thirty years after the events in question, new (and sometimes even scholarly) books are still being written that offer "answers" which differ in dozens and hundreds of ways as to the details and the most fundamental underlying facts, contributing factors, and causes of the central events at issue in the designated topics. It is not just that one person, or a vast collection of persons, cannot be said to "know" the answers; rather, what we are disposed to say is that no one (individually) and we (collectively) do not know the answers. Yet, as we shall see, some courts have subscribed to a reading of the Rule which will not tolerate that sort of response by a 30(b)(6) deponent.

260. Skladzien v. St. Francis Reg'l Med. Ctr., No. 95-1518-MLB, 1996 U.S. Dist. LEXIS 20621, at *1 (D. Kan. Dec. 19, 1996).

261. *E.g.*, Resolution Trust Corp. v. Sands, 151 F.R.D. 616, 617-18 (N.D. Tex.

sion,[262] the Securities Exchange Commission,[263] and many others.[264]

One egregious Rule 30(b)(6) request called upon a large corporation to produce competent witnesses, as well as documents, in response to a 143-category notice under the Rule, many of which had additional subparts.[265] As interpreted by the court, the discovering party asked the entity to produce "every document, and recall every fact, conception, intention, understanding, belief, and sense impression" relevant to all of the issues in the case.[266]

The use of Rule 30(b)(6) depositions for this purpose flies in the face of the reasons for adopting the procedure as demonstrated in the legislative history of the Rule. In addition, this use of the questioning is unfair to the witness who is selected, as well to the party selecting the witness.[267] It ignores the concerns favoring the use of written discovery to obtain a specification of the contentions.

The potential for abuse by the discovering party is high here. Courts have noted that "if it's [sic] Rule 30(b)(6) representative cannot answer a question, either because the witness was not 'fully educated' or due to faulty memory, the party may well be confronted with a motion to dismiss or for summary judgment as a result of the witness' inability to answer."[268] Because in a complex case it may be impossible to "fully educate" any slate of witnesses to restate all aspects of the case in deposition format, the risk of a preclusive motion following the Rule 30(b)(6) depo-

---

1993) (seeking information on events occurring before Resolution Trust became involved in the underlying issue).

262. *E.g.,* EEOC v. American Int'l Group, Inc., No. 93-6390 (DKL) (RLE), 1994 U.S. Dist. LEXIS 9815, at *6-*10 (S.D.N.Y. July 18, 1994) (upholding the Agency's objections to Rule 30(b)(6) requests).

263. *E.g.,* SEC v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y. 1992).

264. *See, e.g.,* Martin v. Valley Nat'l Bank of Ariz., 140 F.R.D. 291, 315-16 (S.D.N.Y. 1991) (allowing Rule 30(b)(6) deposition of Department of Labor).

265. General Foods Corp. v. Computer Election Sys., 211 U.S.P.Q. 49, 49-50 (S.D.N.Y. 1980).

266. *General Foods,* 211 U.S.P.Q. at 49-50.

267. Elbein, *supra* note 6, at 365 ("A savvy party, using Rule 30(b)(6) aggressively—and capitalizing on the organization's ignorance—can destroy an organization's accustomed defenses before the organization is aware of an attack.").

268. *Id.* at 369 n.10 (citing Resolution Trust Corp. v. Bright, No. 3-92-CV-995-D, and other unreported cases involving the Resolution Trust Corporation).

sition makes the propriety of requiring such a synthesis in the first place a consideration of enormous import.

### A. The Super-Human Witness Required to Synthesize an Entire Case

Many courts hold that the deponent must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization.[269] But if the discovering party contends that the entity witness has "an obligation to prepare himself by searching files and interviewing witnesses so that he could fully and completely answer all questions," the super-human feat contemplated has led some courts to observe that "Rule 30(b)(6) is not designed to be a memory contest;" it may fairly be concluded that "[i]t is not reasonable to expect any individual to remember every fact in an [agency] investigative file."[270] Some courts have recognized the limits on a single human being who may otherwise be an appropriate designee in response to a Rule 30(b)(6) notice, characterizing the preparation and testimonial obligations to be an effort to testify "to the extent that she is able."[271]

*A Non-30(b)(6) Example.* Suppose, for example, that an examiner asks a corporate executive whether he has any basis for the company's claim. In one reported case, a party's president and chief executive officer testified at a deposition that he had no factual basis to support the company's allegations that the adversary had revealed confidential business information to third parties.[272] The adversary then moved for summary judg-

---

269. Bank of N.Y. v. Meridien BIAO Bank Tanz., Ltd., 171 F.R.D. 135, 150 (S.D.N.Y. 1997). *See generally* FDIC v. Butcher, 116 F.R.D. 196, 201 (E.D. Tenn. 1986), *aff'd*, 116 F.R.D. 203 (E.D. Tenn. 1986) (indicating a duty to prepare 30(b)(6) witnesses to speak for the corporation).

270. EEOC v. American Int'l Group, Inc., No. 93-6390 (DKL) (RLE), 1994 U.S. Dist. LEXIS 9815, at *8-*9 (S.D.N.Y. July 18, 1994); *Bank of N.Y.*, 171 F.R.D. at 150.

271. Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 283 (D. Neb. 1989).

272. Mike v. Dymon, Inc., No. 95-2405-EEB, 1996 U.S. Dist. LEXIS 18603, at *7 (D. Kan. Nov. 6, 1996). In *Mike*, The adversary moved for summary judgment based on testimony of this character:

Q: Do you know any factual basis for that allegation?

ment, claiming that the executive's "admission" bound the party, and that its claim therefore should be dismissed.[273] The court noted that the witness testified that he was not personally aware of any facts supporting the allegations in his company's claim, but the form of the questions did not purport to elicit overall corporate knowledge.[274] It held that a "corporation's knowledge certainly consists of more than the personal knowledge of a single officer."[275] As the court observed: "No corporate officer is required legally to have personal knowledge of the factual allegations supporting every lawsuit that involves the corporation."[276] The alternative would allow for unfair outcomes based on an artificial requirement that there be one omniscient executive who was capable of knowing and reporting all of the facts known to the entity as a whole:

> To hold otherwise would require the court to grant summary judgment in nearly every case that involves a large corporation. In each case, the moving party likely could find a single officer who did not know of the factual allegations of a lawsuit (and in fact did not even know a lawsuit had been filed).[277]

Thus, at least where counsel's questions were directed at the executive's *personal knowledge*, not the corporation's knowledge, from the form of the deposition notice, binding effect is denied.[278] Factors important to the court's conclusion that this was the concept of the deposition included whether the examiner noticed the deposition for testimony as an individual witness pursuant to Rule 30(b)(1), as a corporate officer under the same rule, or as a designated corporate representative most knowledgeable of the facts in the claim pursuant to Rule 30(b)(6).[279]

---

A: I have no factual basis.
Q: So no one has told you anything to show that he [the adversary party] has revealed confidential information?
A: No one showed me anything.
*Mike*, 1996 U.S. Dist. LEXIS 18603, at *8.

273. *Id.* at *6.
274. *Id.* at *8.
275. *Id.*
276. *Id.*
277. *Mike*, 1996 U.S. Dist. LEXIS 18603, at *8.
278. *Id.*
279. *Id.* at *9 (citing GTE Prods. Corp. v. Gee, 115 F.R.D. 67, 68 (D. Mass. 1987)).

Because an individual deposition was sought, the court rejected the argument that the party had admitted that it had no factual support for its claim.[280] The same conclusion follows when the deposition notice is issued pursuant to Rule 30(b)(6) as discussed below.

*The Omniscient Witness to Convey Analysis of the Case.* Reliance on Rule 30(b)(6) as a basis for requiring creation of a single, omniscient witness who can synthesize all of the preparations and knowledge of a party has been roundly castigated as a procedure not meriting serious consideration and one that refutes itself when spelled out. One court examined the logic of the process whereby a designee is expected to "supplement her limited personal knowledge with all relevant information known to the Government"[281] and concluded that however liberal the discovery rules are, they could not reasonably be construed as requiring a party in a case such as this to make a Rule 30(b)(6) deponent, who is an investigator assisting counsel, the repository of all information known to counsel so that she could then provide it to an adversary.[282]

While a party has the right to discover relevant factual information, when the facts are "available in the documents provided and through depositions of fact witnesses who were named as having relevant information," it is not appropriate to require an entity in effect to "marshall all of its factual proof and then provide it to [the Rule 30(b)(6) designee] so that she could respond to what are essentially a form of contention inter-

---

280. *Id.*

281. United States v. District Council of Carpenters, No. 90 Civ. 5722 (CHS), 1992 U.S. Dist. Lexis 12307, at *46 (S.D.N.Y. Aug. 14, 1992).

282. *District Council of Carpenters,* 1992 U.S. Dist. Lexis 12307, at *46. The court there stated:

> Defendants' contention that, as a Rule 30(b)(6) deponent, Agent Worsham has an obligation to supplement her limited personal knowledge with all relevant information known to the Government, does not, in my view, merit serious consideration. Taken to its logical conclusion, defendants' position would require that: 1) the various Assistant United States Attorneys with responsibility for drafting the Supplemental Complaint, supervising the investigation and preparing for trial in this action, collect and synthesize all of the information in their possession; 2) that they then impart that body of knowledge to Agent Worsham; and 3) that Agent Worsham, in turn, feed it back to defendants in response to their deposition questions. To state the proposition is to defeat it.

*Id.*

rogatories. Aside from any issues of privilege, this would be highly inefficient and burdensome, rather than the most direct manner of securing relevant information . . . ."[283]

## B. Contention Interrogatories and Rule 30(b)(6)

A party has a recognized right to learn before the trial begins what the contentions of the adversary will be. But in considering the discovery of contentions and expected evidentiary support for specific averments, "how this information should be elicited [is] another matter."[284] Whether to use a deposition tool under Rule 30(b)(6), which itself makes no reference to discovery of contentions, or some other device, is an important issue. According to one court, "[s]ome inquiries are better answered through contention interrogatories wherein the client can have the assistance of the attorney in answering complicated questions involving legal issues."[285] Because the modern procedure rules have one device specifically directed to disclosure of such matters in the discovery phase—contention interrogatories—it is appropriate to consider whether that device is either the exclusive means for discovery into such matters, or sufficiently superior so that use of depositions as an alternative should be rejected.[286]

---

283. *Id.* at *48–*49; *accord In re* Independent Serv. Org. Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996).

284. *See* Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 281 (D. Neb. 1989).

285. United States v. Taylor, 166 F.R.D. 356, 362 n.7 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996); *see* FED. R. CIV. P. 33(c).

286. When formulating the 1970 amendment, the Advisory Committee viewed the expenditure of judicial energy in deciding upon the permissibility of contention interrogatories as futile. The Committee stated that "[e]fforts to draw sharp lines between facts and opinions have invariably been unsuccessful, and the clear trend of the cases is to permit 'factual' opinions." Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 524 (1970). Thus, Rule 33 was amended to permit contention interrogatories. FED. R. CIV. P. 33(b). The following sentence now included in Rule 33(c) reflects this amendment:

> An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the court may order that such interrogatory need not be answered until after designated discovery has been completed or at a pre-trial conference or other later time.

FED. R. CIV. P. 33(c).

Under Rule 33, interrogatories asking for a statement of a party's opinion or contention that relates to fact or the application of law to fact is expressly permitted.[287] Generally speaking, the use of contention interrogatories has been restricted in many courts to the latter stages of the preparations:[288]

> Since interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer. Likewise, the court may delay determination until pretrial conference, if it believes that the dispute is best resolved in the presence of the judge.[289]

Some districts have explicitly incorporated such a timing provision in their local rules,[290] while others have imposed timing limitations in case law.[291] However, some courts also permit contention interrogatories in the early stages of litigation if the interrogatories would promote the goals of discovery.[292]

Most experienced judges and litigators recognize that the answers to contention interrogatories are in fact written by lawyers, not parties.[293] This is often for good reason, as the lawyer may have collected information from many different sources and will have knowledge of the legal regime that transcends the understanding of the client and its personnel.[294]

---

287. FED. R. CIV. P. 33(c).

288. B. Braun Med. Inc. v. Abbott Laboratories, 155 F.R.D. 525, 527 (E.D. Pa. 1994); *In re* Convergent Technologies Securities Litig., 108 F.R.D. 328, 337 (N.D. Cal. 1985).

289. Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 524 (1970).

290. S.D.N.Y. Rule 33.3 ("At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party may be served unless the court has ordered otherwise.").

291. *E.g.,* McCarthy v. Paine Webber Group, Inc., 168 F.R.D. 448, 450 (D. Conn. 1996); Fischer and Porter Co. v. Tolson, 143 F.R.D. 93, 95 (E.D. Pa. 1992).

292. *E.g.,* King v. E.F. Hutton & Co., Inc., 117 F.R.D. 2, 6 n.5 (D.D.C. 1987).

293. McCormick-Morgan, Inc. v. Teledyne Indus., 134 F.R.D. 275, 287 (N.D. Cal. 1991), *rev'd on other grounds,* 765 F. Supp. 611 (N.D. Cal. 1991).

294. As the magistrate judge supervising a patent case commented: "Parties, of course, provide substantial input, but they cannot be expected to have the range of understanding of patent law or of proceedings in the patent office to reliably identify and accurately articulate all of the predicates for their legal positions." *McCormick-Morgan,* 134 F.R.D. at 287.

*Comparing Contention Interrogatories and Rule 30(b)(6) Depositions.* One magistrate judge observed that "[n]othing in the Federal Rules of Civil Procedure gives a party the *right* to not respond or inadequately respond to a Rule 30(b)(6) deposition notice or subpoena request and elect to supply the answers in a written response to an interrogatory."[295] But even with the vicissitudes of contention interrogatory practice well in mind, comparing that tool to the use of oral depositions makes it apparent that the written medium of responses to sensibly crafted contention interrogatories is more likely to convey information fairly to both sides.[296]

A few courts, without reflection, have held that to the extent a litigant is seeking factual information relating to each of the claims in the litigation, "the use of a 30(b)(6) deposition is wholly appropriate" and the discovering party "need not serve contention interrogatories to discover the facts underlying [the adverse entity's] legal contentions,"[297] essentially dismissing the issue of whether information could more appropriately be provided in response to contention interrogatories as "largely a matter of semantics."[298] Indeed a few district courts have taken the position that deposition questioning is superior to contention interrogatories. One court noted, for example, that while contention interrogatories are a simpler and often more appropriate discovery method, "the deposition process provides a means to obtain more complete information and is, therefore, favored."[299] And a handful of courts have viewed Rule 30(b)(6) depositions and contention interrogatories as equally suitable, alternative devices to achieve the same ends: "Whether a Rule 30(b)(6) deposition or a Rule 33(c) contention interrogatory is more appropriate will be a case by case factual determination."[300] Even these courts

---

295. Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989) (emphasis added).

296. *McCormick-Morgan,* 134 F.R.D. at 287 (requiring, as a condition of an order pretermitting deposition under Rule 30(b)(6), that the entity be required to respond in full, forthcoming detail to the interrogatories that were to be served seeking similar contention information).

297. Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., No. 90-7811-KC, 1993 U.S. Dist. LEXIS 1163, at *7 (S.D.N.Y. Feb. 4, 1993).

298. *Arkwright Mut. Ins.,* 1993 U.S. Dist. LEXIS 1163, at *7

299. Ierardi v. Lorillard, Inc., No. 90-7049, 1991 U.S. Dist. LEXIS 11887, at *3 (E.D. Pa. Aug. 23, 1991) (quoting *Marker,* 125 F.R.D. at 126).

300. United States v. Taylor, 166 F.R.D. 356, 362 n.7 (M.D.N.C. 1996), *aff'd,* 166

have usually stopped short, however, of allowing the deposition mechanisms under this Rule to be used to pin down legal theories.[301]

More thoughtful decisions, exploring the related considerations in more depth, reach the conclusion that it is a misuse of the discovery tools to pursue contentions in a Rule 30(b)(6) deposition. These courts recognize that even the circumscribed form of "focused contention interrogatories," if over-used, can prove "pointless and can be highly burdensome (e.g., when they require a party to marshall all of its proof)," and *a fortiori* the use of an oral examination tool like a deposition under Rule 30(b)(6) in a fashion "which requires that person to inform herself of all relevant facts known by counsel or the [entity], is not an appropriate alternative."[302]

There is nothing in Rule 30(b)(6) to support the use of this tool to elicit contentions, and the very different Advisory Committee commentary on the scope and operation of the two rules, *issued on the same day by the same committee* considering both changes, speaks strongly for the opposite conclusion, that these are separate tools intended to address very different problems.[303] Most courts have, therefore, rejected the notion that these devices are equivalent.[304]

Even before the legitimation of contention interrogatories by express inclusion in Rule 33, one judge looked at the complexity of the legal allegations and concluded that the better way to derive the information was by interrogatories with respect to factual allegations respecting the contentions of the defendant.[305] On the other hand, where factual knowledge can con-

---

F.R.D. 367 (M.D.N.C. 1996).

301. *See Taylor*, 166 F.R.D. at 362 n.7.

302. United States v. District Council of Carpenters, No. 90 Civ. 5722 (CSH), 1992 U.S. Dist. LEXIS 12307, at *50 (S.D.N.Y. Aug. 14, 1992).

303. *See infra* text accompanying notes 345-55.

304. *See, e.g.*, McCormick-Morgan, Inc. v. Teledyne Indus., Inc., 134 F.R.D. 275, 286-87 (N.D. Cal. 1991), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991) (stating that a contention interrogatory, not a Rule 30(b)(6) deposition, is more appropriate in very complex and highly technical lawsuits); Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 282-83 (D. Neb. 1989) (stating that a Rule 30(b)(6) deposition, not contention interrogatories, is more appropriate where the designee has expertise to answer questions).

305. Lance, Inc. v. Ginsburg, 32 F.R.D. 51, 53 (E.D. Pa. 1962):

To be sure, the client presumably knows the facts (although not always), but

veniently be discovered by deposition, that procedure is appropriate.[305] More modern decisions under the present rules have found that a similar analysis is proper today.[307]

One seminal opinion gave the rationale that where the "legal consequences" of factual information is sought (for example, in a trademark case where usage or confusion facts are sought), it is "unrealistic to expect a lay witness to be able to give that information" on deposition because the legal aspects involved professional advice.[308]

One version of the test, therefore, is whether it "might be reasonably expected" that a witness of the character available to the company could "explain during an oral deposition" the information specified.[309] Of course, if the test is reduced to identifying propositions that are "purely legal" then most topics would be deemed suitable for deposition coverage.[310]

*Contentions and Beliefs.* Several courts have improvidently adopted the locution that the Rule 30(b)(6) designee "presents the corporation's 'position' on the topic."[311] Some courts have

---

he can hardly be expected to know their legal consequences. This is what lawyers are for. Defendant, of course, when asked the factual basis of what is obviously his lawyer's allegation, could simply aver lack of knowledge. Such an answer not only would not advance plaintiff's pre-trial knowledge, but could conceivably subject defendant to an unwarranted trial hazard on cross-examination. We think the cause of justice and the fruitful advancement of discovery will be better served by refusing plaintiff's motion to compel answers on depositions to inquiries on the factual basis of conclusionary allegations. While, as we have sought to make clear, plaintiff is undoubtedly entitled to such information, we think it could be more expeditiously and more intelligently obtained by written interrogatories.

*Lance*, 32 F.R.D. at 53.

306.  *Id.*

307.  *See Protective Nat'l Ins.*, 137 F.R.D. at 282.

308.  *Id.*

309.  *Id.*

310.  *See id.* An example offered by the court illustrates the distinction:

It is one thing to ask a defendant why an affidavit is "invalid" under the "Trade-Mark Act of 1946" and quite another thing to ask an accountant, who deals with reinsurance issues on an everyday basis, what facts she has in her possession upon which her employer relied when it alleges that "[e]fforts to bill and recover deductibles and salvage were highly sporadic, resulting in enormous costs to the reinsurers." The same thing is true of damages; certainly Ms. Murphy as an accountant, and a person experienced in dealing with reinsurance matters, can explain, albeit only generally perhaps, how, why, and in what measure, her employer claims to be damaged as a matter of fact.

*Id.* at 282-83 (citing *Lance*, 32 F.R.D. at 53) (references to record omitted).

311.  United States v. Taylor, 166 F.R.D. 359, 361 (M.D.N.C. 1996), *aff'd* 166

gone even further, holding that the designee "must not only testify about facts within the corporation's knowledge, but also as to "its subjective beliefs and opinions"[312] and "its "interpretation of documents and events."[313] There is no basis in the Rule or its legislative history for infusing the Rule 30(b)(6) deposition with such a function.

The argument for using the Rule 30(b)(6) mechanism to elicit beliefs, opinions and interpretations is that otherwise the company "would be able to deceitfully select at trial the most convenient answer presented by a number of finger-pointing witnesses at the depositions," and hence "[t]ruth would suffer."[314] In one sense this argument longs for something other than the adversary system, which allows a party to put its best face forward at trial by selecting the most favorable from the pool of potential witnesses to bring forward for testimony at trial. In another basic sense, the argument commits the fallacy of assuming that each discovery device must perform every function a well-designed litigation system must provide. This argument asserts that because the discovering party is entitled to obtain some definition about the adversary's actual contentions and expected trial position, the Rule 30(b)(6) deposition must be set up to provide that defining moment.

That view was clearly not among the intentions of the drafters of the rule. And it ignores the several other devices in the current procedural schema that provide exactly the sort of concrete specificity sought, without the burdens and unfairness of eliciting the information in a fluid, live format from one (or a few) persons who must master a complex situation of which they have no personal knowledge and about which, in the heat (or tedium) of a deposition they speak inaccurately, vaguely, ambiguously, or imprecisely. Such devices include, for example, Requests for Admissions under Rule 36, which can help assure that a party litigating against an entity is not "sandbagged" by new

F.R.D. 367 (M.D.N.C. 1996); *see* Lapenna v. Upjohn Co., 110 F.R.D. 15, 21 (E.D. Pa. 1986); Toys "R" Us, Inc. v. N.B.D. Trust Co., No. 88-10349, 1993 U.S. Dist. LEXIS 13621, at *4 (N.D. Ill. Sept. 27, 1993).

312. *Taylor*, 166 F.R.D. at 361; *Lapenna*, 110 F.R.D. at 20.

313. *Taylor*, 166 F.R.D. at 361; Ierardi v. Lorillard, Inc., No. 90-7049, 1991 U.S. Dist. LEXIS 11320, at *5 (E.D. Pa. Aug. 23, 1991).

314. *Taylor*, 166 F.R.D. at 361 (citing *Lapenna*, 110 F.R.D. at 25).

or different factual assertions.[315] Unlike statements provided as answers to interrogatories, which may be refuted or explained at trial, answers to requests for admissions conclusively establish the matter[316] and may be withdrawn or amended only with the court's permission.[317] The answer to a request for admissions is treated as a judicial admission "comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial" rather than as an evidentiary admission.[318]

Another device that can provide firm definition to an adversary's contentions and claims, including the factual support that will be offered at a trial, is *the pretrial order*.[319] In efforts "to eliminate the element of surprise" at trial,[320] the "formulation and simplification of the issues, including the elimination of frivolous claims or defenses," is one of the subjects for consideration at the pretrial conferences which leads to the formulation of the pretrial order.[321] Thus, attorneys are required to "make a full and fair disclosure of their views as to what the real issues of the trial will be."[322] The effect of a pretrial order is further strengthened by Rule 26(a)(3), which imposes an obligation on parties to identify documents and deposition testimony in its

---

315. FED. R. CIV. P. 36(a).

316. FED. R. CIV. P. 36(b); *see also* American Auto Ass'n v. AAA Legal Clinic, 930 F.2d 1117, 1120 (5th Cir. 1991) (holding that Rule 36 admissions conclusively establish a matter whether the admission was made affirmatively or through default, even if the matter pertains to material facts which may defeat the party's claim).

317. FED. R. CIV. P. 36(b). A court's disposition on whether to permit withdrawal or amendment to a Rule 36 admission is based on a two prong evaluation: (1) whether the "presentation of the merits of the action will be subserved thereby" and (2) whether the party who has obtained the admission is able to satisfy the court that withdrawal or amendment will result in prejudice. Teleprompter, Inc. v. Erie, 567 F. Supp. 1277, 1286-87 (W.D. Pa. 1983).

318. Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 524 (1970).

319. FED. R. CIV. P. 16(e). The rule on pretrial orders states: "After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice." *Id.*

320. Gillming v. Simmons Indus., 91 F.3d 1168, 1173 (8th Cir. 1996) (quoting Nutt v. Black Hills Stage Lines, Inc., 452 F.2d 480, 483 (8th Cir. 1971)).

321. FED. R. CIV. P. 16(c)(1).

322. Erff v. MarkHon Indus., Inc., 781 F.2d 613, 617 (7th Cir. 1986) (citing Payne v. S.S. Nabob, 302 F.2d 803 (3d Cir. 1962); Cherney v. Holmes, 185 F.2d 718 (7th Cir. 1950)).

final pretrial disclosures.[323] Rule 37(c)(1) states that failure to make such identifications will render the items unusable as evidence at trial unless the failure to identify was harmless.[324]

The pretrial order controls the "issues to be considered at trial" because it "supersed[es] the pleadings."[325] Courts place importance on the pretrial orders "[b]ecause the parties rely on the pre-trial conference to inform them precisely what is in controversy."[326] Consequently, courts are empowered to bar testimony by witnesses not disclosed at the time of the pretrial order.[327]

Given these devices, and all of the other discovery tools themselves, the need to warp Rule 30(b)(6) proceedings into an all-purpose summary of a party's contentions, expected proof on each point, and synthesis of any contested factual matters is non-existent.

*Timing considerations.* Additionally, the problems of timing and unfairness must be faced. Imposing the obligation on a designated corporate representative to synthesize the corporate position on all prior testimony, which may be impossible in large cases in any event, presupposes that the state of the record at the date of the Rule 30(b)(6) deposition is definitive. Only if the entity deposition is taken at the end of the case—after completion and closure of all other depositions, all document production, rendition of all expert reports and any depositions of the experts—could the deposition of an entity under Rule 30(b)(6) even theoretically provide a distillation of the entity's "position" on all of the assertions made by all witnesses or reflected in all documents.

So the concept only works in the abstract if the Rule 30(b)(6) deposition is the last event on the eve of trial. There is,

---

323. FED. R. CIV. P. 26(a)(3).
324. *Id.* 37(c)(1).
325. *Erff*, 781 F.2d at 617 (citing In-Sink-Erator Mfg. Co. v. Waste King Corp., 346 F.2d 248, 251 (7th Cir. 1965)); *see* Hernandez v. Alexander, 671 F.2d 402, 407 (10th Cir. 1982) ("[T]he pre-trial order supersedes the pleadings and becomes the governing pattern of the suit.").
326. *Erff*, 781 F.2d at 617.
327. Mankey v. Bennett, 38 F.3d 353, 359 (7th Cir. 1994) (excluding the testimony of an expert witness whom the proffering party did not include in the witness list and when the proffering party failed to give notice of intent to add the witness until several days before trial).

not to put too fine a point on it, no indication whatsoever in the history of the Rule that it was intended to operate in that fashion. Indeed, in the same revisions to the federal rules by which Rule 30(b)(6) was added, the 1969 amendments effective in 1970, the drafters demonstrated that they knew how to suggest that a device was best reserved for late in the discovery process. Such a suggestion was made in the same 1969/1970 wave of amendments, and the same Advisory Committee notes, with respect to the newly recognized device of contention interrogatories, but *not* with respect to the newly created entity deposition procedure under Rule 30(b)(6).[328] Indeed, the commentary accompanying the entity deposition procedure suggests that these depositions would be useful at the *outset* of discovery, when the person opposing the entity is in the dark as to the identities of knowledgeable witnesses within the company.[329]

And, even assuming that the concept were to have this form of deposition be taken as a culminating event, it treads on unreasonable assumptions. It envisions a single, omniscient witness, or team of witnesses, who can manage to hold in his head all facts, actions, opinions, statements and documents of perhaps dozens of individuals stretching perhaps over many years, and that *oral testimony* at a deposition, with the vicissitudes of memory, oral expression and transcription is a sensible means of eliciting the "corporate position" on all facts and issues in a case. Written contention interrogatories, late in the case preparations, can address these issues, but the use of oral depositions for a similar purpose is foolishly impractical and unfair.

*Work Product Implications.* Some courts have held that

---

328. Compare the Advisory Committee's Note to Rule 30(b)(6), which makes no mention of delaying the scheduling of an entity deposition until the close of other preparations, with the note accompanying the contention interrogatory language in Rule 33, where the Advisory Committee observed that "[s]ince interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed," the answer to an interrogatory may be deferred. The Advisory Committee's cautious approach regarding contentions in Rule 33 and the conspicuous absence of any such language in the Note to Rule 30(b)(6) suggest that the use of Rule 30(b)(6) to inquire into contentions was not envisioned by the Advisory Committee. Had it been otherwise, it is likely that the Note to Rule 30(b)(6) would contain similar language. *See* Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 524 (1970).

329. *See, e.g., id.*

contention interrogatories, at least when used late in the prepa-
rations, do not implicate attorney work product.[330] Of course,
to some extent any identification of contentions reflects the
thought processes and advice of counsel. However, at the end of
preparations, the need for privacy for work product is alleviated,
if only because the actual contentions selected for use at trial
will be disclosed publicly shortly and, hence, are not expected or
intended to remain protected. The alternative theories or plans
considered by counsel along the way but ultimately rejected,
which also would disclose counsel's thinking, are not proper
subjects for contention interrogatories. On the other hand, a
Rule 30(b)(6) deposition mid-stream, which inquires into the
ordering of proof and the like, inevitably discloses the interim
thinking of counsel on contentions, on the "relevant" or control-
ling documents for the witness to review, and on which testimo-
ny will prove admissible——or persuasive?——at trial. Hence, to
this extent, contention interrogatories at the end of the litigation
are far less likely to trammel upon a recognized, albeit qualified,
area of confidentiality. Several decisions have suggested that the
inherent work product concerns about eliciting the ordering and
assessment of expected proof are easier to manage when the
discovery tool is a written question rather than a more free-flow-
ing and "real time" oral deposition.[331] One judge quoted with
approval the conclusion that "contention interrogatories are not
just a viable alternative, but the proper discovery device under
the circumstances."[332]

   *Abuse of the Witness and the Producing Party.* One concern
with the use of depositions to catalog all expected proof sounds
in fairness. A company responding to discovery demands may

---

   330. *See, e.g., In re* San Juan Dupont Plaza Hotel Litig., 859 F.2d 1007,
1017 (1st Cir. 1988); King v. E.F. Hutton & Co., Inc., 117 F.R.D. 2, 5 n.3 (D.D.C.
1987).
   331. *See* SEC v. Morelli, 143 F.R.D. 42, 48 (S.D.N.Y. 1992) (citing McCormick-
Morgan, Inc. v. Teledyne Indus., Inc., 134 F.R.D. 275, 286-87 (N.D. Cal. 1991), *rev'd
on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991) (barring a Rule 30(b)(6) deposi-
tion and permitting contention interrogatories for discovering "the bases for the con-
tentions made and for the positions taken")); Niagara Mohawk Power Corp. v. Stone
& Webster Eng'g Corp., 125 F.R.D. 578, 594 (N.D.N.Y. 1989) (recognizing the viabili-
ty of interrogatories as an alternative discovery method).
   332. *See Morelli*, 143 F.R.D. at 48 (S.D.N.Y. 1992); *accord* SEC v. Rosenfeld, No.
97-1467 (RPP), 1997 W.L. 576021 (S.D.N.Y. Sept. 16, 1997).

reasonably fear that the discovering party is attempting to build a record that could later be used unfairly (for example, in a motion for summary judgment, or to embarrass a witness on cross-examination at trial). In particular, the basic concern is that the discovering party, in effect, demands "that a human being who had been designated as a 30(b)(6) witness set forth in full detail every item of evidence and every aspect of legal argument or authority that had any tendency to help support any position (factual or legal) [that the company] was taking in the litigation."[333] Thus, an entity may believe that in a very complex, highly technical lawsuit, no human being could reliably and completely set forth this material, which leads to the specter of the discovering party attempting to use the transcripts of these depositions to limit the evidence and arguments the entity may present at trial, or to argue, as on a motion for summary judgment, that there were insufficient bases for one or more of the contentions.[334]

Other grounds for opting for a more limited construction of Rule 30(b)(6) are the general considerations of efficiency and common sense. One could argue that "by far the most reliable and complete discovery vehicle for setting forth the bases (in evidence, events, and law) for a party's contentions and positions would be a set of responses, written after the close of virtually all other discovery, to sensibly framed contention interrogatories."[335] Indeed, there seems to be no justification for pursuing this kind of information through more than one discovery tool; rather, it makes no sense to waste the time and money that would be involved in exploring the same topics through both a set of 30(b)(6) depositions and through a set of contention interrogatories.[336] While it has been noted that

> there might be some circumstances in which pursuing the same kind of information, or exploring the same subjects, through more than one discovery tool could be justified (e.g., where credibility issues were pivotal, or the information sought was of such an elusive and important character that fair explication of it would

---

333. *McCormick-Morgan*, 134 F.R.D. at 286.
334. *Id.*
335. *Id.*
336. *Id.*

require probes from more than one direction and in more than one form),

such a justification should affirmatively be made out before the duplication and waste are undertaken.[337]

When considered on the merits, the question as to "which of the available devices is most appropriate, i.e., which device would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court in a case like this[]" is not hard to answer.[338]

Thus, judges who have gone on record in other contexts expressing considerable skepticism about the appropriateness of the use of contention interrogatories at early stages of litigation generally, and in certain kinds of cases,[339] find themselves persuaded that "no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party . . . ."[340]

The arguments are even stronger in cases where the "bases" for contentions "do not consist exclusively of relatively straightforward facts or evidence, as might be true, by contrast, in a case arising out of a traffic accident."[341] Therefore, for example, in intellectual property litigation and other domains involving a number of mixed questions of law and fact, "to set forth the bases for contentions . . . it is not enough to describe real world facts and events, even in considerable detail."[342]

> Rather, determining what the bases for contentions are in this environment involves complex judgments about the relationship between at least three kinds of things: (1) evidence/facts/events in the real world (outside litigation), (2) "claims" as particularly set forth in the patent in issue and in other patents or other material presented to the patent office, and (3) principles of intellectual property law set forth in statutes and in judicial opinions. A non-lawyer deponent might have great knowledge about the products

---

337. *Id.*
338. *McCormick-Morgan*, 134 F.R.D. at 286.
339. *In re* Convergent Techs. Sec. Litig., 108 F.R.D. 328, 338 (N.D. Cal. 1985).
340. *McCormick-Morgan*, 134 F.R.D. at 286.
341. *Id.* at 287.
342. *Id.*

in issue here, but be quite ill-equipped to reason reliably about the legal implications of the relationship between those products, or their components, and the various claims of the patent in suit or of other patents or prior art. Patent cases turn peculiarly on a conceptually dense dynamic between physical objects, words in claims, and principles of law.[343]

In many forms of modern, complex litigation, therefore, "a substantial part of 'the bases for contentions' really consists of *quasi-legal argument.*"[344]

*Legislative History.* It is inconceivable that the Advisory Committee intended Rule 30(b)(6) to be the means by which discovery of a party's contentions was to be secured. Prior to 1970 there were conflicts in the case law as to the permissibility of contention discovery vel non.[345] In 1970 the Advisory Committee sought to clarify and make coherent the law on the discovery of contentions, and it did so by amending the rule addressing only one of the discovery devices, Interrogatories under Rule 33.[346]

A reading of the advisory commentary accompanying the contention interrogatory language inserted in Rule 33 makes it clear that the Committee was aware of the friction that has historically attended contention discovery. The Committee was evidently cognizant of the history of motion practice, and the problem of *timing* of contention discovery in particular.[347] Thus, the Advisory Committee's Note went to the extraordinary length of suggesting that late scheduling of contention discovery was one means of avoiding difficulties with this newly legitimized form of discovery.[348]

Rule 30(b)(6) was created in the same discovery amendments report issued in 1969 and went into effect on the same

---

343. *Id.* With respect to patent litigation, the court commented that "[u]nderstanding that dynamic, and describing the relationships that serve as the bases for a given parties' [sic] contentions, is something best done by patent lawyers, and best done after at least most other discovery has been completed." *Id.*

344. *McCormick-Morgan*, 134 F.R.D. at 287.

345. *See* Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 459, 524 (1970).

346. *Id.* at 523-24.

347. *Id.* at 524.

348. *Id.*

day in 1970 as the contention interrogatory provision.[349] The Advisory Committee's Note accompanying this new deposition provision *makes no mention of contentions*. Indeed the flavor of the deposition rule characterization by the Committee is that the designation device was a *minor convenience* being created to avoid unnecessary guesswork at the outset of a case when the party litigating against the entity may lack information as to which of many officers and employees has personal knowledge of topics relevant to the lawsuit.[350] Given the extensive discussion of the difficulties attending *contentions* in the Rule 33 amendments, it is inconceivable that the Committee intended to authorize an alternative exploration of these same matters under another procedure, and surely it would not have attempted to do so without even *mentioning* the concept anywhere in the Advisory Notes. If the Committee had intended to address the years of bickering over contention interrogatories by suggesting that oral deposition was a solution, that startling proposition would have required considerable explanation.

The timing aspects also demonstrate that it could not have been an intention of the rules' drafters that depositions be used for this purpose. The Committee was quite conscious of the fact that the discovery of contentions generates substantial volumes of motion practice, and that the goal of providing fair description of trial contentions is best advanced by a statement of them *late in the preparations*.[351] On the other hand, the entire flavor of the new provision for entity depositions reflects concerns applicable at *the outset of the litigation*.[352] It is at that early stage when the adversary of a company will know least about the internal structure of the entity.

The essential purpose of the Rule 30(b)(6) deposition mechanism is reflected in the Advisory Committee's focus on the burdens involved. The Committee recognized that finding witnesses to address topics required effort by an entity.[353] The counterweight—the factor which was stated by the Committee to justify

349. *Id.* at 515, 524.
350. Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 459, 524 (1970).
351. *Id.* at 524.
352. *Id.* at 515.
353. *Id.*

the imposition of this burden on the company[354]—was *not* that the discovering party had a need to learn contentions (a matter not even raised in the comment to Rule 30(b)(6)). Rather, it was the discovering party's need to obtain *leads to the identity of knowledgeable people* and some basic information about the company.[355]

Given the practical concerns of the courts discussed above, and this legislative history, it is crystal clear that depositions should not be used as a contention specification mechanism.

### C. *"Complete Support" Questions and Work Product*

The work product doctrine "promote[s] the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent."[356] The doctrine, set forth in Rule 26(b)(3), implements the Supreme Court's decision in *Hickman v. Taylor*.[357] It generally protects documents and tangible things prepared in anticipation of litigation or for trial and by or for another party or by or for that other party's representative.[358] Special concern is directed to disclosures which are calculated to reveal the mental processes of counsel.[359]

*Facts and the Confidentiality Doctrines.* Of course, the privilege and work product protections do not preclude discovery of *factual information*.[360] Clients cannot refuse to disclose facts which their attorneys conveyed to them and which the attorneys obtained from independent sources.[361] And a discovery request

---

354. *Id.*

355. Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 524 (1970).

356. Shields v. Sturm, Ruger & Co., 864 F.2d 379, 382 (5th Cir. 1989) (citing United States v. AT&T, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

357. 329 U.S. 495 (1947).

358. Blockbuster Entertainment Corp. v. McComb Video, Inc., 145 F.R.D. 402, 403 (M.D. La. 1992) ("Protection is given to those documents prepared by agents of an attorney because an attorney must rely on the assistance of others in preparation for trial.").

359. FED. R. CIV. P. 26(b)(3); *see Hickman*, 329 U.S. at 510, 512-13.

360. Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981).

361. Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 278-79 (D. Neb. 1989); *see* Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1205 (8th Cir. 1982) (citing *Hickman*, 329 U.S. at 508); 8 J. WIGMORE, WIGMORE ON EVIDENCE § 2317

directed to facts supporting the allegations in a claim or defense does not implicate the protection of the confidentiality doctrines.[382]

Work product analysis in connection with midstream Rule 30(b)(6) depositions is more difficult. On occasion lawyers and judges have been tempted to skirt the reality of the effects of an early Rule 30(b)(6) deposition by noting that the attorney was "not asking [the deponent] to relate the opinion that your counsel gave you. I'm asking [the deponent] for the facts that support this allegation."[363] However, this approach fails to recognize that if an unknowledgeable witness has been educated by counsel in an effort to comply with Rule 30(b)(6) obligations, the attorney's thought processes in the selection of evidence and organization of issues will commonly be involved in that process. The deposition thus becomes an easy window into what the attorney for the entity thinks is important, relevant, supportive of a particular proposition, or persuasive on the facts.

Some courts have concluded flatly that "[t]here is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel."[364] This view proceeds from the assumption that questions asking a witness about what facts she was aware of which supported a particular allegation in a claim or defense do not improperly tend to elicit the mental impressions of the entity's lawyers who participate in the preparation of the witness or advice to the company during that process.[365]

Rule 612 of the Federal Rules of Evidence, which provides for disclosure of writings used to refresh a witness's recollection at trial, also provides for production of material consulted beforehand in preparations, and to the extent that depositions are considered hearings under this rule by some courts, the argument exists that the examining counsel has a basis for requesting to know what material was reviewed.[366] Even so, where all

---

(McNaughton rev. ed. 1961).

362. *Protective Nat'l Ins.*, 137 F.R.D. at 279.
363. *Id.*
364. *Id.* at 280.
365. *Id.*
366. *See* authorities collected in Elbein, *supra* note 6, at 371 nn.17-18; *see also*

documents reviewed are a subset of the full production made to the discovering party, the specification of which members of that larger universe were identified by counsel in preparing the witness will reflect counsel's thinking most clearly. Indeed, it is the selection process itself that provides the basis for invoking work product protections relating to documents used to prepare witnesses for deposition testimony.

But even those courts taking a fairly uncompromising view of this proposition in the abstract recognize that the deposition device has special risks as a means of eliciting the factual information.[367] Thus, "depending upon how questions are phrased to the witness, deposition questions may tend to elicit the impressions of counsel about the relative significance of the facts; opposing counsel is not entitled to his adversaries' thought processes."[368] In such situations special effort is required "to protect against indirect disclosure of an attorney's mental impressions or theories of the case."[369]

Determining the degree to which a particular deposition question elicits the mental impressions of the attorney who communicated a fact to the deponent can be a difficult problem in the Rule 30(b)(6) situation in particular. "In a sense, any fact that a witness learns from his or her attorney presumably reveals in some degree the attorney's mental impressions of the case, or, presuming rationality, the attorney would not have communicated the fact to the client."[370] And the focus of Rule 30(b)(6) disputes on what a witness was asked to review presents the issue head on.

*Deposing Counsel or Witnesses Prepared by Counsel.* The propriety of questions of a specially prepared Rule 30(b)(6) witness raises some of the same concerns implicated when the deponent is the attorney herself. And where the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for liti-

---

Ronald B. Coolley, *Defending Corporate Officers in Depositions*, 73 J. PAT. OFF. SOC'Y 766, 773 (1991).

367. *Protective Nat'l Ins.*, 137 F.R.D. at 280.

368. *Id.* (citing Michael E. Wolfson, *Opinion Work Product—Solving the Dilemma of Compelled Disclosure*, 64 NEB. L. REV. 248, 258-62 (1985)).

369. *Id.*

370. *Id.*

gation, the mere acknowledgment of the study or review of, or perhaps even the existence of those documents, would reveal counsel's mental impressions, which are protected as work product.[371]

While the Federal Rules of Civil Procedure do not specifically prohibit the taking of opposing counsel's deposition,[372] the practice of taking opposing counsel's deposition is viewed by many as a "negative development in the area of litigation, and one that should be employed only in limited circumstances."[373] It is commonly thought that such activities should be undertaken only where no other means exist to obtain the information than to depose opposing counsel,[374] the information sought is relevant and nonprivileged, and the information is crucial to the preparation of the case.[375] The existence of interrogatory answers and documents already produced was deemed relevant to assessing the need for probing counsel's thought processes in assembling documents.[376]

To the extent that Rule 30(b)(6) depositions, particularly before the end of preparations, are uniquely calculated to disclose what counsel has advised the company are relevant or important or persuasive documents, similar considerations and similar need for restraint apply. Just as depositions of opposing counsel are shunned,[377] a Rule 30(b)(6) deposition that effectively discloses counsel's views on the preparation of the case for trial is inappropriate.[378]

Counsel's view as to the significance or lack thereof of particular facts, or any similar matters, reveals the company

---

371. Shelton v. American Motors Corp., 805 F.2d 1323, 1328 (8th Cir. 1986).

372. *See* FED. R. CIV. P. 30(a) (a party may take the deposition of "any person").

373. *Shelton*, 805 F.2d at 1327.

374. *Id.* (citing Fireman's Fund Ins. Co. v. Superior Court, 140 Cal. Rptr. 677, 679 (Cal. Ct. App. 1977)).

375. *Id.*

376. *Id.* at 1327-28.

377. *See* N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 85 (M.D.N.C. 1987); *see also* Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 125 F.R.D. 578, 593 (N.D.N.Y. 1989) ("[T]he deposition of counsel increases the likelihood that the attorney will be called as a witness at trial. Under such circumstances the attorney would normally be disqualified from providing further services."); SEC v. World-Wide Coin Inv., Ltd., 92 F.R.D. 65, 67 (N.D. Ga. 1981) (barring deposition of SEC trial counsel).

378. *See* SEC v. Morelli, 143 F.R.D. 42, 46-47 (S.D.N.Y. 1992).

attorney's mental impressions concerning the case.[379] When this issue has been raised, interrogating counsel have on occasion been directed that, when formulating questions, they should avoid lines of inquiry intended to elicit the advice rendered by the designating company's counsel.[380] In one insurance case, the carrier, resisting aspects of a Rule 30(b)(6) notice, declined to designate a "spokesperson" under the rule "because the allegations contained in the answer and counterclaim and the information concerning the answer and counterclaim were derived from an ongoing investigation conducted by [the company's] attorneys and not from an officer, director or managing agent of Commonwealth or any other person subject to designation under Rule 30(b)(6)."[381]

The relationship between communication from counsel and a designated witness's "knowledge" poses difficulties in the Rule 30(b)(6) context, and has been known to make a deposition under the Rule "really . . . unravel."[382]

Discovery which provides to the adversary a roadmap to the disclosing party's selection, organization and assessment of a welter of facts and documents raises fundamental work product concerns.[383] A seminal decision on the issue of whether selection and compilation of documents by counsel in preparation for pretrial discovery falls within the protected category of opinion work product reasoned that the selection and compilation of documents by counsel inevitably reveals important aspects of an attorney's understanding of the case.[384] This conclusion follows

---

379.  Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 283 (D. Neb. 1989); *see* Ford v. Philips Elec. Instruments Co., 82 F.R.D. 359, 361 (E.D. Pa. 1979).

380.  *See Protective Nat'l Ins.*, 137 F.R.D. at 283.

381.  *Id.* at 270.

382.  *Id.* at 272.

383.  In one litigation, a union sought deposition of the United States Attorney's Office about the government's investigation of the matters in suit, and an FBI agent involved in the investigation gave an initial session of deposition testimony generally describing the procedures. Thereafter, the court found that the defendants' search for facts relevant to the allegations of the government's complaint created an inevitable clash with matters arguably protected by the work product doctrine. United States v. District Council of Carpenters, No. 90 Civ. 5722 (CSH), 1992 U.S. Dist. LEXIS 12307, at *3-*4 (S.D.N.Y. Aug. 14, 1992).

384.  Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985) (citing James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138, 144 (D. Del. 1982)).

even though the individual documents included in the compilation are not protected under the work product doctrine.[385]

In a case in which corporate litigants had exchanged over 200,000 pages of documents during the course of discovery, deposed dozens of witnesses, and exchanged hundreds of interrogatories, the court was more than willing to assume that the Rule 30(b)(6) witness's company counsel

> have spent much of their time culling through hundreds of thousands of pages of documents, transcripts, and interrogatory responses, in an effort to select and compile the facts and documents relevant to each separate affirmative defense—in effect, to marshall the evidence in support of each of [the entity's] contentions. These activities are protected from discovery by the work-product doctrine.[386]

The criticism is true of a series of oral questions asking for the "facts and documents which [the entity] contends support" each affirmative claim averment or defense,[387] or of a notice stated with similar breadth.[388]

The "'selection and compilation theory'" of work product has been recognized by a number of courts.[389] Thus, in the document-production process, production of otherwise unprivileged documents may be protected from discovery if disclosure of the

---

385. Schwarzkopf Technologies Corp. v. Ingersoll Cutting Tool Co., 142 F.R.D. 420, 423 (D. Del. 1992).

386. American Nat'l Red Cross v. Travelers Indem. Co. of R.I., 896 F. Supp. 8, 13 (D.D.C. 1995); Shelton v. American Motors Corp., 805 F.2d 1323, 1329 (8th Cir. 1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research.") (citing James Julian, Inc., v. Raytheon Co., 93 F.R.D. 138, 144 (D. Del. 1982)); see also Berkey Photo, Inc. v. Eastman Kodak Co., 74 F.R.D. 613, 616 (S.D.N.Y. 1977) (barring discovery of "counsel's ordering of the 'facts,' referring to the prospective proofs, organizing, aligning, and marshaling empirical data with the view to combative employment that is the hallmark of the adversary enterprise").

387. American Nat'l Red Cross, 896 F. Supp. at 14.

388. See SEC v. Morelli, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (stating that defendant's notice of Rule 30(b)(6) deposition "constitute[d] an impermissible attempt . . . to inquire into the mental processes and strategies of the SEC . . . [in that defendant's notice was] intended to ascertain how the SEC intends to marshall the facts, documents and testimony in its possession . . .").

389. See, e.g., United States v. District Council of Carpenters, No. 90 Civ. 5722 (CSH), 1992 U.S. Dist. LEXIS 12307, at *24 (S.D.N.Y. Aug. 14, 1992) (quoting In re Grand Jury Subpoenas Dated Oct. 22, 1991 and Nov. 1, 1991, 959 F.2d 1158 (2d Cir. 1992)).

HeinOnline -- 50 Ala. L. Rev. 724 1998-1999

items presents a real concern that the thought processes of counsel would be exposed.[390] A concrete or practical risk that the thought processes of counsel will be disclosed is a concern, while remote risks[391] or mere speculation to that effect will not trigger work product concerns.[392] At the end of the case, and particularly where production of documents is ordered by the court as a case-management tool in planning trial, some circuits have concluded either that disclosure of the selection and screening of documents would not substantially reveal an attorney's thought processes and therefore did not constitute "opinion work product," or that such thought processes would be revealed in any event in a short time at the trial itself.[393]

Thus, while some courts have imposed a form of synthesis obligation upon a party, particularly a governmental agency,[394] more recently courts are carefully considering the facts of such situations to determine whether legitimate information needs of a party preparing for trial are actually going un-met, after frustrating efforts to use other discovery avenues, before a designated deposition witness will be seen as a rational solution to the dilemma.[395] One factor that has been noted is whether the

---

390. *See In re* Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991, 959 F.2d 1158, 1167 (2d Cir. 1992) (determining that production was required because the documents sought from counsel were all telephone records relating to particular clients for a five-year period—not a select group of documents to which counsel attached particular relevance; recognizing a substantial need for the production because it was unlikely the information would otherwise be available from another source).

391. United States v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 698-99 (S.D. Fla. 1990) (noting that a Rule 30(b)(6) witness would be required to answer factual questions even if those facts were learned by reviewing documents provided by counsel but that this situation presented only a remote risk of disclosure of counsel's impressions and thought processes).

392. *In re* San Juan DuPont Plaza Hotel Fire Litig., 859 F.2d 1007, 1015 (1st Cir. 1988).

393. *In re San Juan DuPont Plaza Hotel,* 859 F.2d at 1017.

394. *See* FDIC v. Butcher, 116 F.R.D. 196 (E.D. Tenn. 1986), *aff'd* 116 F.R.D. 203 (E.D. Tenn. 1987).

395. *See, e.g.,* United States v. District Council of Carpenters, No. 90 Civ. 5722 (CSH), 1992 U.S. Dist. LEXIS 12307, at *47-*48 (S.D.N.Y. Aug. 14, 1992). In *District Council of Carpenters,* the court analyzed the situation in *FDIC v. Butcher,* a case defendants relied on, as follows:

[T]he defendant bank officers, sued for various acts of negligence in carrying out their duties, were frustrated in securing information as to even the most basic facts underlying the accusations against them, e.g., identification of the

Alabama Law Review            [Vol. 50:3:651

witness has at least some knowledge based on personal partici-
pation in the events.[396]

Another factor is whether the disclosing party can aver that
all of the underlying information that its deposition witness
reviewed has already been produced. When the entity demon-
strates that all relevant, non-privileged evidence has been dis-
closed to the defendants, a proposed Rule 30(b)(6) deposition
seeking synthesis of the supporting facts "constitutes an imper-
missible attempt by defendant to inquire into the mental pro-
cesses and strategies of the [entity],"[397] and hence the court
was "drawn inexorably to the conclusion that [the] Notice of
Deposition is intended to ascertain how the [entity] intends to
marshal the facts, documents and testimony in its possession,
and to discover the inferences that plaintiff believes properly can
be drawn from the evidence it has accumulated."[398]

---

loans they were alleged to have negligently executed and administered and the
amount of loss claimed for each loan. That information was known only to the
FDIC (which presumably stood in the shoes of the banks) and was thoroughly
set forth in an FDIC memorandum, which itself was found to be privileged.
However, the facts contained in the document were not themselves privileged
and were basic to understanding the claims asserted by the FDIC. When the
FDIC Rule 30(b)(6) witnesses were deposed, subject to deposition notices that
specifically apprised them of the facts being sought, they had not even re-
viewed the FDIC memorandum detailing those facts, had no role in preparing
the memorandum and, essentially, were able to provide little or no useful
information. The court, obviously concerned about the defendants facing "trial
by ambush", found the deposition tactics of the plaintiff to be inefficient and
wasteful since it could have presented the examiners who prepared the FDIC's
memorandum and who had precise, first-hand knowledge of the clearly dis-
coverable information being sought.
*District Council of Carpenters*, 1992 U.S. Dist. LEXIS 12307, at *47-*48.
396.  *See, e.g., id.* (distinguishing United States v. Pepper's Steel & Alloys, Inc.,
132 F.R.D. 695 (S.D. Fla. 1990) on the grounds that, in that case, the employee
designated under Rule 30(b)(6) "had knowledge of facts relevant to the claims in the
issues in the case . . . [and] much of his knowledge was acquired first-hand over
several years, as the supervising examiner of the company's liability division, and
only some of his information was acquired in conversations with counsel or by re-
viewing documents in connection with the litigation").
397.  SEC v. Morelli, 143 F.R.D. 42, 47 (S.D.N.Y. 1992).
398.  *Morelli*, 143 F.R.D. at 47. The same reasoning animated the court in *SEC v.
Rosenfeld*, No. 97 Civ. 1467 (RPP), 1997 U.S. Dist. Lexis 13996, at *2 (S.D.N.Y.
Sept. 16, 1997) in which defendant Rosenfeld attempted to depose the SEC under
Rule 30(b)(6), seeking, *inter alia*, "all information in the possession, custody, or con-
trol of, or reasonably available to, the SEC or its agents or employees, relating to
the truth or falsity of statements in the complaint . . . ." The district court correctly
reasoned that the designated witness would have to have participated in, or have

*Blunderbuss Requests.* A notice calling for a corporate witness to testify about facts supporting a large number of paragraphs in the party's denials and affirmative defenses also poses work product concerns. One court has acknowledged that while the discovering party has a legitimate interest in obtaining information about the facts upon which the entity will rely, the "attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable."[399] Such a request also implicates serious privilege concerns, and potential problems with confidential information.[400] The corporate entity "is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim."[401]

Requiring a party to provide a response to an "all of the facts" form of Rule 30(b)(6) designation, in effect, calls upon a party "to marshal all of its factual proof and then provide it to [the Rule 30(b)(6) designate] so that she could respond to what are essentially a form of contention interrogatories."[402] Indeed, if this procedure were permissible, one might ask why a party opponent would ever need to call for more than one deposition: the all-encompassing Rule 30(b)(6) deposition would provide a binding rendition of all factual information. "Aside from any issues of privilege, this would be highly inefficient and burden-

---

been prepared by, those who conducted the SEC investigation—namely the Commission's attorneys. *Rosenfeld*, 1997 U.S. Dist. LEXIS 13996, at *5. Thus, the 30(b)(6) inquiry "amounts to the equivalent of an attempt to depose the attorney for the other side." *Id.* The court then summarized the arsenal of alternatives available to the would-be deposing party:

> Rather than using interrogatories as contemplated by the Local Civil Rules, and Requests to Produce Documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, and then taking the necessary oral discovery from the witnesses with knowledge of the facts alleged in the complaint, Rosenfeld seeks to explore the extent of the SEC's knowledge (how much it knows and how much it does not know) as a result of the investigative efforts of its attorneys. This Rule 30(b)(6) discovery is obviously aimed at finding the nature of the SEC's attorney work product, and is denied for that reason.

*Id.* at *9.

399. *In re* Independent Serv. Org. Antitrust Litig., 168 F.R.D. 651, 654 (D. Kan. 1996).

400. *In re Independent Serv. Org.*, 168 F.R.D. at 654.

401. *Id.*

402. United States v. District Council of Carpenters, No. 90 Civ. 5722 (CSH), 1992 WL 208284, at *15 (S.D.N.Y. Aug. 14, 1992).

some, rather than the most direct manner of securing relevant information . . . ."[403] Such reasoning is particularly persuasive where the context leaves open the prospect that the information can be discovered by other means.[404] At least one court has suggested that use of the Rule 30(b)(6) mechanism in this fashion would be permitted only upon a showing of substantial need to obtain the information via the broad Rule 30(b)(6) deposition mechanism.[405]

When the subjects sought in a notice under the Rule ask for all support for allegations in a pleading, the discovery does not "merely seek facts," but actually seeks to discover how the entity "intends to marshall the facts, documents and [statements] in its possession, and to discover the inferences that [the entity] believes properly can be drawn from the evidence it [h]as accumulated."[406] Several courts have held that "[w]ork product includes an attorney's intended lines of proof and his ordering of the facts."[407]

## VI. "BINDING" A WITNESS UNDER RULE 30(B)(6)

### A. Motivating a Misreading of the Rule

The decisions which take the most draconian view of the duty of preparation that attends production of a representative

---

403. *District Council of Carpenters*, 1992 WL 208284, at *15; *accord In re Independent Serv. Org.*, 168 F.R.D. at 651.

404. *In re Independent Serv. Org.*, 168 F.R.D. at 654 (citing EEOC v. HBE Corp., 157 F.R.D. 465, 466-67 (E.D. Mo. 1994)).

405. *In re Independent Serv. Org.*, 168 F.R.D. at 654. However, in response to the claim that disclosure of all supporting facts would disclose work product of counsel, another court dismissed the argument summarily, commenting that "a position taken in commercial litigation that was not the result of various privileged work product and communications would be a rare find." Masco Corp. v. Price Pfister, Inc., 33 U.S.P.Q. 2d 1694, 1695 (E.D. Va. 1994). Of course, specific facts can be disclosed without revealing privileged communications, and some courts simply ignore the issue whether identification of all supporting materials is, in effect, asks one party to prepare the case for the other, and to disclose counsel's assessment of the welter of possible proof items. *See Masco Corp.*, 33 U.S.P.Q. 2d at 1695.

406. EEOC v. American Int'l Group, Inc., No. 93 Civ. 6390 (PKL), 1994 U.S. Dist. LEXIS 9815, at *6 (S.D.N.Y. July 18, 1994) (citing SEC v. Morelli, 143 F.R.D. 42, 47 (S.D.N.Y. 1992)).

407. *American Int'l Group*, 1994 U.S. Dist. LEXIS 9815, at *6.

witness often combine the notion of sufficient preparation with the concept that the testimony must be of a nature to bind the entity.[408] Recent efforts to encourage even more widespread use of Rule 30(b)(6) depositions repeatedly claim that the ability to force the entity to provide "binding" admissions is the key purpose and advantage of the procedure.[409] Often, cases cited for this proposition are sanction decisions that do not reflect the implications of the entity deposition procedure itself.[410] However, several courts have recited, almost by rote, that the discovering party is "entitled to a 30(b)(6) deposition that obtains explicit statements that will bind [the company] on the matters in issue."[411] The recently publicized claim: "The whole point of

---

408. For example, *United States v. Taylor*, 166 F.R.D. 356, 360-61 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996), noted the earlier expression of these combined concerns:

A notice of deposition made pursuant to Rule 30(b)(6) requires the corporation to produce one or more officers to testify with respect to matters set out in the deposition notice or subpoena. A party need only designate, with reasonable particularity, the topics for examination. The corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation.

*Taylor*, 166 F.R.D. at 126 (quoting Marker v. Union Fidelity Life Ins., 125 F.R.D. 121, 126 (M.D.N.C. 1989)) (citations omitted); *see* Mitsui & Co. v. Puerto Rico Water Resource Auth., 93 F.R.D. 62 (D.P.R. 1981).

409. *See* Solovy & Byman, *supra* note 1, at B13, cols. 1, 2, 3, 4 (repeated claims of binding effect).

410. *See id.* (citing Worthington Pump Corp. v. Hoffert Marine Inc., 34 Fed. R. Serv. 2d 855 (D.N.J. 1982)). The court in *Worthington Pump* reviewed a magistrate judge's recommendation about sanctions for improper assertion of the privilege against self-incrimination. *Worthington Pump*, 34 Fed. R. Serv. 2d at 855. The magistrate judge had found the information sought to be material which "the defendants would, in fact, be obliged to provide or face imposition of the most extreme sanction available under Rule 37." *Id.* The district judge imposed a proof preclusion sanction for improper invocation of the privilege to shield a corporation (which lacks the privilege). *Id.* The sanction was "an inference" that the defendant is "unable to deny truthfully the allegations contained in paragraphs 6 and 7 of plaintiff's complaint." *Id.* at 857. Neither this sanction nor the accompanying direction that contrary proof would be barred was in any way attributed to the structure or requirements of Rule 30(b)(6).

411. Masco Corp. v. Price Pfister, Inc., No. 94-728A, 1994 U.S. Dist. LEXIS 20597, at *6 (E.D. Va. Oct. 7, 1994); *see, e.g.*, Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991); Mellon Bank v. Bank of Mid-Jersey, No. 91-3142, 1992 U.S. Dist. Lexis 5633, at *4 (E.D. Pa. Apr. 14, 1992); GTE Prods. Corp. v. Gee, 115 F.R.D. 67, 68 (D. Mass. 1987). Note that some of the courts taking this view conclude that a corporation cannot be required to designate a Rule 30(b)(6) designee who lacks authority to speak on behalf of the corporation. *See* Lapenna v. Upjohn

30(b)(6) is that it creates testimony that binds the corporate entity,"[412] is utterly belied by the legislative history of the Rule. And in the main, this approach reflects a misunderstanding of the applicable civil procedure rules as well as the rules of evidence, and is misguided as a policy matter.[413]

Rule 32(a)(1) allows the use of deposition testimony to contradict or impeach a trial witness in accordance with the Federal Rules of Evidence. Furthermore, Rule 32(a)(2) provides that the depositions of an officer, director or managing agent of a corporate party may be used by an adverse party at trial *for any purpose*, which includes admissions on the merits.[414] This is similar to the effect of transcripts from a Rule 30(b)(6) deposition, which the adverse party may also use for any purpose.

However, a party is not "bound by its Rule 30(b)(6) deposition testimony as a matter of law" in the sense that matters admitted in the testimony cannot be controverted.[415] A corporation is "bound" by its Rule 30(b)(6) testimony only in the sense that any individual whose testimony was taken under Rule 30(b)(1) would be "bound" by that testimony. However, that locution simply means that the witness has committed to a position at a particular point in time; it does not mean that the witness has made a *judicial admission* that formally and finally decides an issue.[416] Judicial admissions may not be contradict-

---

Co., 110 F.R.D. 15, 20 (E.D. Pa. 1986) (stating that a Rule 30(b)(6) designee must have authority to speak on behalf of the corporation).

412. Solovy & Byman, *supra* note 1, at B13, col. 3.

413. Some courts have even asserted the nonsensical position that a corporate designee "can make admissions against interest under FED. R. EVID. 804(b)(3) which are binding on the corporation." United States v. Taylor, 166 F.R.D. 356, 362 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996) (citing Ierardi v. Lorillard, Inc., No. 90-749, 1991 U.S. Dist. LEXIS 11320 (E.D. Pa. Aug. 13, 1991)). This view is contradicted by accepted evidence law in two respects: first, the Rule 804 exceptions may only be used when the declarant is "unavailable" as defined in Rule 804(a). The corporation, a party in these situations, is always present, often through several representatives, and hence the hearsay exception would not apply. Second, and more importantly, Rule 804 provides only for admissibility, and testimony admitted pursuant to Rule 804(b)(3) may always be rebutted and contradicted.

414. W.R. Grace & Co. v. Viskase Corp., No. 90-5383, 1991 U.S. Dist. LEXIS 14651, at *4-*5 (N.D. Ill. Oct. 15, 1991); Fey v. Walston & Co., 493 F.2d 1036, 1045-46 (7th Cir. 1974) (ruling that a deposition of party witness may be introduced as substantive evidence even if party witness is available at trial).

415. *See W.R. Grace & Co.*, 1991 U.S. Dist. LEXIS 14651, at *5.

416. *See id.*

ed.[417] Deposition testimony, on the other hand, is simply evidence, nothing more. Such evidence may be explained or contradicted.[418] The cases that use the word "binding" to describe deposition testimony should be read to use it in the limited sense described here.[419]

A party is not generally "bound" by the testimony of one of its employees taken in isolation, even if the subject matter is squarely within the subject matter of the witness's expertise and job functions. Thus, for example, in a case in which a party's damage claims were addressed by the testimony of an accountant who supervised the maintenance of plaintiffs' books and testified to damages totaling $956,256.10, the party was *not* restricted to that computation.[420] The fact-finder was not compelled to accept the testimony in question, nor was the fact-finder restricted to that testimony.[421] Where other witnesses have irrelevant information, neither the party nor the fact-finder is bound by the more limited testimony of one person. The party, it is said, is "entitled to the benefit of evidence from other witnesses more favorable to him."[422]

How impeachment operates after a Rule 30(b)(6) deposition has rarely been discussed. In the one reported opinion we have located which comments on the process, the court stated in dicta that if the entity calls a witness at trial who "makes a statement that contradicts a position previously taken in a Rule 30(b)(6) deposition, then [the adversary] may impeach that witness with

---

417. Brown & Root, Inc. v. American Home Assurance Co., 353 F.2d 113, 116 (5th Cir. 1965).
418. *See W.R. Grace & Co.*, 1991 U.S. Dist. LEXIS 14651, at *5.
419. *Id.* at *5 n.1 (citing Sanders v. Circle K Corp., 137 F.R.D. 292 (D. Ariz. 1991) (holding that a corporation cannot be compelled to designate a witness under Rule 30(b)(6) if that witness lacks authority to bind the corporation)); Poitain Tower Cranes, Inc. v. Capitol Tower Cranes, Inc., 892 F.2d 74 (4th Cir. 1989) (affirming summary judgment against a corporation based upon uncontroverted Rule 30(b)(6) deposition statements); Ierardi v. Lorillard, Inc., No. 90-7049, 1991 U.S. Dist. LEXIS 11887, at *3 (E.D. Pa. Apr. 11, 1991) (stating that a corporation has duty to prepare its Rule 30(b)(6) designee to give binding answers, rather than allow the designee to profess ignorance until trial); McDevitt & Street Co. v. Marriott Corp., 713 F. Supp. 906 (E.D. Va. 1989) (similar to *Ierardi*).
420. Charles Dowd Box Co. v. Fireman's Fund Ins. Co., 218 N.E.2d 64, 68 (Mass. 1966).
421. *Charles Dowd Box*, 218 N.E.2d at 68.
422. *Id.* at 69 (quoting Reynolds v. Sullivan, 116 N.E.2d 128, 131 (Mass 1953)).

the prior inconsistent statement."[423] This is, however, a broad rule: it means that every witness with personal knowledge who testifies at the trial may be impeached with a statement made by another person designated by the company to testify on that topic. That notion is inconsistent with the normal role of impeachment as a tool to illuminate issues of personal truthtelling and not to have the company's statements used to impeach individual witnesses. For example, would an interrogatory answer submitted on behalf of an entity be usable to impeach an individual witness other than the person signing the answers?[424]

At least one appellate court has noted the erroneous notion that a party is somehow "bound" conclusively by its officials' depositions under Rule 30(b)(6).[425] It implied that, at most, garden variety admissions are a "normal risk of litigation" and to the extent that the adversary party sought and the trial court granted any greater binding effect, "leading to more horrendous results, the actual effects [of such a misapplication of the rule] can be considered and if need be ameliorated on appeal."[426]

Indeed, it may be worth noting that the broad scope of deposition testimony under the Rule will not serve as a basis for trial testimony except to the extent used by the adversary. Thus, it has been held that at a deposition a corporate officer is *permitted* to recount corporate knowledge in testimony as long as the witness has personal knowledge of the events, whether or not the witness personally participated in the activity described.[427] At trial, of course, the general standards of Rule 601 of the Federal Rules of Evidence will intrude, requiring some showing of personal knowledge on the part of the witness.[428]

---

423. *See* W.R. Grace & Co. v. Viskase Corp., No. 90-5383, 1991 U.S. Dist. LEXIS 14651, at *7 (N.D. Ill. Oct. 15, 1991).

424. The issue may be somewhat unreal because the use of employee *admissions* on the merits has a more powerful impact than mere impeachment; therefore, admissibility of the other statement on the merits may dwarf the impeaching consequences of having the statement of another, albeit inconsistent with the testimony of the witness on the stand, read into the record.

425. *In re* Puerto Rico Elec. Power Auth., 687 F.2d 501, 503 (1st Cir. 1982).

426. *In re Puerto Rico Elec. Power Auth.*, 687 F.2d at 504 n.2.

427. Haeberle v. Texas Int'l Airlines, 497 F. Supp. 1294, 1299 (E.D. Pa. 1980).

428. *See* 3 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE §§ 601, 602 (2d ed. 1999); CHRISTOPHER MUELLER & LAIRD KIRKPATRICK, FEDERAL EVIDENCE § 236 (2d ed. 1994).

## B. Bindingness and the Conception of Trial Proof

One premise which seems to pervade the discussions of theoretical abuse by the entity is that only corporate knowledge of the party is potential evidence. Thus, courts imposing draconian burdens under Rule 30(b)(6) are wont to equate the universe of a company's trial proof with knowledge of its personnel:

> If a corporation has knowledge or a position as to a set of alleged facts or an area of inquiry, it is its officers, employees, agents or others who must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination. A party's trial attorney normally does not fit that bill. Therefore, if a party states it has no knowledge or position as to a set of alleged facts or area of inquiry at a Rule 30(b)(6) deposition, it cannot argue for a contrary position at trial without introducing evidence explaining the reasons for the change.[429]

This reasoning elides the varieties of proof open to the corporation at trial. Indeed, if deemed strategically beneficial, the corporation could call *none* of its own personnel at trial and rely wholly on third-party witnesses or testimony from adverse witnesses associated with the opponent or use documentary or physical evidence.

This approach also loses sight of the issue of surprise. To the extent that the issue is whether, to be properly prepared, a Rule 30(b)(6) witness must review *other parties'* deposition testimony and documents of others, the reality is that the discovering party already has this information.

*Restrictions Based on the Role of Counsel.* Another thesis apparently motivating some courts to favor almost unlimited preparation burdens under the rule is that "[o]therwise, it is the attorney who is giving evidence, not the party."[430] From the premise that the *attorney* for an entity "is not at liberty to manufacture the corporation's contentions" the argument concludes

---

429. United States v. Taylor, 166 F.R.D. 356, 362 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996); See Ierardi v. Lorillard, Inc., No. 90-7049, 1991 U.S. Dist. LEXIS 11887, at *8 (E.D. Pa. Apr. 11, 1991).

430. *Taylor*, 166 F.R.D. at 363; *see also id.* at 363 n.8 ("What the corporation cannot do is have the attorney assert that the facts show a particular position on a topic when, at the Rule 30(b)(6) deposition, the corporation asserts no knowledge and no position.").

that, instead, "the corporation may designate a person to speak on its behalf and it is this position which the attorney must advocate."[431] Under this view, the attorney may only serve as a "conduit of the party"[432] and the party must speak through one or more deponents. The most expansive interpretations of the duty to prepare for a Rule 30(b)(6) deposition include the concept that if an entity plans to offer at trial a position "based on testimony from third parties, or their documents, the designee . . . must present an opinion as to why the corporation believes the facts should be so construed."[433]

There is nothing in corporation law, evidence principles or civil procedure which supports this conclusion. Corporate litigation positions either are taken by the entity through the decisions of officers, whether managerial or more purely legal, or are acted upon by a board of directors, executive committee or the like. No one person must be identified either to make or to state the position. And, as noted elsewhere in this article, there are several tools in the modern litigation systems for identifying what those positions will be.

Proof on behalf of the entity likewise is not restricted, by evidence law or any other principles, to items originating within the company or to matters as to which a corporate witness is knowledgeable: any witness may be offered, no corporate witnesses need be offered; and facts from all sources may be used to defend the corporation's positions in the trial. Even if the company does not have knowledge available to it at the time of an early deposition, it is not barred from offering proof from third-parties or other sources at the eventual hearing. Thus, a party does (and should) have the right under our system of litigation "to deny knowledge or position now, but then at trial to rely on the documents and testimony of others or to at least present argument that the evidence presented by others does not reflect the state of facts as contended by those parties."[434]

---

431. *Id.* at 361-62.
432. *Id.* at 362.
433. *Id.* at 361.
434. *Taylor*, 166 F.R.D. at 362.

## C. Preclusion of Proof and Impeachment

In *Taylor*, Union Carbide argued for the right to call witnesses at trial on a Rule 30(b)(6) topic if the witnesses had been identified as knowledgeable by the time the Rule 30(b)(6) deposition transcript was closed.[435] It also argued that failure to designate a witness on a particular topic or sub-topic should not preclude the ability to make arguments at trial with respect to such subjects through use of testimony or documents admitted by otherwise competent means (for example, previous deposition testimony and documents previously produced in discovery).[436] The court found these arguments unpersuasive. It did, however, include in its disposition provisions allowing Carbide to promptly designate and prepare a substitute deponent if, despite good-faith efforts to prepare a deponent, the deponent were unable to respond to a specific area of inquiry.[437]

At trial, while a party may be impeached upon changing Rule 30(b)(6) testimony, some courts have made the mistaken assumption that an *evidentiary showing* would be necessary to support such a change, requiring some sort of permission to present the altered position.[438] Imposition of such a burden, which is nowhere supported in the Rule, its legislative history, or evidentiary principles, proceeds from the assumption that differing trial testimony presents "a disruptive situation."[439] Rather, there is a simple remedy of impeachment[440] and not much risk in any event: the pretrial order will have alerted the

---

435. *Id.* at 360.
436. *Id.*
437. *Id.* at 359 n.5 (citing again the same court's earlier decision in Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989)). The *Taylor* court characterized this rule as holding that

> even where defendant in good faith thought deponent would satisfy the deposition notice, it had a duty to substitute another person once the deficiency of its designation became apparent during the course of the deposition, and to act immediately where plaintiff had traveled out of state to defendant's offices placing defendant in a better position to take care of exigencies.

*Id.*
438. *Taylor*, 166 F.R.D. at 363 n.8 ("At trial, [Carbide] will be required to make an evidentiary showing to support such a change in position.").
439. *Id.*
440. Otis Eng'g Corp. v. Trade & Dev. Corp., No. 92-1574, 1994 U.S. Dist. LEXIS 3132, at *2-*3 (E.D. La. Mar. 16, 1994).

adversary to contentions, and contention interrogatories may also have defined the positions of the entity. The list of witnesses and exhibits set forth by the entity for the pretrial order, other common elements,[441] will also avoid surprise and allow the entity's opponent to be prepared to meet the evidence. Thus, the situation is starkly unlike the cases in which a party spells out its trial positions *in a pretrial order* and thereafter seeks to spring additional evidence on new issues upon the adversary at trial. Of course, in those cases, the notion that changing the pretrial order requires a *showing* is sensible. Then again, Rule 16 specifies that such orders cannot be changed without the proper showing, which—with respect to the final pretrial order—is stringent: "The order following a final pretrial conference shall be modified only to prevent manifest injustice."[442]

In the only decision squarely ruling on the issue of limiting a party's trial testimony to the positions advanced in the Rule 30(b)(6) testimony of its designee, the court firmly held that the corporation was *not* barred from offering contrary proof.[443] In ruling on a motion captioned "Motion to Bar Otis Engineering Corporation from Materially Altering its Rule 30(b)(6) Deposition Testimony at Trial and from Offering Expert Evidence to the Contrary at Trial," the court found the relief unavailable.[444] The court commented that if a party "attempts to materially alter a Rule 30(b)(6) deposition, the opposing party has the ability and the responsibility to cross-examine and impeach the witness using the different, but sworn to, prior testimony. The trier of fact then determines which, if any, of the testimony to credit."[445] Thus, the court found that it was "more appropriate for the trier of fact to decide the credibility of witnesses as opposed to the court preventing a witness from changing her prior testimony . . . ."[446]

It is generally recognized, therefore, that while individual witnesses may not have comprehensive knowledge of the facts in a given case, their testimony cannot be deemed to limit the evi-

---

441. MANUAL FOR COMPLEX LITIGATION ¶ 41.7 (1995).
442. FED. R. CIV. P. 16(e).
443. *Otis Eng'g*, 1994 U.S. Dist. LEXIS 3132, at *2-*3.
444. *Id.* at *1.
445. *Id.* at *2.
446. *Id.* at *3.

dence that the entity can present at trial.[447] If a party wishes
to confine trial evidence to that which is disclosed during discov-
ery, it must propound appropriate contention interrogatories.[448]
When courts have actually focused on the "binding" effect of
testimony under the Rule, they have recognized, at least on the
superficial level, that the testimony is not calculated to be the
equivalent of a judicial admission.[449]

In sum, Rule 30(b)(6) nowhere states that the purpose of
this device is to bind the corporation in any sense. Nor does the
Advisory Committee commentary that accompanied the rule
indicate that aspiration. Once it is understood that the true
purpose of the Rule 30(b)(6) device is to provide leads to other
discovery and to assure efficiency in a deposition program by
avoiding random stabs by the discovering party, the question of
whether the testimony "binds" the corporation loses significance.

## VII. SANCTIONS DOCTRINES RECAPITULATE THE SCOPE OF RULE 30(B)(6) DUTY TODAY

The burdens of depositions under the rule are so great and
the potential for case-altering sanctions so near the surface of
the proceedings, that authoritative rulings are avidly sought.[450]

---

447. Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co., No. 90-7811-KC,
1993 U.S. Dist. LEXIS 1163, at *8 (S.D.N.Y. Feb. 4, 1993).

448. *Arkwright Mutual Ins.*, 1993 U.S. Dist. LEXIS 1163, at *8.

449. *See, e.g.*, United States v. Taylor, 166 F.R.D. 356, 362 n.6 (M.D.N.C. 1996),
*aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996):

> When the Court indicates that the Rule 30(b)(6) designee gives a statement or
> opinion binding on the corporation, this does not mean that said statement is
> tantamount to a judicial admission. Rather, just as in the deposition of indi-
> viduals, it is only a statement of the corporate person which, if altered, may
> be explained and explored through cross-examination as to why the opinion or
> statement was altered.

*Taylor*, 166 F.R.D. at 362 (citing W.R. Grace & Co. v. Viskase Corp., No. 90-5383,
1991 U.S. Dist. LEXIS 14651 (N.D. Ill. Oct. 15, 1991)).

450. Bald claims that the Rule 30(b)(6) deposition would generate "undue burden"
have not been persuasive. In general, at least where records exist within the compa-
ny to permit study and preparation, while the preparation task "may be somewhat
difficult, it is clear that if a corporate employee familiar with the structure and
organization of the corporation would find this task difficult, [the adversaries], who
have no such familiarity, likely would find it impossible." Ierardi v. Lorillard, Inc.,
No. 90-7049, 1991 U.S. Dist. LEXIS 11887, at *4 (E.D. Pa. Aug. 23, 1991).

Similarly, some courts have expressed the view that a mere unsubstantiated

738            Alabama Law Review            [Vol. 50:3:651

This conjunction of factors may explain, in part, the frequency with which "clarifications" are sought of rulings bearing on compliance with Rule 30(b)(6) obligations.[451] Most of the reported rulings arise on sanction applications, however, and without the benefit of appellate guidance.[452]

### A. Non-Appearance and Virtual Non-Appearance

Rule 37(d) of the Federal Rules of Civil Procedure provides that when a party or a person designated to testify under Rule 30(b)(6) fails to appear, an award of expenses will be entered.[453] As noted above, failure to designate an available,

---

belief that the deposing party will not discover new information is insufficient to merit the imposition of a protective order. *Ierardi*, 1991 U.S. Dist. LEXIS 11887, at *5 (quoting Mitsui & Co. (U.S.A.) Inc. v. Puerto Rico Water Resources Auth., 93 F.R.D. 62, 65 (D.P.R. 1981) ("Rule 30(b)(6) . . . is an additional, supplementary and complimentary deposition process designed to aid in the efficient discovery of facts.")).

451. *See Taylor*, 166 F.R.D. at 358; *In re* Puerto Rico Elec. Power Auth., 687 F.2d 501, 503-04 (1st Cir. 1982); *see also Ierardi*, 1991 U.S. Dist. LEXIS 11887, at *8-*9. Even a prompt clarification motion, however, is not likely to yield an order quashing a deposition in its entirety. Pre-testimony motions to quash, quite apart from the Rule 30(b)(6) context, are not favored and the general canon is that an order vacating a notice of deposition is regarded as unusual and is treated unfavorably. *See Arkwright Mutual Ins.*, 1993 U.S. Dist. LEXIS 1163, at *5 (citing Investment Properties Int'l, Ltd. v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir. 1972)). In *Arkwright Mutual Insurance*, the court stated that "[g]enerally, one is required to show both that there is a likelihood of harassment and that the information sought is fully irrelevant before a party is altogether denied the right to take an individual's deposition." *Id.* (quoting United States v. Miracle Recreation Equip. Co., 118 F.R.D. 100, 104 (S.D. Iowa 1987)) (citation omitted); *see* Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979); West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990).

452. In at least one case, a petition for mandamus was lodged prior to a Rule 30(b)(6) deposition after a flurry of cross-motions were filed in the wake of a notice under the Rule and rulings followed by "clarifications" were entered by the trial court. *In re Puerto Rico Elec. Power Auth.*, 687 F.2d at 503. Of course, in courts that will hear the matter at all, there is a heavy burden to justify mandamus against a discovery order of this sort. A party must demonstrate that the district court exceeded its jurisdictional authority to such a degree that its actions amounted to a "usurpation of power." *Id.* (citing DeBeers Consol. Mines, v. United States, 325 U.S. 212, 217 (1945)). Merely characterizing the discovery request as so burdensome as to be impossible of fulfillment, or pointing to statements of opposing counsel in the record which seem to suggest a fallacious expectation that the deposition will "bind" the entity in some conclusive manner have been held to fall "well short of demonstrating a case for mandamus." *Id.*

453. Rule 37 provides in part that "the court shall require the party failing to

knowledgeable, and readily identifiable witness has been deemed in practical effect "no appearance at all."[454] Sanctions have been denied, on the other hand, where "four deponents testified at length concerning the areas of their respective designations."[455] Clearly, to justify the imposition of sanctions, "the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas."[456] For example, in *Resolution Trust Corp. v. Southern Union Co.*,[457] the deponent testified that he had no knowledge as to each item of inquiry designated in the notice.[458]

Seen through the lens of sanction decisions, much of the rhetoric which is driving the overuse of Rule 30(b)(6) depositions today is hollow. While dispositive sanctions are available when there is a total failure to appear for a properly noticed deposition under the Rule,[459] such situations are rare. And, in the normal case, if a witness of any sort is produced in response to a notice under the Rule, and the witness answers at least *some* questions, no dispositive sanctions have ever been awarded by a federal court.[460] Several decisions have ordered re-deposition

---

act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(d).

454. Resolution Trust Corp. v. Southern Union Co., 985 F.2d 196, 197 (5th Cir. 1993); *see supra* text accompanying notes 107-19; *see also* Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 78 (S.D.N.Y. 1991) (sanctioning a party that failed to provide witnesses knowledgeable in areas requested in notice under Rule 30(b)(6)).

455. Zappia Middle East Constr. Co. v. The Emirate of Abu Dhabi, No. 94 Civ. 1942, 1995 U.S. Dist. LEXIS 17187, at *26 (S.D.N.Y. Nov. 17, 1995).

456. *Zappia Middle East Constr. Co.*, 1995 U.S. Dist. LEXIS 17187, at *26.

457. 985 F.2d 196, 197 (5th Cir. 1993)

458. *Southern Union*, 985 F.2d at 196-97; *see supra* text accompanying notes 107-40.

459. *See* Eastway Gen. Hosp., Ltd. v. Eastway Women's Clinic, Inc., 737 F.2d 503, 504-05 (5th Cir. 1984) (determining that repeated non-designation and then non-appearance by the tardily designated witness combined with numerous other failures to abide by firm directions of the court in addition to those concerning Rule 30(b)(6) depositions after express warnings made it not an abuse of discretion to impose preclusive sanctions).

460. The situation is the same in state courts, where only one (unreported) decision of a state trial judge has imposed sanctions for failure of a designated witness to have complete knowledge of all of the topics designated for testimony. Ashley v. Coopers & Lybrand Deloitte (U.K.), No. CL-95-6466 (Albemarle County Circuit Court Mar. 31, 1997) (on file with the authors). Even within the state of Virginia, where

because answers were incomplete, but even most of these decisions decline to impose the cost recovery that Rule 37(a) would make available in that situation.

### B. Dealing with Gaps in Testimony: Rule 37(a) and (b) Situations Distinguished

*Violation of Orders.* In contrast to cases that involve some arguable failure to comply with a notice issued under the Rule itself, when there have been *orders* directing a party to provide certain testimony, violation of the orders triggers "a panoply of sanctions, from the imposition of costs to entry of default."[461] Of course, sanction orders that take a party's averments as established or barred, or which award judgment on that basis are "the most severe penalty," and are authorized only in "extreme circumstances."[462] Most courts have concluded, therefore, that to warrant imposition of such precipitous sanctions, the violations must be "'due to willfulness, bad faith, or fault of the party.'"[463]

An oral order for the disclosure of contentions is enforceable,[464] and violation thereof can lead to Rule 37(b) sanctions, such as limiting a party's claims to the disclosed theories.[465] In a case involving the lucrative patents for air and liquid cushioned sports shoes, the defendant took the deposition of Nike Incorporated to elucidate Nike's theory of patent infringement.[466] At the deposition, the designated Nike witness denied

---

that case arose, the reported case law denies sanctions. See Aetna Cas. and Sur. Co. v. Corroon & Black, 10 Va. Cir. 207 (Richmond Cir. Ct. 1987).

461. United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996) (citing FED. R. CIV. P. 37(b)(2)).

462. CFTC v. Noble Metals Int'l, 67 F.3d 766, 770-71 (9th Cir. 1995) (citing United States *ex rel.* Wiltec Guam, Inc. v. Kahaluu Constr. Co., 857 F.2d 600, 603 n.5 (9th Cir. 1988)); *see also* Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1338 (9th Cir. 1985).

463. *Noble Metals Int'l*, 67 F.3d at 771 (quoting Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585, 589 (9th Cir. 1983)).

464. *See* Henry v. Sneiders, 490 F.2d 315, 318 (9th Cir. 1974) (upholding default judgment based upon an oral order to produce documents).

465. Nike, Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 648-49 (D.C. Cir. 1994).

466. *Nike*, 43 F.3d at 648. Nike is the assignee of the '304 patent, which is directed to a shoe having an improved cushioning sole structure. Claim One of the

that the company was asserting a claim of infringement under the "doctrine of equivalents," a set of patent law principles.[467] Nike then sent the discovering party a letter stating that "NIKE has not made any contention that defendants have infringed the '304 patent under the doctrine of equivalents."[468] Hedging Nike's position, however, the letter further asserted that "[w]hether or not NIKE will make such a contention in the future is dependent on the results of an investigation being conducted by NIKE's technical expert."[469] Because the discovery in Nike's case had closed without further disclosure concerning allegations of infringement based on the doctrine of equivalents, an order restricting the party's case to contentions identified within the time specified by directions of the court was upheld, even though there was no express violation of court order involved.[470]

*General Shortfalls.* On the other hand, if there has been no prior court order with respect to the *content* of a Rule 30(b)(6) deposition, the sanctions available in the discretion of the reviewing judge on an initial motion to compel are those of Rule 37(a)(4) of the Federal Rules of Civil Procedure, setting forth provisions for recovery of fees and expenses,[471] and not the pro-

---

patent is representative of the claims at issue and reads in relevant part as follows:
Footwear comprising an upper, a sole member attached to said upper, said sole member including a sealed inner member of flexible material, *said inner member being inflated with a gaseous medium* to form a compliant and resilient insert having spaced upper, lower, front, back and side surfaces, an elastomeric yieldable outer member encapsulating said insert about preselected portions of said insert, said preselected portions including a major portion of at least said upper or lower surface and a portion of said side surfaces, said inner and outer members functioning together to form a viscoelastic unit for attenuating shock and returning energy of foot impact.
*Id.* at 646.

467. *Id.* at 648.

468. *Id.*

469. *Id.*

470. *Nike,* 43 F.3d at 648-49.

471. The proper measure of recoverable costs and fees on a successful motion to compel for gaps in the deponent's knowledge should be the portion of the deposition time devoted to demonstrating lack of knowledge (not the entire deposition, including the productive and responsive parts) and the time spent preparing and presenting the motion to compel. Some courts have noted this logic, though other courts have allowed recovery of the entire costs of the initial transcript and the time spent on the deposition as well as the motion. *See* Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 79 (S.D.N.Y. 1991) ("[A] total of 68.6 hours were expended, and at the

visions of Rule 37(b)(2), which provides more stringent sanctions for the flouting of a court order.[472] The most common outcome, therefore, when a deposition witness under the Rule is deemed to have been inadequately prepared to provide a reasonable scope of information is that the entity "will just have to do it again, probably at its own expense."[473]

Note that even in cases in which the *fact* or *timing* of a deposition has been the subject of a prior motion, as long as the issues concerning whether the witness should be compelled to answer the questions involved in a later motion were not previously before the court, only Rule 37(a) sanctions should be considered available. This issue commonly arises, given the broad reach of many Rule 30(b)(6) deposition notices. And a ruling that a witness "should be required to appear at a date and place certain" is not violated when a witness appears at the specified time and place but lacks the completeness of knowledge desired by the discovering party.[474] In such a situation the reviewing court on a motion to compel directed to the *content* of the deposition responses is "limited to awarding fees and expenses 'incurred in obtaining the order.'"[475] The court, therefore, would "not have the authority to impose sanctions, such as the award of expenses for the taking of the second deposition, pursuant to Federal Rule of Civil Procedure 37(b)(2), because the expense provisions of 37(a)(4) are more limited than the sanctions under 37(b)(2)."[476] Recovery has been denied for fees or expenses

---

requested rate of $95.00 per hour, this results in a total fee request of $6,517.00. In addition, the plaintiff incurred expenses of $206.65 for the transcript of the Huddleston deposition.").

   When a second witness is designated after an initial representative deponent testifies with obvious gaps in the subject matters to be covered, the case law suggests that there is at least a theoretical argument for recoupment of incremental costs occasioned by having a second, separate deposition, if producing both individuals on the same day would, for example, have avoided duplicate travel expenses. *See* Autrey v. Bilsom Int'l, No. 94-0022, 1994 U.S. Dist. LEXIS 18883, at *7-*8 (S.D. Ala. Nov. 18, 1994) (denying sanctions absent a showing of costs attending a second deposition that could have been obviated if both witnesses had been produced for the initial response).

   472. Protective Nat'l Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 283 (D. Neb. 1989). *See generally* FED. R. CIV. P. 37(a).

   473. Cymrot, *supra* note 5, at 7.

   474. *Protective Nat'l Ins.*, 137 F.R.D. at 283.

   475. *Id.* (applying FED. R. CIV. P. 37(a)(4)).

   476. *Id.*

which will be encountered upon a re-deposition or continuation of the examination of a witness whose testimony is found to be inadequate.[477]

Even in awarding fees, courts are mindful of the premise that such awards are improper under Rule 37(a)(4) if the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.[478] Similarly, various courts have denied recovery of expenses where there was a genuine disagreement on the merits of the discovery, such as a bona fide dispute over issues of privilege arising out of a deposition.[479]

However, where an examining counsel "[l]ike Jack Webb . . . wanted 'just the facts . . . ,'" costs and fees may be awarded, usually in fairly limited dollar amounts.[480]

## C. Patterns of Abuse in Sanction Cases

Most of the Rule 30(b)(6) cases in which even the minor remedies of costs and fees have been imposed in the course of ordering further disclosure may be explained by the fact that the disclosing party has engaged in other, distinct acts of discovery abuse, such as destruction of evidence.[481] Thus, one factor that clearly motivates some sanction decisions concerning Rule 30(b)(6) is a *pattern* of discovery difficulties. For example, a party which has produced documents reluctantly, after several motions, and then only on a "sample" basis, may be deemed to have sought to create for itself a right to "self-selecting discovery."[482] When that party subsequently produces a witness in

---

477. *Id.* at 283-84.
478. *Id.* at 283 (citing 4A JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 37.02[10] (2d ed. 1988)). *See generally* FED. R. CIV. P. 37(a).
479. *Protective Nat'l Ins.*, 137 F.R.D. at 283.
480. *Id.* at 284 (limiting recovery to a maximum of $1,000). The court, writing in 1989, did not feel it necessary to explain to readers the allusion to the long-running television series from the black-and-white era, *Dragnet*, from which the reference to Sergeant Joe Friday's portrayal by veteran actor Jack Webb arises.
481. Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 78 (S.D.N.Y. 1991) (imposing sanctions in the form of costs and attorneys fees for failure to respond to two of four designated deposition topics, lying about a third, and destroying evidence).
482. Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995).

response to a Rule 30(b)(6) notice who has only partial knowledge of the corporation's activities, and especially when there is no reason to doubt that others within the organization could have supplied more complete information, the combination of earlier discovery recalcitrance and the deposition short-fall may lead to imposition of sanctions.[483]

In one case, on the deposition date only defense counsel appeared because the two corporate parties on whom the Rule 30(b)(6) notices were served failed to designate a deposition representative.[484] Their counsel assured the governmental plaintiff that appropriate designations would be made, and the depositions were rescheduled.[485] At the next scheduled deposition date, a principal officer of one of the two entities appeared on behalf of both companies and promptly invoked his Fifth Amendment privilege against self-incrimination, and he refused to answer any relevant questions.[486]

When the inevitable motion to compel reached the magistrate judge supervising the trial preparations in the case, the court found that the entities had representatives available to them who would not have invoked their Fifth Amendment privilege; therefore, the entities had not made a good-faith effort to locate suitable representatives.[487] The magistrate judge ordered payment of a $500 sanction and directed the corporations to "designate a person to represent them, pursuant to Fed. R. Civ. P. 30(b)(6), who will not invoke the Fifth Amendment privilege."[488] Not only was this sanction award not paid, but the corporation failed to designate an appropriate representative, seek reconsideration of the order, or seek a protective order. Instead, the corporation simply elected to provide the discovering party with "a list of persons who, for various reasons, would *not* testify."[489] They then re-designated the same individual previously produced as their representative, knowing he would invoke the privilege against self-incrimination. The discovering

---

483. *Buycks-Roberson*, 162 F.R.D. at 343.
484. CFTC v. Noble Metals Int'l, 67 F.3d 766, 769 (9th Cir. 1995).
485. *Noble Metals Int'l*, 67 F.3d at 769.
486. *Id.*
487. *Id.* at 770.
488. *Id.* (emphasis omitted).
489. *Id.*

party moved for sanctions, and then the two entities for the first time sought a protective order. On this record, the magistrate judge ordered the corporations to explain "how responding to the area of inquiry would place either Defendant in danger of self-incrimination."[490] Neither entity responded. The magistrate judge made findings on these matters which were adopted by the district judge. Under the provisions of Rule 37(b)(2)(a), the district court decreed that all allegations of the complaint would be established as true against both of the responding entities.[491]

### D. Warnings and Limits on Trial Proof

Because of the fear that a corporation may at its Rule 30(b)(6) deposition aver that "it has no corporate knowledge of designated matters, and then, after the deposition has concluded, state that after further effort it does indeed have corporate knowledge of a designated matter," some courts have considered providing a "warning" to the entity that it will be "precluded from asserting a position at trial different than the position taken at its deposition," or that it may be precluded from asserting any position whatsoever at trial where none was taken during the deposition if the information forming the basis of that position was known or reasonably available to it prior to or during the deposition.[492] This urge has been tempered, however, by the recognition that information could be discovered in good faith later that could form the basis for a different position at trial.[493] Thus, "inadequate preparation of a Rule 30(b)(6) designee [may only] be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings."[494]

Another approach requires that for each deposition topic or subject of examination or area of inquiry for which the entity "intends to present evidence at trial through testimony or depo-

---

490. *Noble Metals Int'l*, 67 F.3d at 770.
491. *Id.*
492. United States v. Taylor, 166 F.R.D. 356, 363 (M.D.N.C. 1996), *aff'd* 166 F.R.D. 367 (M.D.N.C. 1996).
493. *See Taylor*, 166 F.R.D. at 363.
494. *Id.*

Alabama Law Review            [Vol. 50:3:651

sition exhibits," the witness must designate one or more current
or former employees or other designees to testify on that area of
inquiry at the Rule 30(b)(6) deposition.[495]

The practical implication of this approach, of course, is that,
if the entity intends to rely on testimony from a non-party at
trial to address a topic listed in the deposition specification, the
entity may be *required* to designate the non-party as its Rule
30(b)(6) witness. As discussed above,[496] this requirement,
which overreaches any authority found in the rule, is problemat-
ic on several levels. Each litigant should be allowed to offer spe-
cific evidence from non-parties supporting its case without hav-
ing to make them corporate spokespersons.

In *Taylor*, again setting a record for expansive reading of
the rule, Carbide was ordered to designate deponents for all
seventy-six topics listed in the government's Rule 30(b)(6) no-
tice.[497] If the company chose not to designate a deponent to
testify at its Rule 30(b)(6) deposition on one or more particular
areas of inquiry, the court deemed that Carbide would "thereby
tak[e] the position that it has no corporate knowledge and posi-
tion on that area;" as a result, Carbide would not

> without extremely good cause shown, be allowed to introduce
> evidence consisting of documents prepared, sent or received by
> [it], or of testimony of current or former . . . employees to affirma-
> tively support or oppose a designated claim or defense with re-
> spect to the area of inquiry, and in addition, it may be prohibited
> from introducing any evidence as to such area of inquiry, pursu-
> ant to Fed. R. Civ. P. 37(b)(2)(B).[498]

The court concluded that "[a]ll claims of newly discovered evi-
dence to support an exception to this portion of the Order will be
strictly scrutinized."[499]

---

495.  *Id.* at 364 ¶ 2.
496.  *See supra* text accompanying notes 61-80
497.  *Taylor,* 166 F.R.D. at 364.
498.  *Id.* at 365.
499.  *Id.*

### E. *Talking Sanctions and Resorting to Warnings*

Even under the most expansive reading of preparation duties under Rule 30(b)(6), and even in a case in which there were several motions and pre-depositions orders, serious monetary or case-dispositive evidentiary sanctions have *not* been imposed under the Rule.[500] Most commonly, renewed sessions of the deposition are ordered if the initial sessions do not adequately address topics which are within the reasonable reach of the responding entity.[501]

Overall, therefore, in many cases even the courts which comment about the imposition of sanctions do not impose them. This may result from failure of the moving party to present the issue in the proper fashion,[502] but often it reflects the judgment that an initial failure to provide complete responses is generally grounds for a warning and expression of the expectation that further discovery will cure any defect.[503]

One factor that bears upon the imposition of sanctions appears to be whether the entity recognizes in advance that there will be difficulties addressing the topics specified in the notice served upon the entity. Even where a company does not move against the breadth of the notice, advising the discovering party's counsel of the limitations on the likely scope of the designee's testimony augurs against a finding of bad faith.[504]

Clearly, a party served with a problematic Rule 30(b)(6) deposition request will often be well-advised to elect to seek a protective order rather than presenting a limited witness in response to the notice of deposition.[505]

Conversely, the fact that a protest was lodged to the adequacy of the testimony of a Rule 30(b)(6) witness *nine months*

---

500. *Id.* at 364-66.

501. *Id.* at 364 ¶ 1.

502. *See* Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995) (holding that sanctions or other expense cannot be awarded when the moving party fails to negotiate a resolution before petitioning the court for relief).

503. *Id.*

504. Autrey v. Bilsom Int'l, No. 94-0022, 1994 U.S. Dist. LEXIS 18883, at *6-*7 (S.D. Ala. Nov. 18, 1994).

505. Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co., 142 F.R.D. 420, 421-22 (D. Del. 1992).

*after* deposition appeared to be a factor undercutting the assertion that the testimony was unsatisfactory.[506] While the discovering party noted four discrete areas on which the testimony was allegedly lacking, the court noted that the discovering party "failed to follow up on the information conveyed" by the deponent tendered.[507] Thus, leads provided by the witness to sources of information relevant to subject matters on which the witness was not herself completely knowledgeable demonstrated that there was not a culpable failure to comply with the obligations of Rule 30(b)(6).[508] Identification by the witness of the appropriate "department" within the corporate entity was proper.[509] Specification of the categories of information that would aid the discovering party was also evidence that the deposition under the Rule achieved the expected purposes.[510] In denying sanctions, the reviewing court concluded that "[d]espite being provided with this roadmap, plaintiffs apparently did not follow up and obtain the information. No additional 30(b)(6) notice was served and no additional witnesses were requested."[511] Failure to "attempt[] to obtain the necessary information through utilization of other discovery mechanisms" was also relevant in assessing whether relief was appropriate for perceived weaknesses in the testimony of the initial Rule 30(b)(6) deponent.[512]

"[A]ny sanction [imposed] must be 'just' [and] specifically related to the particular 'claim' which was at issue in the order to provide discovery."[513] It is often held that "the record must show a willful and bad-faith failure to comply, and that the other party has been prejudiced by that failure."[514] The risk of

---

506. IDS Life Ins. v. SunAmerica, Inc., 958 F. Supp. 1258, 1271 (N.D. Ill. 1997), *aff'd in part and vacated on other grounds*, 136 F.3d 537 (2d Cir. 1998).

507. *IDS Life Ins.*, 958 F. Supp. at 1271.

508. *Id.*

509. *Id.* (specifying the department that would be knowledgeable about specialized financial maneuvers such as "dollar rolls" and the other department familiar with "reverse repos").

510. *See id.* (identifying passive investment information and corporate financial activities as topics the discovering party could pursue to obtain information beyond the knowledge of the designated deposition witness).

511. *Id.*

512. *IDS Life Ins.*, 958 F. Supp. at 1271.

513. Insurance Corp. of Ir. v. Compagnie des Bauxites, 456 U.S. 694, 707 (1982).

514. Shelton v. American Motors Corp., 805 F.2d 1323, 1330 (8th Cir. 1986) (citing Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir. 1977)).

exposing work product has expressly been noted as a factor in finding that non-disclosure was not culpable under these standards.[515]

## VIII. CONCLUSION

The unfairness of using Rule 30(b)(6) depositions as a broad requirement for corporate parties to create a grand synthesis of the entire case, on pain of dismissal or summary judgment or sanction motions if the Herculean witnesses called on the entity's behalf have any gaps in their knowledge of corporate records, facts and contentions, seems quite evident.

Thus, what may once have been a "forgotten rule," originally adopted to ease an adversary's discovery of appropriate witnesses—in effect to defeat a shield of obfuscation and inefficiency that could be thrown up by an institutional litigant—has now sometimes been construed by courts as a powerful sword that fundamentally transforms the nature of discovery in cases involving corporations and other organizations.[516] So construed, it becomes an offensive weapon, predicated on pernicious assumptions, which has bizarre implications.[517] At the extreme of this interpretation, it implies that in no case involving a party subject to its application need the opposing party call more than the one or more witnesses designated under Rule 30(b)(6) to learn each and every fact about the case.[518] According to the broad reading, an institutional party must be prepared to proffer one or more Rule 30(b)(6) witnesses capable of testifying about any fact known or reasonably ascertainable by anyone having the requisite affiliation with that institutional party.

The Rule 30(b)(6) device, so construed, is seen as a "great assistance" to the plaintiff's bar in litigating against companies.[519] It operates as a tool to circumvent the normal privilege and work product protections that attend legal work on behalf of

---

515. *Shelton*, 805 F.2d at 1330.

516. Cymrot, *supra* note 5, at 7-10; Elbein, *supra* note 6, at 365-66.

517. *See* Elbein, *supra* note 6, at 365-66.

518. *Id.* at 368-69.

519. P.N. Harkins, III, *How to Mount an Effective Defense of Company Employee Depositions*, 58 DEF. COUNS. J. 180, 184 (1991).

the entity,[520] which facilitates the making of unreasonable de-
mands upon a party and its witnesses. Thus, counsel and those
courts pushing the expansive view of the obligations under the
Rule believe that "'I do not know' and 'I do not remember' are
not adequate answers under Rule 30(b)(6)—even if they are
true."[521]

In so inflating the scope of the Rule, this reading necessarily
eclipses the privileged ground whereon the corporation's counsel
attempts to prepare its witnesses and, through efforts tradition-
ally respected as work product, synthesize what is known about
the facts and their legal implications. On the expansive interpre-
tation of the Rule, however, all the party's knowledge, as nor-
mally adduced through the testimony of a number of competent
witnesses, must be ingested, digested, and regurgitated through
the designee(s). And the very process by which such a witness
might, under the best circumstances, be created—i.e., by pains-
taking fact-finding, cross-checking, integration, and amalgam-
ation conducted by the party's lawyer—will itself be subject to
disclosure through the examination of the witness whose testi-
mony has been the product of the lawyer's efforts. One would
surely think that if a single rule had been promulgated to radi-
cally transform the nature of litigation in cases involving one
special kind of party, that far-reaching consequence would have
been expressly disclosed and deliberated before the Rule was
adopted. The legislative history in the form of Advisory Commit-
tee Note belies this reading.

While lawyers living under this system can only try to make
"the best of a bad situation," the judiciary can focus more care-
fully on the legislative history and proper office of the deposition
device, particularly in comparison to the contention interrogato-
ries permitted under Rule 33. A more narrow conception of the
mission of this tool is workable, useful, and fair.

The misuse of Rule 30(b)(6) discussed in this Article not
only ignores the purposes and legislative history of the entity
deposition device to the extent that it is applied to "contentions"
of an entity, but also loses its philosophical bearings when it
applies to defining corporate "knowledge."

---

520. Cymrot, *supra* note 5, at 7-8.
521. Elbein, *supra* note 6, at 375 (citing Cymrot, *supra* note 5, at 7).

The history of philosophy is replete with a disparate set of models, theories, and conceptions of what it means to "have knowledge" of something, and what is necessary to satisfy that definition. For example, knowledge is said to be an accurate "picture" of the facts;[522] to capture the unchanging forms or essences which give permanence and order to a world of changing appearances;[523] to consist of linguistic representations which stand in a one-to-one, mirror relationship with their designata;[524] or to provide a map on the basis of which usable and useful predictions may be generated.[525]

As elaborated in various epistemologies, knowledge has been identified broadly as consisting of some sort of correspondence with reality; or coherence within a general system; or with the potential to generate testable consequences. But with one exception, noted below, knowledge has invariably been thought to be something generated, possessed, and passed on by *individuals*. That is, the thing in question, however it is conceived, is joined at birth and by its very nature to a single human being capable of thinking, inquiring and/or perceiving in a way deemed adequate to create (or to comprehend) the knowledge in question.

The exception to the general view that knowledge is possessed exclusively by individuals is a contribution of idealist theorists. That view asserts that some sort of collective entity, rather than separate individuals, accumulates knowledge over time. Perhaps the most modern and plausible rendition of this somewhat moribund position was the one proposed by Charles Sanders Peirce, an American philosopher who wrote in the second half of the nineteenth and early twentieth centuries. Peirce,

---

522. *See, e.g.*, ARISTOTLE, METAPHYSICS Book IV ("To say of what is that it is not, or of what is not that it is, is false, while to say of what is that it is, and of what is not that it is not, is true . . . ."); *see also* LUCRETIUS, ON THE NATURE OF THINGS Book IV (The mind replicates the characteristics possessed by external objects).

523. PLATO, THE REPUBLIC Book VI.

524. *E.g.*, LUDWIG WITTGENSTEIN, TRACTATUS LOGICO-PHILOSOPHICUS (true propositions correspond, element-by-element, to facts); Bertrand Russell, *The Philosophy of Logical Atomism, reprinted in* LOGIC AND KNOWLEDGE (R.C. Marsh ed., 1956).

525. ABRAHAM KAPLAN, THE NEW WORLD OF PHILOSOPHY, LECTURE ONE: PRAGMATISM 27 (1961) ("The pragmatist theory of truth amounts, I think, to this: that candidates for truth are fundamentally not descriptions but predictions, and what they predict is the outcome of possible action."); *see, e.g.*, WILLIAM JAMES, THE MEANING OF TRUTH Ch. 2 (1909).

a strikingly original thinker who is most often identified as one
of the founders of pragmatism, conceived of truth as the limit
approached by an infinite number of scientists making inquiry
over an infinite course of time.[526] Thus, the object of knowl-
edge-seeking activity becomes a kind of heuristic ideal: we get
closer to it as collective human inquiry proceeds and as the
results accumulate. At any given moment, however, we have
only the best current *approximation* of that end. Further refine-
ments will be made as history (and the attendant human inqui-
ry) trudges onward.[527]

To the extent that current efforts to over-read the mission of
Rule 30(b)(6) presuppose a deponent whose knowledge conforms
to a collective, rather than individual model, such a reading fails
to recognize that the process of integration and collection re-
quires a community of actors (here, including corporate person-
nel and the lawyers representing the entity) to allow the process
to proceed with any reasonable hope of success. The attempt to
use a Rule 30(b)(6) deposition as a convenient synthesis of an
entire case on demand simply ignores the everyday fact that the
process of perfecting the product (i.e., the truth) demands a
laborious sifting and winnowing of alternatives with unimpeded
access to data which can be shared, tested and refined. And,
most critically, it does not even grasp that this is a process and
thus requires time to generate results, evolves as it proceeds,

---

526. Charles S. Peirce, *How to Make Our Ideas Clear*, POPULAR SCI. MONTHLY,
Jan. 1878, at 286-302. "[Truth is] the opinion which is fated to be ultimately agreed
to by all who investigate."

527. Three things should be noted about this collective conception of knowledge:
(1) It trades upon, and presupposes, a dedicated corps of skilled knowledgeseekers
(scientists) whose work incrementally expands the boundaries of the known, weeding
out inconsistencies, devising experiments to test new theories (in the sense of trying
to dis-confirm them), and utilizing (or creating) whatever instruments are available
at a given time to collect, examine, and test empirical data; (2) It assumes that
there are open lines of communication within the community of scientists, so that
anomalous results, or inconsistent hypotheses, may come to light and be challenged;
and (3) It teaches that, rather than being an instantaneous, time-neutral affair, the
accretion of knowledge is a process that only develops through time. Indeed, by its
very nature, the collective fruits of human inquiry, while "better" as a whole than
what had been achieved in times past, is also never quite as good, by definition, as
what will be achieved as the process moves forward. It follows, then, that the cumu-
lative approximation achieved by inquiry as it stands at any given moment is al-
ways subject to revision, is always incomplete, and is always going to be more accu-
rate (useful, complete) in the future.

and may not lead to fixed, final and definitive statements of position.[528]

In sum, even taking as a model the single modern epistemological theory that provides some meaningful view of what is required for an entity (such as a corporation or a partnership) to possess some sort of collective knowledge—a theoretical amalgamation of all the bits and pieces experienced by, or known to, its human agents—the extreme interpretation of Rule 30(b)(6) adopted by certain courts fails to acknowledge the time-bound, re-constructive efforts that must be undertaken to achieve the collective results.

In effect, what such courts are doing is committing a philosophical error: they are retaining a simplistic paradigm for human knowledge of matters of fact (the mind holds a mirror up to nature and simply reflects what is there)—which may serve well enough for practical purposes when what is being considered is the ability of individuals to record and recount what they have experienced—and then applying that paradigm to a larger entity, assuming that its ability to "know the facts" is just the same

---

528. Indeed, from the perspective of Peirce's later cohorts in the species of epistemology that came to be known generally as "pragmatism," knowledge—as it is best elaborated and refined through the procedures adopted within scientific inquiry—is characteristically and inherently projective, testable by its fruits, and forward-looking. True statements ("warranted assertions" in the pragmatist lexicon) do not simply "picture" or re-produce what is (or was) there, but instead either elaborate operations for transforming what is there into something deemed more satisfactory, or predict what will be there if specified procedures are duplicated. If we adopt the rather metaphysical phrase "antecedent reality" to designate that which exists—"what is (or was) there"—prior to the onset of inquiry, then, according to this view of knowledge, the definitive function of inquiry is not to portray or mirror antecedent reality, because the unique business of discovery (i.e., of coming up with a true account of that which we are looking into) is to mediate the processes of discourse, experimentation, and prediction. From the pragmatist perspective, active reconstruction, not mere passive re-presentation, is the distinctive goal of human thought and inquiry. The specific function of knowledge-generating activities is to be a sort of tool of all tools which serves, not simply to hold a mirror up to "the facts," but rather to provide us with some leverage for the production of testable, observable consequences. Put yet another way: even the most precise, lightfingered, and delicate of descriptions cannot avoid an inherent requalification of the subject matter under investigation. In other words, even what is (or was) there to be described (viz., for example, something as pedestrian as a party's statement of the facts of the case) is a function of what is being looked for, and is dependent upon the tools, linguistic and legal categories, observational apparatus and techniques, and the specific purposes that we inevitably bring with us even when we set out simply to "look and see" what facts are there.

Alabama Law Review    [Vol. 50:3:651

sort of mirror, only writ large. This viewpoint results in a muddled and incoherent picture of "collective knowledge." But, what is worse, it leads some courts to enforce an unworkable, unrealistic, and unfair set of requirements in litigation under the Federal Rules of Civil Procedure.

# EXHIBIT 2

# HellerEhrman LLP

March 9, 2007

*Via E-mail & U.S. Mail*

Daniel N. Kassabian
Daniel.Kassabian@hellerehrman.com
Direct +1.415.772.6098
Direct Fax +1.415.772.1796
Main +1.415.772.6000
Fax +1.415.772.6268

40443.0005

Basil J. Lewris, Esq.
Linda A. Wadler, Esq.
Barbara R. Rudolph, Esq.
Finnegan Henderson Farabow Garrett & Dunner LLP
901 New York Ave., N.W.
Washington, D.C. 20001-4413

Re:     *Wyeth v. Impax Laboratories, Inc.*
     **U.S. District Court, District of Delaware, Civil Action No. 06-222 JJF**

Dear Counsel:

Please find enclosed Impax's Second Amended Notice Of Deposition Of Wyeth Pursuant To Fed. R. Civ. P. 30(b)(6). We have substantially narrowed the Notice and reorganized it under major headings to fully comply with the Court's statements.

We should be able to get through these topics in four (4) days of depositions running from 9:00 a.m. to 1:00 p.m. and 2:00 p.m. to 5:00 p.m.

This assumes that there is adequate preparation of the deponent(s), objections are stated concisely and in a non-argumentative manner, the witnesses are instructed not to answer only when necessary to preserve a privilege, that there is no impediment, delay or other conduct that frustrates the fair examination of the deponent(s) (*See* Fed. R. Civ. P. 30(d)(1) & (3)) and that we are given ten (10) days notice of the witnesses which will testify about each topic and when that topic will be addressed.

Based on the information we have to date, we estimate the time-frame being broken down among the below eight (8) general topics as follows:

I.     WYETH'S ALLEGED CONCEPTION AND REDUCTION TO PRACTICE OF THE "INVENTIONS" IN THE PATENTS (3 hours)

II.     EVOLUTION OF WYETH'S COMMERCIAL PRODUCT --DEVELOPMENT AND CHARACTERISTICS (4 hours)

Heller Ehrman LLP  333 Bush Street  San Francisco, CA  94104-2878  www.hellerehrman.com

Anchorage     Beijing     Hong Kong     Los Angeles     Madison, WI     New York     San Diego     San Francisco     Seattle
                                        Silicon Valley    Singapore     Washington, D.C.

HellerEhrman LLP

Basil J. Lewris, Esq.
March 9, 2007
Page 2

III.   WYETH'S FAILURES OF OTHER EXTENDED RELEASE
       TECHNOLOGIES WITH VENLAFAXINE (4 hours)

IV.    OTHER EXTENDED RELEASE FORMULATIONS WHICH MIGHT
       INVALIDATE THE WYETH PATENTS OR RENDER THEM
       UNENFORCEABLE (4 hours)

V.     FACTS EVIDENCING INEQUITABLE CONDUCT BY
       MISCHARACTERIZING THE CLINICAL STUDIES ON NAUSEA AND
       FAILURE TO DISCLOSE HIGHLY MATERIAL INFORMATION (3 hours)

VI.    FACTS SUPPORTING STATEMENTS IN THE PATENTS OR REQUIRED
       TO UNDERSTAND THEM; AND PATENT PROSECUTION PRACTICE
       AND RECORDKEEPING (3 hours)

VII.   WYETH'S NEW DRUG APPLICATION (NDA) AND STATEMENTS
       MADE TO THE FDA THAT CONTRADICT THE PATENTS AND
       WYETH'S INTERPRETATION OF THE CLAIMS (3 hours)

VIII.  THE ALLEGED COMMERCIAL SUCCESS BY WYETH IS NOT
       ATTRIBUTABLE TO THE ALLEGED INVENTION BUT TO
       ADVERTISING AND PROMOTION (4 hours)

Obviously, some topics may require less time and some more. So the above estimate should not be considered a restriction as to the amount of time actually spent on any one topic or even groups of topics, because a deponent may provide testimony that requires additional time to explore a given topic or group of topics or may dispose of another topic quickly. But the overall length should not go over four days.

You should also note that beyond reorganizing some topics, many have been reduced in scope and/or the subject matter has been set forth with additional particularity, and some have been eliminated completely. Despite this, in a further effort to move forward with this deposition in an expeditious manner, we have voluntarily provided more information about the subject matter of these topics beyond the "reasonable particularity" called for by Rule 30(b)(6) and the case law interpreting it. Of course, we will require the same of Wyeth if and when it seeks a Rule 30(b)(6) deposition of Impax.

Accordingly, we believe this notice is well within the scope of reasonable discovery for a patent infringement case with three patents-at-issue, Wyeth's assertion of facts dating back to the early 1990's, and with the range of issues currently in dispute. *Cf. AMP, Inc. v. Fujitsu Microelec., Inc.*, 853 F. Supp. 808, 831 (M.D. Pa. 1994) (requiring deposition of defendant and accused patent infringer represented by Finnegan Henderson on 25 topics

HellerEhrman LLP

Basil J. Lewris, Esq.
March 9, 2007
Page 3

noticed pursuant to Rule 30(b)(6), and rejecting contention that facts alleged in support of defendant's allegations and denials were outside of its control).  In light of this, the notice is not unduly burdensome in view of the factors set forth in Rule 26(b)(2)(C)(iii).  *Cf. Dynacore Holdings Corp. v. U.S. Philips Corp.*, No. 01-CIV-5012, 2002 WL 31233246, *5 (S.D.N.Y. Oct. 4, 2002) (rejecting assertion by defendants represented by Finnegan Henderson that the Rule 30(b)(6) deposition would be unduly burdensome without specific facts regarding factors in Rule 26(b)(2)(C)(iii)).

If Wyeth still refuses to produce any witness pursuant to this notice, please let us know the reasons for its refusal immediately.  To the extent Wyeth raises an issue with a particular topic or a group of topics, we again request that the deposition move forward as to the other groups of topics noticed because there is no need to further delay as to those undisputed topics.  In the event that the parties cannot come to an agreement by or before March 16, 2007, Impax will file a motion on that day to compel this deposition that will be heard on or before April 13, 2007.  Obviously, we hope to avoid needless motion practice, especially given that the parties have previously briefed the issues and the above addresses additional concerns raised by the Court.

We look forward to your prompt reply.

Best regards,

Daniel N. Kassabian

Enclosure

cc:    M. Patricia Thayer, Esq.
       John M. Benassi, Esq.
       Jessica R. Wolff, Esq.
       Samuel F. Ernst, Esq.
       Mary B. Matterer, Esq.
       Jack B. Blumenfeld, Esq.
       Karen Jacobs Louden, Esq.

SF 1354393 v7

EXHIBIT 3

SHEET 1

1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2            IN AND FOR THE DISTRICT OF DELAWARE
 3                         - - -
 4   PHARMACIA & UPJOHN COMPANY,    :  CIVIL ACTION
 5              Plaintiff and       :
 6              Counter-defendant,  :
 7   v.                             :
 8   SICOR INC., and SICOR          :
     PHARMACEUTICALS INC.,          :
 9              Defendants and      :
                Counter-Claimants.  :  NO. 04-833 (KAJ)
10
11                    Wilmington, Delaware
12            Tuesday, October 11, 2005 at 3:00 p.m.
                   TELEPHONE CONFERENCE
13
14   BEFORE:    HONORABLE KENT A. JORDAN, U.S.D.C.J.
15                         - - -
16   APPEARANCES:
17
     MORRIS NICHOLS ARSHT & TUNNELL
18   BY:  MARYELLEN NOREIKA, ESQ.
19        and
20   McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
     BY:  DANIEL A. BOEHNEN, ESQ.,
21        JOSHUA R. RICH, ESQ., and
          GRANTLAND G. DRUTCHAS, ESQ.
22        (Chicago, Illinois)
23             Counsel for Pharmacia & Upjohn
               Company
24
25                       Brian P. Gaffigan
                         Registered Merit Reporter
```

2

```
 1   APPEARANCES: (Continued)
 2
 3   ASHBY & GEDDES
     BY:  JOHN G. DAY, ESQ.
 4
 5        and
 6   SONNENSCHEIN NATH & ROSENTHAL, LLP
     BY:  REID L. ASHINOFF, ESQ. and
 7        DAVID R. BAUM, ESQ.
          (New York, New York)
 8
 9        and
     SONNENSCHEIN NATH & ROSENTHAL, LLP
10   BY:  JORDAN A. SIGALE, ESQ.
          (Chicago, Illinois)
11             Counsel for Sicor Inc. and Sicor
               Pharmaceuticals Inc.
12
13
14                       - oOo -
15              P R O C E E D I N G S
16        (REPORTER'S NOTE:  The following telephone
17   conference was held in chambers, beginning at 3:00 p.m.)
18        THE COURT:  Hi, this is Judge Jordan.  Who do I
19   have on the line?
20        MS. NOREIKA:  Good afternoon, Your Honor.  It's
21   Maryellen Noreika from Morris Nichols for plaintiff
22   Pharmacia; and I have with me, Dan Boehnen and Joshua Rich
23   of the McDonnell Boehnen firm in Chicago.
24        MR. BOEHNEN:  Also with us in Chicago is Grant
25   Drutchas.
```

3

```
 1        MS. NOREIKA:  Oh.  I apologize, Grant.
 2        THE COURT:  All right.  Who do I have on for
 3   Sicor?
 4        MR. DAY:  Good afternoon, Your Honor.  On behalf
 5   of Sicor, you have John Day from Ashby & Geddes as local
 6   counsel; and from the Sonnenschein firm in New York, Reid
 7   Ashinoff and David Baum; and from Sonnenschein's office in
 8   Chicago, Jordan Sigale.
 9        THE COURT:  All right.
10        MR. ASHINOFF:  Good afternoon, Your Honor.
11        THE COURT:  Good afternoon.  Well, by my count,
12   this is the fifth time we're getting together in this case
13   because we have discovery issues.  So this is not a good
14   record, ladies and gentlemen, but we're going to plow
15   through what we've got here.
16        Before we start, however, I have a question
17   for the folks at Sicor, and that is, I got in camera
18   submission that you sent over.  Did you send a version,
19   redacted, if you thought necessary, of your legal argument
20   to the opposing counsel?
21        MR. ASHINOFF:  Your Honor, what we served on
22   the opposing counsel is a motion that we filed and a
23   privilege log that listed the privilege material that the
24   Court got.  What we served in camera on the Court was the
25   short discussion of the substance of the privileged material
```

4

```
 1   and the actual privileged material.  We did not serve copies
 2   of the discussion and description of the privilege material
 3   or the actual material on our adversary.
 4        THE COURT:  All right.  I need to have you
 5   identify yourself for the record.
 6        MR. ASHINOFF:  It's Reid Ashinoff.  I'm sorry,
 7   Your Honor.
 8        THE COURT:  All right.  Mr. Ashinoff, that's not
 9   going to cut it.  I'm going to quote to you what I said in
10   our last teleconference on the 19th of September.  Page 24
11   of the transcript:
12        "You can certainly submit your documents in
13   camera and your legal arguments ought to be submitted so
14   that the other side can respond to them."
15        Later on the same page:
16        "In short, you give me the documents but you
17   give your arguments to the attorney side, too, so they can
18   respond unless it's something genuinely extraordinary that
19   you think will get past me; all right?"
20        And what I was trying to communicate there and
21   what I will reemphasize is I'm not going to let you give me
22   legal argument without an opportunity for them to respond to
23   legal argument.
24        MR. ASHINOFF:  Your Honor, I don't think we cite
25   any law at all in the material we submitted in camera.  What
```

SHEET 9

33

1 representation from you folks that you have checked with the
2 folks he just named, an affirmation that in fact you have
3 inquired of and heard from these people that there are no
4 lab notebooks belonging to this inventor. And that's all
5 I'm hearing he is asking for. Are you telling me you got an
6 issue with that?
7     MR. BOEHNEN: To me, Your Honor, no, sir. And I
8 understand, just to restate it, I believe he is referring to
9 the Oblon firm, Jake Wood, which is JA Kemp & Co. in the
10 U.K. and --
11     MR. SIGALE: And the Nerviano Consulting firm
12 (phonetic) where many of these inventors found gainful
13 employment.
14     MR. BOEHNEN: -- the people in the Nerviano
15 Medical Sciences Facility as well as Pfizer itself.
16     THE COURT: Right. Okay.
17     MR. BOEHNEN: No, not a problem. We'll be happy
18 to do that.
19     THE COURT: Done.
20     MR. SIGALE: If I might, I'd prefer to have the
21 notebooks.
22     THE COURT: Well, I'm sure everybody would
23 prefer the notebooks were there because then we wouldn't be
24 having this fight at all. So obviously if the notebooks are
25 there, they'll be produced, but if they're not, you will get

34

1 an affirmation of what was done to look for them with these
2 other folks, right?
3     MR. BOEHNEN: Yes, sir.
4     MR. ASHINOFF: Your Honor, just to go back half
5 a step. On the foreign patent material that Mr. Boehnen,
6 Ms. Noreika say is now being collected, given that we plan
7 to try to go abroad and take the inventors on November 7th,
8 can we get some date not too late in October when that
9 material will be produced to us so we have the time to
10 assimilate it before we take the inventors?
11     THE COURT: Mr. Boehnen.
12     MR. BOEHNEN: We have already begun making every
13 effort to get that to them as soon as possible. Let's see.
14 We can start a rolling production by the end of next
15 week and I think we hope to have it to them by the end of
16 October.
17     THE COURT: All right. End of October it is.
18 And a rolling production is a good idea.
19     MR. ASHINOFF: Thank you.
20     THE COURT: Okay. Then we had the dispute about
21 the 30(b)(6) categories.
22     MR. ASHINOFF: And I'm going to let Mr. Sigale
23 address that, Your Honor.
24     MR. SIGALE: Your Honor, we propounded a number
25 of categories in a 30(b)(6) notice that asks for the factual

35

1 contentions underlying legal contentions I need to
2 understand and I thought this was an efficient way to do it.
3 For instance, if we take category number six. We asked for
4 the facts concerning Pharmacia's allegation that licensing
5 and adoption of the ready-to-use formula is evidence that
6 the patent satisfied the obviousness requirement.
7     I need to know what facts those are. That is
8 not a contention request. It is what licensing are you
9 talking about? What adoption are you talking about? What
10 are the circumstances about that licensing? And I thought
11 this was an efficient way to get that. I can go through a
12 couple other categories but I can assure you I'm not looking
13 for legal contentions, that is a waste of time. A lay
14 witness is not going to be able to give that to me, but
15 facts they certainly can.
16     THE COURT: All right. Mr. Boehnen, is this
17 yours again?
18     MS. NOREIKA: Your Honor, this is Maryellen
19 Noreika. I'll respond to this issue.
20     THE COURT: Okay.
21     MS. NOREIKA: Sicor, there doesn't seem to be
22 any disagreement that depositions are not the appropriate
23 means by which to obtain contentions. Instead, they're
24 saying, well, we're just seeking facts. But as the topic
25 that Mr. Sigale just read indicates, these are seeking

36

1 contentions: All facts regarding Pharmacia's allegations
2 regarding copying, commercial success, failure of others.
3 There is a topic asking for the data Pharmacia contends
4 shows secondary considerations and the conclusions a person
5 skilled in the art would draw from that data. There is a
6 topic asking for a witness to testify about Pharmacia's
7 response to a contention interrogatory on secondary
8 considerations.
9     THE COURT: Okay.
10     MS. NOREIKA: I mean the wording of these
11 topics.
12     THE COURT: I think I have your position. I
13 have other folks who need my attention at 4:00 o'clock so
14 let me tell you, having read this, what my impression is.
15     I think there is some good force to the argument
16 being made by Pharmacia that the inserting of the word
17 "facts" doesn't make this less of an effort to get at what
18 is essentially the legal position of the party, although you
19 may get the benefit as well of saying, well, these are the
20 pieces of specific evidence.
21     So in the first instance, and on an expedited
22 basis, not a 30-day turnaround, if you want the chance to
23 answer these as contention interrogatories, I'm going to
24 direct that you accept them as such and you answer them
25 forthwith. You know, the sort of thing that you get a

United States District Court for the District of Delaware
Before the Honorable Kent A. Jordan

SHEET 10

**37**

1 couple of weeks to respond to.
2         And then if you folks on the Sicor side want to
3 do some follow-up deposition discovery, targeted at
4 inquiring about specific facts that are revealed in the
5 context of these interrogatory responses, you're free to
6 do that.
7         I take the point that Pharmacia is making here,
8 which is it's so broadly worded, it can't help but really be
9 a circumstance where somebody is asked to know every fact
10 pertaining to every contention and that's a little bit much
11 to put on a deponent.
12         So that is the resolution to that. You want to
13 treat them as contention interrogatory attorneys. Done.
14 Answer them in two weeks.
15         And then if you have some follow-up and more
16 targeted and specific 30(b)(6) effort you want to make,
17 Sicor, you follow up on it that way.
18         MR. ASHINOFF: Thank you, Your Honor.
19         THE COURT: Now, let me tell you one last thing.
20 And this is for you, Mr. Ashinoff, in the discussions that
21 you are going to be having with your client, to the extent
22 again that this is helpful.
23         And again, we're treading here carefully and
24 I'm very careful when we talk about the attorney-client
25 privilege. I want to assure you I have not made lightly

**38**

1 the decision I made about how to approach the bifurcation
2 request. To the extent it's helpful in your discussing
3 with your client my understanding of the Knorr opinion, I
4 view Knorr-Bremse as saying no adverse inference can be
5 drawn from either failing to get an opinion or declining to
6 produce it; that you are entitled to get your opinion and
7 to stay silent about it.
8         Viewing it that way, I have never yet heard
9 anybody make a reasoned argument to me why it could be
10 put before a jury after the Knorr-Bremse opinion that an
11 opinion was received but not tendered. And in the absence
12 of that, I'm inclined to think there probably isn't a
13 reasoned argument. That the only reason for putting it
14 in front of a jury would be so they draw an adverse
15 inference, which with what Knorr-Bremse says could not
16 happen.
17         So I give that to you as my best reading of
18 Knorr, in the absence of people having really been able to
19 put it forth, but I think it only fair, since people are
20 trying to grope around and make a decision, that they grope
21 a little less blindly. I hope that is helpful to you.
22         MR. ASHINOFF: It is, Your Honor. And it
23 actually comports with literally a 100-year old doctrine
24 in federal law in other appellate courts to the extent of
25 saying that to force somebody to assert the privilege in

**39**

1 front of a jury is reversible error and that comports with
2 what Your Honor is saying.
3         THE COURT: Okay. Well, I thank you for your
4 time today. I hope it has been helpful in getting some
5 things worked out. Let me tell you real quickly what I'm
6 looking for as a date in February because this is going to
7 appear in a revised scheduling order that we'll put out.
8 I'm going to see you folks for argument on February 3rd
9 instead of January 19th. That's a Friday. All right?
10         MR. BOEHNEN: Your Honor, one quick point for
11 Pharmacia.
12         THE COURT: Yes.
13         MR. BOEHNEN: Can we have a new date when our
14 briefs in opposition to bifurcation will be due? I would
15 suggest two weeks after they produced papers to us if they
16 chose to rely upon them.
17         THE COURT: Mr. Ashinoff, you're fine with that,
18 I assume.
19         MR. ASHINOFF: Yes, as long as Mr. Boehnen
20 doesn't in the interim try to put my witness in the chair
21 and force us to go through all kinds of contortions about
22 privilege.
23         THE COURT: Well, I'm sure everybody wants to be
24 efficient here, or at least I would like to think so.
25         Mr. Boehnen, you take that point, I'm sure.

**40**

1         MR. BOEHNEN: Yes, sir.
2         MR. ASHINOFF: Your Honor, one last comment on
3 what Your Honor last said, and I apologize for this.
4         This law firm has an annual weekend once a year
5 where it gathers its partners and their spouses and et
6 cetera and it happens to be February 1st through 4th of
7 2006.
8         THE COURT: Okay. That is enough said. I will
9 not trample on a firm tradition. If it's the 1st through
10 the 4th, then I'm shifting you guys to the next day I can
11 give you. And I think it's, yes, the next day I can give
12 you is the 9th and that's when I will set you down. We'll
13 do this at 10:00 a.m. on February 9th.
14         Can you do that, Mr. Boehnen?
15         MR. BOEHNEN: Yes, sir.
16         THE COURT: Okay.
17         MR. ASHINOFF: Thank you very much, Your Honor.
18         MR. SIGALE: Your Honor, I'm sorry. This is
19 Mr. Sigale. We left open the claim construction dates. You
20 were suggesting December 12th for the opening brief. The
21 opposition brief would be due?
22         THE COURT: It will follow the ordinary course:
23 Two weeks for answer, one week for reply.
24         MR. SIGALE: Right, which would be the 26th of
25 December; and inasmuch as I don't observe Christmas, I would

# EXHIBIT 4

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2          IN AND FOR THE DISTRICT OF DELAWARE
 3                      - - -
 4   McKESSON INFORMATION SOLUTIONS  :      CIVIL ACTION
     LLC,                           :
 5              Plaintiff           :
                                    :
 6        vs.                       :
                                    :
 7   THE TRIZETTO GROUP, INC.,      :
                                    :
 8              Defendant           :      NO. 04-01258 (SLR)
 9                      - - -
10                              Wilmington, Delaware
11                              Tuesday, August 2, 2005
                                4:50 o'clock, p.m.
12
13   BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge
14                      - - -
15   APPEARANCES:
16
          SKADDEN, ARPS, SLATE, MEAGHER & FLOM
17        BY:  MICHAEL A. BARLOW, ESQ.
18
19                 -and-
20
21
22
23                         Valerie J. Gunning
24                         Official Court Reporter
25
```

Page 2

```
 1   APPEARANCES (Continued):
 2
 3        SKADDEN, ARPS, SLATE, MEAGHER & FLOM
          BY:  JEFFREY G. RANDALL, ESQ.
 4          (Palo Alto, California)
 5            Counsel for Plaintiff
 6        MORRIS, NICHOLS, ARSHT & TUNNELL
          BY:  RODGER D. SMITH, ESQ.
 7
 8              -and-
 9
          GIBSON, DUNN & CRUTCHER LLP
10        BY:  MICHAEL SITZMAN, ESQ.
             (San Francisco, California)
11
             Counsel for Defendant
12
13                 - - -
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2                P R O C E E D I N G S
 3
 4        (Proceedings commenced in the courtroom,
 5   beginning at 4:50 p.m.)
 6
 7        THE COURT:  Good afternoon, counsel.  I take
 8   it the fact that you are here means that there must be
 9   some disputes?
10        MR. SITZMAN:  Actually, your Honor, to sort
11   of jump ahead, we've been trying to find out for a week
12   and a half from plaintiff what disputes they think are
13   at issue.  We wrote them about 12 days ago and said that
14   we ought to be able to obviate the need for a discovery
15   conference because there's nothing at issue between us
16   and, as of Friday, we still had no indication from them
17   what they planned on raising.
18        I got an e-mail Thursday night saying that
19   we will try in the next few days to get you an itemized
20   list and I have yet to see any kind of indication from
21   them as to what they intend on raising.
22        THE COURT:  All right.  Well, then you and I
23   are both in the same boat.
24        All right.  Let's hear from plaintiff's
25   counsel, then, as to what it is believed to be problematic
```

Page 4

```
 1   here.
 2        MR. RANDALL:  Your Honor, Jeff Randall,
 3   representing Plaintiff, McKesson, with Skadden Arps.
 4        I'm glad to hear that there are no issues
 5   that TriZetto has with McKesson.  We do have three
 6   issues that we'd like to raise with the Court.
 7        We did respond to the inquiries by TriZetto
 8   and indicated that we had been engaged in a whole series
 9   of letters with them regarding these three issues and
10   that we would raise these issues.
11        The first issue is TriZetto's continued
12   failure to comply with your Honor's May 19 order
13   requiring them to adequately identify the anticipatory
14   art that they are relying on and the art that they rely
15   on of their obviousness argument.
16        The second issue is their failure to provide
17   a 30(b)(6) witness or any witness for us in response to
18   two 30(b)(6) notices that we served in early July.
19        And the third issue is their failure to
20   provide adequate claim construction, as required by the
21   Court's scheduling order.
22        With respect to the first issue, your Honor,
23   let me give you some background.  We served our
24   Interrogatories on TriZetto in December and this case
25   involves a patent which they have known about for years.
```

Page 21

1    And so I guess I am hoping that we will hear
2  that document production is now finished.
3    And I think that's it.
4    THE COURT: All right. Before I hear from
5  Mr. Randall again, let me handle the easiest issues first.
6    That is with respect to the depositions.
7  Number one, I have never thought contention Interrogatories
8  are appropriately responded to via 30(b)(6) depositions. I
9  still maintain that position.
10    So if you ask for depositions concerning the
11  basis for a defense, that is a contention interrogatory.
12  You can ask who has knowledge and then you can take
13  individual depositions, but I don't believe that a
14  corporate deposition is appropriate for contention.
15    And may I ask of the six topics, there was an
16  indication from Mr. Randall that at least Topic No. 5,
17  there was agreement that that was not a contention
18  interrogatory; is that correct?
19    MR. SITZMAN: That is correct.
20    THE COURT: All right. With respect to the
21  outstanding contention interrogatory, the outstanding
22  30(b)(6) deposition notices and efforts to get invention
23  depositions by a week from today, and that is by August 9,
24  2005, by 5:00 o'clock, I will give you 15 minutes less
25  than a week, you are to exchange the names of the folks

Page 22

1  who will respond to all of the outstanding, as of today,
2  30(b)(6) notice depositions. You will provide to opposing
3  counsel the dates within the next 30 or -- I guess 30 days.
4  I don't know whether it should be 30 or 60 days that these
5  folks could be available. You will provide to opposing
6  counsel where they might be made available, so that you
7  all can coordinate efficiently the taking of these
8  depositions.
9    So that's by a week from today. Whoever fails
10  to comply with that will be brought to my attention and
11  we'll deal with whatever sanction there needs to be dealt
12  with. But it seems to me that, after all this time, you
13  all and your clients should have been thinking ahead and
14  getting this information together.
15    With respect to the Interrogatory about the
16  prior-art references, I am satisfied at this point with
17  the explanation provided by TriZetto. And that is that,
18  at this point, they only intend to use the 19 that are
19  charted, that the remaining have been identified as
20  relevant, but not as prior-art references that will be
21  used affirmatively at trial.
22    And I expect that if any are added, there
23  will be reason why they weren't added now as opposed to
24  later and that they will be charted adequately when they
25  are added.

Page 23

1    That leaves me with claim construction. And
2  I'm not sure I can respond to that without really looking
3  at the claim terms and construction and I have not heard
4  Mr. Randall on that. I do want to hear Mr. Randall on that.
5    And with respect to -- well, I guess I will
6  just hear also from Mr. Randall about whether, in fact,
7  they had provided the earliest version of the software
8  that they have in their possession or not.
9    So I think those are two issues that are still
10  left to be addressed by me.
11    And, Mr. Randall, I would like to hear your
12  response to those two issues.
13    MR. RANDALL: Sure. One clarification. That
14  is that our discovery cutoff is the 16th of September, so
15  I think that it would make sense to have all the
16  depositions at least scheduled by 30 days following the --
17    THE COURT: All right.
18    MR. RANDALL: And one other issue with respect
19  to their interrogatory claim chart. I would ask that they
20  be ordered to provide, at least as to those 19 that they
21  are relying on, identify where within the references
22  there's a motivation to combine the references that they
23  have asserted. So, for instance, for any one given claim,
24  if they are relying on an obviousness combination of six
25  references to render invalid based on obviousness one

Page 24

1  claim, they ought to identify where in those references
2  there's a motivation to combine the references.
3    THE COURT: Accept that the motivation to
4  combine can come from any place, can't it? It can come
5  from all sorts of different things. It does not
6  necessarily have to come from the references and, quite
7  frankly, I thought that was generally the gist of an
8  expert's report.
9    MR. RANDALL: Well, if they are relying on
10  anything within the documents, at least they should
11  identify that.
12    THE COURT: Certainly. If it's within the
13  documents, it should be identified. If it's not, then --
14    MR. RANDALL: They can do that by the 9th, as
15  well?
16    THE COURT: Yes.
17    MR. RANDALL: Thank you.
18    With respect to the document production, your
19  Honor, I wasn't aware that they were not seeking the most
20  current version. I have not gone through the transcript
21  of the hearing. I wasn't here. But it was my
22  understanding that they were arguing for the current
23  version of the software. But I will look -- we'll find
24  out if they were arguing for it or not. We went through
25  great efforts to get them the current version.

# EXHIBIT 5

REDACTED

# EXHIBIT 6

REDACTED

EXHIBIT 7

REDACTED

# EXHIBIT 8



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP**

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

BARBARA R. RUDOLPH
202.408.4346
barbara.rudolph@finnegan.com

March 13, 2007

Daniel N. Kassabian, Esq.
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104

*VIA EMAIL*
*CONFIRMATION COPY VIA U.S. MAIL*

Wyeth v. Impax Laboratories, Inc., Civil Action No.: 06-222 (D. Del.)

Dear Daniel:

We are writing in response to your letter of March 9, 2007, regarding Impax's Second Amended Notice of Deposition of Wyeth Pursuant to Fed. R. Civ. P. 30(b)(6) ("Impax's Second Amended Notice"). At the outset, we disagree with your assertion, on page 1 of your March 9th letter, that you have "substantially narrowed the Notice." To the contrary, Impax's Second Amended Notice consists of 32 separate topics, whereas Impax's First Amended Notice contained 34 topics. Moreover, Impax's Second Amended Notice is substantially identical in topics and scope to your First Amended Notice, with a few minor exceptions. Indeed, in some cases, Impax has *expanded* the scope of topics that were previously noticed. As such, the Second Amended Notice is objectionable for at least the same reasons as Impax's First Amended Notice, which was the subject of Wyeth's Motion for a Protective Order, which the Court granted on March 2, 2007.

Your attempt to reorganize the topics into categories and assign time-frames to each of those categories does nothing to alleviate the oppressive, overly burdensome nature of Impax's Second Amended Notice. Irrespective of how long Impax expects to spend on each category of topics during the deposition, Wyeth would still be required to prepare one or more witnesses on topics that remain practically boundless in scope. As just one example, Topic 3, which is directed to "FACTS relating to the evolution of the composition and formulations of EFFEXOR XR and the development thereof from June 1990 through July 2002," covers on its face over 10 years of research and development, and, as per Impax, should be interpreted to "include" (but is not *limited* to) "modification to the formulations during that period, methods of manufacturing, when and where they were developed, who developed them, and what materials and methods were used to develop them." As we have previously noted with respect to the substantially similar noticed topic (*e.g.*, topic 3 of Impax's First Amended Notice), the topic encompasses, for example, pharmaceutical formulation; dissolution; stability; scale-up to commercial production; clinical trials on safety, bioavailability, and efficacy; clinical batch manufacturing, commercial manufacturing, and labeling. It also embraces testing and use of Effexor XR for the treatment of depression, the treatment of social

Daniel N. Kassabian, Esq.
March 13, 2007
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

anxiety disorder, the treatment of generalized anxiety disorder, and the treatment of panic disorder, and further includes regulatory matters pertaining to Effexor® XR, encompassing 12 years of regulatory filings, correspondence, and label changes.[1] Yet this is just one of two topics that Impax alleges it will cover in only 4 hours of deposition testimony. Without further guidance as to what Impax is actually interested in, we are frankly at a loss as to how Wyeth can reasonably prepare a witness or witnesses to cover this one topic alone, let alone the full panoply of subject matters embraced by the remaining topics.

Furthermore, inserting the words "FACTS showing," "FACTS relating to," "FACTS evidencing," and the like, does not make Impax's manifestly unreasonable Rule 30(b)(6) notice acceptable, especially given both Impax's expansive definition of "FACTS" ("all evidence including documents . . . and witnesses knowledgeable of the same") and the sheer volume of "FACTS" that each such topic could potentially embrace. Nor does it alter the fact that a number of Impax's noticed topics still essentially seek Wyeth's contentions. *See Pharmacia & Upjohn Co. v. Sicor, Inc.,* C.A. No. 04-833 (KAJ) D. Del. Oct. 11, 2005 (Tr. at 36); *See also, ArthoCare Corp. Smith & Nephew, Inc.,* C.A. No. 01-504 (SLR)(D.Del. Oct. 15, 2002 (Tr. at 13-14)). As Wyeth pointed out in its Motion to Strike, this Court has emphasized that a 30(b)(6) deposition is an improper venue to seek a party's contentions. *See, e.g., Axiohm IPS, Inc. v. Epson Am., Inc.,* C.A. No. 00-420 (SLR) (D. Del. Mar. 28, 2001) (Tr. at 4.)("[W]e don't do contention depositions in this district. . . ."). Indeed a 30(b)(6) deposition is a particularly inappropriate vehicle for discovering a party's contentions in a patent case. *See McCormick-Morgan, Inc. v. Teledyne Indus., Inc.,* 134 F.R.D. 275, 287 (N.D. Cal. 1991); *rev'd on other grounds,* 765 F.Supp. 611 (N.D. Cal. 1991).

During the March 2, 2007 hearing on this issue, Judge Farnan agreed that Impax's First Amended Notice was correctly attacked as overbroad in that "[i]t doesn't say anything about what issues you want to talk about . . ." (Tr. at 15). We are therefore surprised and disappointed that, with the exception of the addition of several subject titles, Schedule A of Impax's Second Amended Notice presents essentially the same laundry list of information that Impax sought previously. This mere addition of organizing titles fails to ameliorate the overbreadth of Impax's notice, leaving Wyeth with the impossible task of having to guess as to the scope of the topics its witness should be prepared to testify on. *See Reed Bennet,* 193 F.R.D. 689, 692 (D. Kan. 2000) (granting in part motion to quash or modify 30(b)(6) notice because defendant could not identify the outer limits of the area of inquiry noticed). Thus we disagree with your assertion, on page 2 of your March 9th letter, that, for many of the topics, "the subject matter has been set forth with additional particularity."

---

[1] We recognize that Impax has eliminated "toxicology, quality control, animal testing, purchasing and qualification of raw materials, [and] packaging" from the scope of Topic 3. This does little, if anything, to minimize Wyeth's burden in responding to Topic 3, given the sheer breadth of the topic.

Daniel N. Kassabian, Esq.
March 13, 2007
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Furthermore, Wyeth objects to the organizing titles as incorrect, misleading, and as further broadening the scope of topics. For example, several organizing titles, such as titles I, IV, V, VII, and VIII amount to no more than incendiary, litigation-driven allegations of invalidity and inequitable conduct. And, by way of example, title VI, which reads "FACTS SUPPORTING STATEMENTS IN THE PATENTS OR REQUIRED TO UNDERSTAND THEM ..." broadens Topic Nos. 18-22, for example, to the extent it seeks information "required to understand" the various statements in the patents-in-suit cited in those topics.

With respect to additional particular failings of Impax's notice, the currently noticed topics are further objectionable for at least the reasons set forth below. Please be advised that this is not a comprehensive list of objections, but representative of the many problems Wyeth has with Impax's Second Amended Notice.

**Impax's Topics Lack Reasonable Particularity and are Unreasonably Broad and Unduly Burdensome**

Impax's Topic Nos. 1-11, 16-17, and 20-32 run afoul of the reasonable particularity requirement of Rule 30(b)(6), are unreasonably broad and burdensome, and embrace irrelevant subject matter in contravention of Rule 26. As just one example, Topic 16 seeks deposition testimony regarding "WYETH's knowledge and research prior to July 2002, demonstrating or refuting" that the claimed extended release formulations provided a therapeutic blood plasma concentration of venlafaxine over a 24-period with diminished incidences of nausea and emesis. This one topic encompasses virtually any document related to the *in vivo* testing of Effexor XR over almost a decade. This one broad topic alone covers years of research and development, involving untold numbers of people.

As another example, Topic 29 is directed to "strategies to shift or switch the subscription and/or the consumption of EFFEXOR XR to desvenlafaxine succinate, to be marketed as Pristiq or as another brand name in the United States" from December 2005 to the present. More particularly, given that Effexor XR contains the same active ingredient as Effexor, and that over a decade of actual marketplace data is available with which to compare the two products, Impax provides no explanation of the relevance of comparing Effexor XR to a prospective product, not even on the market and containing a different active ingredient. This topic is thus on its face irrelevant to any claim or defense, and would require Wyeth to needlessly prepare a witness to cover years of such "alleged strategies" by identified persons having no connection with the development of Effexor XR or the prosecution of the patents in suit. Similarly, topic 32 also embraces irrelevant subject matter, such as sales forecasts and profit margins.

Topic 31 serves as further illustration. This topic seeks testimony on "[a]ll correspondence with its advertising agencies involved in advertising EFFEXOR and EFFEXOR XR." This topic potentially embraces a host of communications involving issues having no relevance to any issue pending in this case, including invoices, communications regarding logistics of advertising efforts, contracts, proposals, confidentiality agreements, and a host of other completely irrelevant issues.

Daniel N. Kassabian, Esq.
March 13, 2007
Page 4

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

As was the case with Impax's First Amended Notice, the above listed topics cover a large amount of irrelevant information, and appear designed to impose an impossible burden on Wyeth to prepare a witness to cover these topics.

## Impax's Second Amended Notice Seeks Contention Discovery, Which Is Not Appropriate for a Rule 30(b)(6) Deposition

Topic Nos. 1, 9, 12, 14, 16-17, 20-22, 25-26 in essence seek, either in whole or in part, Wyeth's contentions on various issues. As we have mentioned in the past, such contention topics are not appropriate for a Rule 30(b)(6) deposition in the District of Delaware.[2] And, as mentioned above, the fact that the topics ostensibly seek "FACTS" and do not explicitly recite the word "contention" does not alter this conclusion. Therefore, Impax is not entitled to Rule 30(b)(6) deposition testimony on the above-identified topics seeking contentions.

## Impax's Second Amended Notice Improperly Seeks Attorney Client Privileged and Attorney Work Product Information

Impax's Topic Nos. 1-2, 12, 14, 20-25 impinge upon the attorney client privilege and/or attorney work product immunity. Couching the request in terms of "non-privileged information," "FACTS showing" or the like does not alter the fact that issues of privilege are inextricably intertwined with the requested discovery. Indeed, the attorney client privilege also extends to technical information communicated between attorney and client for the purpose of securing legal advice. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 480 (E.D. Pa. 2005); *see also Conner Peripherals, Inc. v. Western Digital Corp.*, 1993 WL 726815 at * 3 (N.D. Cal. June 8, 1993) (cited at page 3 of your December 15th letter). Because the requested discovery is so intertwined with issues of attorney client privilege and/or work product immunity, it is best conducted through means other than a Rule 30(b)(6) deposition.

## Impax's Second Amended Notice Improperly Embraces Expert Opinion

Topic Nos. 18-22, 26-28, and 30 embrace expert opinion. Such discovery is appropriately conducted through contention interrogatories, which can be supplemented, if necessary, due to developments that occur during expert discovery.

---

[2] *Axiohm IPS, Inc. v. Epson Am., Inc.*, C.A. No. 00-420-SLR (D. Del. Mar. 28, 2001) (transcript of hearing before Chief Judge Robinson at 4) ("[W]e don't do contention depositions in this district."); *Tiegel Manu Co. v. Globe Union, Inc.*, C.A. No. 84-483 at 14 (D. Del. Oct. 5, 1984) (noting that "[i]t has been the consistent position of this Court" that witnesses should not be required to testify as to contentions; instead, contention discovery is confined to interrogatories).

Daniel N. Kassabian, Esq.
March 13, 2007
Page 5

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

### Impax's Second Amended Notice Is Unacceptable

In short, we are dismayed at Impax's approach of simply repackaging the same objectionable topics with only slight, and virtually meaningless, modifications. Wyeth is still unable to prepare a witness or witnesses because Impax has failed to define appropriate topics with the required particularity. Moreover, Impax's Second Amended Notice is unacceptably burdensome, as we have continually noted.

We are, as always, willing to discuss ways in which the topics in Impax's Second Amended Notice, could be narrowed or eliminated. We understand, however, that you intend to file a motion to compel. Please inform us immediately if Impax opts not to file such a motion.

Sincerely,

Barbara R. Rudolph

cc:    Mary B. Matterer, Esq. (via e-mail)

# EXHIBIT 9

REDACTED

EXHIBIT 10

REDACTED