IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| WYETH, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 06-222 JJF |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| IMPAX LABORATORIES, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT IMPAX LABORATORIES, INC.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DOCUMENTS
## IN RESPONSE TO DEFENDANT'S FOURTH SET OF REQUESTS
## FOR PRODUCTION (NOS. 125-131)

Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
Telephone: (302) 888-6800
mmatterer@morrisjames.com

Daralyn J. Durie (pro hac vice)
Asim Bhansali (pro hac vice)
Paula L. Blizzard (pro hac vice)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400

M. Patricia Thayer (pro hac vice)
John M. Benassi (pro hac vice)
Jessica R. Wolff (pro hac vice)
Daniel N. Kassabian (pro hac vice)
Samuel F. Ernst (pro hac vice)
Eric L. Lane (pro hac vice)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92101
Telephone: (858) 450-8400
*Attorneys for IMPAX LABORATORIES, INC.*

Original Filed:  April 27, 2007
Redacted Version:  May 4, 2007

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT............................................................................................... 2

      A.   Rule 26 Contemplates Broad Discovery Of Information
           Reasonably Calculated To Lead To Discovery Of Admissible
           Evidence.......................................................................................... 2

      B.   The Fact That Desvenlafaxine May Not Be Claimed By The
           Patents-In-Suit Does Not Preclude Its Relevance; Indeed
           Desvenlafaxine Is Relevant In View Of Its Chemical Similarity
           To Effexor XR® And Its Purported Reduction In Nausea And
           Vomiting ......................................................................................... 3

      C.   The Clinical Information Impax Seeks Is Reasonably
           Calculated To Lead To Admissible Evidence Relevant To
           Patent Validity And Inequitable Conduct...................................... 5

      D.   The Marketing Information Impax Seeks Is Reasonably
           Calculated To Lead To Admissible Evidence Relevant To
           Commercial Success And Long-Felt Need...................................... 6

      E.   Wyeth's Compromise Offer Ignored Impax's Marketing
           Requests And Was Otherwise Inadequate ..................................... 8

i

## TABLE OF AUTHORITIES

Page

**Cases**

*Afro-Lecon, Inc. v. United States,*
  820 F.2d 1198 (Fed. Cir. 1987) ......................................................................................2

*Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions USA, Inc.,*
  2005 U.S. Dist. LEXIS 20788 (D. Del. Sep. 20, 2005)...................................................3

*Funai Elec. Co. v. Orion Elec. Co.,*
  2002 U.S. Dist. LEXIS 14466 (S.D.N.Y. Aug. 7, 2002)..................................................3

*Micro Motion, Inc. v. Kane Steel Co.,*
  894 F.2d 1318 (Fed. Cir. 1990) ..................................................................................6, 7

**Statutes**

FED. R. CIV. P. 26(b)(1) ....................................................................................................2

**Other Authorities**

Wright & Miller, *Federal Practice and Procedure,*
  Vol. 8, Ch. 6, § 2008 at 108 (1994)................................................................................2

## I.    INTRODUCTION

Wyeth has taken the position in both this case and the prior *Teva* litigation that its Effexor XR® patents are valid as demonstrated by the allegedly "astounding" commercial success of Effexor XR® [*see* Wyeth Opp'n Br. at 5], purportedly due to the claimed features of the drug. Wyeth is also taking the position now, as it did before the Patent Office, that its Effexor XR® product provides diminished incidences of nausea and vomiting. Accordingly, Wyeth has placed these two issues directly in play in this lawsuit and should not be permitted to block discovery relevant to these issues.

Wyeth is in the process of transitioning the market from the Effexor XR® product at issue in this litigation to its active metabolite, desvenlafaxine,[1] which is also purported to reduce nausea and vomiting. Desvenlafaxine is the only active metabolite[2] of venlafaxine, the active ingredient in Effexor XR®, and acts on the same neurotransmitters and causes similar physiological effects as Effexor XR®.

As part of its targeted attempts to discover information relevant to claims made by Wyeth in the patents-in-suit, Defendant Impax Laboratories, Inc. ("Impax") served its Fourth Set of Requests for Production directed to two specific categories of documents reasonably calculated to lead to relevant evidence. These requests pertain to *nausea and*

---

[1] Wyeth explains that its development of desvenlafaxine is part of its "effort to provide new pharmaceutical products to ameliorate the debilitating effects of psychiatric disorders." Wyeth Opp'n Br. at 6. Of course, Wyeth's true motive is not so altruistic. Wyeth's desvenlafaxine product roll-out is primarily intended to maintain its profits by shifting the market to a follow-on product covered by a different patent and thereby prolong the patent life of this drug family. *See* Reply Declaration of Mary B. Matterer in Support of Defendant Impax Laboratories, Inc.'s Motion to Compel Production of Documents in Response to Defendant's Fourth Set of Requests for Production (Nos. 125-131) ("Matterer Reply Decl."), Ex. A ("Pill pushers") (explaining that drug companies create "branded-drug franchises, supported by line extensions that help to prolong patent life").

[2] That is, when Effexor XR® is broken down in the liver, the most significant resulting active chemical product is desvenlafaxine.

*vomiting* clinical data of Effexor XR® and desvenlafaxine (to provide relevant evidence on patent validity and inequitable conduct) and marketing documents comparing Effexor XR® and desvenlafaxine (to provide relevant evidence on the issue of commercial success). Therefore, the subject matter of these requests falls squarely within the broad discovery contemplated by Rule 26(b)(1) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 26(b)(1) (2007) ("the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").

## II.    ARGUMENT

### A.    Rule 26 Contemplates Broad Discovery Of Information Reasonably Calculated To Lead To Discovery Of Admissible Evidence

The Federal Circuit and other authorities have recognized that Rule 26 contemplates broad discovery of information so the litigating parties may fully explore each other's evidence to effectively try their case. *See, e.g., Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1203 (Fed. Cir. 1987) ("[t]he scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial"); Wright & Miller, *Federal Practice and Procedure*, Vol. 8, Ch. 6, § 2008 at 108 (1994) ("it is not too strong to say that a request for discovery should be considered relevant *if there is any possibility* that the information sought may be relevant to the subject matter of the action") (emphasis added). The information Impax seeks here is relevant to several important issues in this case.

2

**B.** **The Fact That Desvenlafaxine May Not Be Claimed By The Patents-In-Suit Does Not Preclude Its Relevance; Indeed Desvenlafaxine Is Relevant In View Of Its Chemical Similarity To Effexor XR® And Its Purported Reduction In Nausea And Vomiting**

There is no basis for Wyeth's contention that, simply because a chemical compound is not claimed or disclosed by asserted patents, it cannot be relevant to the validity of those patents[3], and the commercial success and "diminished incidence(s)" of nausea and vomiting issues overlap both products. The two cases Wyeth cites in support of this proposition, *Funai Elec. Co. v. Orion Elec. Co.*, 2002 U.S. Dist. LEXIS 14466 (S.D.N.Y. Aug. 7, 2002) and *Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions USA, Inc.*, 2005 U.S. Dist. LEXIS 20788 (D. Del. Sep. 20, 2005) [Wyeth Opp'n Br. at 8-9], are inapposite and could be read to support Impax's discovery arguments. In *Funai*, the products were plainly unrelated, so the court denied defendant's motion to compel production of the requested documents pertaining to the unrelated products. *See Funai* at *10-11 ("Orion has failed to explain how the technical aspects of current Funai products that are not related to any claim in this case are relevant"). Here, Impax has provided a detailed explanation of how desvenlafaxine is very closely related to the venlafaxine product at issue in this case. *See* Impax Br., D.I. 140 at 11.

In *Fenster*, the moving party also failed to show relatedness or inclusion in an area deemed fair game for discovery. There, the court had *previously limited the scope of discovery* in the case to digital x-ray imaging systems. The moving parties failed to address whether the product information requested was such a system; thus, the request fell into an expressly prohibited area. *See Fenster* at *17-18. By contrast, Impax has established that desvenlafaxine is relevant because, *inter alia*, it is chemically related to Effexor XR® as its only active metabolite. *See* Impax Br., D.I. 140 at 11. Significantly,

---

REDACTED

3

desvenlafaxine works on the same neurotransmitters as Effexor XR® to achieve similar therapeutic results and cause some of the same side effects. *Id.*

Wyeth's assertion that desvenlafaxine is an "entirely different chemical entity" than Effexor XR® [Wyeth Opp'n Br. at 2] is belied by Wyeth's package insert for Effexor XR®, which explains the relationship of the two compounds and their activity on the same neurotransmitters in the brain. *See* Declaration of Mary B. Matterer in Support of Defendant Impax Laboratories, Inc.'s Motion to Compel Production of Documents in Response to Defendant's Fourth Set of Requests for Production (Nos. 125-131) ("Matterer Decl."), Ex. K at 2 ("[p]reclinical studies have shown that venlafaxine and its active metabolite, O-desmethylvenlafaxine (ODV), are potent inhibitors of neuronal serotonin and norepinephrine reuptake and weak inhibitors of dopamine reuptake").

# REDACTED

To illustrate the structure of the two compounds, their chemical formulas are shown below. These diagrams demonstrate that desvenlafaxine differs from venlafaxine only in that $-CH_3$ is replaced with $-H$ in the lower right hand corner of each diagram:



venlafaxine                desvenlafaxine

4

C.    **The Clinical Information Impax Seeks Is Reasonably Calculated To Lead To Admissible Evidence Relevant To Patent Validity And Inequitable Conduct**

Impax believes that the statements Wyeth made to the Patent Office are inconsistent with those made to the FDA and that the requested documents will show this. The patents-in-suit claim the invention provides "diminished incidence(s) of nausea and emesis." The claimed invention is inoperable and the patent claims are invalid if Effexor XR® does not achieve this result. Whether Effexor XR® actually achieves this claimed result depends on what Wyeth meant by "diminished incidence(s)" and how Wyeth defined these terms in internal documents.

Impax strongly suspects that Wyeth's internal documents, particularly **REDACTED** nausea and vomiting data supporting Wyeth's FDA submissions regarding the related drug desvenlafaxine, will help to illuminate what "diminished incidence(s)" means and whether Effexor XR® has this claimed effect. Specifically, documents comparing desvenlafaxine and Effexor XR® nausea and vomiting data may disclose that Effexor XR® does not provide "diminished incidence(s)" of nausea and vomiting. Impax believes it should be permitted to explore this highly relevant desvenlafaxine data.

The desvenlafaxine clinical data is also relevant to inequitable conduct for a similar reason. One important question raised by Wyeth's representations to the Patent Office regarding Effexor XR® is what exactly it meant by a "statistically significant improvement" in nausea and vomiting.

**REDACTED**

Impax strongly suspects that internal documents will show that Wyeth deceived the Patent Office. Any statements by Wyeth to the FDA about desvenlafaxine's reduction in nausea and vomiting compared to Effexor XR® would bear on the truth of Wyeth's representations to the Patent Office on the same aspect of Effexor XR®. That is, by looking at the data Wyeth gave to the FDA and how it characterized

5

that data, Impax may be able to determine whether Wyeth made misrepresentations to the Patent Office about the Effexor XR® nausea and vomiting studies. Wyeth cannot take inconsistent positions before two federal agencies and tell the Patent Office one thing and the FDA another.

### D.    The Marketing Information Impax Seeks Is Reasonably Calculated To Lead To Admissible Evidence Relevant To Commercial Success And Long-Felt Need



Therefore, marketing and advertising documents that demonstrate selling strengths and weaknesses of Effexor XR® are highly relevant to this issue. Moreover, evidence that tends to show commercial success was due to Wyeth's relentless marketing efforts and not to the merits of the alleged invention is also highly relevant.

Wyeth's argument that future marketing plans for a product created to follow Effexor XR® cannot be relevant to the commercial success of Effexor XR® is disingenuous. A new and related product is not marketed in a vacuum. The effects and focus of marketing campaigns for this related product are relevant, and the requested documents will likely show that marketing and advertising, not the claimed features, drove the sales of Effexor XR®. The promotional messages crafted, in part, in reaction to the marketing successes and failures of the prior product are also highly relevant.



It is logical to presume that desvenlafaxine marketing materials would contain similar references to Effexor XR® and

6

discovery of such materials is certainly permissible under Rule 26(b)(1). Thus, contrary to Wyeth's argument, the relevance of desvenlafaxine marketing materials is not speculation.[4]



Accordingly, desvenlafaxine marketing documents that discuss how to promote the follow-on drug based on why physicians prescribed the prior Effexor XR® product would be highly relevant to Wyeth's long-felt need argument. In other words, Impax expects its requests for production to uncover documents showing there was no "long-felt need," just an artificial need caused by Wyeth's advertising campaigns.

Moreover, it is unlikely that there exists a large volume of desvenlafaxine marketing documents because, as Wyeth admits, desvenlafaxine is not yet on the market.

---

[4] The only case cited by Wyeth regarding a "speculative theory of relevance," *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990) [Wyeth Opp'n Br. at 11], has no bearing on the facts presented here. In *Micro Motion*, the patentee sought sales information from a nonparty to establish damages in the event that it chose to assert a lost profits damages theory. 894 F.3d at 1319-20, 1323. The dispute arose after the district court had granted patentee's motion for a new trial on the issue of infringement under the doctrine of equivalents. *See id.* at 1320. The Federal Circuit noted that *the patentee had completed damages discovery and had been prepared to proceed to trial on the damages issues* had it received a favorable verdict. *See id.* at 1323. Moreover, the discovery was only arguably relevant if the patentee proved liability in the new trial and then decided to seek lost profits damages. *Micro Motion* therefore is completely inapposite, where, as here, the invalidity, inequitable conduct and commercial success claims have been raised and are going forward and discovery is not yet complete.

*See* Wyeth Opp'n Br. at 6, n.3. Accordingly, production of such documents should not be unduly burdensome.

### E.    Wyeth's Compromise Offer Ignored Impax's Marketing Requests And Was Otherwise Inadequate

Wyeth's purported compromise offer was completely inadequate and would have excluded entire categories of responsive documents.



## III.    CONCLUSION

For the foregoing reasons, Impax respectfully requests that the Court grant its motion to compel production of documents responsive to Impax's Fourth Set of Requests for Production (Nos. 125-131).

Dated: April 27, 20007

_/s/ Mary B. Matterer_

Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
Telephone: (302) 888-6800
mmatterer@morrisjames.com

M. Patricia Thayer (*pro hac vice*)
John M. Benassi (*pro hac vice*)
Jessica R. Wolff (*pro hac vice*)
Daniel N. Kassabian (*pro hac vice*)
Samuel F. Ernst (*pro hac vice*)
Eric L. Lane (*pro hac vice*)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92101
Telephone: (858) 450-8400

Daralyn J. Durie *(pro hac vice)*
Asim Bhansali *(pro hac vice)*
Paula L. Blizzard *(pro hac vice)*
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400


Attorneys for Defendant
IMPAX LABORATORIES, INC.

9

# UNREPORTED
# OPINIONS

LEXSEE 2005 US DIST LEXIS 20788

**FENSTER FAMILY PATENT HOLDINGS, INC., ELSCINT LTD., and ELSCINT INC., Plaintiffs, v. SIEMENS MEDICAL SOLUTIONS USA, INC., SIEMENS MEDICAL SYSTEMS, INC., SIEMENS CORPORATION, and SIEMENS AG, Defendants.**

**Civil Action No. 04-0038-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 20788*

**September 20, 2005, Decided**

**COUNSEL:** [*1] Josy W. Ingersoll, Esquire, John W. Shaw, Esquire, Adam W. Poff, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, Wilmington, Delaware. Of Counsel: Neil F. Greenblum, Esquire, Michael J. Fink, Esquire, Jill M. Browning, Esquire and Van C. Ernest, Esquire of GREENBLUM & BERNSTEIN, P.L.C., for Plaintiffs.

Arthur G. Connolly, III, Esquire of CONNOLLY BOVE LODE & HUTZ, LLP, Wilmington, Delaware. Of Counsel: Eugene M. Gelernter, Esquire; Scott B. Howard, Esquire, Chad J. Peterman, Esquire, Melissa Mandrgoc, Esquire and Adrian H. von Hassell, Esquire of PATTERSON, BELKNAP, WEBB & TYLER, LLP, New York, New York, for Defendants.

**JUDGES:** Farnan, District Judge.

**OPINION BY:** Farnan

**OPINION:**

### MEMORANDUM OPINION

September 20, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court are (1) Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I. 69); (2) Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' *Rule 30(b)(6)* Deposition Notice (D.I. 70); (3) Defendants' Combined Emergency Motion Pursuant To The *Rule 16* Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I. 71); (4) Defendants' [*2] *Rule 37* Motion To Compel Discovery (D.I. 72); (5) Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I. 74); (6) Plaintiffs' Motion To Compel *30(b)(6)* Witness (D.I. 75); (7) Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I. 80); (8) Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I. 84); (9) Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I. 101); (10) Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I. 107); (11) Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I. 113); and (12) Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I. 114).

### BACKGROUND

This is a lawsuit filed by Fenster Family Patent Holdings, Inc. ("Fenster"), Elscint Ltd., and Elscint, Inc. (collectively, "Fenster") against Siemens Medical Solutions USA, Inc., Siemens Medical [*3] Systems, Inc., Siemens Corporations, and Siemens AG, (collectively, "Siemens"). Fenster asserts eight unrelated patents against Siemens: *U.S. Patent Nos. 4,555,728* ("the '728 patent"); *4,693,864* ("the '864 patent"); *4,459,990* ("the '990 patent"); *4,685,146* ("the '146 patent"); *4,644,398* ("the '398 patent"); *4,595,949* ("the '949 patent"); *4,590,518* ("the '518 patent"); *4,777,620* ("the '620 patent"). Fenster seeks declarations of infringement, willful infringement, inducement of infringement, and contributory infringement plus damages and permanent injunctive relief. Fenster alleges that each of the patents in suit

2005 U.S. Dist. LEXIS 20788, *

is owned by Elscint Ltd. and exclusively licensed to Fenster Family Patent Holdings, Inc.

The technology at issue is generally referred to as Digital Angiography and Digital Fluoroscopy ("DF"). DF refers to X-ray diagnostic apparatus and techniques that are used to measure cardiovascular function.

Plaintiff Fenster Family Patent Holdings, Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware. Plaintiff Elscint Ltd. is an Israeli Company located in Tel Aviv, and is the owner of the patents-in-suit. Plaintiff Elscint Inc. is a Massachusetts [*4] corporation, and a wholly owned U.S. subsidiary of parent company Elscint Ltd.

Defendant Siemens Medical Solutions USA, Inc. is a Delaware corporation, with its principal place of business in Malvern, Pennsylvania. Fenster alleges that Siemens Medical Solutions USA, Inc. is a wholly owned subsidiary of Defendant Siemens AG.

Defendant Siemens Medical Systems, Inc. is a Delaware corporation with its principal place of business in Iselin, New Jersey. Fenster alleges that Siemens Medical Systems, Inc. is a wholly owned subsidiary of Defendant Siemens AG.

Defendant Siemens Corporation is a Delaware corporation with its principal place of business in New York, New York. Fenster alleges that Siemens Corporation is a wholly owned subsidiary of Defendant Siemens AG and is the parent corporation of Siemens Medical Solutions USA, Inc. and Siemens Medical Systems, Inc.

Defendant Siemens AG is organized under the laws of Germany, with its principal place of business in Munich, Germany. Fenster alleges that Siemens AG includes a medical technology business unit, Siemens Medical Solutions (Germany).

Fenster filed its Complaint (D.I. 1) on January 20, 2004. On February 6, 2004, Fenster filed [*5] a First Amended Complaint (D.I. 12). On July 7, 2004, the Court entered a *Rule 16* Scheduling Order, whereby Fact Discovery ended on March 15, 2005, and the deadline for filing case dispositive motions was August 12, 2005. There is a Markman hearing scheduled on October 3, 2005, a Pretrial Conference scheduled on November 10, 2005, and a jury trial scheduled to begin on January 17, 2006.

On November 22, 2004, the Court held a discovery hearing at which the Court granted Siemens' Motion For Bifurcation (D.I. 38) with regard to damages and denied it with regard to willfulness. At the November 22 hearing, the Court also ruled on a Revised Motion To Compel (D.I. 46-1) filed by Fenster denying access to the Siemens' electronic database or Intranet and granting

access to documents related to products wherein a cardiac diagnostic image from an X-ray is received and processed.

In compliance with the Scheduling Order, on February 8, 2005, Fenster identified 90 patent claims and listed 49 accused products.

## DISCUSSION

The motions pending in this case can be divided into two categories (1) motions related to the scope of discovery, and (2) other discovery motions.

### I. Motions [*6] Related To The Scope Of Discovery

At the heart of most of the discovery related motions is Siemens' contention that the 90 claims and 49 accused products asserted by Fenster are unreasonable in number and that Siemens cannot prepare its defense or maintain the current case schedule under these conditions. Fenster, in turn, seeks to compel Siemens to respond to its discovery requests.

A. Defendants' Motion For An Expedited Briefing Schedule (D.I. 69)

By its Motion, Siemens requests an order expediting the briefing schedule with regard to Siemens' Combined Emergency Motion Pursuant To The *Rule 16* Scheduling Order to limit the number of claims asserted and modify the existing schedule. In response, Fenster contends that Siemens has failed to diligently pursue its discovery and has impeded Fenster from conducting discovery. Specifically, Fenster contends that Siemens has failed to notice depositions, has not pursued publicly available foreign patent documents, has refused to present any witnesses in response to Fenster's *30(b)(6)* notice for February 14, 2005, and has produced documents long after the December 2004 date by which the Court wanted document production to be completed. [*7]

Because this motion has been pending for several months, the Court will deny Defendants' Motion For An Expedited Briefing Schedule.

B. Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I. 71)

By its motion, Siemens requests an order limiting the number of claims and modifying the existing schedule. Specifically, Siemens contends that allowing Fenster to assert 90 claims is unreasonable. Further, Siemens contends that, because Fenster expanded the scope of this litigation five weeks before the close of fact discovery and eleven weeks before the date for expert reports on validity, Siemens is unable to prepare its defenses. Siemens further contends that Fenster has impeded discov-

ery by refusing to make all inventors available for depositions and failing to produce key documents (the subject of a separate *rule 37* motion). Siemens requests that the current schedule be modified as follows: fact discovery will end eight weeks after Fenster identifies a reasonable number of asserted claims and a reasonable number of accused products; opening expert reports will be due four [*8] weeks after the close of fact discovery (instead of six weeks under the current scheduling order); rebuttal expert reports would be due four weeks after opening expert reports; and the remainder of the schedule be adjusted accordingly.

In response, Fenster contends that the number of asserted claims should not be further limited because Fenster will likely limit them after full discovery. Further, Fenster contends that the Court indicated at the November 22, 2004, discovery hearing that the parties would not lose their trial date. Fenster also contends that Siemens has not noticed a single deposition, and has failed to provide a *30(b)(6)* witness.

The Court agrees with Siemens that Fenster's number of asserted claims is unreasonable. The Court would prefer the parties to address such issues among themselves, but when that does not happen; the Court must intervene. The Court finds that Fenster should be limited, at this juncture, to ten (10) claims and five (5) products asserted. This decision is obviously arbitrary; however, it is appropriate from the viewpoint of the typical patent litigation. Because the number of asserted claims and accused products will modify the schedule in this case, the Court will order the parties to submit a proposed, revised scheduling order for the Court's consideration.

C. Defendants' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I. 70)

By its Motion, Siemens contends that Fenster' *Rule 30(b)(6)* deposition notice is overly broad and unduly burdensome because it designates "all versions" of 49 different products as "Accused Products," and seeks testimony on a multitude of topics (36 subject matter categories) for each of them. As relief, Siemens seeks the entry of a protective order. Based on the Court's decision reducing the number of asserted claims, the Court will deny this motion as moot.

D. Siemens' Rule 37 Motion To Compel Discovery (D.I. 72)

By its motion, Siemens contends that Fenster has failed to produce: file histories of foreign counterpart applications, and related documents; documents relating to conception, reduction-to-practice, and best mode, in response to Document Requests No. 14 and 15; complete answers to Siemens' Interrogatories 3 and 4, which ask

for information relating to Siemens' laches defense and the priority dates for the patents-in-suit. In response, Fenster [*10] contends that Fenster's foreign file histories are publically available, that Fenster has no other documents that are responsive to Document Requests 14 and 15, and that Fenster has fully responded to Interrogatory Nos. 13 and 14. Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion with leave to renew.

E. Fenster' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I. 74)

By its motion, Fenster moves to compel Siemens to respond to Interrogatory Nos. 9 and 10 of Fenster' Second Set of Interrogatories. Specifically, Fenster seeks the dates of the first and last sales of each of the identified products. In response, Siemens asserts that these interrogatories seek information duplicative of that requested in Fenster's Interrogatory Nos. 1 and 2.

In reply to Siemens' argument, Fenster contends that Interrogatory Nos. 1 and 2 requested that Siemens identify each model and all components made, used, sold, offered for sale and/or imported since 1994. Fenster contends that identification of the models and components sold since 1994 [*11] is different from identification of the first and last dates of sale.

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion with leave to renew.

F. Fenster's Motion To Compel 30(b)(6) Witness (D.I. 75)

Because the Court has denied as moot Siemens' Motion For A Protective Order With Respect To Fenster's *Rule 30(b)(6)* Deposition Notice (D.I. 70), the Court will likewise deny as moot Fenster's Motion To Compel *30(b)(6)* Witness.

G. Fenster's Motion To Preclude Siemens From Relying On Expert Testimony (D.I. 113)

By its motion, Fenster moves to preclude Siemens from relying on expert testimony because Siemens failed to serve its expert reports prior to April 22, 2005, the date specified in the Scheduling Order. In response, Siemens contends that Fenster's designation of 90 asserted claims made it impossible for Siemens' experts to conduct a meaningful validity analysis. Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion as moot.

H. Siemens' Conditional Cross-Motion To [*12] Preclude Fenster From Offering Expert Testimony On Infringement (D.I. 114)

Siemens' Conditional Cross-Motion To Preclude Fenster From Offering Expert Testimony On Infringement (D.I. 114) is related to Fenster's Motion To Preclude Siemens From Relying On Expert Testimony (D.I. 113). Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion as moot.

## II. Other Discovery Motions

A. Fenster's Renewed Motion For Access To Siemens' Intranet (D.I. 80)

By its motion, Fenster renews its motion to compel Siemens to provide Fenster with access to its corporate Intranet or other electronic databases or networks. The Court denied Fenster's original motion on November 22, 2004, stating that the Court based its decision in part on Siemens' representation that the production would be in a searchable electronic format. However, Fenster contends that two developments warrant reconsideration of this issue. First, Fenster contends that Siemens provided access to documents in two warehouses, which requires document-by-document review of over a million pages of documents without the benefit [*13] of any type of electronic searching. Second, Fenster contends that Siemens produced other large batches of documents in electronic format, but many of these documents are not in searchable format.

In response, Siemens contends that Fenster's motion is a motion for reconsideration, not a renewed motion. Siemens contends that it will produce the specific documents that Fenster has previously identified as non-searchable in "searchable form." Further, Siemens contends that some older documents are only available on microfilm, are not on the Intranet, and that Siemens fulfilled its obligations under the Federal Rules by producing them in the format in which they are maintained.

In a letter to the Court (D.I. 106), Fenster cites deposition testimony of a Siemens' employee wherein the employee states that it would be easy to determine whether there were any documents from Pie Medical on Siemens' Intranet. Fenster contends that Siemens has not produced any documents from Pie Medical and that this testimony is new evidence that shows Fenster's motion for access to Siemens' Intranet should have been granted.

The Court finds that Fenster has not demonstrated an intervening change in controlling [*14] law, the availability of new evidence that was not available when the Court issued its first Order, or the need to correct a clear error of law or fact to prevent a manifest injustice. Accordingly, the Court will deny this motion.

B. Fenster's Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I. 84)

By its motion, Fenster seeks production of documents related to Siemens' SIENET. Fenster contends that SIENET is a Picture Archiving and Communication System ("PACS"), which is relevant to this litigation. Fenster acknowledges that Siemens' responses to Fenster's most recent discovery requests were not due until March 7, 2005, after Fenster filed its motion.

In response, Siemens contends that SIENET comprises three components: patient management, long-term image archiving (known as PACS), and image post processing. Siemens contends that SIENET allows for the linking of image data from various x-ray imaging systems and provides data on a patient-based scheme to radiologists. Further, Siemens contends that SIENET has a component with PACS functionality that is merely used in part for long-term storage and archiving. Because the x-ray imaging systems function [*15] independently of SIENET and discovery is limited to digital x-ray imaging systems, Siemens contends that SIENET is outside the scope of discovery. Siemens further contends that SIENET is capable of operating with a host of x-ray systems (such as MRI, CT scanning, ultra-sound, and nuclear medicine) that are outside the scope of this litigation.

The Court will deny Fenster's motion on two grounds. First, the Court concludes that this motion was filed prematurely, before Siemens' discovery responses were due. Second, it appears to the Court that SIENET is not a digital x-ray imaging system, but rather a way to knit such a system together with other components. Accordingly, the Court concludes that SIENET is outside the scope of discovery.

C. Fenster' Motion To Quash And/Or In The Alternative For Protective Order In Response To Siemens' Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I. 101)

By its motion, Fenster seeks to quash Siemens' notice of deposition with regard to a *Rule 30(b)(6)* Deposition of General Electric Company and General Electric Medical Systems, Inc. (collectively, [*16] "GE") and a subpoena duces tecum, both issued on March 16, 2005, after the close of fact discovery.

In response, Siemens contends that because its counsel represents GE in unrelated matters, counsel could not take third-party discovery from GE without obtaining a waiver from GE of any conflict of interest that may be presented by taking such discovery. Siemens contends

that Fenster stood in the way of Siemens' attempts to obtain the waiver. On March 9, 2005, GE informed Siemens' counsel that it would not waive the conflict. Thus, Siemens had to retain other counsel, and served the subpoena less than a week after GE's refusal. Siemens also contends that a decision by the Court to modify the existing schedule would moot Fenster's objections to the GE subpoena.

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion.

D. Fenster' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I. 107)

By its motion, Fenster contends that it deposed two Siemens Medical Solutions employees, Tom Ruggiero on April 6, 2005, and Mike Keller on April 7, 2005. Fenster contends that, [*17] during each deposition, counsel for Siemens instructed each witness not to testify regarding a device called "AXIS." Fenster moves to compel further deposition testimony of Messrs. Ruggiero and Keller with regard to AXIS pursuant to *Federal Rule of Civil Procedure 26(b)(1)* and *37(a)(2)*. Fenster contends that Siemens' counsel's instructions not to answer questions about AXIS were improper because the line of questioning did not involve a matter of privilege.

In response, Siemens contends that the design for the AXIS project has not been finalized and it remains in flux. Siemens further contends that there is no commercial AXIS product because Siemens has not yet sought or obtained PDA approval for a commercial product. Thus, Siemens contends that discovery with regard to AXIS is not reasonably calculated to lead to discovery of relevant information.

The Court limited the scope of discovery in this case to digital x-ray imaging systems. In its briefing, neither party addresses whether AXIS is a digital x-ray imaging system, but it seems to be one that is still in the stages of research and development. [*18] Accordingly, the Court will deny this motion, because it is directed to a yet to be developed product which appears to be outside the scope of discovery set by the Court.

## CONCLUSION

For the reasons discussed, the Court will (1) deny Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I. 69); (2) deny as moot Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' *Rule 30(b)(6)* Deposition Notice (D.I. 70); (3) grant Defendants' Combined Emergency Motion Pursuant To The *Rule 16* Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I. 71); (4) deny with leave to renew Defendants' *Rule 37* Motion To Compel Discovery (D.I. 72);

(5) deny with leave to renew Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I. 74); (6) deny as moot Plaintiffs' Motion To Compel *30(b)(6)* Witness (D.I. 75); (7) deny Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I. 80); (8) deny Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I. 84); (9) deny Plaintiffs' Motion To Quash And/Or In The Alternative For [*19] Protective Order in Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I. 101); (10) deny Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I. 107); (11) deny as moot Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I. 113); and (12) deny as moot Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I. 114).

An appropriate Order will be entered.

## ORDER

At Wilmington, this 20 day of September 2005, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I. 69) is **DENIED.**

2. Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' *Rule 30(b)(6)* Deposition Notice (D.I. 70) is **DENIED AS MOOT.**

3. Defendants' Combined Emergency Motion Pursuant To The *Rule 16* Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I. 71) is **GRANTED.** The parties [*20] shall submit a revised, proposed scheduling order within twenty (20) days of the date of this Order.

4. Defendants' *Rule 37* Motion To Compel Discovery (D.I. 72) is **DENIED WITH LEAVE TO RENEW.**

5. Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I. 74) is **DENIED WITH LEAVE TO RENEW.**

6. Plaintiffs' Motion To Compel *30(b)(6)* Witness (D.I. 75) is **DENIED AS MOOT.**

7. Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I. 80) is **DENIED.**

2005 U.S. Dist. LEXIS 20788, *

8. Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I. 84) is **DENIED.**

9. Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I. 101) is **DENIED.**

10. Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I. .107) is **DENIED.**

11. Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I. 113) is **DENIED AS MOOT. [*21]**

12. Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I. 114) is **DENIED AS MOOT.**

UNITED STATES DISTRICT JUDGE

Page 1

LEXSEE 2002 US DIST LEXIS 14466



Positive
As of: Apr 27, 2007

FUNAI ELECTRIC CO., LTD., Plaintiff, - against - ORION ELECTRIC CO.,
LTD., ORION AMERICA, INC., Defendants. ORION ELECTRIC CO., LTD.,
ORION AMERICA, INC., Plaintiffs, - against - FUNAI ELECTRIC CO., LTD.,
FUNAI CORPORATION, Defendants.

02 Civ. 2605 (AGS) (JCF), 01 Civ. 3501 (AGS) (JCF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*2002 U.S. Dist. LEXIS 14466*

**August 6, 2002, Decided**
**August 7, 2002, Filed**

**DISPOSITION:** [*1] Defendant's motion to compel
discovery granted in part and denied in part. Plaintiff's
motion to compel denied.

**COUNSEL:** For Funai Electric Co, Ltd, PLAINTIFF
(1:02cv2605): Alfred J Lechner, Jr, Morgan, Lewis &
Bockius, LLP, Princeton, NJ USA.

For Orion Electric Co, Ltd, Orion America, Inc,
DEFENDANTS (1:02cv2605): Harry S Davis, Leonard
S Sorgi, Joel E Lutzker, Benjamin Levi, David H Kagan,
Schulte, Roth & Zabel, LLP, New York, NY USA.

For Orion Electric Co, Ltd, Orion America, Inc,
DEFENDANTS (1:02cv2605): Paul J Halasz, Pitney,
Hardin, Kipp & Szuch, Esqs, Morristown, NJ USA.

For Orion Electric Co, Ltd, Orion America, Inc,
COUNTER-CLAIMANTS (1:02cv2605): Harry S Davis,
Leonard S Sorgi, Joel E Lutzker, Benjamin Levi, David
H Kagan, Schulte, Roth & Zabel, LLP, New York, NY
USA.

For Orion Electric Co, Ltd, Orion America, Inc,
COUNTER-CLAIMANTS (1:02cv2605): Paul J Halasz,
Pitney, Hardin, Kipp & Szuch, Esqs, Morristown, NJ
USA.

For Funai Electric Co, Ltd, COUNTER-DEFENDANT
(1:02cv2605): Alfred J Lechner, Jr, Morgan, Lewis &
Bockius, LLP, Princeton, NJ USA.

For Orion Electric Co, Ltd, Orion America, Inc,
PLAINTIFFS (1:01cv3501): Joel E Lutzker, David Ka-
gan, Donna Angotti, [*2] Shulte, Roth & Zabel, New
York, NY USA.

For Funai Electric Co, Ltd, DEFENDANT (1:01cv3501):
John M Vassos, Morgan, Lewis & Bockius, LLP, New
York, NY USA.

For Funai Electric Co, Ltd, COUNTER-CLAIMANT
(1:01cv3501): John M Vassos, Morgan, Lewis &
Bockius, LLP, New York, NY USA.

For Orion Electric Co, Ltd, Orion America, Inc,
COUNTER-DEFENDANTS (1:01cv3501): Joel E Lutz-
ker, David Kagan, Donna Angotti, Shulte, Roth & Zabel,
New York, NY USA.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES
MAGISTRATE JUDGE.

**OPINION BY:** JAMES C. FRANCIS IV

**OPINION:**

MEMORANDUM AND ORDER

2002 U.S. Dist. LEXIS 14466, *

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiffs, Orion Electric Co., Ltd. ("Orion Electric") and Orion America, Inc. ("Orion America") (collectively "Orion"), filed this action against the defendants, Funai Electric Co., Ltd. ("Funai Electric") and Funai Corporation ("Funai Corp.") (collectively "Funai") seeking declaratory relief pursuant to *28 U.S.C. § 2201*, establishing that its products do not infringe any enforceable patents held by Funai. Orion also alleges that Funai has engaged in monopolization in violation of the Sherman Act, *15 U.S.C. § 1* et seq. [*3]

Funai has countersued, n1 charging the plaintiffs with patent infringement. Orion responded by filing the same two claims seeking declaratory relief and alleging monopolization as counterclaims in this suit.

> n1 Funai's action, formerly pending in the United States District Court for the District of New Jersey, was transferred to this District on March 19, 2002, pursuant to *28 U.S.C. § 1404(a)* for consolidation.

The current dispute involves the discovery of a number of documents and the sufficiency of responses to a number of interrogatories. The parties have each submitted motions to compel pursuant to *Rule 37 of the Federal Rules of Civil Procedure.*

Background

Orion Electric is a Japanese corporation engaged in the manufacture and sale of electronic devices, including video cassette recorders ("VCRs"), combination television/video cassette recorders ("TV/VCRs"), and tuners. Orion Electric also creates its own technologies and takes licenses to technologies involving [*4] the design and manufacture of VCRs and TR/VCRs. (Supplemental and Second Amended Complaint ("Second Am. Compl."), P 3). Orion America, a New Jersey based affiliate of Orion Electric, is engaged in the sale and marketing of electronic devices, including VCRs, TR/VCRs, and tuners. (Second Am. Compl., P 4).

Funai Electric is a Japanese corporation engaged in the sale and marketing of electronic devices, including VCRs, TR/VCRs, and tuners. Funai Corp., a subsidiary of Funai Electric, is based in New Jersey. Funai Electric markets, sells, and services electronic devices in the United States through Funai Corp. (Second Am. Compl., PP 5-6).

Funai asserts that it possesses the exclusive right to make, use, sell, and offer to sell eight patents within the United States (the "Asserted Patents"), and that the

VCRs and TV/VCRs sold in the United States by Orion include the inventions claimed in the Asserted Patents. (Second Am. Compl., PP 8, 11, 14). Accordingly, Funai contends that it is entitled to a remedy for patent infringement and has demanded that the plaintiffs pay Funai a royalty for each VCR and TV/VCR sold by Orion. (Second Am. Compl., P 16). Orion denies that any of the VCRs, TV/VCRs, [*5] or tuners that they manufacture or sell in the United States infringe any valid, enforceable claim of any of the Asserted Patents. (Second Am. Compl., P 17).

Procedural History

In April 2001, Orion initiated this lawsuit by filing a complaint that was later amended. Funai moved to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim, and, in the alternative, it moved to separate and stay Orion's antitrust claims until resolution of the patent issues. On March 11, 2002, Judge Schwartz ruled on the motions, granting Funai's motion to dismiss for failure to state a claim on the patent misuse claim, the antitrust claim, and all claims against Funai Corp., and denying the other two motions. See *Orion Electric Co. v. Funai Electric Co., 2002 U.S. Dist. LEXIS 3928, No. 01 Civ. 3501, 2002 WL 377541,* at *8 (S.D.N.Y. March 11, 2002). Judge Schwartz also granted the plaintiffs permission to serve and file a second amended complaint within thirty days. Id. Orion then filed a supplemental and second amended complaint in April 2002. In May 2002, Funai again moved to dismiss Orion's antitrust claims for failure to state a claim and to dismiss all [*6] claims against Funai Corp. for failure to state a claim and for lack of subject matter jurisdiction. In the alternative, Funai moved to separate and to stay Orion's antitrust claims until resolution of the patent issues. This motion is currently pending before Judge Schwartz.

Meanwhile, in December 2001, Funai initiated a lawsuit in federal court in New Jersey, charging the plaintiffs with patent infringement. Funai also filed a complaint with the United States International Trade Commission ("ITC"), but later withdrew it. The only motions before me are the parties' motions to compel.

Discussion

Orion's Motion to Compel

A. Document Requests

The plaintiffs have provided over one hundred document requests from the defendants and now claim that Funai has provided deficient responses to seventy-seven of these requests. I will address each of the disputed document requests in turn.

1. Document Request No. 4

Orion's Document Request No. 4 seeks all correspondence which refer or relate . . . to the assignment, licensing or sublicensing of the Funai patents." (Orion Electric Co., Ltd's and Orion America, Inc.'s Memorandum of Law in Support of their Motion to [*7] Compel Discovery ("Pl. Memo."), Exh. 2 at 8). In response, Funai has agreed to turn over all assignments, licenses, and sublicenses but refuses to turn over correspondence, arguing that "such documents are privileged, not reasonably calculated to lead to the discovery of admissible evidence, and/or protected from discovery under *Fed. R. Evid. 408*." (Memorandum of Law in Support of Funai Electric Co., Ltd.'s and Funai Corp.'s Opposition to Orion Electric Co., Ltd.'s and Orion America, Inc's Motion to Compel Discovery ("Def. Opp. Memo.") at 4).

Under *Rule 408 of the Federal Rules of Evidence*, "the use of settlement evidence to establish the validity or invalidity of a claim of trademark infringement" is barred. *Starter Corp. v. Converse, Inc., 170 F.3d 286, 293 (2d Cir. 1999)* (citation omitted). However, in this case, Funai has made no showing that the information sought is "settlement evidence" as opposed to routine business communications. Moreover, courts have held that documents relating to a party's licensing efforts are relevant to infringement causes of actions. "Actions and statements against interest of the owner of a patent or inventor may be considered by [*8] a court when construing the scope of a patent and are relevant to the issues of infringement and validity." *Conopco, Inc. v. Warner-Lambert Co., 2000 U.S. Dist. LEXIS 1601, No. Civ. A 99-101, 2000 WL 342872,* at *6 (D.N.J. Jan. 26, 2000) (citation omitted).

Accordingly, to the extent that the information is not privileged, Funai is ordered to produce all correspondence relating to the assignment, licensing, or sublicensing of any Asserted Patent. To the extent that the information is privileged, Funai shall submit a privilege log with respect to the outstanding document requests in conformity with the requirements set forth in *Rule 26(b)(5) of the Federal Rules of Civil Procedure* and Local Civil Rule 26.2.

2. Document Requests Nos. 5, 83, and 92

The plaintiffs' Document Requests Nos. 5, 83, and 92 seek all documents referring to the commencement or withdrawal of the defendants' ITC proceeding initiated against Orion, all documents referring to the defendants' decision to commence a lawsuit against Orion in the United States District Court for the District of New Jersey, and all documents referring to threats to commence a legal action against the plaintiffs based on the Funai patents. (Pl. [*9] Memo., Exh. 2 at 8, 40, and 44). In response, Funai argues that this information is privileged

material and that it is "not aware of any non-privileged, responsive documents." (Def. Opp. Memo. at 4). Orion further claims that Funai has refused to list the information called for by these document requests on its privilege log. (Orion Electric Co., Ltd's and Orion America, Inc.'s Reply Memorandum in Support of their Motion to Compel Discovery ("Pl. Reply Memo.") at 3).

To the extent it is privileged, Funai shall include the information requested by these document requests on its privilege log in compliance with *Rule 26(b)(5) of the Federal Rules of Civil Procedure* and Local Civil Rule 26.2.

3. Document Requests Nos. 6, 7, and 110-117

Document Requests Nos. 6 and 7 seek all documents that refer to the "structure, properties, characteristics and/or advantages of any products" as well as any "engineering project reports" which relate to the designing of any products made or sold by Funai, or licensees or sublicensees under the Asserted Patents. (Pl. Memo., Exh. 2 at 9). Document Requests Nos. 110-117 seek all documents that relate to quality control, customer complaints, customer [*10] returns, customer dissatisfaction, consumer surveys, retailer surveys, and retailer dissatisfaction pertaining to any products manufactured, sold or imported by Funai or its licensees or sublicensees, which are allegedly within the scope of any claim of any Asserted Patent. (Pl. Memo., Exh. 3 at 2-5).

Funai responds that these requests are "overly broad" and "not reasonably calculated to lead to the discovery of admissible evidence." (Def. Opp. Memo. at 5). Specifically, Funai notes that the technical aspects of Funai's current products as requested by Nos. 6 and 7 are not relevant to this case. Funai further contends that these two requests are duplicative of other requests for which Funai has already agreed to produce responsive documents. Objecting to Requests Nos. 110-117, Funai argues that the information sought is simply not relevant to any claim in the case. (Def. Opp. Memo. at 5).

Document Requests Nos. 6 and 7 are indeed overly broad. Information regarding the "structure, properties, characteristics and/or advantages of any products" which fall under the scope of the Asserted Patents is relevant to issues of claim construction, non-infringement, and invalidity. However, [*11] Orion has failed to explain how the technical aspects of current Funai products that are not related to any claim in this case are relevant. Accordingly, Funai need not respond to that part of the requests. Additionally, to the extent that Document Requests Nos. 6 and 7 are duplicative of other requests, Funai can simply answer these requests by reference to its prior production.

Similarly, Document Requests Nos. 110-117 are overly broad. Orion cites to *Chubb Integrated Systems, Ltd. v. National Bank of Washington, 103 F.R.D. 52, 57 (D.D.C. 1984),* to support its contention that documents relating to quality control and customer satisfaction should be produced. (Pl. Memo. at 7). However, the court in *Chubb* determined that commercial success is relevant to patent invalidity and that sales information, sales volume, and market share are relevant factors in the determination of commercial success. Here, Orion requests information such as individual customer complaints and customer returns; information that is not directly linked to commercial success. Accordingly, Orion's motion to compel for Document Requests 110-117 is denied.

4. Document Requests Nos. 17 and [*12]   103

Document Requests Nos. 17 and 103 seek all documents that refer to or constitute communications between Funai and Orion, including between counsel, and between Funai and any third-party "pertaining to Orion or any Orion product." (Pl. Memo., Exh. 2 at 14, 48). Funai responds that these requests are "confusing and boundless in scope." (Def. Opp. Memo. at 6). They further argue that Orion's offer to limit the requests to those issues set forth in the pleadings are tantamount to asking for "discovery on issues in the complaint." (Def. Opp. Memo. at 6).

Orion's requests are indeed overbroad, particularly where they seek information "pertaining to Orion or any Orion product." As Funai's counsel pointed out during oral argument, the Asserted Patents in this case involve only VCR components, whereas some of Orion products do not include a VCR component. (Tr. 23). n2 To the extent that Orion seeks information on products not at issue in this case, the request is overbroad. Therefore, Funai is not required to respond to these requests in their current form.

n2 "Tr." refers to the transcript of the oral argument held on July 22, 2002.

[*13]

5. Document Requests Nos. 19, 44, and 77

Document Request No. 19 seeks all documents that refer to communications between Alps Electric Co. ("Alps"), an Orion supplier of tuner components, and Funai. Document Request No. 44 seeks all documents regarding Alps and Funai's '218 patent. Document Request No. 77 seeks all documents that refer to communications between Funai and any Orion supplier concerning the subject matter of the Asserted Patents. (Pl. Memo., Exh. 2 at 15, 24, 38). Orion complains that Funai

objected to the phrase "subject matter" of the Asserted Patents, and has improperly and artificially limited the Requests to include only information within the "scope of the claims." (Pl. Memo. at 8-9). Orion then requested a more specific definition of this phrase, but Funai has not provided one. (Pl. Memo. at 8-9). Funai counters that they have agreed to produce all responsive documents. (Def. Opp. Memo. at 6).

As written, these requests are overly broad. Since Funai's narrowing of the requests to include information within "the scope of the claims" is reasonable and Funai asserts it has already agreed to produce such documents, Orion's motion to compel is denied.

6. [*14] Document Request No. 20

Orion's Document Request No. 20 seeks all documents referring to Alps' involvement with Funai in the development of technology relating to any video cassette device. (Pl. Memo., Exh. 2 at 15). Funai again responded by limiting the scope of this request to the "scope of the claims." (Def. Opp. Memo. at 7). Arguing that this request "bears directly on the issue of inventorship of the Asserted Patents," Orion counters that Funai's "artificial limitation" is improper. (Pl. Memo. at 9).

Again, as written, Orion's request is overly broad. The scope of the technology requested by Orion easily exceeds any issue in this case. As such, Orion's motion is denied.

7. Document Request No. 21

Document Request No. 21 asks for all documents between Funai and Alps concerning the "design, development, manufacture and sale of any tuner embodying the invention of any [Asserted Patent]." (Pl. Memo., Exh. 2 at 15-16). Orion complains that Funai has agreed only to produce information regarding the "design" and "development" of the tuners and has refused to produce any information on the "manufacture" or "sale" of the tuners. Orion further complains that even as to the [*15] "design and development" of any tuner, Funai limits this request to "'documents . . . within the scope of the asserted claims.'" (Pl. Memo. at 10). In response, Funai argues that it has already agreed to produce documents relating to the "design" and "development" of certain tuners, but has asked Orion for clarification on the relevance of documents relating to the "sale" or "manufacture" of these tuners. According to Funai, Orion has failed to provide it. (Def. Opp. Memo. at 7).

In its moving papers Orion states that these document requests are relevant to "economic damages, inventorship, and invalidity." (Pl. Memo. at 10). While it is clear that information regarding the design and the development of tuners is relevant to issues of inventorship and invalidity and information regarding sales is relevant

to calculation of damages, it is unclear how information related to the manufacture of tuners is relevant to Orion's claims, defenses, or counterclaims. Accordingly, Funai shall respond to Orion's document requests concerning the design, development and sale of the tuners in question.

8. Document Requests Nos. 23, 24, and 27-35

Orion's Document Requests Nos. 23, 24, and 27-35 seek [*16] all documents "pertaining to Funai authorized service centers, Funai's warranty and service operations relating to products allegedly covered by the Asserted Patents, Funai's quality control inspections, refurbishing operations, and third-parties related thereto." (Pl. Memo. at 10). Funai responds that Document Requests Nos. 23, 24, and 28-36 n3 target only "domestic industry" issues from the ITC investigation and are therefore irrelevant. n4 (Def. Opp. Memo. at 7-8). ·

n3 Although Funai includes Document Request No. 36 in its objections, this appears to be a clerical error since Orion's motion to compel does not address this request.

n4 In order to appear before the ITC, a party must present proof that the industry in question is an industry that deserves the protection of the United States. A qualifying industry is referred to as a "domestic industry." (Tr. 20-21).

It is unclear how information relating to Funai's service centers is relevant to the issues in this case and Orion has failed to articulate a [*17] persuasive reason. As such, Orion's motion to compel is denied as it relates to Document Requests Nos. 23, 24, and 28-36.

As for Document Request 27, which seeks documents, including laboratory notebooks, prepared in connection with the research and development of products covered by the Asserted Patents (Pl. Memo., Exh. 2 at 18), Funai responds that it has agreed to produce documents relating to "(i) the conception/reduction to practice/first disclosure of inventions claimed in the patents, (ii) laboratory notebooks substantiating inventorship, and (iii) prior art." (Def. Opp. Memo. at 8). However, to the extent that No. 27 seeks technical information relating to Funai's current commercial products, Funai argues that it is irrelevant. (Def. Opp. Memo. at 8).

The information sought by Orion's Request No. 27 is clearly relevant, except with respect to technical information concerning Funai's current products not related to claims in this case. (See analysis for Requests Nos. 6 and 7 above). Since Funai's offer of production is reasonable,

Funai is not compelled to produce more than it has already agreed to in response to this request.

9. Document Requests Nos. 25, 94-96, 98-100, and [*18] 102

These requests seek all documents pertaining to "Funai organizational charts, financial statements of Funai Corp., and communications between Funai Electric and Funai Corp. relating to the Asserted Patents, to Orion, and to any Orion product." (Pl. Memo. at 11). In response, Funai contends that it has responded to each of these requests "to the extent it understands them," and that "Orion has not clarified the scope . . . in any way that permits Funai to respond." (Def. Opp. Memo. at 8). Specifically, as to Document Request No. 25, Funai states that it agreed to produce organization charts for Funai but not for any of its subsidiaries since such documents "were not reasonably calculated to lead to the discovery of admissible evidence." (Def. Opp. Memo. at 9). As to Document Requests Nos. 94 and 98, Funai states that no responsive documents exist. As to Document Requests Nos. 95 and 96, the defendant sought clarification of the terms "pertaining to Orion" and "pertaining to any Orion product," and never received a response from Orion. (Def. Opp. Memo. at 9). As to Document Requests Nos. 99 and 100, Funai contends that these are privileged since they pertain to litigation and [*19] that no non-privileged responsive documents exist. (Def. Opp. Memo. at 9-10). And finally, as to Document Request No. 102, Funai argues that the financial documents requested are not reasonably calculated to lead to the discovery of admissible evidence. (Def. Opp. Memo. at 10).

Orion's Document Request No. 25 seeks information relating to Funai's organizational charts which concern products covered by the Asserted Patents. (Pl. Memo., Exh. 2 at 17). Funai has agreed to turn over the requested information for Funai but not for Funai's affiliates, claiming this information is not relevant.

Contrary to Funai's assertion, this information is potentially relevant to Orion's claims. To the extent this information is in the possession, control, or custody of the defendants, they are instructed to turn it over.

Orion's motion to compel is denied as to Document Requests Nos. 94 and 98 since Funai represents that it has no responsive documents. Likewise, the motion to compel is denied as to Document Requests Nos. 95 and 96 because these requests, which seek information "pertaining to Orion or any Orion product" (Pl. Memo., Exh. 2 at 45), are overbroad. (See analysis for Request No. 103 above). [*20]

Orion's motion to compel is also denied as to Document Requests Nos. 99 and 100. Funai contends that

these requests, which seek information relating to contemplated or actually commenced litigation against Orion and licensing negotiations with Orion, seek privileged information. (Pl. Memo., Exh. 2 at 46-47). To the extent that the information is privileged, Funai shall include it in its privilege log pursuant to Rule 26(b)(5) and Local Civil Rule 26.2.

Orion's Document Request No. 102 seeks financial statements of Funai Corp. This information is clearly relevant to a determination of damages. Accordingly, the motion to compel is granted insofar as it seeks a response from Funai Corp., but it is denied insofar as it seeks a response from Funai Electric. (See analysis in section C below).

### 10. Document Request No. 26

This request seeks all annual and quarterly reports, 10-Ks filed with the United States Securities and Exchange Commission, and any prospectus since January 1, 1990. (Pl. Memo., Exh. 2 at 18). In response, Funai agreed to produce annual reports, 10-Ks, and any prospectus since 1996, but argues that Orion has proffered no basis for requesting documents all the way [*21] back to 1990. (Def. Opp. Memo. at 10). Orion has since modified its requests to include documents from January 1, 1992, arguing that some of the Asserted Patents had effective filing dates in 1992. (Pl. Memo. at 13).

Orion's original request is overbroad in that it includes a time period before any of the effective filing dates of the Asserted Patents. Its modification to 1992 is reasonable since some of the Asserted Patents were filed in that year and Funai is therefore compelled to respond to this request.

### 11. Document Request No. 37

Document Request No. 37 seeks all documents relied upon in responding to Orion's First Set of Interrogatories. (Pl. Memo., Exh. 2 at 22). Funai responds that this information is privileged and that there are no non-privileged, responsive documents. (Def. Opp. Memo. at 10).

Funai is compelled to produce any documents relied on that were not produced in response to other requests. To the extent the information sought is privileged, the defendants shall include this information in its privilege log.

### 12. Document Requests Nos. 39 and 40

Orion's Document Requests Nos. 39 and 40 seek all documents that refer to any analysis or test concerning [*22] any of the Asserted Patents or any product that Funai alleges to infringe any claim of any Asserted Patent. (Pl. Memo., Exh. 2 at 22-23). Funai responds that it has agreed to produce non-privileged, responsive docu-

ments that relate only to "accused Orion products and/or the conception and reduction to practice of inventions claimed in the Funai patents." (Def. Opp. Memo. at 10-11).

Both of these requests are overly broad as written. To the extent that they seek documents pertaining to testing and analysis of products that are not related to accused Orion products or to the extent that they seek documents pertaining to testing of accused products regarding aspects not covered by the claims, they are overbroad. Since Orion has failed to show the relevance of this information, Orion's motion to compel is denied and Funai need not produce more than it has agreed to.

### 13. Document Requests Nos. 41, 69 and 70

These requests seek all documents referring to analysis and tests "concerning any product or technology, including those products manufactured or licensed by Funai, which Funai alleges to be covered by any claim of any Asserted Patent, and that relate to aspects of" Funai Model [*23] No. VIP 3000 series VCRs. (Pl. Memo. at 14 & Exh. 2 at 35). In response, the defendant contends these requests are duplicative of Document Requests Nos. 6 and 7 and are overbroad in that they relate to all current and past Funai products. (Def. Opp. Memo. at 11).

These requests are indeed overbroad. To the extent that they request information regarding the technical aspects of Funai's current products not related to any claim in the case, Funai need not respond to that part of the requests. Additionally, as noted above, to the extent the document requests are duplicative of other requests, Funai can simply answer these requests by reference to previously produced documents.

### 14. Document Requests Nos. 42 and 43

These requests seek all documents referring to communications from the Japanese Patent Office concerning the subject matter of any Asserted Patent. (Pl. Memo., Exh. 2 at 24). Funai responds that it has agreed to produce non-privileged, responsive documents to these requests. (Def. Opp. Memo. at 11).

To the extent that the information is privileged, Funai shall include it in its privilege log. To the extent it is not, Funai shall respond fully to these requests.

### 15. [*24] Document Request No. 45

Orion's Document Request No. 45 seeks "All Alps catalogs referring to three in one tuners having publication or copyright dates before the filing date of the '218 Patent." (Pl. Memo., Exh. 2 at 25). In response, Funai has agreed to produce all Alps catalogs which include the phrase "three in one tuners." (Def. Opp. Memo. at 11). Orion contends that Funai's response is improper in that

it limits the scope of the request to "Alps catalogues" as opposed to all "documents." (Pl. Memo. at 15). Since Orion's request specifically asks for "all Alps catalogues" and not all "documents," Funai's response is appropriate and Orion's motion to compel is denied.

16. Document Request No. 46

This request seeks "all documents explaining 'how tuner and video processing circuits had previously been designed separately and independently of each other.'" (Pl. Memo., Exh. 2 at 25). In response, Funai asked Orion to identify the source of the quote, which Orion did. Funai now points out that the full quote reads, "This is further supported by the attached statement (Exhibit A) explaining how tuner and video processing circuits had previously been designed separately and [*25] independently of each other." Based on this full quote, Funai argues that it has already provided Orion with the requested explanation. (Def. Opp. Memo. at 12). Funai further argues that this request is duplicative of Document Request No. 3 which Funai has already agreed to comply with. (Def. Opp. Memo. at 12).

Simply because Funai has provided Orion with one document in the past that refers to the requested information does not mean that Funai has "provided the responsive documents" as it claims. (Def. Opp. Memo. at 12). Orion's requests seeks "all documents" and Funai is therefore instructed to respond fully to this request. As to any possible overlap with Document Request No. 3, this contention is without merit. Document Request No. 3 seeks information pertaining to the validity, patentability and scope of claim coverage of the Asserted Patents, (Pl. Memo., Exh. 2 at 3); a request sufficiently different from the request at hand.

17. Document Requests Nos. 54, 58 and 72

These requests seek documents relating to timing charts. (Pl. Memo. at 16). Orion defines timing chart as "a chart, design document, or document based on any test result, which shows or characterizes the timing [*26] or operation of a product or component." (Pl. Memo. at 16). Funai defines it as "a chart relating to the timing of operation of components/products." (Def. Opp. Memo. at 612). Funai argues that since Orion never sought to resolve the differences in their definitions, the motion to compel is improper and premature. (Def. Opp. Memo. at 12-13 & n.14).

This issue appears to be prematurely before me since the parties apparently thought they had agreed to different definitions during a meet-and-confer, evidenced by letters dated April 16 and 18, 2002 that crossed in the mail. (Pl. Memo., Exh. 6 at 7 & Exh. 10 at 5). Orion's motion to compel is denied and the parties are instructed to attempt to resolve this issue on their own.

18. Document Requests Nos. 55-57, 59-63, 71, and 74

Orion's Document Requests Nos. 55-57, 59-63, 71, and 74 seek information pertaining to the physical operation of a number of specific Orion devices. (Pl. Memo., Exh. 2 at 29-32, 35, 37). Orion argues that these requests, which seek information about "Orion and non-Orion products, whether or not accused by Funai," is relevant. (Pl. Memo. at 17). In response, the defendant agrees to produce documents relating [*27] to those Orion products accused by Funai, but refuses to produce documents relating to "non-accused Orion products," maintaining that such documents are not reasonably calculated to lead to discovery of admissible evidence. (Def. Opp. Memo. at 13). Orion responds that non-accused Orion product information is relevant to issues such as non-infringement and claim construction. (Pl. Reply Memo. at 7).

Orion's argument is not persuasive and therefore the motion to compel is denied as it relates to these requests. (See analysis for Requests Nos. 39 and 40 above).

19. Document Request No. 78

Under Document Request No. 78, Orion seeks documents relating to any "licenses taken by Funai under any patent generally directed to consumer electronic devices" or "component utilized in consumer electronic devices or Video Cassette Devices," arguing that this information is relevant to a determination of damages. (Pl. Memo. at 17 & Exh. 2 at 38). In response, Funai agrees to produce licenses relevant to damages pursuant to *Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970)*, modified, *446 F.2d 295 (2d Cir. 1971)*. (Def. Opp. [*28] Memo. at 13). Orion counters that this limitation is improper because Funai fails to clarify precisely what it intends to produce. (Pl. Memo. at 17-18).

In Georgia-Pacific, the court identifies fifteen factors to be considered when determining the amount of a reasonable royalty for a patent license. *318 F. Supp. at 1120*. Given the specificity of this list, Orion can assume that Funai intends to produce documents related to each factor. Since Orion has failed to identify additional information it desires that is beyond the listed factors, the motion to compel is denied.

20. Document Requests Nos. 79-82 and 104

These requests seek all documents "relating to sales or offers to sell, manufacture, volume of sales, costs and expenses, and sales and profit projections -- by Funai or by any licensee under any Asserted Patent -- of products allegedly covered by any claim of any Asserted Patent." (Pl. Memo. at 18). Orion complains that Funai has refused to produce documents responsive to these requests

as to licensees. (Pl. Memo. at 18). Funai responds that it has agreed to produce responsive documents. It further notes that since Orion never attempted to seek documents [*29] relating to licensees prior to this motion, an application to compel is premature. (Def. Opp. Memo. at 13-14).

Funai is incorrect. Orion clearly requested documents concerning licensees in its document requests. (Pl. Memo., Exh. 2 at 39-40, 48). Moreover, Orion attaches a letter from Funai where Funai clearly omits any intention of complying with that part of the requests. (Pl. Memo., Exh. 5 at 2-3). Therefore, the motion is not premature and Funai is ordered to respond fully to these document requests.

21. Document Request No. 84

Orion's Document Request No. 84 seeks all documents referring to "Video Cassette Devices, Video Cassette Device/television combinations, and technologies relating to all of the foregoing." (Pl. Memo., Exh. 2 at 41). At the defendants' request, the plaintiff narrowed the request to include, "VCRs and TV/VCR combination[s] incorporating one or more limitation of any Asserted Patent, and technologies related thereto." (Pl. Memo. at 18). Funai argues that this request is still overly broad.

Orion's narrowing of this request is reasonable and the information sought is relevant to claims of non-infringement. Therefore, Funai shall produce documents responsive [*30] to this request.

22. Document Requests Nos. 85-91 and 105

Document Requests Nos. 85-91 and 105 seek all documents pertaining to "competition in the market, market share, start-up costs, manufacturing and marketing expenses, and to Funai's intentions in the marketplace." (Pl. Memo. at 19). In response, Funai contends that these requests relate only to Orion's antitrust claims and should therefore not be addressed until Funai's motion to separate and stay Orion's antitrust claim is decided. (Def. Opp. Memo. at 14-15). Orion counters that Judge Schwartz made it clear in a pre-motion conference on April 29, 2002, that discovery on all issues should proceed while Funai's motion to dismiss was being briefed. (Pl. Memo. at 19). Funai counters that Judge Schwartz's directive indicated that only "non-antitrust issues should not be stayed" while Funai's motion to dismiss was pending. Funai further notes that there was no pending antitrust cause of action when Funai served its discovery responses because Judge Schwartz had granted Funai's initial motion to dismiss on March 21, 2002. Although Orion later re-alleged its antitrust cause of action in a Second Amended Complaint, Funai has [*31] yet to answer, and maintains that it will address

these document requests if its motion is not granted. (Def. Opp. Memo. at 15 & n.17).

Unfortunately, Judge Schwartz's directive was not memorialized. Therefore, absent further instruction from Judge Schwartz, the parties shall comply with discovery requests on all issues in the case. Accordingly, Funai shall respond to Document Requests Nos. 85-91 and 105.

23. Document Request No. 101

Orion's Document Request No. 101 seeks all documents relating to financial statements for Funai Electric. (Pl. Memo., Exh. 2 at 47). In response, Funai agrees to produce "summary financial documents as they are kept in the ordinary course of business." (Def. Opp. Memo. at 15). Orion counters that this is an artificial limitation and insists on "all documents responsive to the full scope of this request." (Pl. Memo. at 20).

Funai's response to produce summary financial documents as they are kept in the regular course of business is reasonable, at least as an initial response, and Orion's motion to compel is therefore denied.

B. Interrogatories

The plaintiffs also contest the defendants' responses to their interrogatories. Specifically, they [*32] complain about the defendants' answer to three subparts of Interrogatory No. 1.

1. Interrogatory No. 1(A)

Interrogatory No. 1(A) requests that Funai identify, for each claim that it contends is infringed, "each Orion product and structure corresponding to each element in each such asserted claim." (Pl. Memo., Exh. 1 at 7). In response, Funai proposed that the parties exchange claim charts, including infringement claim charts. Funai now contends that Orion failed to honor its part of the agreement so Funai has since taken the position that it will produce claim charts only upon a parallel exchange by Orion. (Def. Opp. Memo. at 16-17).

The parties are instructed to exchange claim charts simultaneously.

2. Interrogatory No. 1(B)

Interrogatory No. 1(B) requests that Funai state, for each claim that it contends is infringed, "the meaning or construction, and the bases therefor, which should be provided to each claim limitation." (Pl. Memo., Exh. 1 at 7). Funai responds that the request is premature because "the meaning or construction which should be provided to each asserted claim limitation is more properly determined at a Markman hearing." (Def. Opp. Memo. at 17).

The purpose [*33] of a "Markman" hearing is for the court to interpret the claims of a contested patent. See

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996). Funai is correct in that the "interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Id. at 970-71.* As such, Funai has agreed to provide its positions regarding claim constructions following a determination of the disputed terms in accordance with the Markman hearing schedule set by the Court. Accordingly, Orion's motion to compel is premature.

### 3. Interrogatory No. 1(C)

Interrogatory No. 1(C) requests that Funai identify, for each element in each claim that it contends is infringed, "all the disclosures in the corresponding patent which support said claim limitation." (Pl. Memo., Exh. 1 at 7). Funai responds that this request is improper and burdensome since "the asserted claims are presumptively supported by the respective specification and figures." (Def. Opp. Memo. at 17).

Although the information [*34] sought by Orion is clearly relevant to the case, see *Minnesota Mining and Manufacturing Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992), the request is burdensome as written. Instead of requiring Funai to detail each element in each asserted claim, Orion should first identify what is missing in the specification and figures supplied by Funai. The motion to compel is denied in its present form.

### C. Funai Corp.'s Failure to Respond

Next, Orion complains that Funai Corp. has failed to respond to any of Orion's discovery requests and should be compelled to do so. Orion further argues that since Funai Corp. is the wholly-owned subsidiary of Funai Electric, then, as its parent, Funai Electric has the obligation to produce relevant documents in its subsidiaries' files and should be compelled to do so. (Pl. Memo. at 23).

Funai responds that Funai Corp. has no obligation to respond to Orion's discovery request because it is not a party in this case. Funai relies on Judge Schwartz's March 11 decision in which all claims against Funai Corp. were dismissed. Acknowledging that Orion seeks to add Funai Corp. as a party in its second amended [*35] complaint, Funai nonetheless argues that since it has been granted leave to file a motion to dismiss all charges against Funai Corp., it therefore has no discovery obligations. (Def. Opp. Memo. at 18 & n.23).

Funai is mistaken. Even though a motion to dismiss all claims against Funai Corp. is pending, this does not automatically relieve Funai Corp. of its discovery obligations. See *Spencer Trask Software and Information Ser-*

*vices, LLC v. RPost International Limited*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002); *Moran v. Flaherty*, 1992 U.S. Dist. LEXIS 14568, No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992) ("Discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."). Accordingly, Funai Corp. should immediately respond to each of Orion's discovery requests.

### D. General Objections

Orion also argues that some of the general objections raised by the defendants are improper.

#### 1. General Objection No. 6

General Objection No. 6 states that Funai objects to producing information "that is publicly available, not uniquely within the control of Funai, and/or is equally available to Orion." (Pl. Memo., Exh. 2 at 3 & Exh. 1 at [*36] 3). Orion argues that this is improper and as an example, cites to the possibility that Funai would withhold prior art that is publically available. Funai responds that this objection merely preserves its rights under Rule 26(b)(2) which provides that discovery may be limited if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Fed. R. Civ. P. 26(b)(2)(i).* Funai further notes that it has already agreed to turn over all prior art requested by Orion. (Def. Opp. Memo. at 19-20).

Since no controversy has crystallized regarding this objection, no relief is appropriate at this time.

#### 2. General Objection No. 7

Orion next complains that General Objection No. 7 is improper and fails to conform with Rule 34. Here, Funai objects to requests to the extent that they impose a duty to produce information that is not within Funai's possession, custody, or control. Funai also objects to requests that require Funai to obtain information from "any former employee, agent, officer, director, representative, consultant, accountant, or attorney of Funai." (Pl. Memo. at 24; Exh. 2 at [*37] 3 & Exh. 1 at 3).

According to Rule 34, Funai is required to produce all information within its possession, custody, or control. See *Fed. R. Civ. P 34(a).* Funai's objection does not go beyond that, as Orion suggests, and is therefore appropriate.

#### 3. General Objections Nos. 8(e) and 10 to Orion's Document Requests, and 9(e) and 11 to Orion's Interrogatories

Under these general objections, Funai objects to turning over information that contains trade secrets or is otherwise confidential. (Pl. Memo., Exh. 2 at 3-4 & Exh.

l at 3-4). Orion argues that this is improper since there is a protective order in force in the case. (Pl. Memo. at 24). Funai responds that since the protective order allows parties to seek modification for good cause this objection preserves its right to raise an issue with the court if a conflict arises. (Def. Opp. Memo. at 20-21).

Since no such concrete disagreement has yet arisen, no relief is appropriate at this time.

4. General Objections Nos. 15 and 16 to Orion's Document Requests, and 16 and 17 to Orion's Interrogatories

Under these general objections, Funai objects to Orion's definitions of "Funai Electric" and "Funai Corp." (Pl. Memo., Exh. [*38] 2 at 5 & Exh. 1 at 5). While Orion defines them to include all "predecessor entities, parents, subsidiaries, successors, officers, directors, agents, attorneys, and fiduciaries individually or in any combination, and all persons in privity with them with regards to the matters inquired about herein," Funai, contending that these definitions are "vague, ambiguous, and so overly broad that it is unduly burdensome, oppressive, and harassing," limits its definitions to "Funai Electric Co., Ltd." and "Funai Corporation." (Def. Opp. Memo. at 21; Pl. Memo., Exh. 2 at 5 & Exh. 1 at 5). At the same time, Funai confirms that it will fully comply with the Federal Rules of Civil Procedure and its responses will be based upon reasonable searches of its facilities and files as well as inquiries of Funai employees and representatives. (Def. Opp. Memo. at 21).

Funai's definition and response is reasonable and Orion's motion is therefore denied.

5. General Objections No. 18 to Orion's Document Requests, and 19 to Orion's Interrogatories

Orion next complains that General Objections Nos. 18 and 19 are improper. Similar to the last contested objections, Funai opposes Orion's definition of "Alps, [*39] " which includes all persons in privity with Alps. Funai's response narrowed the definition to "Alps Electric Co., Ltd." (Def. Opp. Memo. at 22).

Again, Orion's motion to compel is denied because Funai's narrowing of the definition is reasonable and its assertion that it will abide by the Federal Rules is sufficient.

6. General Objections Nos. 19 to Orion's Document Requests, and 20 to Orion's Interrogatories

Finally, Orion argues that General Objections Nos. 19 and 20 are improper. Here, Funai objects to Orion's definition for "state the basis" which includes a mandate that Funai "fully and completely state, provide and describe every[] fact, statistic, inference, supposition, estimate, consideration, conclusion, study and analysis

known to Funai which Funai believes to be evidence of the truth or accuracy of the allegation or contention and to identify each document relating thereto." (Def. Opp. Memo. at 23). Instead, Funai has proposed construing the term "consistent with its ordinary dictionary definition." (Def. Opp. Memo. at 23).

Funai's narrowing of the definition is reasonable and Orion's motion to compel is denied.

E. Date to Complete Discovery

Orion contends [*40] that Funai has refused to set a date to produce responsive documents because "it intends to withhold all key information and documents until the extremely later stages of these actions to unduly prejudice Orion." (Pl. Memo. at 26). Orion proposes the completion date be June 30, 2002. (Pl. Memo. at 27). Funai responds that it has twice agreed to discuss a "substantially complete" date, but that Orion has insisted on June 30, a date that is nine months before the close of discovery. (Def. Opp. Memo. at 23-24). Funai contends that Orion should be ordered to negotiate a reasonable date to have document production completed. (Def. Opp. Memo. at 24).

The parties shall have until September 6, 2002 to complete their production of documents.

Funai's Motion to Compel

Funai also filed a motion to compel against Orion in which it seeks the Court's assistance in compelling Orion to produce the following three things: (1) complete responses and documents from Korat Denki and World Electric; (2) a full response to Interrogatory Nos. 2-4; and (3) documents within the full and proper scope or Document Request No. 23. (Memorandum of Law in Support of Funai Electric Co., Ltd's Motion to Compel [*41] Discovery ("Def. Memo.") at 2). Each will be addressed below.

A. Document Requests and Interrogatories Concerning Korat Denki and World Electric

Funai first argues that Orion has improperly withheld discovery related to Korat Denki and World Electric. Claiming that these two organizations are Orion entities, Funai bases this conclusion on two facts: (1) during the ITC investigation, Orion stated that World Electric is involved in product planning of accused Orion products and Korat Denki manufactures accused Orion devices; and (2) Orion's website displays Korat Denki and World Electric as "Factories and Offices." (Def. Memo. at 2-3). In addition to seeking documents, Funai makes the request to inspect and copy documents on-site at Korat Denki and World Electric. (Def. Memo. at 4).

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May, 2007, I electronically filed the foregoing document, **REDACTED VERSION OF DEFENDANT IMPAX LABORATORIES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO DEFENDANT'S FOURTH SET OF REQUESTS FOR PRODUCTION (NOS. 125-131) and REDACTED VERSION OF DECLARATION OF MARY B. MATTERER IN FURTHER SUPPORT,** with the Clerk of the Court using CM/ECF which sent notification of such filing to the following:

Jack B. Blumenfeld
Karen Jacobs Louden
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

Additionally, I hereby certify that on the same date, the foregoing document was served as indicated below:

**VIA EMAIL AND HAND DELIVERY**
Jack B. Blumenfeld
Karen Jacobs Louden
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801
jblumenfeld@mnat.com
klouden@mnat.com
mmyers@mnat.com

**VIA EMAIL**
Basil J. Lewis
Linda A. Wadler
Finnegan Henderson Farabow
  Garrett & Dunner
901 New York Avenue, NW
Washington, DE 20001
Bill.Lewis@finnegan.com
Linda.Wadler@finnegan.com

        */s/ Mary B. Matterer*
Mary B. Matterer (I.D. No. 2696)
Morris James LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com
Attorneys for IMPAX LABORATORIES, INC.