IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| WYETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 06-222 JJF |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| IMPAX LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY DECLARATION OF MARY B. MATTERER IN SUPPORT OF
DEFENDANT IMPAX LABORATORIES, INC.'S MOTION TO COMPEL
DOCUMENTS IN RESPONSE TO DEFENDANT'S FOURTH SET OF
<u>REQUESTS FOR PRODUCTION (NOS. 125-131)</u>**

        Mary B. Matterer (I.D. No. 2696)
        MORRIS JAMES LLP
        500 Delaware Avenue, 15th Floor
        Wilmington, DE 19801
        Telephone: (302) 888-6800
        mmatterer@morrisjames.com

        Daralyn J. Durie (pro hac vice)
        Asim Bhansali (pro hac vice)
        Paula L. Blizzard (pro hac vice)
        KEKER & VAN NEST LLP
        710 Sansome Street
        San Francisco, CA 94111

        M. Patricia Thayer (pro hac vice)
        John M. Benassi (pro hac vice)
        Jessica R. Wolff (pro hac vice)
        Daniel N. Kassabian (pro hac vice)
        Samuel F. Ernst (pro hac vice)
        Eric L. Lane (pro hac vice)
        HELLER EHRMAN LLP
        4350 La Jolla Village Drive, 7th Floor
        San Diego, CA 92101

        Attorneys for IMPAX LABORATORIES, INC.

Original Filed: April 27, 2007
Redacted Version Filed: May 4, 2007

I, Mary B. Matterer, declare:

1. I am an attorney at the law firm of Morris James, LLP, counsel of record for Defendant Impax Laboratories, Inc. ("Impax") in the above-referenced case. I have personal knowledge of the facts set forth in this declaration.

2. I submit this Reply Declaration in support of Defendant Impax Laboratories, Inc.'s Motion to Compel Production of Documents in Response to Defendant's Fourth Set of Requests for Production (Nos. 125-131).

3. A true and correct copy of an article entitled "Pill pushers" published in The Economist print edition dated April 19, 2001 is attached hereto as Exhibit A.

4. A true and correct copy of the cover page for each of:

"Double-Blind, Placebo-Controlled, Parallel-Group, Fixed-Dose Study of Venlafaxine Extended Release and Diazepam Followed by a Randomised, Placebo-Controlled, Flexible-Dose Evaluation of Relapse Prevention and Prophylaxis in Outpatients with Generalized Anxiety Disorder: Final Report" Protocol No.: 0600B2-377-EU;

"Double-Blind, Placebo-Controlled, Parallel-Group Comparison of Venlafaxine Extended-Release Capsules and Buspirone in Outpatients with Generalized Anxiety Disorder: Final Report" Protocol No.: 0600B2-214-US;

"A Double-Blind, Placebo-Controlled, Parallel-Group Comparison of Venlafaxine Extended-Release Capsules and Paroxetine in Outpatients with Generalized Social Anxiety Disorder: Final Report" Protocol No.: 0600B4-388-EU;

"A Double-Blind, Randomized, Placebo-Controlled Trial of Once-Daily Venlafaxine ER and Fluoxetine for the Treatment of Depression: Abbreviated Final Report" Protocol No.: 0600B1-211-US; and

"A Randomised, Double-Blind, Placebo-Controlled Study of the Efficacy and Safety of Venlafaxine Extended Release Versus Fluoxetine in Depressed Outpatients with Concomitant Anxiety: Final Report" Protocol No. 0600B1-360-CA

1

is attached hereto as Exhibit B.

5. A true and correct copy of an excerpt from the New Drug Application NDA 20-699 for Venlafaxine Extended Release, Volume 1.61 of 233 dated May 16, 1996 is attached hereto as Exhibit C.

6. A true and correct copy of an excerpt of an Effexor / Effexor XR 1000-Day Plan is attached hereto as Exhibit D.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Wilmington, Delaware on April 27, 2007.

                                                          */s/ Mary B. Matterer*
                                                       MARY B. MATTERER (I.D. NO. 2696)

# EXHIBIT A

## Pill pushers
Apr 19th 2001 | NEW YORK
From The Economist print edition

WHEN it comes to brand recognition, few would bet on Claritin against Coke. But over the past couple of years Schering-Plough's little white anti-allergy pill has had more advertising dollars lavished on it in America than the famous red can. Drug companies are becoming highly aggressive marketers. In 1991, the industry spent $55m on advertising potions directly to American consumers. By last year, the figure had risen to $2.5 billion (see chart). Although direct-to-consumer advertising (known as DTC) has been legal since 1985, it took off only in 1997, after America's Food and Drug Administration (FDA) allowed pharmaceutical companies to name both the drug and the disease it treated in the same commercial without having to reel off every single side-effect too. DTC has proved a bonanza for the industry: one analyst estimates that Schering-Plough has generated $3.50 in extra Claritin sales for every advertising dollar spent on the drug.



But this marketing explosion is having side effects of its own: a rising chorus of complaints by doctors, consumer groups, health maintenance organisations (HMOs) and other insurers. This recently startled the FDA into a review of its decision to relax the rules, though the watchdog insists it was planning a rethink anyway.

Doctors' main worry is safety—and the threat to their position as experts. They complain that patients demand potentially unsuitable drugs they have seen on television. Not every doctor stands his ground, however. *Prevention*, a magazine, found in 1999 that 87% of patients who asked for an advertised drug were prescribed it. Pharmacia's Celebrex, an arthritis treatment, hit $1 billion in sales even before clinical-trial results were fully published, because it was marketed as a wonder drug.

The other big concern is cost. Maureen Sullivan, senior vice-president at Blue Cross/Blue Shield, a large HMO, points out that only 6% of the people taking Celebrex (annual cost $900) really need it. For the rest, a course of Ibuprofen, at $24 a year, would do just as well. Not surprisingly, prescription-drug costs are the fastest-growing part of total American healthcare costs, rising by almost 20% a year, double the growth rate of other healthcare services. This is driven, at least in part, by the drug companies' deliberate policy of concentrating their firepower on a small group of blockbusters. Ten drugs accounted for 41% of all DTC spending in 1999.

This is creating branded-drug franchises, supported by line extensions that help to prolong patent life. AstraZeneca, for example, is marketing both its ulcer drug, Prilosec, and its successor, Nexium, as "the purple pill"—an easy slogan for consumers to remember. The effect is to squeeze out cheaper, off-patent medicines. Nancy Chockley, president of NIHCM, a health think-tank, argues that "the only way to get real price competition is to let in more generics. But building powerful drug brand families shuts out competition. It's like giving

Coke and Diet Coke patent protection." Generics currently account for barely a tenth of all drug spending in America.

In response, drug companies argue that DTC informs and empowers patients, and that taking pills is still cheaper than going into hospital. There is little doubt, though, that DTC is strengthening the industry's already tight grip on the market.

4/27/07 2:18 PM ()

# EXHIBIT B

# ENTIRE EXHIBIT REDACTED

# EXHIBIT C

# ENTIRE EXHIBIT REDACTED

# EXHIBIT D

Case 1:06-cv-00222-JJF   Document 160   Filed 05/04/2007   Page 11 of 12

# ENTIRE EXHIBIT REDACTED