IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| WYETH, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 06-222 JJF |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| IMPAX LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DECLARATION OF MARY B. MATTERER IN SUPPORT OF DEFENDANT IMPAX LABORATORIES, INC.'S MOTION TO COMPEL WYETH TO PRODUCE PROPERLY PREPARED RULE 30(b)(6) WITNESSES

Original Dated:  June 13, 2007
Redacted Version:  June 19, 2007

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
mmatterer@morrisjames.com

*Of Counsel*
Daralyn J. Durie
Asim Bhansali
Paula L. Blizzard
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111

*ATTORNEYS FOR IMPAX LABORATORIES, INC.*

I, Mary B. Matterer, declare:

1.    I am an attorney at the law firm of Morris James LLP, counsel of record for Defendant Impax Laboratories, Inc. ("Impax") in the above-referenced case.  I have personal knowledge of the facts set forth in this Declaration.

2.    I submit this Declaration in support of Defendant Impax Laboratories, Inc.'s Motion to Compel Wyeth To Produce Properly Prepared Rule 30(b)(6) Witnesses.

3.    A true and correct copy of an Order dated April 13, 2007 granting Impax's Motion to Compel Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) is attached hereto as Exhibit A.

4.    A true and correct copy of Impax's Rule 30(b)(6) deposition notice dated November 20, 2006 is attached hereto as Exhibit B.

5.    A true and correct copy of excerpts from Dr. Robin Enever's deposition is attached hereto as Exhibit C.

6.    A true and correct copy of excerpts from Dr. Richard Kavoussi's deposition is attached hereto as Exhibit D.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Wilmington, Delaware on June 13, 2007.

_____

MARY B. MATTERER (I.D. NO. 2696)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WYETH,                              :
                                    :
          Plaintiff,                :
                                    :
     v.                             :    Civil Action No. 06-222-JJF
                                    :
IMPAX LABORATORIES, INC.,           :
                                    :
          Defendant.                :

### MEMORANDUM ORDER

Pending before me is Defendant Impax Laboratories, Inc.'s ("Impax") Motion To Compel Deposition Pursuant To Fed. R. Civ. P. 30(b)(6). (D.I. 112). Two factors convince me that the Motion as currently presented should be granted.

First, I am persuaded by Impax's argument that the proposed deposition is the most efficient way to proceed (D.I. 113, p. 15). I note that my conclusion is influenced by the Teva factors raised by Impax. Second, the time limitations offered by Impax will control any "unduly burdensome" concerns raised by Wyeth.

NOW THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion to Compel Deposition Pursuant To Fed. R. Civ. P. 30(b)(6). (D.I. 112) is **GRANTED**.

April 13, 2007
_____
DATE

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| WYETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-222 JJF |
| | ) | |
| IMPAX LABORATORIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT IMPAX LABORATORIES, INC.'S NOTICE OF DEPOSITION OF WYETH PURSUANT TO FED. R. CIV. P. 30(b)(6)

PLEASE TAKE NOTICE that commencing at 9:30 a.m. on December 4, 2006 at the offices of Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, or at another mutually agreed upon time and place, Defendant Impax Laboratories, Inc. ("Impax"), through its attorneys, will take the deposition of Plaintiff Wyeth pursuant to Federal Rule of Civil Procedure 30(b)(6). At the time of the deposition, Wyeth shall designate one or more of its directors, officers, managing agents, or other persons who will testify on behalf of Wyeth as to all information known or reasonably available to Wyeth regarding the topics set forth in Schedule A hereto. Impax further requests that Wyeth's Rule 30(b)(6) designee(s) be the person(s) with the most knowledge regarding the subjects for which they have been designated to testify. The deposition will take place upon oral examination before a notary public or other person authorized to administer oaths, will be recorded by stenographic and/or sound and video means, and will continue from day to day until completed. You are invited to attend and participate.

1

Dated:  November 20, 2006

_D. Kanabier_

MARY B. MATTERER (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Ave., 10th Floor
Wilmington, DE 19801
Telephone: (302) 888-6800

M. PATRICIA THAYER (*pro hac vice*)
JOHN M. BENASSI (*pro hac vice*)
JESSICA R. WOLFF (*pro hac vice*)
SAMUEL F. ERNST (*pro hac vice*)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92101
Telephone: (858) 450-8400
Facsimile: (858) 450-8499

Attorneys for Defendant
IMPAX LABORATORIES, INC.

2

## SCHEDULE A

### DEFINITIONS FOR DEPOSITION TOPICS

When used in the following deposition topics, the following definitions apply:

1.    "WYETH" means Plaintiff Wyeth and that company as it was previously named and any related companies, parents, divisions, or subsidiaries, past or present, located in the U.S. or abroad, and the past or present directors, officers, employees, agents, representatives or attorneys thereof.

2.    "IMPAX" means Defendant IMPAX Laboratories, Inc. and its past or present directors, officers, employees, agents, representatives or attorneys known to WYETH.

3.    "CONCERNING" means referring to, relating to, regarding,  reflecting, associated with, comprising, constituting, containing, demonstrating, describing, discussing, evidencing, evincing, indicating, on the subject of, on the topic of, showing, or prepared in connection with the stated matter.

4.    "DATE" means the exact day, month, and year, if so ascertainable, or if not, the best approximation (including relationship to other events).

5.    "DOCUMENT" or "DOCUMENTS" means all written, printed, typed, electronically produced, electronically stored, photostatic, photographed, recorded, or otherwise reproduced communications or records of every kind and description, whether comprised of letters, words, pictures, sounds, symbols, or combinations thereof. DOCUMENTS include originals as well as drafts, copies, marked-up copies, non-identical duplicates, and computer files, including backup or archival copies.

6.    "THING" or "THINGS" means any tangible item, including without limitation models, prototypes, research models or samples, and samples of any device or apparatus, or product.

3

7.    "PERSON" means any natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

8.    "PTO" means the United States Patent and Trademark Office.

9.    "FDA" means the United States Food and Drug Administration.

10.    "NDA" means New Drug Application.

11.    "ANDA" means Abbreviated New Drug Application.

12.    "INDA" means Investigational New Drug Application.

13.    "ORANGE BOOK" means the FDA publication entitled, *Approved Drug Products with Therapeutic Equivalence Evaluations*.

14.    "IMPAX'S VENLAFAXINE HYDROCHLORIDE EXTENDED RELEASE CAPSULE" means those pharmaceutical products that are the subject of ANDA No. 78-057.

15.    "VENLAFAXINE" means the compound 1-[(2-dimethylamino)-1-(4-methoxyphenyl)ethyl]cyclohexanol commonly known as venlafaxine, as well as all compositions, formulations, and preparations containing venlafaxine, including without limitation VENLAFAXINE and other pharmaceutically acceptable salts of venlafaxine.

16.    "EFFEXOR" means the VENLAFAXINE product sold by WYETH as Effexor®.

17.    "EFFEXOR XR" means the VENLAFAXINE product sold by WYETH as Effexor® XR.

18.    "PATENTS IN SUIT" means U.S. Patent No. 6,274,171 B1, U.S. Patent No. 6,403,120 B1, U.S. Patent No. 6,419,958 B2, and any other patent asserted by WYETH as infringed by IMPAX in the above-captioned action, individually or collectively.

4

19.   "NAMED INVENTORS" means Deborah M. Sherman, John C. Clark, John U. Lamer, Steven A. White, and any other person listed as an inventor for the PATENTS IN SUIT, individually or collectively.

20.   For the purposes of these requests for production only, "EXTENDED RELEASE FORMULATION" means a formulation which releases the active ingredient at a slower rate than the immediate release formulation of the active ingredient such that the desired dosing frequency is or would be less than that for the immediate release formulation.

21.   "WYETH'S COMPLAINT" means the Complaint for Patent Infringement filed by WYETH filed by WYETH in the above-captioned action on April 6, 2006, and any amendments thereto.

22.   "WYETH'S REPLY" means the Plaintiff Wyeth's Reply to First Amended Counterclaims of Defendant Impax Laboratories, Inc. filed by WYETH in the above-captioned action on August 30, 2006, and any amendments thereto.

23.   "ALZA" means Alza Corporation, and its past or present directors, officers, employees, agents, representatives or attorneys known to WYETH.

## DEPOSITION TOPICS

1.   The conception and reduction to practice of the alleged invention(s) claimed in each of the PATENTS IN SUIT;

2.   All invention records CONCERNING the PATENTS IN SUIT;

3.   The formulation of EFFEXOR XR and the development thereof, including without limitation when those formulations were developed, who developed them, and what materials and methods were used to developed them;

4.   The development and formulation of any EXTENDED RELEASE FORMULATION comprising VENLAFAXINE by WYETH including without limitation

when those formulations were developed, who developed them, and what materials and methods were used to developed them;

     5.     The *in vitro* and *in vivo* release profiles of EFFEXOR XR including without limitation when those profiles were first achieved, and what materials and methods were used to test and achieve them;

     6.     The *in vitro* and/or *in vivo* release profiles of any EXTENDED RELEASE FORMULATION comprising VENLAFAXINE by WYETH including without limitation when those profiles were first achieved, and what materials and methods were used to test and achieve them;

     7.     Examples 1 though 7 of the PATENTS IN SUIT, including without limitation the data underlying Examples 1 though 7 and DOCUMENTS produced by WYETH evidencing that data.

     8.     Tables 1 though 3 of the PATENTS IN SUIT, including without limitation the data underlying Tables 1 through 3 and DOCUMENTS produced by WYETH evidencing that data.

     9.     The conception and reduction to practice, including the person(s) involved in such acts and the nature of the involvement, of the following claim elements of the PATENTS IN SUIT:

          (a)     "administering orally to a patient in need thereof"

          (b)     "diminished incidence of nausea and emesis"

          (c)     "eliminating the troughs and peaks of drug concentration in a patient's blood plasma attending the therapeutic metabolism of plural daily doses"

          (d)     "extended release formulation"

          (e)     "extended therapeutically effective plasma levels"

          (f)     "peak blood plasma level of venlafaxine in from about 4 to about 8 hours"

6

(g)    "peak blood plasma level of venlafaxine in from about 5 to about 8 hours"

(h)    "peak blood plasma level of venlafaxine in about 6 hours"

(i)    "peak blood plasma levels of venlafaxine of no more than about 150 ng/ml"

(j)    "peak serum levels"

(k)    "providing therapeutic blood plasma concentration of venlafaxine over a twenty four hour period"

(l)    "therapeutic blood plasma concentration of venlafaxine over a twenty-four hour period"

(m)    "therapeutic metabolism of plural daily doses"

10.    WYETH's knowledge of, analysis, study, test, trial, research, or experimental results prior to November 5, 1997 demonstrating that the EXTENDED RELEASE FORMULATION comprising VENLAFAXINE claimed in the PATENTS IN SUIT provided a therapeutic blood plasma concentration of VENLAFAXINE over a twenty-four hour period with diminished incidences of nausea and emesis;

11.    WYETH's knowledge of, analysis, study, test, trial, research, and experimental results prior to November 5, 1997 demonstrating that the EXTENDED RELEASE FORMULATION comprising VENLAFAXINE claimed in the PATENTS IN SUIT eliminated the troughs and peaks of drug concentration in a patients blood plasma attending the therapeutic metabolism of plural daily doses of VENLAFAXINE.

12.    The following parts and contents of NDA No. 20-699 including without limitation any amendments thereto:

(a)    Integrated Safety Summary

(b)    Summary of Human and Pharmacokinetics and Bioavailability.

7

(c)    The passage with respect to 600B-144FR stating that that there was "a dissociation between peak venlafaxine concentration and peak nausea. In all treatment conditions the maximum nauseating effect occurred before the time of peak concentration .... Compared with venlafaxine CF, the ER formulation, which reached comparable levels with a delayed tmax produced a much less intense maximum effect and a decrease of 63% in the area under the concentration-time curve (AUC) of nausea normalized by dose."

(d)    The passage with respect to 600B-144FR stating that that there was "The incidence and severity of nausea would be expected to be less with venlafaxine ER than venlafaxine IR. This conclusion is based on the results of the study 600B-144FR...The incidence of nausea as an adverse event and the severity of nausea, measured as the AUC for a visual analog scale, where lower with venlafaxine ER administration than with venlafaxine IR administration."

13.    The clinical studies concerning VENLAFAXINE identified by the following numbers: 600B-127-US; 600B-128-US; 600B-134-US; 600B-136-US; 600B-138-US; 600B-139-US; 600B-143-UK; 600B-144-FR; 600B-145-US; 600B-208-US; 600B-209-US; 600B-367-EU; 600B-365-EU; and 600B-369-EU.

14.    Any unexpected properties or unexpected results of the alleged invention(s) claimed in the PATENTS-IN-SUIT as compared to the alleged invention(s) claimed in U.S. Patent No. 4,535,186;

15.    Any unexpected properties or unexpected results of the alleged invention(s) claimed in the PATENTS IN SUIT as compared to the alleged invention(s) claimed in U.S. Patent No. 6,440,457;

16.    Any unexpected properties or unexpected results of the alleged invention(s) claimed in the PATENTS IN SUIT as compared to the prior art known to WYETH;

8

17.    Any evidence that the alleged invention(s) claimed in the PATENTS IN SUIT satisfied a long-felt need;

18.    Any evidence of copying of the alleged invention(s) claimed in the PATENTS IN SUIT;

19.    Any public uses, sales, offers for sale, or publications CONCERNING the alleged invention(s) claimed in the PATENTS IN SUIT prior to November 7, 1997;

20.    Any public uses, sales or offers for sale, or publications CONCERNING EFFEXOR XR prior to November 7, 1997;

21.    Any public uses, sales or offers for sale, or publications CONCERNING EFFEXOR XR prior to March 25, 1996;

22.    Any experimental uses CONCERNING the alleged invention(s) claimed in the PATENTS IN SUIT prior to March 25, 1996;

23.    Any experimental uses CONCERNING EFFEXOR XR prior to March 25, 1996;

24.    Any non-disclosure or confidentiality agreements in existence prior to March 25, 1996 CONCERNING the alleged invention(s) claimed in the PATENTS IN SUIT, including any non-disclosure or confidentiality agreements with hospitals, doctors, clinicians, and patients;

25.    Any non-disclosure or confidentiality agreements in existence prior to March 25, 1996 CONCERNING EFFEXOR XR, including any non-disclosure or confidentiality agreements with hospitals, doctors, clinicians, and patients;

26.    All written description support, either explicit or inherent, in the specification of the PATENTS IN SUIT for each of the claims therein.

27.    All written description support, either explicit or inherent, in the specification of the PATENTS IN SUIT for each of the claims therein.

28.    Licensing of the PATENTS IN SUIT;

9

29.    For the years 1997 to the present, revenue, expenses, and profitability from the sale of EFFEXOR XR in the United States, including without limitation advertising budgets, sales projections, actual sales, market shares, and profit margins;

30.    For the years 1997 to the present, causes in any fluctuations of, and strategies to maintain or increase, the market share of EFFEXOR XR in the United States;

31.    For the years 1997 to the present, the reasons for and the results of market research conducted by or at the direction of WYETH regarding the treatment of the signs and symptoms of persons suffering from major depressive disorder in the United States;

32.    For the years 1997 to the present, the content and effectiveness of any advertising and promotional efforts for EFFEXOR XR in the United States, including without limitation detailing, sampling, and print, radio, and television advertisements, the size of the marketing and sales force, yearly advertising budgets and expenditures;

33.    The content and effectiveness of any advertising and promotional efforts for EFFEXOR in the United States, including without limitation detailing, sampling, and print, radio, and television advertisements, the size of the marketing and sales force, yearly advertising budgets and expenditures;

34.    The existence of, and any other non-privileged information concerning, any evaluations conducted by or at the direction of WYETH of the scope, validity, and/or enforceability of the PATENTS IN SUIT and/or the applications that matured into those patents and/or any foreign counterparts thereof;

35.    The existence of, and any non-privileged information concerning, any evaluations conducted by or at the direction of WYETH of the patentability of the alleged invention(s) claimed in the PATENTS IN SUIT, and/or the applications that matured into those patents and/or any foreign counterparts thereof;

10

36.    The compounds that are equivalents to microcrystalline cellulose that is an element of the alleged invention(s) claimed in the PATENTS IN SUIT, including the function of those equivalent compounds;

37.    The decision to submit the applications that matured into the PATENTS IN SUIT.

38.    The individuals at WYETH who received originals and/or copies of correspondence to and/or from the United States Patent and Trademark Office concerning the applications that matured into the PATENTS IN SUIT;

39.    The individuals at WYETH who received originals and/or copies of correspondence to and/or from the European Patent Office concerning European Patent Application Nos. EP 0 797 991, EP 1 331 003, and EP 1 028 718;

40.    The individuals at WYETH who received originals and/or copies of correspondence to and/or from the Canadian Patent Office concerning Canadian Patent Application No. CA 2,199,778;

41.    The drafting, preparation, filing, prosecution, and intended meaning of the applications that matured the PATENTS IN SUIT.

42.    The support for, the drafting of, the preparation of, and intended meaning of the following passage of the PATENTS IN SUIT:

> The use of the one-a-day venlafaxine hydrochloride formulations of this invention reduces by adaptation, the level of nausea and incidence of emesis that attend the administration of multiple daily dosing. In clinical trials of venlafaxine hydrochloride ER, the probability of developing nausea in the course of the trials was greatly reduced after the first week. Venlafaxine ER showed a statistically significant improvement over conventional venlafaxine hydrochloride tablets in two eight-week and one 12 week clinical studies. Thus, in accordance with this use aspect of the invention there is provided a method for reducing the level of nausea and incidence of emesis attending the administration of venlafaxine hydrochloride which comprises dosing a patient in need of treatment with venlafaxine hydrochloride with an extended release formulation of venlafaxine hydrochloride once a day in a therapeutically effective amount.

11

43.    The support for, the drafting of, the preparation of, and the intended meaning of the following passage of the PATENTS IN SUIT:

> It was completely unexpected that an extended release formulation containing venlafaxine hydrochloride could be obtained because the hydrochloride of venlafaxine proved to be extremely water soluble.

44.    The intended meaning of the phrase "the gravamen of Applicant's inventions" in the Reply Under Rule 111 With Amendment Under Rule 115 of November 5, 1997 filed with the PTO in U.S. Patent Application, serial no. 08/964,328.

45.    The drafting, preparation, filing, prosecution, and intended meaning of European Patent Application Nos. EP 0 797 991, EP 1 331 003, and EP 1 028 718;

46.    The drafting, preparation, filing, prosecution, and intended meaning of Canadian Patent Application No. CA 2,199,778;

47.    WYETH's standard practices from 1990 to the present with respect to the prosecution of U.S. patent applications;

48.    WYETH's standard practices from 1990 to the present with respect to the prosecution of European patent applications;

49.    WYETH's standard practices from 1990 to the present with respect to the prosecution of Canadian patent applications;

50.    WYETH's knowledge of the development and formulation of any EXTENDED RELEASE FORMULATION comprising VENLAFAXINE by ALZA, including without limitation when WYETH first learned of the development and/or formulation, and its knowledge of any changes in the formulation.

51.    WYETH's knowledge of the *in vitro* and/or *in vivo* release profile of any EXTENDED RELEASE FORMULATION comprising VENLAFAXINE by ALZA, including without limitation when WYETH first learned of the release profile, and its knowledge of any changes in the profile, and any dissolution, clinical, or other testing of the profile;

12

52.    WYETH's development and formulations of Inderal® LA (propranolol HCl) Long-Acting Capsules prior to March 25, 1996;

53.    WYETH's knowledge of the development and formulation of any EXTENDED RELEASE FORMULATION comprising propranolol by PERSONs other than WYETH, including without limitation when WYETH first learned of the development and/or formulation, and its knowledge of any changes in the formulation.

54.    WYETH's knowledge of studies, tests, trials, research, or experiments conducted prior to July 16, 2002, that compare chemical properties, including without limitation solubility, of propranolol and its salts, with that of VENLAFAXINE and its salts.

55.    The support for, the drafting of, the preparation of, and intended meaning of the following passage from the Reply Under Rule 111 With Amendment Under Rule 115 of November 5, 1997 filed with the PTO in U.S. Patent Application, serial no. 08/964,328:

> Moreover, there is a tremendous difference in water solubility of the two compounds. The water solubility of propanolol hydrochloride is 93 mg/ml, whereas that of venlafaxine hydrochloride is 574 mg/ml – i.e. 6 fold greater.

56.    WYETH's awareness of an article by Lynn A. Cunningham, M.D., entitled *Once-Daily Venlafaxine Extended Release (XR) and Venlafaxine Immediate Release (IR) in Outpatients with Major Depression,* published in volume 9, no. 3 of the Annals of Clinical Psychiatry in 1997 prior to and during the prosecution of the PATENTS IN SUIT, including the awareness of those persons involved in the prosecution of the PATENTS IN SUIT;

57.    The persons at WYETH involved in drafting, reviewing, editing, commenting on, or revising drafts of the article by Lynn A. Cunningham, M.D., entitled *Once-Daily Venlafaxine Extended Release (XR) and Venlafaxine Immediate Release (IR)*

13

*in Outpatients with Major Depression,* published in volume 9, no. 3 of the Annals of Clinical Psychiatry in 1997, including the titles of, job responsibilities of, and reporting structure surrounding those persons.

58.    The confidentiality agreements between Lynn A. Cunningham M.D. and WYETH CONCERNING Dr. Cunningham's research CONCERNING any EXTENDED RELEASE FORMULATION and any immediate release formulation concerning VENLAFAXINE.

59.    Grants, stipends, or any other type of monetary support WYETH has provided in support of the research of Lynn A. Cunningham M.D.

60.    The clinical data underlying the article by Lynn A. Cunningham, M.D., entitled *Once-Daily Venlafaxine Extended Release (XR) and Venlafaxine Immediate Release (IR) in Outpatients with Major Depression,* published in volume 9, no. 3 of the Annals of Clinical Psychiatry in 1997.

61.    WYETH's awareness of an article by Richard Entsuah, Ph.D et al, entitled *A Benefit Risk Analysis of Once-Daily Venlafaxine Extended Release (XR) and Venlafaxine Immediate Release (IR) in Outpatients with Major Depression,* published in volume 33, no. 4 of the Psychopharmacology Bulletin in 1997 prior to and during the prosecution of the PATENTS IN SUIT, including the awareness of those persons involved in the prosecution of the PATENTS IN SUIT;

62.    The persons at WYETH involved in drafting, reviewing, editing, commenting on, or revising drafts of the article by Richard Entsuah, Ph.D et al, entitled *A Benefit Risk Analysis of Once-Daily Venlafaxine Extended Release (XR) and Venlafaxine Immediate Release (IR) in Outpatients with Major Depression,* published in volume 33, no. 4 of the Psychopharmacology Bulletin in 1997, including the titles of, job responsibilities of, and reporting structure surrounding those persons.

14

63.    The clinical data underlying the article by Richard Entsuah, Ph.D et al, entitled *A Benefit Risk Analysis of Once-Daily Venlafaxine Extended Release (XR) and Venlafaxine Immediate Release (IR) in Outpatients with Major Depression*, published in volume 33, no. 4 of the Psychopharmacology Bulletin in 1997.

64.    WYETH's understanding as to the effect of the *Markman* Opinion and Order entered in *Wyeth v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd.*, Civil Action No. 03-CV-1293 (WJM) before the United States District Court for the District of New Jersey, for its date of entry to the present, including the effect of any subsequent order to vacate the *Markman* Order.

65.    WYETH's understanding of the scope of the claims of the PATENTS IN SUIT, from the date of earliest patent's issuance to the present.

66.    The facts and DOCUMENTS CONCERNING the allegations in WYETH'S COMPLAINT.

67.    The facts and DOCUMENTS CONCERNING the denials and statements in WYETH'S REPLY.

68.    WYETH's organizational structure, including without limitation, all current and former affiliates, parents, subsidiaries, joint ventures, divisions or representatives of which WYETH either owns or is a part of (designating which), including the names, job titles, and duties of each PERSON employed by WYETH related to the research, design, development, manufacture, operation, sales and marketing of the alleged invention(s) claimed in the PATENTS IN SUIT, EFFEXOR XR, and any EXTENDED RELEASE FORMULATION comprising VENLAFAXINE;

69.    WYETH's procedures for collecting and maintaining DOCUMENTS and/or THINGS in their central files, archival or storage locations, and/or kept by individual employees, including without limitation how the DOCUMENTS are organized in central files and/or archival or storage locations, the criteria for whose DOCUMENTS

15

should be or were collected, and what measures are or were taken to ensure that all relevant documents are or were collected in response to requests for DOCUMENTS and THINGS propounded by IMPAX in this action.

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November 2006, the foregoing document,
DEFENDANT IMPAX LABORATORIES, INC.'S NOTICE OF DEPOSITION OF
WYETH PURSUANT TO FED. R. CIV. P. 30(b)(6), was served on counsel via U.S.
Mail:

Jack B. Blumenfeld
Melissa S. Myers
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

Basil J. Lewris
Linda A. Wadler
Finnegan Henderson Farabow Garrett & Dunner
901 New York Avenue, N.W.
Washington, DC 20001

Dated: November 20, 2006

_D. Kauabia_

M. PATRICIA THAYER (*pro hac vice*)
JOHN M. BENASSI (*pro hac vice*)
JESSICA R. WOLFF (*pro hac vice*)
SAMUEL F. ERNST (*pro hac vice*)
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92101
Telephone: (858) 450-8400
Facsimile: (858) 450-8499

MARY B. MATTERER (I.D. No. 2696)
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Ave., 10th Floor
Wilmington, DE 19801
Telephone: (302) 888-6800

Attorneys for Defendant
IMPAX LABORATORIES, INC.

17

# EXHIBIT C

# ENTIRE EXHIBIT REDACTED

# EXHIBIT D

# ENTIRE EXHIBIT REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2007, I electronically filed the foregoing

document, **REDACTED VERSION OF DECLARATION OF MARY B. MATTERER IN**

**SUPPORT OF DEFENDANT IMPAX LABORATORIES, INC.'S MOTION TO**

**COMPEL WYETH TO PRODUCE PROPERLY PREPARED RULE 30(b)(6)**

**WITNESSES**, with the Clerk of the Court using CM/ECF which sent notification of such filing

to the following:

Jack B. Blumenfeld
Karen Jacobs Louden
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

Additionally, I hereby certify that on the same date, the foregoing document was served

as indicated below:

**VIA EMAIL AND HAND DELIVERY**        **VIA EMAIL**
Jack B. Blumenfeld                     Basil J. Lewris
Karen Jacobs Louden                    Linda A. Wadler
Morris Nichols Arsht & Tunnell         Finnegan Henderson Farabow
1201 N. Market Street                    Garrett & Dunner
Wilmington, DE  19801                  901 New York Avenue, NW
jblumenfeld@mnat.com                   Washington, DE  20001
klouden@mnat.com                       Bill.Lewris@finnegan.com
mmyers@mnat.com                        Linda.Wadler@finnegan.com


_____/s/ Mary B. Matterer_____
Mary B. Matterer (I.D. No. 2696)
Morris James LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE  19801
(302) 888-6800
mmatterer@morrisjames.com

*Attorneys for IMPAX LABORATORIES, INC.*