IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WYETH,

                  Plaintiff,

      v.

IMPAX LABORATORIES, INC.,

                  Defendant.

Civil Action No.:  06-222 JJF

**PUBLIC VERSION**

## DEFENDANT IMPAX LABORATORIES, INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO COMPEL WYETH TO PRODUCE PROPERLY PREPARED RULE 30(b)(6) WITNESSES

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
Telephone: (302) 888-6800
mmatterer@morrisjames.com

Daralyn J. Durie (pro hac vice)
Asim Bhansali (pro hac vice)
Paula L. Blizzard (pro hac vice)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111
Telephone: (415) 391-5400

Original Date:  June 13, 2007
Redacted Date:  June 25, 2007

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

      A.    Robin Enever.............................................................................................. 3

      B.    Richard Kavoussi ...................................................................................... 5

III.  ARGUMENT ....................................................................................................... 9

IV.   CONCLUSION .................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Bank of New York v. Meridien Biao Bank Tanzania Ltd.,
    171 F.R.D. 135 (S.D.N.Y. 1997) ........................................................................................10

Donald M. Durkin Contracting, Inc. v. City of Newark,
    2006 WL 2724882, (D. Del.) ...............................................................................................9

King v. Pratt & Whitney,
    161 F.R.D. 475 (S.D. Fla. 1995).........................................................................................11

Marker v. Union Fidelity Life Ins. Co.,
    125 F.R.D. 121 (M.D.N.C. 1989) ........................................................................................9

Mitsui & Co. v. P.R. Water Res. Auth.,
    93 F.R.D. 62 (D.P.R. 1981) .................................................................................................9

Novartis Pharm. Corp. v. Abbott Labs.,
    203 F.R.D. 159 (D. Del.)......................................................................................................9

United States v. Taylor,
    166 F.R.D. 356 (M.D.N.C. 1996) ......................................................................................10

## I.  INTRODUCTION

As happens in virtually every lawsuit brought in federal court, defendant Impax served a deposition notice on Wyeth under Federal Rule of Civil Procedure 30(b)(6), requesting Wyeth's testimony on the central legal and factual issues in this patent-infringement case. Wyeth objected to the notice as overbroad and forced Impax to move to compel. This Court granted Impax's motion, rejecting Wyeth's overbreadth argument. But Wyeth has twice presented Rule 30(b)(6) witnesses who were unprepared and therefore unable to testify with any specificity on their designated topics. In doing so, Wyeth flouted the Rule and this Court's order and wasted Impax's time. Impax asked Wyeth to take reasonable steps to properly prepare its witnesses, but Wyeth has refused, continuing to argue that the deposition topics are overbroad. As a result, Impax now moves to compel Wyeth to prepare and produce knowledgeable corporate designees.

First, Wyeth designated Dr. Robin Enever, its Vice President of Pharmaceutical Sciences, as its Rule 30(b)(6) witness on parts of six topics relating to the historical compositions and formulations of Wyeth's extended-release venlafaxine product—both the successful formulation that became Wyeth's Effexor XR product and the earlier, unsuccessful formulations using hydrogel tablets and Gelucire capsules—and the release profiles under which those formulations were tested. But Dr. Enever was not prepared to offer complete testimony about any phase of Wyeth's development. He had little percipient knowledge regarding any of the topics and had made no effort to supplement his limited knowledge by talking to others at Wyeth. As a result, he did not know when Wyeth                    REDACTED                    He did not know why Wyeth chose to                    REDACTED                    or who at Wyeth                    REDACTED                    He could not estimate the dates on which

Wyeth began                **REDACTED**

                                    Neither could he testify about whether Wyeth ever

considered

                        **REDACTED**

Second, Wyeth designated its Assistant Vice President in Neuroscience Clinical

Research and Development Dr. Richard Kavoussi as its Rule 30(b)(6) witness on parts of

eight topics related to *in vivo* properties and clinical testing of Effexor XR.  Dr. Kavoussi

joined Wyeth only in April 2006, and accordingly had no percipient knowledge about any

noticed topic.  To prepare for his deposition, he   **REDACTED**   but   **REDACTED**

          **REDACTED**                          Like Dr. Enever, Dr.

Kavoussi could not provide the most basic information on the topics for which he was

designated.  To answer even simple questions, he had to comb through the three boxes of

documents he brought with him.  By the end of the deposition, Dr. Kavoussi finally **REDACTED**

admitted that, apart from

he knew nothing about              **REDACTED**

Wyeth has not made reasonable efforts to prepare its witnesses to give meaningful

Rule 30(b)(6) testimony.  Accordingly, Impax moves to compel.

## II.    FACTUAL BACKGROUND

By an order dated April 13, 2007, this Court granted Impax's motion to compel

Wyeth to produce corporate-representative witnesses under Rule 30(b)(6).[1]  In granting

Impax's motion, the Court rejected Wyeth's argument that Impax's proposed deposition

topics were overbroad and unfairly burdensome, ruling, in part, that the time limits agreed

---

[1]  Matterer Decl. Ex. A (April 13, 2007 order).

to by Impax would avoid any undue burden.

Despite the Court's order, Wyeth has failed to comply with its Rule 30(b)(6) obligations. Specifically, it has produced two witnesses who were unprepared to give meaningful testimony as to the topics for which they were designated. Both Dr. Enever and Dr. Kavoussi were unable to provide fundamental information regarding Impax's deposition topics.

### A.    Robin Enever

Wyeth designated Robin Enever as its corporate representative to testify on Topic Nos. 3, 4 (exclusive of human *in vivo* testing), and 5 through 8 of Impax's 30(b)(6) Notice. Those topics covered the following:

- the "evolution of the composition and formulations of Effexor XR and the development thereof from June 1990 through July 2002;"

- the "*in vitro* . . . release and bioavailability profiles of Effexor XR from June 1990 through July 2002, including target profiles, when and where those profiles were first achieved, who was involved and oversaw this achievement, and what materials and methods were used to test and achieve them, modifications to those release profiles, and difficulties in consistently replicating those profiles;"

- the composition, development history, and release profiles of Wyeth's failed hydrogel tablet formulations of extended release venlafaxine; and

- the composition, development history, and release profiles of Wyeth's failed gelucire tablet formulation of extended release venlafaxine.[2]

Dr. Enever admitted that       **REDACTED**

                              Because        **REDACTED**

---

[2]    Matterer Decl. Ex. B (Impax's Rule 30(b)(6) deposition notice).

**REDACTED**

3

REDACTED        Dr. Enever was unable to answer basic questions as to each of the topics as to which he was designated.

For example, regarding the "evolution of the composition and formulations of Effexor XR," Dr. Enever did not know when Wyeth REDACTED He did not know who first REDACTED He did not know when REDACTED He did not know whether Wyeth had REDACTED REDACTED REDACTED [7] or when Wyeth first REDACTED [8] And he did not know why Wyeth chose to REDACTED [9] He had not done anything in preparation for the deposition to educate himself regarding REDACTED He did not know REDACTED [10]

Neither was Dr. Enever prepared to answer questions regarding "the *in vivo* release and bioavailability profiles of Effexor XR . . . including target profiles" He did not know whether REDACTED

---

Matterer Decl. Ex. C (Enever Depo.) at 31:23-32:3.

[4] Id. at 33:20-23.

[5] Id. at 34:5-12.

[6] Id. at 79:22-80:19.

[7] Id. at 126:7-14.

[8] Id. at 131:1-7.

[9] Id. at 148:13-21.

[10] Id. at 150:6-14.

REDACTED                He could not answer when asked for details about       REDACTED

REDACTED                                    [13] The topics on which Dr. Enever was

designated included "modifications to these profiles," but when asked whether any such

modifications had taken place, Enever replied,    REDACTED[14] He did not know

whether        REDACTED                             [15] When shown a

modified release profile, Enever did not know        REDACTED

and could not explain the significance of        REDACTED

Similarly, with regard to the failed hydrogel tablet experiments, Dr. Enever was

unable to recall even basic facts. He did not know who decided to        REDACTED

[17] Though he had        REDACTED

REDACTED                    he did not know whether

[18]

**B.    Richard Kavoussi**

Wyeth designated Dr. Richard Kavoussi as its representative to testify on Topic

Nos. 4 (*in vivo* only), 10 (*in vivo* only), 16, 17, 19 (Table 2 and Table 3 only), 20, 25, and

26. Those topics covered the following:

- the "*in vivo* . . . release and bioavailability profiles of **Effexor XR** from June 1990 through July 2002, including target profiles, when and where those profiles were first achieved, who was involved and oversaw this achievement, and what materials and methods were used to test and achieve

---

[11] Id. at 42:3-6.

[12] Id. at 44:12-21.

[13] Id. at 45:2-22.

[14] Id. at 70:8-17.

[15] Id. at 131:24-132:6.

[16] Id. at 185:9-186:8.

[17] Id. at 57:2-9.

[18] Id. at 57:19-58:25.

them, modifications to those release profiles, and difficulties in consistently replicating those profiles;"

- the "*in vivo* . . . release and bioavailability profiles of **an extended release formulation by Wyeth comprising venlafaxine and using ALZA's OROS oral delivery technology**, from June 1990 through July 2002, including target profiles, when and where those profiles were first achieved, who was involved and oversaw this achievement, and what materials and methods were used to test and achieve them, modifications to those release profiles, and difficulties in consistently replicating those profiles;"

- Wyeth's "knowledge and research prior to July 2002 demonstrating or refuting that the extended release formulation comprising venlafaxine claimed in the patents in suit provided a therapeutic blood plasma concentration of venlafaxine over a twenty-four hour period with diminished incidences of nausea and emesis;"

- Wyeth's "knowledge and research prior to July 2002 demonstrating or refuting that the extended release formulation comprising venlafaxine claimed in the patents in suit eliminated the troughs and peaks of drug concentration in a patient's blood plasma attending the therapeutic metabolism of plural daily doses of venlafaxine;"

- Table 2 and Table 3 of the patents in suit, including the underlying data;

- "The support for, the drafting of, the preparation of, and intended meaning of the following passage of the patents in suit:

  The use of the one-a-day venlafaxine hydrochloride formulations of this invention reduces by adaptation, the level of nausea and incidence of emesis that attend the administration of multiple daily dosing. In clinical trials of venlafaxine hydrochloride ER, the probability of developing nausea in the course of the trials was greatly reduced after the first week. Venlafaxine ER showed a statistically significant improvement over conventional venlafaxine hydrochloride tablets in two eight-week and one 12 week clinical studies. Thus, in accordance with this use aspect of the invention there is provided a method for reducing the level of nausea and incidence of emesis attending the administration of venlafaxine hydrochloride which comprises dosing a patient in need of treatment with venlafaxine hydrochloride with an extended release formulation of venlafaxine hydrochloride once a day in a therapeutically effective amount;"

6

- Facts and documents concerning Wyeth's denial that the patents in suit are invalid and unenforceable;

- Facts evidencing certain parts of Wyeth's New Drug Application for Effexor XR.[19]

Dr. Kavoussi joined Wyeth only in              REDACTED

                              and accordingly had no percipient knowledge

regarding the topics for which he was designated.[20]  Neither had Dr. Kavoussi attempted to

educate himself by talking with other Wyeth personnel.  He spoke to only        REDACTED

                                        [21] and then only to find out

                    REDACTED

                    [22]  He did not                    REDACTED

     to educate himself regarding any of the noticed topics.[23]

     Instead, Dr. Kavoussi's knowledge, such as it was, came from

                    REDACTED                    In fact, he brought three boxes of

documents to the deposition for his reference.[24]  He admitted directly that he had nothing

to add to

                    REDACTED

---

[19]  Matterer Decl. Ex. A (Impax's Rule 30(b)(6) deposition notice).

[20]  Matterer Decl. Ex. D (Kavoussi Depo.) at 12:-6-7.

[21]  Id. at 20:20-24.

[22]  Id. at 21:12-22.

[23]  Id. at 48:8-49:1.

[24]  Id. at 21:1-4.

REDACTED

Even with respect to the single document about which he spoke with someone

---

[25] Id. at 190:17-192:9.

involved in the events about which he was designated to testify, Dr. Kavoussi was unable to provide any information that did not appear on the face of the document—such as

REDACTED

[26] Whenever Impax asked a question for which an answer did not appear on the face of a document, Dr. Kavoussi could not answer.

## III.    ARGUMENT

When a corporation's deposition is properly noticed under Rule 30(b)(6), that corporation must adequately prepare its witnesses to give informed, responsive testimony on the noticed topics. The rule requires more than that a corporation produce witnesses to speak on its behalf. The company "must prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989). It is not enough for a company to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought"; it also is required to "prepare those persons in order that they can answer fully, completely, unevasively, the questions posed … as to the relevant subject matters." Mitsui & Co. v. P.R. Water Res. Auth., 93 F.R.D. 62, 67 (D.P.R. 1981). This Court has previously recognized this basic obligation. See Novartis Pharm. Corp. v. Abbott Labs., 203 F.R.D. 159, 162 (D. Del.) (Farnan, J.); Donald M. Durkin Contracting, Inc. v. City of Newark, 2006 WL 2724882, *5 (D. Del.) (Sleet, J.) (a Rule 30(b)(6) witness "had an affirmative obligation to be prepared on the noticed topics so that she could give complete, knowledgeable, and binding answers on behalf of the party").

Wyeth failed to fulfill its obligation as to both the Enever and Kavoussi depositions. First and most obviously, Dr. Enever had little personal knowledge of the

---

[26] Id. at 23:22-24:21.

topics for which he was designated, and Dr. Kavoussi, having worked at Wyeth for

REDACTED had no personal knowledge regarding any of the deposition topics. Although Wyeth is permitted to choose Rule 30(b)(6) witnesses who lack personal knowledge, "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." United States v. Taylor, 166 F.R.D. 356, 361 (M.D.N.C. 1996). This is exactly what Wyeth failed to do.

Wyeth undoubtedly will argue in response to this motion that its witnesses met with its outside counsel on numerous occasions and reviewed many documents produced in this case.[27] But given its witnesses' failure to answer basic questions within the noticed topics, that cannot be enough. "The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." Bank of New York v. Meridien Biao Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997). Wyeth's preparation fell far short of any reasonableness standard. However many documents he may have reviewed, Dr. Enever did not

REDACTED    Dr.

Kavoussi had one brief, nonsubstantive conversation with a Wyeth employee about

REDACTED but otherwise spoke to no one from Wyeth, past or present, even though his complete lack of personal knowledge made such preparation all the more essential. Apparently Wyeth's counsel took no steps to ensure that its witnesses were properly prepared by directing them to talk to their current or former co-workers. Ultimately,

---

[27] Indeed, Wyeth spent 30 minutes during the deposition reading into the record the Bates numbers of documents Dr. Kavoussi had reviewed Id. at 220:11-234:20.

Wyeth's witnesses did nothing more than regurgitate facts already disclosed to Impax through production of documents. In doing so, they failed to provide answers to dozens of questions within the scope of the noticed topics. Dr. Kavoussi directly admitted that he could not provide any information that

## REDACTED

Because "Rule 30(b)(6) obligates the responding corporation to provide a witness who can answer questions regarding the subject matter listed in the notice ... [i]f the designated deponent cannot answer those questions, then the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions, etc." King v. Pratt & Whitney, 161 F.R.D. 475, 476 (S.D. Fla. 1995). Wyeth is the plaintiff in this case, a sophisticated company that is no stranger to complex litigation. It is fully aware of its Rule 30(b)(6) obligations. This Court should order Wyeth to live up to those obligations by taking reasonable efforts to prepare its witnesses by having those witnesses interview available current and former Wyeth employees with personal knowledge of the underlying facts.

## IV.    CONCLUSION

For the foregoing reasons, Impax moves the Court to order Wyeth to produce a witness or witnesses prepared to testify on behalf of the company under Rule 30(b)(6) on Topic Nos. 3, 4, 5 through 8, 10 (*in vivo* only), 16, 17, 19 (Table 2 and Table 3 only), 20, 25, and 26 as set forth in Impax's April 3, 2007 Second Amended Notice of Deposition Pursuant to Rule 30(b)(6).

Dated: June 13, 2007

*Mary Matterer*

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
mmatterer@morrisjames.com

*Of Counsel*
Daralyn J. Durie
Asim Bhansali
Paula L. Blizzard
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111

*ATTORNEYS FOR IMPAX LABORATORIES, INC*

12

# UNREPORTED CASES

# Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2006 WL 2724882 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

**H**
Donald M. Durkin Contracting, Inc. v. City of Newark
D.Del.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
DONALD M. DURKIN CONTRACTING, INC.,
Plaintiff
v.
CITY OF NEWARK, et al., Defendants
andCITY OF NEWARK, et al., Third-Party Plaintiff
v.
DONALD M. DURKIN CONTRACTING, INC., and
Federal Insurance Company, Third-Party Defendants
**No. CIVA 04-163 GMS.**

Sept. 22, 2006.

Katharine L. Mayer, McCarter & English, LLP,
James S. Green, Seitz, Van Ogtrop & Green, P.A.,
Wilmington, DE, Paul A. Logan, Powell, Trachtman,
Logan, Carrle & Lombardo, P.C., King of Prussia,
PA, David T. Bolger, pro hac vice, Patrick R.
Kingsley, David M. Burkholder, Stradley, Ronon,
Stevens & Young, LLP, Malvern, PA, for
Plaintiff/Third-Party Defendants.
Paul Cottrell, Victoria Kathryn Petrone, Tighe,
Cottrell & Logan, P.A., Wilmington, DE, for
Defendants/Third-Party Plaintiffs.

*MEMORANDUM*

SLEET, J.

## I. INTRODUCTION

**\*1** Presently before the court is Federal Insurance
Company's motion for reconsideration (D.I.136) of
the court's April 5, 2006 Order denying summary
judgment. Also pending are several related motions
in limine (D.I.163, 165, 190). For the reasons that
follow, the court will grant the motion for
reconsideration and will reconsider, *sua sponte,*
related aspects of its September 2, 2004 Order that
denied the plaintiff's motion for partial summary
judgment. In doing so, the court grants summary
judgment to Federal Insurance Company (" Federal"
). Durkin's motion for partial summary judgment is
granted in part and denied in part.

## II. FACTUAL BACKGROUND

In the summer of 2000, the City of Newark (" City" )
contracted with URS Corporation (" URS" ) " for
professional services related to the design and
construction administration" of a water-supply
reservoir. (D.I. 98 ¶ 1.) In April of 2002, the City also
contracted with Durkin to perform the actual
construction (hereinafter, the " Construction
Contract" ). Federal provided a Performance Bond
(the " Bond" ) to the City in connection with work to
be performed by Durkin. Everything was proceeding
more-or-less as expected until late 2003, when
Durkin claims to have discovered defects in URS'
design. From there, the relationship among the parties
deteriorated, and the City eventually terminated
Durkin by a letter dated February 3, 2004. In
response, Durkin initiated the present action on
March 16, 2004, naming as defendants the City, the
mayor of Newark, certain members of the Newark
City Council, and URS.

With respect to terminating Durkin, the City had
contractual obligations under both the Bond and the
Construction Contract. Under the terms of Section
15.2 of the Construction Contract between the City
and Durkin, the City was required to provide Durkin
and its surety, Federal, with seven days written notice
of its intention to terminate Durkin for default.
(D.I.122, Ex. A, Att.B, Sec.15.2.) The Bond also set
forth a series of procedural steps that the City had to
take before Federal became obligated under the
Performance Bond:
If there is no Owner Default, the Surety's obligation
under the Bond shall arise after:
3.1 The Owner has notified the Contractor and the
Surety ... that the Owner is considering declaring a
Contractor Default and has requested and attempted
to arrange a conference with the Contractor and the
Surety to be held not later than fifteen days after
receipt of such notice to discuss methods of
performing the Construction Contract. If the Owner,
the Contractor and the Surety agree, the Contractor
shall be allowed a reasonable time to perform the
Construction Contract, but such an agreement shall
not waive the Owner's right, if any, subsequently to
declare a Contractor Default; and
3.2 The Owner has declared a Contractor Default and
formally terminated the Contractor's right to
complete the contract. Such Contractor Default shall

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2724882 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

Page 2

not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1....
*2 (D.I.122, Ex. A, Att.A.)

The City claims that its letter of November 21, 2003 satisfied the seven-day notice requirement of Section 15.2 of the Construction Contract, as well as its obligation under Paragraph 3.1 of the Bond. The pertinent portion of that letter reads:
On behalf of the City of Newark, Delaware, I am writing to inform you that we are now considering declaring Donald M. Durkin Contracting, Inc. (DMD) in default of Newark Municipal Contract No. 02-02, pertaining to Construction of a Municipal Water Supply Reservoir. This precautionary letter has become necessary following DMD's failure to present a response to a means and methods for continuation of the project in accordance with our contract.
(D.I.122, Ex. A, Att. C.)

After the November 21st letter, Durkin, Federal and the City had a series of communications and interactions, which failed to resolve the ongoing disputes. Finally, the City voted to terminate Durkin. It is undisputed that the City terminated Durkin via a letter dated February 3, 2004, which stated:
Pursuant to the terms of the Contract and the Construction Performance Bond, the City of Newark declares a Contractor default and hereby formally terminates Donald M. Durkin Contracting, Inc.'s (" Durkin" ) right to complete the contract for the Construction of the City of Newark Water Supply Reservoir. The termination is for cause due to Durkin's refusal to complete the Work. This Default has been declared after notifying both the Surety and Durkin and attending a conference with the Surety and Durkin as the Bond requires.
(D.I.122, Ex. A, Att.F.)

The City of Newark sent another letter to Durkin and Federal, on February 4, 2004, offering to extend the effective date of termination for an additional seven days.

### III. PROCEDURAL BACKGROUND

Durkin moved for partial summary judgment on June 29, 2004 (D.I.36). On September 2, 2004, the court issued an Order (D.I.63) denying Durkin's motion for partial summary judgment (the " September 2nd Order" ). On March 14, 2006, Federal filed a motion for summary judgment (D.I.122). On March 22-23, 2006, Ms. Carol Houck was deposed as the 30(b)(6)

designee of the City. On March 24, 2006, the City filed its Answer to Federal's motion for summary judgment (D.I.126). Ms. Houck's deposition continued on March 28, 2006, and again on March 30, 2006. On March 31, 2006, Federal filed a Reply Brief to the City's March 24th Answer, relying for the first time on testimony from Ms. Houck's March 28th deposition. On April 5, 2006, the court issued a Memorandum and Order (D.I.132) denying Federal's motion for summary judgment (the " April 5th Order" ). On April 17, 2006, Federal filed a motion for reconsideration (D.I.136) of the court's April 5th Order. Four days after Federal filed its motion for reconsideration, which expressly relies in part on the deposition testimony of Ms. Houck, Ms. Houck executed an errata sheet for her March 23rd deposition, " clarifying" statements she made under oath. On May 2, 2006, Ms. Houck executed an errata sheet for her March 28th deposition, further " clarifying" statements made under oath. On May 3, 2006, the City filed its Answer to Federal's Motion for Reconsideration, in which it relied upon the errata sheets to rebut Federal's position.

*3 In conjunction with the pretrial conference held before the court on September 5, 2006, Durkin and Federal filed motions in limine (D.I.163, 165, 190), which have helped to bring into sharper focus the issues raised in the previous motions for summary judgment.

### IV. STANDARDS OF REVIEW

#### A. Exclusion of Evidence

A court has broad discretion to admit or exclude evidence under the Federal Rules of Evidence. *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 97 (3d Cir.1983). Motions to exclude evidence are committed to the court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir.1994) (on a motion to exclude proffered expert testimony, the trial court's inquiry is a flexible one, and its decision to admit or exclude expert testimony is reviewed under an " abuse of discretion" standard) (internal citations omitted). " [W]hen the district court's exclusionary evidentiary rulings with respect to scientific opinion testimony will result in a summary or directed judgment," the Court of Appeals will give those rulings " a ' hard look' to determine if a district court has abused its discretion in excluding evidence as unreliable." *Id.* at 750.

#### B. Reconsideration

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2724882 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

As a general rule, motions for reconsideration should be granted only " sparingly." *Tristrata Tech., Inc. v. ICN Pharms., Inc.,* 313 F.Supp.2d 405, 407 (D.Del.2004); *Karr v. Castle,* 768 F.Supp. 1087, 1090 (D.Del.1991). In this district, these types of motions are granted only if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension. *See, e.g., Shering Corp. v. Amgen, Inc.,* 25 F.Supp.2d 293, 295 (D.Del.1998); *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del.1990) (citing *Above the Belt, Inc. v. Mel Bonhannan Roofing, Inc.,* 99 F.R.D. 99 (E.D.Va.1983)); *see also Karr,* 768 F.Supp. at 1090 (citing same). Motions for reconsideration should not be used to rehash arguments already briefed. *See Quaker Alloy Casting v. Gulfco Indus., Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988) (" This Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." ). However, a court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result. *Weissman v. Fruchtman,* 124 F.R.D. 559, 560 (S.D.N.Y.1989).

A court may grant a motion for reconsideration " if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a manifest injustice." *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999).

### C. Summary Judgment

A grant of summary judgment is appropriate " if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Biener v. Calio,* 361 F.3d 206 (3d Cir.2004). In reviewing summary judgment decisions, the Third Circuit views all evidence and draws all inferences in the light most favorable to the non-movant, affirming if no reasonable jury could find for the non-movant. *See Whiteland Woods, L.P. v. Twp. of West Whiteland,* 193 F.3d 177, 180 (3d Cir.1999). Thus, a trial court should only grant summary judgment if it determines that no " reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986).

*4 If a moving party has demonstrated the absence of a genuine issue of material fact-meaning that no reasonable jury could find in the nonmoving party's favor based on the record as a whole-concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must " present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby,* 477 U.S. at 256-57, 106 S.Ct. at 2514 (citation omitted). Thus, summary judgment is particularly appropriate where, notwithstanding issues of credibility, the nonmoving party has presented no evidence or inferences that would allow a reasonable mind to rule in its favor. In this situation, it may be said that the record as a whole points in one direction and the dispute is not " genuine." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), 475 U.S. 574, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986).

### V. DISCUSSION

#### A. Motions In Limine

##### 1. Federal's Motion In Limine to Exclude the Deposition Errata Sheets of Carol Houck

Federal moves to exclude from admission into evidence at trial the errata sheets for the deposition of Ms. Carol Houck, the City's designated 30(b)(6) witness. Federal argues that the errata sheets provide a narrative substitute for Ms. Houck's sworn testimony and are, therefore, an attempt on the part of the City to create a sham fact issue. Specifically, Federal contends that Ms. Houck admitted in her March 28th deposition that the November 21st letter from the City to Durkin and Federal did not constitute notice under the terms of the Construction Contract. In her May 2nd errata sheet, Ms. Houck writes: " my reply on line 9 is incorrect if it suggests that the November 21, 2003 letter was not the seven-day notice letter."

In response, the City argues that Ms. Houck was deposed over four days " in a random and confusing manner...." In arguing that Ms. Houck's errata sheet clarifications were appropriate, the City quotes from Ms. Houck's errata sheet regarding her third day of testimony, in which she states:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2724882 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

Once again during my deposition there were repeated references to various exhibits, out of order and with, I believe, the intent to confuse. I have now had the opportunity to review the deposition and further clarify that it is my belief that the letter of November 21, 2003 (Exhibit 20) served to ... provide notice of Default and termination to both the Surety (Bond) and Durkin (Contract) ...

(D.I. 137, Ex. A, Page 2.)

Corrections to deposition testimony are governed by Rule 30(e) of the Federal Rules of Civil Procedure. Rule 30(e) corrections are treated as affidavits. *Burns v. Board of County Comm'rs of Jackson County,* 330 F.3d 1275, 1282 (10th Cir.2003). In *Franks v. Nimmo,* the Tenth Circuit set forth a test for analyzing whether a party's affidavit constitutes an attempt to create sham issues of fact. 796 F.2d 1230 (10th Cir.1986). Factors relevant to the existence of a sham fact issue include whether the affiant was cross-examined during her earlier testimony, whether the affiant had access to the pertinent evidence at the time of her earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Franks,* 796 F.2d at 1237 (citing *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364-65 (8th Cir.1983); *Perma Research & Dev. Co. v. The Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969)).

*5 Here, Ms. Houck's earlier testimony occurred during a deposition, at which counsel for both the City and Federal were present and able to question the witness. Ms. Houck was not just a fact witness testifying on her personal knowledge; she was also the City's 30(b)(6) designee, and as such, had an affirmative obligation to be prepared on the noticed topics so that she could give complete, knowledgeable, and binding answers on behalf of the party. *See Ierardi v. Lorillard, Inc.,* Civ. A. No. 90-7049, 1991 WL 158911, at *1 (E.D.Pa. Aug.3, 1991). Ms. Houck's corrections were not based on new evidence, but concerned documents and actions about which she was obviously well acquainted. In her May 2nd errata sheet, Ms. Houck does take issue with the manner in which she was deposed and states that she felt that counsel intended to confuse her. Notably, however, she stops short of saying she was in fact confused. Instead, Ms. Houck, after further review of her testimony, " clarifies" her answers by providing a substitute narrative for an appreciable portion of her deposition. The court can find no indication of confusion in the deposition transcript. In addition, it

does not appear that Ms. Houck's attorney recognized any either. There is nothing in the record that suggests any attempt to rehabilitate Ms. Houck during, or immediately after the deposition, or otherwise clarify her statements until after Federal filed its motion for reconsideration.[FN1] Moreover, not only do Ms. Houck's errata sheet " clarifications" alter her answers on key issues in the case, they posit alternative theories and defenses that the City now appears to be preparing to advance at trial-an issue that the court will address below in a related motion in limine.

> FN1. In *Franks,* the Tenth Circuit also found noteworthy the timing of the disputed affidavit in concluding that the conflict between the earlier testimony and the affidavit raised only a sham issue. There, it was offered only after summary judgment had been granted against the party offering the conflicting affidavit. *Franks,* 796 F.2d at 1237.

The court recognizes that Fed.R.Civ.P. 30(e) allows a deponent to make changes to deposition testimony in form or substance. Nevertheless, the court finds that Ms. Houck's errata sheets exceed the scope of the type of revisions contemplated by the Rule and serve only to improperly alter what was testified under oath. As has been aptly acknowledged by the Tenth Circuit, an errata sheet is not a take home exam. *See Garcia v. Pueblo Country Club,* 299 F.3d 1233, 1242 (10th Cir.2002) (quoting *Greenway v. Int'l Paper Co.,* 144 F.R.D. 322, 325 (W.D.La.1992)). The errata sheet " clarifications" in this case are akin to a student who takes her in-class examination home, but submits new answers only after realizing a month later that the import of her original answers could possibly result in a failing grade. The court is troubled by the timing of Ms. Houck's errata sheets as well as their use in the City's responsive briefing on Federal's motion for reconsideration. Nor can the court ignore the fact that Ms. Houck was the City's 30(b)(6) designee, intimately familiar with the facts and issues in this case. Accordingly, the court holds that the errata sheets constitute a sham fact issue under *Franks* and, as such, the errata sheets shall not be admitted as evidence at trial.

**2. Durkin's Motion Regarding the Judicial Admission of the City of Newark Providing Prior Written Notice of Intent to Terminate the Contract**

*6 A party's assertion of fact in a pleading is a

judicial admission by which it normally is bound throughout the course of the proceeding. *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir.1992) (quoting *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir.1985)). If factual matters in issue have been judicially admitted, they are binding on the tendering party. *See, e.g., Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 275 (3d Cir.2004) (internal citations omitted). An admission in a pleading is a judicial admission, which is binding on the litigant. *See, e.g., Consol. Rail Corp. v. Providence & Worcester Co.*, 540 F.Supp. 1210, 1220 n. 12 (D.Del.1982) (citing *Giannone v. United States Steel Corp.*, 238 F.2d 544, 547 (3d Cir.1956)).

With this principle in mind, Durkin moves in limine to preclude the City from arguing or attempting to present any evidence that controverts the City's prior contentions in pleadings that its November 21, 2003 letter from Carl Luft to Durkin and Federal represented the required seven-day written notice to Durkin of the City's intention to terminate the Construction Contract. Durkin contends that the City has maintained throughout this litigation that the November 21st letter gave written notice of its intent to terminate Durkin as required by the Construction Contract. Durkin points to the City's Answer, Counterclaim, and responsive briefs to the following motions: Durkin's Motion for Declaratory Judgment, Durkin's Motion for Partial Summary Judgment, and Federal's Motion for Summary Judgment, as examples of this affirmative representation. The City does not dispute this contention. Durkin contends that this consistently pled position is a judicial admission to which the City must be held. The court agrees.

In response to Durkin's motion, the City states: " It is uncontested that Newark's position is that its November 21, 2003 letter provided the requisite seven-day notice required by the Construction Contract termination provision." As to why this consistently pled assertion would not be a judicial admission, the City suggests that the doctrine of judicial admission conflicts with Rule 8(e)(2) of the Federal Rules of Civil Procedure. The City argues that Rule 8(e)(2) allows a party to set forth inconsistent, alternative and hypothetical pleadings. The City, however, did not *plead* the alternative defense it now seeks to be permitted to argue at trial. Additionally, in the City's Counterclaim, it admits that its November 21st letter constituted written notice of its intent to terminate Durkin. (D.I. 7,

Counterclaim ¶ 19.)

Although the City pleads that it " further offered to suspend Durkin's termination if it would, in writing, agree to complete construction of the reservoir according to the design," (D.I. 7, Counterclaim ¶ 21), the court can not find an averment by the City that sets forth the contention that the letter dated February 4, 2004, could also satisfy the notice provision of Section 15 of the Construction Contract. Further, the City's reference to a suspension of Durkin's termination in its Counterclaim was not made in the context of an alternative or hypothetical pleading. *See Schott Motorcycle Supply*, 976 F.2d at 61 (citing 5 Wright & Miller, *Federal Practice and Procedure* § 1282 at 525 (2d ed.1990) (generally an alternative claim is drafted in the form of " either-or" and a hypothetical claim is in the form of " if-then" )).

*7 It would be patently unfair and judicially inefficient to allow the City's defense to be a moving target, after the parties and the Court have relied upon the City's admissions. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir.1997) (holding that at summary judgment " judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." ); *Keller v. U.S.*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995) (" Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are ' not evidence at all but rather have the effect of withdrawing a fact from contention." ' (citations omitted)).

The notice requirement of the Construction Contract is one of the central issues in this case, and as a factual matter now judicially admitted by the City, it is binding. The court will, therefore, preclude the City from arguing or presenting evidence at trial that any other writing constituted the seven-day notice required by the Construction Contract.[FN2]

> FN2. Federal also moves in limine to exclude the February 4th letter and any reference thereto (D.I.165). Federal's argument appears to be most concerned with the possibility that the City may try to use the February 4th letter as alternative proof

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

Not Reported in F.Supp.2d, 2006 WL 2724882 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

that the City provided Durkin with a seven-day notice required by the Construction Contract, in the event that the November 21st letter is deemed insufficient to constitute notice under the Construction Contract. For the reasons stated above, the City is limited to the judicial admission that the November 21st letter constituted notice under the Construction Contract. The court, therefore, need not preclude *any* reference to the February 4th letter at trial to assuage Federal's concern. Simply put, it would be impermissible for the City to argue, in the alternative, that the February 4th letter satisfies the notice requirement under the Construction Contract in light of its judicial admission; however, the Court reserves judgment as to whether the letter may be admissible for some other purpose.

### B. Motion for Reconsideration

Recognizing that motions for reconsideration are granted only sparingly, the court finds that Federal's motion presents one of those rare occasions. Because Ms. Houck's deposition had not commenced before Federal filed its opening brief in support of its motion for summary judgment, the substance of Ms. Houck's testimony was first introduced in Federal's reply brief. Since the City did not have an opportunity to respond to the use of Ms. Houck's deposition in Federal's reply brief, the court properly disregarded the deposition testimony in its initial consideration of Federal's motion for summary judgment. Accordingly, the court believes it appropriate to reconsider its April 5th Order, now that the issue has been fully briefed with all parties having the opportunity to address the import of Ms. Houck's deposition testimony. See *Chase Manhattan Bank v. Iridium Africa Corp.*, No. Civ. A, 00-564 JJF, 2004 WL 1588295, at *1 (D.Del. July 08, 2004) (" [A] court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result." ); *see also Pell v. E.I. Dupont de Nemours & Co. Inc.*, 231 F.R.D. 186, 189 (D.Del.2005) (granting motion for reconsideration where evidence was not addressed in the parties' opening and answering briefs). The court's April 5th Order was premised, in part, on what appeared to be a factual dispute as to whether the City satisfied the provision of the Construction Contract that required the City to give notice of its intent to terminate the contract. That appearance of a factual dispute dissipates when considering the deposition testimony

of the City's 30(b)(6) designee, along with the court's rulings on the motions in limine, and the pleadings.

*8 In addition, the court's September 2nd Order was premised, in part, on the conclusion that a genuine issue of material fact existed with respect to satisfaction of the seven-day notice requirement in the Construction Contract. Given the court's holding above concerning the Houck deposition, the court believes it appropriate to reconsider its September 2nd Order, *sua sponte*. The September 2nd Order was issued over a year prior to the April 5th Order, on similar grounds, and without the consideration of the deposition testimony of the City's 30(b)(6) witness.

### C. Motion for Summary Judgment on the Notice of Termination Issue

The court concludes that, given the City's admission as to the date of the notice of termination, there is no evidentiary basis upon which a reasonable jury could find in favor of the City. Moreover, the City's own 30(b)(6) witness admitted that the November 21st letter was not the required seven-day notice to Durkin and Federal, of the City's intent to terminate.

The court is not persuaded by the City's argument that Ms. Houck's deposition testimony taken together with her errata sheets presents evidence of a genuine issue of material fact that should preclude summary judgment. Instead, the court is guided by the Tenth Circuit's reasoning in *Franks*. The Court of Appeals in *Franks* stated, " that the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting its own prior testimony." *Franks*, 796 F.2d at 1237 (citing *Camfield Tires, 719 F.2d at 1365*).

The plain language of the Construction Contract, the Bond and the November 21st letter make clear that, even absent the sworn deposition testimony of Ms. Houck, a reasonable jury could not find in favor of the non-movant City. It appears that the City attempted to follow the conditions of the Bond almost to the letter, but ignored a critical requirement imposed by the Construction Contract. That requirement included an additional procedural step prior to termination that the Bond did not; that is, seven-day notice to Durkin and Federal of its intent to terminate. As Federal and Durkin separately point out in their briefs, the November 21st letter neither formally declares Durkin in default, nor does it

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2724882 (D.Del.)

(Cite as: Not Reported in F.Supp.2d)

contain the word " terminate." Indeed, it even states that it is a " precautionary letter."

The City argues that the November 21st letter simultaneously satisfied the conditions of the Bond and the conditions of the Construction Contract. Putting aside the fact that the language of the November 21st letter is deficient on its face in declaring Durkin in default or providing a seven-day notice of termination, the City's position might be tenable if the parties to the two contracts were separate, non-overlapping and otherwise unaware of the obligations in both contracts. In this instance, however, it appears that Federal and Durkin were at all times aware of the obligations imposed in both the Construction Contract and the Bond. It is clear that the " considering declaring" provision of the Bond functions to initiate a conflict-resolution process that could potentially obviate a declaration of default.[FN3] Further, the parties proceeded to carry out these steps ostensibly to resolve the conflicts. For these reasons, it is unreasonable to suggest that the November 21st letter was notice under Paragraph 3.1 of the Bond, and at the same time, notice under Section 15.2 of the Construction Contract. The procedural requirements of Paragraph 3.1 are expressly before a declaration of default and the requirement of Section 15.2 of the Construction Contract must necessarily be a declaration of default or intent to terminate.

> FN3. This conclusion is supported by the last provision in paragraph 3.1: If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequent to declare a Contractor Default.

*9 Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Fed. Sav. & Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir.1992). On the pleadings and exhibits alone, the court holds that it seems unlikely that a reasonable jury could find for the City on the notice of termination issue. Where there may have been some appearance of a genuine issue on the pleadings before, the deposition testimony of the City's 30(b)(6) witness puts the issue to rest. Thus, taking into consideration the judicial admissions, the admissions of the City's 30(b)(6) witness, and the

written record of pleadings and exhibits, the court concludes that a reasonable jury could not find for the non-movant City on the notice issue.

As such, the court will vacate its September 2nd Order [FN4] and April 5th Order, and will grant summary judgment to Federal and partial summary judgment to Durkin, with respect to the failure to provide seven-day notice to terminate as required by the Construction Contract.

> FN4. The City correctly notes in its Answer to Durkin's Motion for Partial Summary Judgment that Durkin also seeks summary judgment on the issue of whether Newark had actual cause to terminate the Construction Contract. The Court does not grant such relief in this Order. Partial summary judgment in favor of Durkin is limited to the allegation that the City did not satisfy the notice requirement of the Construction Contract before terminating Durkin. Summary judgment is not, however, granted as to the allegation that City lacked the proper legal and factual basis for terminating Durkin or, in the City's view, that Durkin failed to perform. That dispute is not appropriately resolved on summary judgment with this record.

### VI. CONCLUSION

For the aforementioned reasons, the court will grant Federal's motion for summary judgment and will grant in part and deny in part Durkin's motion for partial summary judgment on the notice of termination issue.

### ORDER

For the reasons stated in the court's Memorandum Opinion of this same date, IT IS HEREBY ORDERED that:

1. Federal's Motion for Reconsideration (D.I.136) is GRANTED.

2. Federal's *Motion in Limine* (D.I.163) to exclude the errata sheets of Ms. Carol Houck is GRANTED.

3. Federal's *Motion in Limine* (D.I.165) to exclude the " February 4th Letter" is GRANTED in part and DENIED in part.

4. Durkin's *Motion in Limine* (D.I.190) regarding the judicial admission of the City of Newark is GRANTED.

5. The Court's September 2, 2004 Order denying

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 2724882 (D.Del.)

**(Cite as: Not Reported in F.Supp.2d)**

plaintiff's partial summary judgment (D.I.63) is VACATED.

6. The Court's April 5, 2006 Order denying summary judgment (D.I.132) is VACATED.

7. Federal's Motion for Summary Judgment (D.I.122) is GRANTED.

8. Durkin's Motion for Partial Summary Judgment (D.I.36) is GRANTED in part and DENIED in part.

D.Del.,2006.

Donald M. Durkin Contracting, Inc. v. City of Newark

Not Reported in F.Supp.2d, 2006 WL 2724882 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2007, I electronically filed the foregoing document, **REDACTED VERSION OF DEFENDANT IMPAX LABORATORIES, INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO COMPEL WYETH TO PRODUCE PROPERLY PREPARED RULE 30(b)(6) WITNESSES**, with the Clerk of the Court using CM/ECF which sent notification of such filing to the following:

Jack B. Blumenfeld
Karen Jacobs Louden
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

Additionally, I hereby certify that on the same date, the foregoing document was served as indicated below:

**VIA EMAIL AND HAND DELIVERY**
Jack B. Blumenfeld
Karen Jacobs Louden
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801
jblumenfeld@mnat.com
klouden@mnat.com
mmyers@mnat.com

**VIA EMAIL**
Basil J. Lewris
Linda A. Wadler
Finnegan Henderson Farabow
 Garrett & Dunner
901 New York Avenue, NW
Washington, DE 20001
Bill.Lewris@finnegan.com
Linda.Wadler@finnegan.com

_/s/ Mary B. Matterer_
Mary B. Matterer (I.D. No. 2696)
Morris James LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

_Attorneys for IMPAX LABORATORIES, INC._