IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WYETH,<br><br>                Plaintiff,<br><br>v.<br><br>IMPAX LABORATORIES, INC.,<br><br>                Defendant. | Civil Action No. 06-222 (JJF) |

**DEFENDANT IMPAX LABORATORIES, INC.'S OPPOSITION TO WYETH'S MOTION TO STRIKE PARAGRAPHS 72-73, 81-84, 129-130 AND 133-136 OF THE REBUTTAL EXPERT REPORT OF ARTHUR H. KIBBE, Ph.D.**

Richard K. Herrmann (I.D. No. 405)
Mary B. Matterer (I.D. No. 2696)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
Telephone: (302) 888-6800
mmatterer@morrisjames.com

Daralyn J. Durie
Asim Bhansali
Paula L. Blizzard
Benedict Y. Hur
Matthias Kamber
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400

DATE: December 6, 2007

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................................2

    A.    Wyeth's Opening Expert Reports Address Issues of Claim Construction ..................................................................................................................2

    B.    Dr. Kibbe's Rebuttal Report Responds to Issues of Claim Construction ................3

III. ARGUMENT .........................................................................................................................6

    A.    As a Factual Matter, the Challenged Paragraphs are Proper Rebuttal ....................6

        1.    Wyeth's experts first introduced new claim construction issues, to which Dr. Kibbe responded in his rebuttal report ...................................7

        2.    Dr. Kibbe's rebuttal opinions on invalidity directly addressed Wyeth's experts' claim construction opinions in the context of infringement ..................................................................................................8

    B.    Wyeth Presents No Legal Basis For Striking the Challenged Paragraphs ..................................................................................................................9

    C.    The Court Should Treat Both Parties' Experts' Opinions on Claim Construction Similarly ...........................................................................................11

IV. CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AMEX, LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002) .................................................................................................10

*AstraZeneca AB v. Mutual Pharm. Co.*,
    278 F. Supp. 491 (E.D. Pa. 2003) ..............................................................................................10

*Bridgestone Sports Co., Ltd. v. Acushnet Co.*,
    No. 05-132-JJF, 2007 U.S. Dist. LEXIS 11370 (D. Del. Feb. 15, 2007) ......................9, 10, 11

*Georgia-Pacific Corp. v. U.S. Gypsum Co.*,
    Civ. No. 94-489-RRM, 1996 U.S. Dist. LEXIS 22616 (D. Del. Dec. 27, 1996) ................9, 10

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999) ...................................................................................................8

*Key Pharms. v. Hercon Laboratories Corp.*,
    161 F.3d 709 (Fed. Cir. 1998) .....................................................................................................8

*Matsushita Electric Industrial Co., Ltd. v. Cinram International, Inc.*,
    229 F. Supp. 2d 348 (D. De. 2004) ...........................................................................................10

*Meyers v. Pennypack Woods Home Ownership Association*,
    559 F.2d 894 (3d Cir. 1977) ......................................................................................................11

*Philips Electrics N. America Corp. v. Contec Corp.*,
    Civ. No. 02-123-KAJ, 2004 U.S. Dist. LEXIS 5839 (D. Del. Apr. 5, 2004) ............................10

*Praxair, Inc. v. ATMI, Inc.*,
    Civ. No. 03-1158-SLR, 2005 U.S. Dist. LEXIS 29843 (D. Del. Nov. 28, 2005) .....................10

## DOCKETED CASES

*The Liposome Co., V. Vestar, Inc.*,
    C.A. No. 92-332-RRM (D. Del. Nov. 24, 1993) .......................................................................10

I.      **INTRODUCTION**

By having its experts raise new claim construction issues, Wyeth opened the door to the points it wants to strike from Dr. Kibbe's rebuttal report. Contrary to Wyeth's claims, the challenged paragraphs of Dr. Kibbe's report do not contain new and untimely theories, but rather proper expert rebuttal on issues Wyeth's experts themselves raised in their opening reports.

While Wyeth makes much of the fact that claim construction briefing closed in late May, and that the Court has already held a *Markman* hearing, it was Wyeth's experts that first opined on various issues of claim construction over four months later. In fact, Wyeth's initial expert reports from Drs. McGinity, Sawchuk, Hollander, and Thisted <u>all</u> devote significant portions to the meanings of various claim terms. In so doing, they opine on not only claim construction issues already submitted to the Court, but also agreed-upon constructions.

The challenged portions of Dr. Kibbe's rebuttal report are almost all in response to the claim construction opinions of Wyeth's experts. Paragraphs 72-73, 81-83, and 129 explicitly address the interpretation of claims engaged in by Drs. Sawchuk and McGinity. Similarly, paragraphs 84 and 133-136 of Dr. Kibbe's rebuttal report directly respond to opinions posited by Drs. Sawchuk and McGinity in interpreting a particular claim limitation—"150 ng/ml"—in asserted U.S. Patent No. 6,403,120. Only paragraph 130 is somewhat different, though it too does not contain a new argument. Rather, it addresses issues first raised in Dr. Kibbe's Supplemental Report, which he filed on the basis of late-produced discovery.

The cases Wyeth relies upon are inapposite. Not one of them addresses the issue here: whether the challenged paragraphs of Dr. Kibbe's report are proper expert rebuttal. Instead, they all deal with the issue of a party raising new issues unprompted. In other words, the cases Wyeth cites deal with precluding new theories that a party raises out of the blue, not the propriety of opinions submitted by an expert to rebut opinions put forward by the other side's experts.

1

Because Wyeth opened the door to Dr. Kibbe's rebuttal points, those points are not untimely. Accordingly, Impax opposes Wyeth's motion to strike. If Wyeth's experts are permitted to submit opinions on claim construction, then Impax's expert, Dr. Kibbe, should be afforded a response.

## II.   FACTUAL BACKGROUND

### A.   Wyeth's Opening Expert Reports Address Issues of Claim Construction

Wyeth's experts each raise various claim-construction issues in their opening reports. Paragraphs 44-55 of Dr. McGinity's report explicitly address claim construction issues. In fact, these paragraphs comprise a section entitled "Meaning of Terms Used in the Wyeth Patents." *See* Declaration of Mary Matterer in Support of Impax Laboratories, Inc.'s Opposition to Wyeth's Motion to Strike Paragraphs 72-73, 81-84, 129-130 and 133-136 of the Rebuttal Expert Report of Arthur H. Kibbe, Ph.D. ("Matterer Decl.") Ex. A (McGinity) at p. 23. In that section, Dr. McGinity opines on the interpretation of various claim terms, including the following: (1) "extended release formulation"; (2) "diminished incidence[s] of nausea and emesis"; (3) "A method for eliminating the troughs and peaks of drug concentration in a patient's blood plasma attending the therapeutic metabolism of plural daily doses of venlafaxine hydrochloride"; (4) "spheroid"; and (5) "encapsulated." *See id.* at ¶¶ 44-55. The first three of these terms were the subject of long-past claim construction briefing, while the parties had agreed on the construction of the remaining two terms. Nevertheless, Dr. McGinity opines as to their meaning.

Dr. Sawchuk also opines on issues of claim construction, despite the fact that this Court has already concluded the *Markman* process. Like Dr. McGinity, Dr. Sawchuk's report contains a section entitled "Meaning of Terms Used in the Wyeth Patents." *See* Matterer Decl. Ex. B (Sawchuk) 11-23. There, Dr. Sawchuk addresses the meaning of (1) "method for providing a therapeutic blood [drug] plasma concentration of venlafaxine over a twenty four hour period"; (2) "with diminished incidence[s] of nausea and emesis"; (3) "administering orally to a patient in need thereof"; (4) "a peak blood plasma level of venlafaxine in from about 4 to about 8 hours [about 5 to about 8 hours; about 6 hours]"; (5) "provides peak blood plasma levels of venlafaxine

2

of no more than 150 ng/ml"; (6) "A method for eliminating the troughs and peaks of drug concentration in a patients blood plasma attending the therapeutic metabolism of plural daily doses of venlafaxine hydrochloride"; and (7) "said formulation containing venlafaxine hydrochloride as the active ingredient." *See id.* Dr. Sawchuk concedes that two of these terms have agreed-upon meanings—terms (3) and (7). Even so, just as Dr. McGinity did in his report, Dr. Sawchuk opines on the meaning of these undisputed claim terms.

Furthermore, Dr. Hollander also opines on the meaning of various claims terms. Though he does not separate this analysis with a distinct claim heading, as Drs. McGinity and Sawchuk do, Dr. Hollander dedicates a portion of his report to claim construction issues. *See* Matterer Decl. Ex. C (Hollander) 9-11. Specifically, he provides his interpretation of the claim phrases (1) "a method for providing a therapeutic blood [or drug] plasma concentration of venlafaxine over a twenty four hour period"; (2) "diminished incidence[s] of nausea and emesis." *Id.*

Finally, even Wyeth's statistician, Dr. Thisted, opines about construction of the claim term "diminished incidences of nausea and emesis," which was long ago submitted to the Court. *See* Matterer Decl. Ex. D (Thisted) ¶ 54. Given its own conduct, Wyeth's complaints are baffling.

**B.    Dr. Kibbe's Rebuttal Report Responds to Issues of Claim Construction**

Nearly all of the disputed paragraphs of Dr. Kibbe's rebuttal report—paragraphs 72-73, 81-84, 129 and 133-136—address claim construction arguments raised by Wyeth's experts. Dr. Kibbe calls out responsive nature of many of these paragraphs directly. In paragraph 72, Dr. Kibbe explicitly addresses Dr. McGinity's interpretation of "spheroid."[1] Further, in

---

[1] "At ¶ 56 of his report, Dr. McGinity defines 'spheroid' as 'one or more particles that are generally shaped like a sphere, although they do not have to be perfectly round.' He further states that '[n]o specific manufacturing technique is required to form a spheroid ... .' While I generally agree with this definition, I further note that a 'spheroid' is uncoated. Where a spheroid is coated, it is referred to as a 'coated spheroid.'" Declaration of Karen Jacobs Louden in Support of Wyeth's Opening Brief In Support of its Motion to Strike Paragraphs 72-73, 81-84, 129-130 and 133-136 of the Rebuttal Expert Report of Arthur H. Kibbe, Ph.D. ("Louden Decl.") Ex. A (Kibbe Rebuttal Report) ¶ 72.

3

paragraph 73, Dr. Kibbe discusses Dr. McGinity's interpretation of "encapsulated."[2] And in paragraph 81, Dr. Kibbe takes on Dr. Sawchuk's interpretation of the term "therapeutic metabolism."[3]

Similarly, in paragraphs 82-83 and 129, Dr. Kibbe opines on his understanding of a claim term in direct response to Dr. Sawchuk's interpretation of a claim phrase including that term. Here again, Dr. Kibbe explicitly states that he is rebutting Dr. Sawchuk. At the beginning of this discussion regarding the interpretation of the term "about" in the claim phrase "a peak blood plasma level of venlafaxine in from about 4 to 8 hours (or about 5 to 8 hours, or about 6 hours)," in paragraph 82, Dr. Kibbe notes that he is taking issue with Dr. Sawchuk's claim interpretation. As Dr. Kibbe openly states: "I disagree with Dr. Sawchuk's use of 'about' with 'approximately' in his discussion of this claim phrase." Kibbe Rebuttal ¶ 82. In paragraph 83, Dr. Kibbe expands on this discussion, tying it into the opinions expressed in his Supplemental Report. And in paragraph 129, Dr. Kibbe simply refers back to this prior discussion of the claim phrase "a peak blood plasma level of venlafaxine in from about 4 to 8 hours (or about 5 to 8 hours, or about 6 hours)."[4]

---

[2] "Dr. McGinity also defines 'encapsulated' as 'filled to a pharmaceutically acceptable capsule.' While I generally agree with this definition, and believe it is consistent with the specification of the patents-in-suit, I note that to a person of ordinary skill in the art, 'encapsulated' can also mean to surround with a coating. I agree with the principle guiding Dr. McGinity's definition, that the meaning of terms in a patent must be grounded in context of the patent and I believe this principle should be followed in construing all of the claim terms for the patents-in-suit." *Id.* at ¶ 73.

[3] "I read with interest Dr. Sawchuk's proposed definition of the term 'therapeutic metabolism.' The term has no meaning. Though I agree that both the term 'therapeutic' and 'metabolism' have plain meanings to a person of ordinary skill in the art, 'therapeutic metabolism' does not. In my opinion, the claim term is meaningless and indefinite to a person of ordinary skill in the art. I note that Dr. Sawchuk does not identify any portion of the specification that uses this term." *Id.* at ¶ 81 (citations omitted).

[4] "As discussed in paragraph 80 [*sic*, 81] of this report, regarding the claim term 'a peak blood plasma level of venlafaxine in from about 4 to 8 hours (or about 5 to 8 hours, or about 6 hours),' it is my opinion that 'about' has a plain meaning to a person of ordinary skill in the art and the term is used according to its plain meaning in the asserted claims of the patents-in-suit. A person of ordinary skill in the art would understand that 'about' means that the variance from the specific range would be statistically insignificant. Statistically significant differences would be outside the scope of the claims." *Id.* at ¶ 129.

4

Paragraphs 84 and 133-136 of Dr. Kibbe's rebuttal report address another claim interpretation issue raised by Drs. Sawchuk and McGinity, the interpretation of the claim phrase "provides peak blood plasma levels of venlafaxine of no more than 150 ng/ml." Here again Dr. Kibbe explicitly calls out the responsive nature of this discussion. In paragraph 133, Dr. Kibbe notes that "*[h]aving considered Drs. McGinity and Sawchuk's discussion of the asserted claims of the '120 patent as well as the text of those claims*, it is my opinion that the claims are indefinite." (Emphasis added.) Paragraph 136 provides even more specificity as to the rebuttal nature of this indefiniteness discussion. At the outset of that paragraph, Dr. Kibbe says that he is responding to the opinions set forth at paragraphs 39, 73-74, 141-145 of Dr. McGinity's report and pages 16-17 and 50-51 of Dr. Sawchuk's report, which address the "150 ng/ml" limitation. Paragraphs 134 and 135 simply provide a more detailed explanation of Dr. Kibbe's rebuttal opinions, while Paragraph 84 does nothing more than preview this indefiniteness discussion generally.[5] Although the opinions relate to indefiniteness, they nonetheless directly—and properly—rebut Wyeth's experts' interpretation of the "150 ng/ml" claim limitation.

Finally, paragraph 130 addresses opinions first raised in Dr. Kibbe's Supplemental Report, which Wyeth acknowledges was proper and has not moved to strike. Those opinions were based on documents produced by Wyeth, guidance offered by Patent and Trademark Office, and testimony given by third parties *after* the deadline for the initial expert reports. Wyeth previously took issue with Dr. Kibbe's Supplemental Report. *See* Matter Decl. Ex. E (10/24/07 Wright to Purcell). Impax responded that, while the supplementation was reasonable and proper, it would discuss a possible extension of time for Wyeth's experts to respond. *See* Matter Decl. Exs. F and G (10/25/07 Purcell to Wright; and raised again in the 11/02/07 letter from Purcell to Wright). Wyeth did not respond to either letter. In any event, the opinions were

---

[5] "I also note that the term 'provides peak blood plasma levels of venlafaxine of no more than about 150 ng/ml,' as I discuss at length below, is indefinite as it appears in the asserted claims of the '120 patent." *Id.* at ¶ 84.

5

not expressed for the first time on rebuttal, and Wyeth's experts had an opportunity to address them in their own rebuttal reports. Moreover, Wyeth had the opportunity to depose Dr. Kibbe on those opinions. It did so on November 20, 2007, dedicating a portion of the examination to the allegedly new matter. *See* Matterer Decl Ex. H (Kibbe Depo. Tr.) 250-52. Finally, Wyeth also submitted supplemental reports from Drs. Sawchuk and Thakker on November 29, 2007. *See* Matterer Decl. Exs. I and J (Supplemental Reports of Drs. Sawchuk and Thakker). Plainly Wyeth has had a full and fair opportunity to conduct discovery on these issues. It cannot claim any prejudice.

## III. ARGUMENT

The issue presented in Wyeth's motion is as follows: do the challenged paragraphs in Dr. Kibbe's rebuttal report respond to the opinions put forward by Wyeth's experts, or do they instead raise new, non-responsive arguments? Because the challenged paragraphs are proper rebuttal, rather than new and untimely, the Court should deny Wyeth's motion to strike.

### A. As a Factual Matter, the Challenged Paragraphs are Proper Rebuttal

Wyeth argues that paragraphs 72-73, 81-84, 129-130 and 133-136 should all be stricken "because they raise new and untimely invalidity defense and claim construction positions." Wyeth Motion to Strike 1. In support of that argument, Wyeth notes that the parties have already completed claim construction briefing, and that the Court has already conducted a *Markman* hearing. *Id.* In addition, Wyeth points to the Court's Scheduling Order, which called for each party to submit expert opinions on issues for which they have the burden of proof by September 28, 2007, and allowed each party to submit rebuttal reports on October 31, 2007. *Id.* As such, Wyeth contends, Impax should have (1) addressed only invalidity issues in its opening reports, and only infringement issues in its rebuttal reports; and (2) not addressed claim construction in either report. *See id.*

There is, however, one fundamental problem with this argument: Wyeth itself introduced issues of claim construction via its own experts' opening reports. In so doing, they opened the door to rebuttal arguments from Dr. Kibbe on those very issues. In essence, Wyeth seeks to tilt

6

the playing field. Having introduced new issues of claim construction, it now wants to prohibit Impax from rebutting those arguments by claiming they are untimely.

        **1.    Wyeth's experts first introduced new claim construction issues, to which Dr. Kibbe responded in his rebuttal report**

As outlined in detail above, Drs. Sawchuk, McGinity, Hollander, and Thisted all dedicate portions of their opening reports to issues of claim construction. Both Drs. Sawchuk and McGinity devote an independent portion of their report to the "Meaning of Terms Used in the Wyeth Patents." *See* Matter Decl. Ex. A (McGinity Report) ¶¶ 44-55; Ex. B (Sawchuk Report) pp. 11-23. Dr. Hollander dedicates about two pages of his report to the meaning of different claim phrases. *See* Matterer Decl. Ex. C (Hollander Report) at pp. 9-11. Even Dr. Thisted also opines on the meaning of "incidences." *See* Matterer Decl. Ex. D (Thisted Report) at ¶ 54.

As also detailed above, the paragraphs Wyeth asks the Court to strike from Dr. Kibbe's report explicitly rebut these claim construction opinions raised by Wyeth's experts:.

- In paragraphs 72 and 73, respectively, Dr. Kibbe addresses Dr. McGinity's interpretation of the terms "spheroid" and "encapsulated."
- In paragraph 81, Dr. Kibbe responds to Dr. Sawchuk's interpretation of the claim term "therapeutic metabolism."
- In paragraphs 82-83, Dr. Kibbe refutes Dr. Sawchuk's interpretation of the claim term "about" as meaning "approximately." (Paragraph 129 refers back to this issue.)
- And in paragraphs 133-136, Dr. Kibbe rebuts Drs. Sawchuk and McGinity's construal of the claim term "150 ng/ml." (Paragraph 84 simply introduces this discussion.)

Paragraph 130 does not even rise to the level of rebuttal argument. Rather, in paragraph 130, Dr. Kibbe re-visits an opinion first raised in his Supplemental Report. Both Dr. Sawchuk and Dr. Thakker responded via supplemental reports, served November 23, 2007, over three weeks past the deadline for rebuttal reports and only one week before Dr. Thakker's scheduled deposition. *See* Matterer Decl. Exs. H-I (Supplemental Reports of Drs. Sawchuk and Thakker).

7

### 2. Dr. Kibbe's rebuttal opinions on invalidity directly addressed Wyeth's experts' claim construction opinions in the context of infringement

Wyeth likely will argue that its experts' discussions on the meaning of claim terms in their opening reports are part and parcel of their opinions on infringement, and therefore timely, whereas Dr. Kibbe's rebuttal opinions on the meaning of claim terms are in connection with invalidity, and therefore untimely. To that end, Wyeth may point out that interpreting the meaning of claim terms is simply the first of two steps in the infringement inquiry. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362 (Fed. Cir. 1999) ("An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present in the accused device . . . ."). In effect, Wyeth contends that its experts may present new claim construction opinions in their opening reports on infringement, but Impax is not allowed to rebut those opinions or discuss how they impact the validity analysis. *See* Wyeth Motion to Strike at 1.

That is illogical and tremendously unfair. If a patent holder such as Wyeth presents new claim construction issues in its experts' opening reports, then an accused infringer—here Impax—must, in the interest of fairness, be allowed to rebut those arguments both in the context of discussing infringement *and* invalidity. Just as interpreting the meaning of claim terms is the first of two steps in analyzing infringement, an evaluation of invalidity also rests on claim construction. *See Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998) ("[N]ot unlike a determination of infringement, a determination of anticipation, as well as obviousness, involves two steps. First is construing the claim, a question of law for the court, followed by, in the case of anticipation or obviousness, a comparison of the construed claim to the prior art."). As such, Dr. Kibbe should have an opportunity to address how the meaning of a claim term proffered by Wyeth's experts impacts not only infringement, but invalidity.

By arguing the contrary, Wyeth unfairly seeks to tie Impax's hands, restricting rebuttal to issues of infringement even though the claim construction opinions put forward in Wyeth's

8

infringement analysis may impact validity. Impax should have an opportunity to rebut those arguments, particularly since doing so delineates the issues and lessens the likelihood of surprise at trial.

### B. Wyeth Presents No Legal Basis For Striking the Challenged Paragraphs

None of the cases cited by Wyeth address whether Dr. Kibbe's opinions on claim construction and indefiniteness are proper rebuttal to Wyeth's experts' claim interpretation opinions, or are instead new and untimely. In *Bridgestone*, the accused infringer did not disclose three pieces of prior art that it had available to it before the close of fact discovery and well before the deadline for providing invalidity defenses.[6] As such, the Court found it appropriate to preclude the accused infringer from relying on those untimely disclosed references when it raised them unprompted.[7] In *Georgia-Pacific*, the Court held multiple conferences with the parties in which it emphasized the adequacy and timing to disclosing their respective contentions.[8] In so doing, the Court repeatedly "set deadlines for counsel to respond to these discovery questions and warned counsel of the consequences that would follow from a failure to respond, or to identify why counsel could not respond at that time. Georgia-Pacific heard that message and used that tool."[9] Thus, when the accused infringer out of the blue disclosed new invalidity defenses late in the case, and after those deadlines had passed, the Court precluded the accused infringer from presenting those defenses at trial.[10] In sum, *Bridgestone* and *Georgia-Pacific* deal with whether an accused infringer can rely on late-disclosed prior-art references or invalidity theories, not the propriety of expert rebuttal.

---

[6] *Bridgestone Sports Co., Ltd. v. Acushnet Co.*, No. 05-132-JJF, 2007 U.S. Dist. LEXIS 11370, *12 (D. Del. Feb. 15, 2007).

[7] *Id.* at *15.

[8] *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, Civ. No. 94-489-RRM, 1996 U.S. Dist. LEXIS 22616, *19-25 (D. Del. Dec. 27, 1996).

[9] *Id.* at *34-35.

[10] *Id.* at *35.

Likewise, *Matsushita*[11] and *The Liposome Co.*[12] deal with whether an accused infringer can advance late-disclosed non-infringement theories; they do not consider whether opinions disclosed in a rebuttal report are properly responsive or improperly new and untimely. And in *Praxair*,[13] the Court struck an expert's entire supplemental report as untimely because it was filed after the close of expert discovery and only ten days before summary judgment briefing was due. Because Wyeth is not seeking to strike a late-disclosed non-infringement theory or a report filed outside of the discovery period, these cases are not on point.

The string cite at page 8 of Wyeth's motion brief simply lists other similarly off-point cases. Notably, that string cite is copied verbatim from footnote 1 of this Court's opinion in *Bridgestone* and contains no independent analysis, though Wyeth's counsel does not attribute it to the Court by way of a citation. *Amex*[14] addresses a patent holder's late addition to its infringement theories via a supplemental interrogatory answer. In *Philips*[15] the Court precludes a party from using untimely produced documents at trial. And *AstraZeneca*[16] deals with late-disclosed prior art in support of an accused infringer's invalidity defenses. Here, Wyeth does not contend that Impax failed to disclose a prior art reference supporting its invalidity contentions. Neither does it contend that Impax is advancing a new non-infringement argument, or trying to put into evidence previously undisclosed documents. So these case have no bearing on the issue before the Court.

In any event, even applying the broader rationale behind cases like *Bridgestone* and *Georgia-Pacific*, the Court should deny Wyeth's motion to strike. As the Court acknowledges in *Bridgestone*, "the exclusion of critical evidence is considered an '"extreme' sanction, not

---

[11] *Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*, 229 F. Supp. 2d 348 (D. De. 2004).

[12] *The Liposome Co. v. Vestar, Inc.*, C.A. No. 92-332-RRM (D. Del. Nov. 24, 1993).

[13] *Praxair, Inc. v. ATMI, Inc.*, Civ. No. 03-1158-SLR, 2005 U.S. Dist. LEXIS 29843 (D. Del. Nov. 28, 2005).

[14] *AMEX, LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002).

[15] *Philips Elecs. N. Am. Corp. v. Contec Corp.*, Civ. No. 02-123-KAJ, 2004 U.S. Dist. LEXIS 5839 (D. Del. Apr. 5, 2004).

[16] *AstraZeneca AB v. Mutual Pharm. Co.*, 278 F. Supp. 491 (E.D. Pa. 2003).

normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.'"[17] "Thus, evidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered."[18] Dr. Kibbe's responding the claim interpretations posited by Wyeth's experts falls far short of these high hurdles, which the Court evaluates using the Third Circuit's five-factor test from *Meyers v. Pennypack*.[19]  First, there is little to no prejudice or surprise to Wyeth.  Having had its experts opine on issues of claim interpretation, Wyeth can hardly feign prejudice or surprise that Dr. Kibbe would put forth rebuttal opinions.  Second, Wyeth could easily cure any prejudice.  It has already had the opportunity to address Dr. Kibbe's rebuttal points at deposition and in supplemental expert reports.  Third, there is no likelihood of disruption to the trial schedule.  At the moment, there is no scheduled trial date, and expert discovery is ongoing.  Fourth, Wyeth has put forth no evidence of bad faith or willfulness in not previously disclosing Dr. Kibbe's opinions.  Nor could it.  Those opinions were in direct response to those of Wyeth's experts, and there was no prior point where Dr. Kibbe could have or would have had reason to address them.  Fifth, the opinions are important to Impax.  To the extent Wyeth is going to contend certain claim terms have a particular meaning, Impax has every right to challenge those contentions, including how they impact the alleged validity of the asserted claims.  Presentation of this evidence to the Court must be a two-way street.

### C. The Court Should Treat Both Parties' Experts' Opinions on Claim Construction Similarly

If anything, it is Wyeth's experts' claim construction opinions that are untimely.  Blind to the irony of its own argument, Wyeth repeatedly notes that claim construction briefing and argument have already been completed.  *See* Wyeth Motion to Strike at 1, 4, and 7.  But Wyeth

---

[17] *Bridgestone*, 2007 U.S. Dist. LEXIS 11370 at *10 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994)).
[18] *Id.*
[19] *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977).

fails to acknowledge that its own experts first raised the issue of claim interpretation in their opening reports. As detailed above, Drs. McGinity, Sawchuk, Hollander, and Thisted each dedicate portions of their opening report to the meaning of certain claim terms.

Impax believes that both the parties and the Court benefit from the experts airing their conflicting opinions. That is the best way to avoid prejudice and surprise and narrow the issues for trial. Thus, Impax believes that the Court should not strike Dr. Kibbe's rebuttal arguments. But if the Court precludes Impax's expert Dr. Kibbe from opining on the meaning of claim terms and the impact of that meaning on the validity of the asserted claims, then the Court should similarly preclude Wyeth's experts from submitting claim interpretation opinions at this stage.

## IV. CONCLUSION

For the foregoing reasons, Impax opposes Wyeth's Motion to Strike Paragraphs 72-73, 81-84, 129-130, and 133-136 of the Rebuttal Expert Report of Arthur H. Kibbe, Ph.D.

Dated: December 6, 2007

/s/ Mary B. Matterer
Mary B. Matterer
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750

*Of counsel:*
Daralyn J. Durie
Asim Bhansali
Paula L. Blizzard
Benedict Y. Hur
Matthias Kamber
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111-1724
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Attorneys for Defendant
IMPAX LABORATORIES, INC.*